# UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
OFFICE OF THE CLERK

C02-2527

LORETTA G WHYTE
CLERK

500 CAMP ST  ROOM C-151
NEW ORLEANS  LA 70130

January 3, 2003

MAIL

JAN 10 2003

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

Mr Bruce Rifkin
Clerk, United States District Court
Western District of Washington
215 United States Courthouse
1010 Fifth Avenue
Seattle, WA  98104-1130

Re      Multidistrict Litigation No. 1407
        Daphne B Donnelly, et al
                vs
        Bayer Corp , et al
        Civil Action No  02-2436 N (1)
        Your Case No  C A  02-2527

Dear Mr Rifkin

        Pursuant to an order of the Multidistrict Litigation Panel to transfer the above-captioned case
under Title 28 U S C  1407, to the Western District of Washington, I am forwarding herewith the entire
original record together with a copy of the order of transfer and a certified copy of the docket sheet

        Please acknowledge receipt on the enclosed copy of this letter

                                Very truly yours,

                                LORETTA G  WHYTE, CLERK

                                By
                                        Deputy Clerk

Enclosures

CV 02-2527  #36

36

TERMED

U.S. District Court
U.S. District Court -- Western Washington (Seattle)

CIVIL DOCKET FOR CASE # 02-CV-2527

Donnelly, et al v Bayer Corporation, et al                    Filed 01/10/03
Assigned to: Judge Barbara J Rothstein        Jury demand  Plaintiff
Demand  $0,000                                Nature of Suit   365
Lead Docket  01-MD-1407                        Jurisdiction  Diversity
Dkt # in East Dist of LA . is 02-2436 N (1)

Cause· 28.1332 Diversity-Product Liability

DAPHINE B DONNELLY                    Dana Gareth Kirk
    plaintiff                        [COR LD NTC]
                                     4265 SAN FELIPE
                                     STE 1400
                                     HOUSTON, TX 77027
                                     713-651-0050

                                     Clayton Clark
                                     [COR LD NTC]
                                     CLARK DEPEW & TRACEY LTD
                                     440 LOUISIANA
                                     SUITE 1600
                                     HOUSTON, TX 77002
                                     713-757-1400

                                     J Robert Davis
                                     [COR LD NTC]
                                     J ROBERT DAVIS LLP
                                     440 LOUISIANA AVE
                                     SUITE 1600
                                     HOUSTON, TX 77002
                                     713-425-5255

                                     John Chandler Loupe
                                     FTS FAX
                                     FAX 1-225-767-9003
                                     [COR LD NTC]
                                     CLAITOR & LOUPE
                                     2223 QUAIL RUN DRIVE
                                     STE G
                                     BATON ROUGE, LA 70808
                                     225-767-2222

JEROME DONNELLY, husband             Dana Gareth Kirk
    plaintiff                        (See above)
                                     [COR LD NTC]

                                     Clayton Clark

Docket as of March 21, 2003 11:42 am                    Page 1

Proceedings include all events.                                    TERMED
2:02cv2527 Donnelly, et al v. Bayer Corporation, et al

                                (See above)
                                [COR LD NTC]

                                J Robert Davis
                                (See above)
                                [COR LD NTC]

                                John Chandler Loupe
                                (See above)
                                [COR LD NTC]


    v.


BAYER CORPORATION               John Francis Olinde
    defendant                   504-585-7000
                                [COR LD NTC]
                                Charles P Blanchard
                                FTS FAX
                                FAX 1-504-585-7075
                                [COR LD NTC]
                                Mary L Meyer
                                504-585-7000
                                [COR LD NTC]
                                CHAFFE MCCALL PHILLIPS TOLER &
                                SARPY
                                1100 POYDRAS ST
                                STE 2300
                                NEW ORLEANS, LA 70163-2300
                                504-585-7216


NOVARTIS PHARMACEUTIS           Eric R Nowak
CORPORATION                     FTS FAX
    defendant                   FAX 1-504-582-1555
                                [COR LD NTC]
                                Joy G Braun
                                FTS FAX
                                FAX 1-504-582-1555
                                [COR LD NTC]
                                Shirin Elisa Harrell
                                [COR LD NTC]
                                SESSIONS FISHMAN & NATHAN
                                201 ST CHARLES AVE
                                STE 3500
                                NEW ORLEANS, LA 70170
                                504-582-1500


NOVARTIS CONSUMER HEALTH INC    Eric R Nowak
    defendant                   (See above)
                                [COR LD NTC]
                                Joy G Braun

Proceedings include all events                                          TERMED
2:02cv2527 Donnelly, et al v  Bayer Corporation, et al

                              (See above)
                              [COR LD NTC]
                              Shirin Elisa Harrell
                              (See above)
                              [COR LD NTC]


4LIFE RESEARCH LC, Successor      C William Bradley, Jr
by merger to Shaperite           504-586-1241
       defendant                 [COR LD NTC]
                                 J Don Kelly, Jr
                                 504-586-1241
                                 [COR LD NTC]
                                 LEMLE & KELLEHER
                                 601 POYDRAS ST
                                 SUITE 2100
                                 NEW ORLEANS, LA 70130
                                 504-586-1241


SMOOTHIE KING CO INC
     defendant


SMOOTHIE KING SYSTEMS INC
     defendant


WALGREEN LOUISIANA CO INC         Jack Etherton Truitt
dba                                [term  03/17/03]
Walgreens                         [COR LD NTC]
     defendant                    THE TRUITT LAW FIRM
                                  251 HIGHWAY 21
                                  MADISONVILLE, LA 70447
                                  985-792-1062

                                  T Haller Jackson, III
                                  318-425-7764
                                  [COR LD NTC]
                                  TUCKER JETER JACKSON & HICKMAN
                                  401 EDWARDS STREET
                                  STE 905 LOUISIANA TOWER
                                  SHREVEPORT, LA 71101-3146
                                  318-425-7764

Proceedings include all events.                              TERMED
2:02cv2527 Donnelly, et al v  Bayer Corporation, et al

1/10/03  36    TRANSMITTAL OF DOCUMENTS from the Eastern District of
               Louisiana per MDL Order CTO (tagalong) effective 12/12/02
               re MDL 1407 (PPA)  Dist of LA civil case no  02-2436 N (1)
               (pm) [Entry date 02/20/03] [2 02cv2527]

1/10/03  --    ENT- The Clerk will maintain a master docket and case file
               under the style PPA cases: orders, pleadings, motions, and
               other documents will, when filed and docketed in the Master
               Case File, be deemed filed and docketed in each individual
               case to the extent possible. (vb) [Entry date 03/21/03]
               [2.02cv2527]

1/13/03  37    MOTION and MEMORANDUM IN SUPPORT by plaintiff for leave to
               file amended petition (vb) [Entry date 02/26/03]
               [2:02cv2527]

1/13/03  --    LODGED ORDER: re   motion for leave to file amended
               petition [37-1] (vb) [Entry date 02/26/03] [2 02cv2527]

1/13/03  --    PROPOSED Amended Petition re·  motion for leave to file
               amended petition [37-1] (vb) [Entry date 02/26/03]
               [2:02cv2527]

2/25/03  38    MOTION by defendant Walgreen Louisiana to substitute
               attorney T  Haller Jackson, III in place of Jack Etherton
               Truitt (vb) [Entry date 03/04/03] [2 02cv2527]

2/25/03  --    LODGED ORDER· re   motion to substitute attorney T  Haller
               Jackson, III in place of Jack Etherton Truitt [38-1] (vb)
               [Entry date 03/04/03] [2 02cv2527]

3/10/03  39    ORDER  by Judge Barbara J. Rothstein  GRANTING  motion for
               leave to file amended petition [37-1], [0-0] (cc· counsel,
               Judge) (vb) [2 02cv2527]

3/10/03  40    AMENDED COMPLAINT by plaintiff in 2:02-cv-02527 (vb)
               [2 02cv2527]

3/17/03  41    ORDER  by Judge Barbara J. Rothstein  GRANTING  motion to
               substitute attorney T. Haller Jackson, III in place of Jack
               Etherton Truitt for Walgreen Louisiana in 2 02-cv-02527
               [38-1]  (cc   counsel, Judge) (vb) [Entry date 03/18/03]
               [2 02cv2527]

```
                                                    TERMED MAG-1
                                                    TRANSF
                    U.S. District Court
     USDC for the Eastern District of Louisiana (New Orleans)

              CIVIL DOCKET FOR CASE #  02-CV-2436

Donnelly, et al v  Bayer Corporation, et al        Filed  08/07/02
Assigned to  Judge Kurt D Engelhardt        Jury demand  Both
Demand  $0,000                              Nature of Suit   365
Lead Docket: None                           Jurisdiction: Diversity
Dkt # in 34th JDC, St Bernard : is 96-487 "C"

Cause: 28 1332 Diversity-Product Liability
```

```
DAPHINE B DONNELLY                  Dana G. Kirk
     plaintiff                      [COR NTC]
                                    Kirk Law Firm
                                    4265 San Felipe St.
                                    Suite 1400
                                    Houston, TX 77027
                                    713-651-0050

                                    Clayton Clark
                                    [COR NTC]
                                    Clark, Depew & Tracey, Ltd ,
                                    LLP
                                    440 Louisiana
                                    Suite 1600
                                    Houston, TX 77002
                                    (713) 757-1400

                                    J. Chandler Loupe
                                    225-767-9003 FAX
                                    [COR LD NTC]
                                    Claitor, Loupe & Bateman
                                    2223 Quail Run Dr
                                    Suite G
                                    Baton Rouge, LA 70808
                                    225-767-2222

                                    J  Robert Davis
                                    [COR NTC]
                                    J. Robert Davis, LLP
                                    440 Louisiana Ave
                                    Suite 1600
                                    Houston, TX 77002
                                    713-425-5255

JEROME DONNELLY, Husband            Dana G  Kirk
     plaintiff                      (See above)
                                    [COR NTC]
```

Docket as of January 3, 2003 9 12 am                  Page 1

Proceedings include all events.
2 02cv2436 Donnelly, et al v. Bayer Corporation, et al                    TERMED MAG-1
                                                                          TRANSF

                                        Clayton Clark
                                        (See above)
                                        [COR NTC]

                                        J. Chandler Loupe
                                        (See above)
                                        [COR LD NTC]

                                        J. Robert Davis
                                        (See above)
                                        [COR NTC]


        v


BAYER CORPORATION, husband              John Francis Olinde
    defendant                          504-585-7587 FAX
                                        [COR]
                                        Charles P. Blanchard
                                        (504) 585-7000
                                        [COR]
                                        Mary Laura Meyer
                                        504-544-6077 FAX
                                        [COR LD NTC]
                                        Chaffe, McCall, Phillips, Toler
                                        & Sarpy, LLP
                                        2300 Energy Centre
                                        1100 Poydras St.
                                        New Orleans, LA 70163-2300
                                        (504) 585-7000

NOVARTIS PHARMACEUTICALS               Joy Goldberg Braun
CORPORATION                            504-582-1555 FAX
    defendant                          [COR LD NTC]
                                        Eric R. Nowak
                                        504-582-1555 FAX
                                        [COR]
                                        Shirin E. Harrell
                                        [COR]
                                        Sessions, Fishman & Nathan, LLP
                                        Place St  Charles
                                        201 St. Charles Ave
                                        35th Floor
                                        New Orleans, LA 70170-3500
                                        (504) 582-1500

NOVARTIS CONSUMER HEALTH, INC.         Joy Goldberg Braun
    defendant                          (See above)
                                        [COR LD NTC]
                                        Eric R. Nowak

Docket as of January 3, 2003 9:12 am                        Page 2

Proceedings include all events
2 02cv2436 Donnelly, et al v Bayer Corporation, et al          TERMED MAG-1
                                                               TRANSF
                              (See above)
                              [COR]
                              Shirin E. Harrell
                              (See above)
                              [COR]


4LIFE RESEARCH LC, Successor   C. William Bradley, Jr
by merger to Shaperite         504-584-9142 FAX
      defendant                [COR LD NTC]
                               J  Don Kelly, Jr
                               [COR]
                               Lemle & Kelleher, LLP
                               Pan American Life Center
                               601 Poydras St.
                               Suite 2100
                               New Orleans, LA 70130-6097
                               (504) 586-1241


SMOOTHIE KING CO INC
      defendant


SMOOTHIE KING SYSTEMS, INC.
      defendant


WALGREEN LOUISIANA COMPANY,     Jack Etherton Truitt
INC                             985-792-1065 FAX
dba                             [COR LD NTC]
Walgreens                       The Truitt Law Firm
      defendant                 251 Highway 21
                                Madisonville, LA 70447
                                985-792-1062

Proceedings include all events.
2 02cv2436 Donnelly, et al v  Bayer Corporation, et al            TERMED MAG-1
                                                                  TRANSF

| 8/7/02 | 1 | Notice of removal by defendant Bayer Corporation, defendant Novartis Phar Corp, defendant Novartis Consumer from 34th Judicial District Court for the Parish of St. Bernard, Case Number. 96-487 "C" . (tbl) [Entry date 08/08/02] |

8/7/02   --   Payment of filing fee by defendant Bayer Corporation, defendant Novartis Phar Corp, defendant Novartis Consumer in amount of $ 150.00 (tbl)  [Entry date 08/08/02]

8/8/02   2    CERTIFICATE by defendant Bayer Corporation, defendant Novartis Phar Corp, defendant Novartis Consumer of filing of notice of removal (tbl) [Entry date 08/09/02]

8/14/02  3    ANSWER by defendant Novartis Consumer  to complaint by plaintiff Daphine B Donnelly, plaintiff Jerome Donnelly [1-1], jury demand (tbl) [Entry date 08/15/02]

8/14/02  4    ANSWER by defendant Novartis Phar Corp  to complaint by plaintiff Daphine B Donnelly, plaintiff Jerome Donnelly [1-1], jury demand (tbl) [Entry date 08/15/02]

8/21/02  5    MOTION by defendant Bayer Corporation for dismissal pursuant to FRCP 12(b)(6) to be heard before Judge Engelhardt at 9:30 9/18/02 (tbl) [Entry date 08/22/02]

8/22/02  6    ANSWER by defendant 4Life Research LC  to complaint by plaintiff Daphine B Donnelly, plaintiff Jerome Donnelly [1-1] (tbl) [Entry date 08/23/02]

8/30/02  7    MOTION by defendant Walgreen LA Co Inc to dismiss plas' cmp to be heard before Judge Engelhardt at 9:30 9/18/03 (tbl) [Entry date 09/03/02]

9/5/02   8    Cross-Notice of Videotaped Deposition by plaintiff Daphine B Donnelly, plaintiff Jerome Donnelly of Bill Carson on 9/26/02 (tbl) [Entry date 09/05/02]

9/5/02   9    Cross-Notice of Videotaped Deposition by plaintiff Daphine B Donnelly, plaintiff Jerome Donnelly of Terry Glass on 9/23/02 (tbl) [Entry date 09/05/02]

9/5/02   10   Cross-Notice of Videotaped Deposition by plaintiff Daphine B Donnelly, plaintiff Jerome Donnelly  of Craig Hammes on 10/7/02 (tbl) [Entry date 09/05/02]

9/5/02   11   Cross-Notice of Videotaped Deposition by plaintiff Daphine B Donnelly, plaintiff Jerome Donnelly  of Bill VanderHaar on 10/14/02 (tbl) [Entry date 09/05/02]

9/9/02   12   MOTION by plaintiff Daphine B Donnelly, plaintiff Jerome Donnelly to remand this matter to the 34th JDC, Parish of St. Bernard to be heard before Judge Engelhardt at 9:30 10/2/02 (tbl) [Entry date 09/09/02]

Proceedings include all events
2 02cv2436 Donnelly, et al v. Bayer Corporation, et al          TERMED MAG-1
                                                               TRANSF

9/9/02    13     MOTION by defendant Novartis Phar Corp to dismiss for
                 failure to state a claim upon which relief can be granted
                 to be heard before Judge Engelhardt at 9 30 10/2/02 (tbl)
                 [Entry date 09/09/02]

9/9/02    14     MOTION by defendant Novartis Consumer to dismiss for
                 failure to state a claim upon which relief can be granted
                 to be heard before Judge Engelhardt at 9 30 10/2/02 (tbl)
                 [Entry date 09/09/02]

9/10/02   15     MINUTE ENTRY ( 9/9/02 ) It is ordered that the motions to
                 dismiss filed on behalf of dfts Walgreen LA Co & Bayer Corp
                 presently noticed for hrg on 9/18/02 are cont & renoticed
                 for 9:30 10/2/02. by Judge Kurt D. Engelhardt (tbl)
                 [Entry date 09/10/02]

9/10/02   16     Memo in opposition by plaintiff Daphine B Donnelly,
                 plaintiff Jerome Donnelly  to motion for dismissal pursuant
                 to FRCP 12(b)(6) [5-1] filed by defendant Bayer Corporation
                 (tbl) [Entry date 09/10/02]

9/10/02   17     Memo in opposition by plaintiff Daphine B Donnelly,
                 plaintiff Jerome Donnelly  to motion to dismiss plas' cmp
                 [7-1] filed by defendant Walgreen LA Co Inc (tbl)
                 [Entry date 09/10/02]

9/11/02   18     Cross-Notice of Deposition by defendant Bayer Corporation
                 of Walter Kernan on 9/18/02 (tbl) [Entry date 09/12/02]

9/13/02   19     MOTION by defendant Novartis Consumer for temporary stay
                 to be heard before Judge Engelhardt at 9 30 10/2/02 (tbl)
                 [Entry date 09/13/02]

9/23/02   25     Motion by defendant Bayer Corporation for exp hrg on its
                 mtn for temporary stay of proceedings pending a final
                 ruling of the Judicial Panel on Multidistrict Litigation on
                 transfer of this case to MDL-1407 and UNSIGNED ORDER (tbl)
                 [Entry date 09/27/02]

9/23/02   26     MOTION by defendant Bayer Corporation for temporary stay
                 of proceedings pending a final ruling of the Judicial Panel
                 on Multidistrict Litigation on transfer of this case to
                 MDL-1407 to be heard before Judge Engelhardt at 9 30
                 10/16/02 (tbl) [Entry date 09/27/02]

9/24/02   20     Memo in opposition by plaintiff Daphine B Donnelly,
                 plaintiff Jerome Donnelly  to motion for temporary stay
                 [19-1] filed by defendant Novartis Phar Corp (tbl)
                 [Entry date 09/24/02]

9/24/02   21     Memo in opposition by plaintiff Daphine B Donnelly,
                 plaintiff Jerome Donnelly  to motion to dismiss for failure
                 to state a claim upon which relief can be granted [14-1]
                 filed by defendant Novartis Consumer (tbl)

.

Proceedings include all events.
2 02cv2436 Donnelly, et al v  Bayer Corporation, et al                TERMED MAG-1
                                                                      TRANSF
                      [Entry date 09/24/02]

9/24/02   22        Memo in opposition by plaintiff Daphine B Donnelly,
                    plaintiff Jerome Donnelly  to motion to dismiss for failure
                    to state a claim upon which relief can be granted [13-1]
                    filed by defendant Novartis Phar Corp (tbl)
                    [Entry date 09/24/02]

9/24/02   23        Memo in opposition by defendant Bayer Corporation,
                    defendant Novartis Phar Corp, defendant Novartis Consumer
                    to motion to remand this matter to the 34th JDC, Parish of
                    St  Bernard [12-1] filed by plaintiff Daphine B Donnelly,
                    plaintiff Jerome Donnelly (tbl) [Entry date 09/24/02]

9/24/02   24        Memorandum by plaintiff Daphine B Donnelly, plaintiff
                    Jerome Donnelly  in opposition to motion for temporary stay
                    filed by defendant Bayer Corporation (tbl)
                    [Entry date 09/24/02]

9/24/02   27        Cross-Notice of Videotaped Deposition by defendant Bayer
                    Corporation of Lawrence M  Brass on 10/1/02 (tbl)
                    [Entry date 09/27/02]

9/27/02   28        MINUTE ENTRY ( 9/27/02 ) Bfr the Court are pla's mtn to
                    remand [12], dfts' mtns to dismiss [5, 7, 13, 14], & dft
                    Novartis Consumer's mtn for temporary stay [19], presently
                    noticed for hrg at 9.30 10/2/02, this matter is temporarily
                    stayed pending a final ruling of the Judicial Panel on
                    Multidistrict Litigation on transfer of this case to
                    Multidustruct Litigation MDL 1407, the Court grants the mtn
                    for temporary stay filed on behalf of dft Novartis Consumer
                    Health [19]. by Judge Kurt D  Engelhardt (tbl)
                    [Entry date 09/30/02]

10/4/02   29        Cross-Notice of Videotaped Deposition by defendant Bayer
                    Corporation of Catherine Viscoli on 10/21/02 (tbl)
                    [Entry date 10/07/02]

10/4/02   30        Cross-Notice of Videotaped Deposition by defendant Bayer
                    Corporation of Ralph Horwitz on 10/9/02 (tbl)
                    [Entry date 10/07/02]

10/8/02   31        Cross-Notice of Videotaped Deposition by defendant Bayer
                    Corporation of Kerrie Krompf on 10/29/02 (tbl)
                    [Entry date 10/09/02]

10/15/02 32         Amended Cross-Notice of Deposition by defendant Bayer
                    Corporation of Connie Kent on 11/12/02 (tbl)
                    [Entry date 10/15/02]

10/21/02 33         ORDER from the MDL Panel that the oppositions of plas to
                    transfer this action to the USDC for the Western District
                    of Washington is set for hrg on 11/21/02 w/o oral argument
                    by Clerk, MDL Panel (tbl) [Entry date 10/22/02]

Proceedings include all events.
2.02cv2436 Donnelly, et al v. Bayer Corporation, et al          TERMED MAG-1
                                                                TRANSF

12/17/02 34    CONDITIONAL ORDER of transfer to the Western District of
               Washington, MDL 1407 by Clerk MDL Panel (tbl)
               [Entry date 12/18/02]

1/2/03   35    ORDER pursuant to the MDL panel and request to transfer
               case to the Western Dist of Washington regarding MDL No
               1407 case transferred (CASE CLOSED) (nn)
               [Entry date 01/03/03]



CLERK'S OFFICE
A TRUE COPY

JAN 3  2003

Deputy Clerk, U.S. District Court
Eastern District Of Louisiana
New Orleans, La

A CERTIFIED TRUE COPY

DEC 1 2 2002

ATTEST
FOR THE JUDICIAL PANEL
MULTIDISTRICT LITIGATION

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   JAN 2 2003

DOCKET NO. 1407
LORETTA G. WHYTE
CLERK

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 1 2 2002

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

# IN RE PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION

*Billy Ray Crumpton, et al. v. Bayer Corp., et al.,* N.D. Alabama, C.A. No. 2:02-1469

*Karen Lundgren v. Chattem, Inc., et al.,* N.D. California, C.A. No. 3:02-3715

*Daphine B. Donnelly, et al. v. Bayer Corp., et al.,* E.D. Louisiana, C.A. No. 2:02-2436

*Gloria Celestine v. Wyeth Co., et al.,* E.D. Louisiana, C.A. No. 2:02-2468

*Patricia Harris, etc. v. Bayer Corp., et al.,* N.D. Mississippi, C.A. No. 2:02-127

*Robert Towner v. American Home Products Corp., et al.,* N.D. Mississippi, C.A. No. 2:02-132

*Eugene Wilson, et al. v. American Home Products Corp., et al.,* N.D. Mississippi, C.A. No. 2:02-133

*Florence Ingram, et al. v. Bayer Corp., et al.,* N.D. Mississippi, C.A. No. 4:02-39

*Dorothy Ann Clay, et al. v. American Home Products Corp., et al.,* N.D. Mississippi, C.A. No. 4:02-149

*Kathleen Burchfield v. American Home Products Corp., et al.,* N.D. Mississippi, C.A. No. 4:02-151

*Dina Smith, etc. v. American Home Products Corp., et al.,* S.D. Mississippi, C.A. No. 2:02-562

*Helen Pipes, etc. v. American Home Products Corp., et al.,* S.D. Mississippi, C.A. No. 3:02-498

*Theresa Brooks, et al. v. American Home Products Corp., et al.,* S.D. Mississippi, C.A. No. 4:02-273

*Ruben Valdez, Jr., et al. v. Wyeth, et al.,* W.D. Texas, C.A. No. 3:02-310

*Antonia Olivas, et al. v. American Home Products Corp., et al.,* W.D. Texas, C.A. No. 3:02-311

# BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, MOREY L. SEAR,* BRUCE M. SELYA,* JULIA SMITH GIBBONS, D. LOWELL JENSEN AND J. FREDERICK MOTZ,* JUDGES OF THE PANEL

## TRANSFER ORDER

Before the Panel are motions brought, pursuant to Rule 7 4, R P J P M L , 199 F R D 425, 435-36 (2001), by plaintiffs in fifteen actions seeking to vacate Panel orders conditionally transferring their respective actions pending in the Northern District of Alabama, the Northern District of California, the Eastern District of Louisiana, the Northern District of Mississippi, the Southern District of Mississippi, and the Western District of Texas. Plaintiffs object to transfer of their actions to the Western District of Washington for inclusion in the centralized pretrial

---

*Judges Sear and Selya took no part in the decision of this matter. Additionally, Judge Motz took no part in the disposition of this matter with respect to one of the Western District of Texas actions (*Valdez*).

X /Dkta
CtRmDep
Doc.No.

- 2 -

proceedings occurring there in this docket before Judge Barbara Jacobs Rothstein    Various defendants in the actions have responded in support of transfer

On the basis of the papers filed and hearing session held, the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Western District of Washington, and that transfer of the actions to that district for inclusion in the coordinated or consolidated pretrial proceedings occurring there will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation    The Panel is persuaded that transfer of the actions is appropriate for reasons expressed by the Panel in its original order directing centralization in this docket    The Panel held that the Western District of Washington was a proper Section 1407 forum for actions brought by persons allegedly injured by products containing Phenylpropanolamine (PPA) – a substance which, until it recently became the subject of a public health advisory issued by the Food and Drug Administration, was used as an ingredient in many nasal decongestants and weight control products    *See In re Phenylpropanolamine (PPA) Products Liability Litigation*, 173 F Supp 2d 1377 (J P M L  2001)

The plaintiffs opposing transfer of their actions premise much of their opposition to transfer on their argument that federal jurisdiction is lacking in their actions    These parties urge the Panel not to order transfer before remand motions are resolved by the appropriate transferor court    We note that remand and other motions, if not resolved in transferor courts by the time of Section 1407 transfer, can be presented to and decided by the transferee judge    *See, e g , In re Ivy*, 901 F 2d 7 (2nd Cir  1990), *In re Prudential Insurance Company of America Sales Practices Litigation*, 170 F Supp 2d 1346, 1347-48 (J P M L  2001)

IT IS THEREFORE ORDERED that, pursuant to 28 U S C  § 1407, these fifteen actions are transferred to the Western District of Washington and, with the consent of that court, assigned to the Honorable Barbara Jacobs Rothstein for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket

I hereby certify that the
annexed instrument is a true
and correct copy of the original
on file in my office
ATTEST.  BRUCE RIFKIN
Clerk, U S  District Court
Western District of Washington

By _____
                    Deputy Clerk

FOR THE PANEL.

_____
Wm  Terrell Hodges
Chairman

# INVOLVED COUNSEL LIST
## DOCKET NO. 1407
## IN RE PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION

Alejandro Acosta, Jr.
221 N Kansas
Suite 2000
El Paso, TX 79901

W  Paul Andersson
Leake & Andersson, L L.P
1100 Poydras Street
Suite 1700
New Orleans, LA 70163-1701

Earl B  Austin
Baker & Botts
2001 Ross Avenue
Suite 800
Dallas, TX 75201

Michael Austin
Brumfield & Austin
P O  Box 886
McComb, MS 39648

Paul M Bracken
Robles, Bracken, Coffman & Hughes
100 N  Stanton
Suite 1310
El Paso, TX 79901-1448

C  W  Bradley
Lemle & Kelleher, L L P
601 Poydras Street
Suite 2100
New Orleans, LA 70130-6097

Joy Goldberg Braun
Sessions, Fishman & Nathan, LLP
Suite 3500
201 St  Charles Avenue
New Orleans, LA 70170-3500

Margaret T  Brenner
Hays, McConn, Rice & Pickering
400 Two Allen Center
1200 Smith Street
Houston, TX 77002

Mary Campbell
1123 Nelson Street
Greenville, MS 38701

Edward J  Currie, Jr
Currie, Johnson, Griffin, Gaines &
Myers
P O  Box 750
Jackson, MS 39205

Jim C  Curtis
Kemp, Smith, Duncan & Hammond
P.O. Drawer 2800
El Paso, TX 79999

William M. Dalehite, Jr
Steen, Reynolds & Dalehite
P.O  Box 900
Jackson, MS 39205-0900

Susan M. Donovan
Lewis & Mitchell, LLC
611 Helen Keller Blvd.
Tuscaloosa, AL 35404

Luke Dove, Jr
Dove & Chill
4266 I-55 North
Suite 108
Jackson, MS 39211

David E  Dukes
Nelson, Mullins, Riley &
Scarborough, LLP
1330 Lady Street
Keenan Bldg , 3rd Floor
P O  Box 11070
Columbia, SC 29211

John A  Earnhardt
Maynard, Cooper & Gale, P C
1901 Sixth Avenue, North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203

Kenneth J  Ferguson
Clark, Thomas & Winters
P O  Box 1148
Austin, TX 78767-1148

Fred's of Meridian
626 22nd Avenue, South
Meridian, MS 39302

William F  Goodman, III
Watkins & Eager
P O  Box 650
Jackson, MS 39205-0650

Carl H  Green
Mounce, Green, Myers, et al
P O  Drawer 1977
El Paso, TX 79901

Douglas A  Hofmann
Williams, Kastner & Gibbs
P O  Box 21926
Seattle, WA 98111

Jesse L  Howell, III
Copeland, Cook, Taylor & Bush
200 Concourse, Suite 200
1062 Highland Colony Parkway
P.O  Box 6020
Ridgeland, MS 39158-6020

Joseph Hurson
Lane, Powell, Spears & Lubersky
1420 5th Avenue
Suite 4100
Seattle, WA 98101

Donna B  Jacobs
Butler, Snow, O'Mara, Stevens &
Cannada
P.O  Box 22567
Jackson, MS 39225

Brynley James, III
Fulbright & Jaworski
300 Convent Street
Suite 2200
San Antonio, TX 78205

Brian P  Johnson
Johnson, Spalding, Doyle, West &
Trent
Bank One Center
910 Travis
Suite 1700
Houston, TX 77002

Christy D  Jones
Butler, Snow, O'Mara, Stevens &
Cannada
P.O  Box 22567
Jackson, MS 39225

Richard L  Josephson
Baker & Botts
One Shell Plaza
910 Louisana Street
Suite 3000
Houston, TX 77002

Dana G. Kirk
Kirk Law Firm
4265 San Felipe Street
Suite 1400
Houston, TX 77027

Joel M. Kuehnert
Bradley Arant Rose & White, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35283-0709

John W. Land
Bryan, Nelson, Randolph & Weathers
P.O Drawer 18109
Hattiesburg, MS 39404-8109

Thomas M. Louis
Wells, Marble & Hurst, PLLC
P O Box 131
Jackson, MS 39205-0131

J. Chandler Loupe
Claitor & Loupe
2223 Quail Run Drive, Suite G
Baton Rouge, LA 70808

Philip Mansour, Jr
Mansour & Mansour
P O Box 1406
143 North Edison Street
Greenville, MS 38702

Lindsey C. Meador
Meador & Crump
P O Box 1319
Cleveland, MS 38732-1319

Eduardo Miranda
1214 Montana Avenue
El Paso, TX 79902

Anita K. Modak-Truran
Butler, Snow, O'Mara, Stevens &
Cannada
P O Box 22567
Jackson, MS 39225

Michael B. Moore
Moore & Browning
595 Market Street, Suite 1320
San Francisco, CA 94105

Michael Chad Moore
Wilkins, Stephens & Tipton
One LeFleur's Square
4735 Old Canton Road
P O Box 13429
Jackson, MS 39236

Mildred M. Morris
Watkins & Eager
P O Box 650
Jackson, MS 39205

New Sunlight Grocery
919 Carrollton Avenue
Greenwood, MS 38930

John F. Olinde
Chaffe, McCall, Phillips, Toler &
Sarpy
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300

Lance Eugene Palmer
Levinson, Friedman, Vhugen,
Duggan, et al
720 3rd Avenue
Suite 1800
Seattle, WA 98101

Kirk L. Pittard
Waters & Kraus
3219 McKinney
Suite 3000
Dallas, TX 75204

Charles F. Preuss
Drinker Biddle & Reath
225 Bush Street
15th Floor
San Francisco, CA 94104

Jeff H. Ray
Ray McChristian & Jeans
5822 Cromo Drive
Suite 400
El Paso, TX 79912-1196

Edward J. Rice, Jr
Adams & Reese
4500 One Shell Square
New Orleans, LA 70139

Jennifer A. Riley-Collins
The Williamson Law Firm
509-A Church Avenue
Philadelphia, MS 39350

Robert B. Roden
Shelby & Cartee, LLC
2956 Rhodes Circle
Birmingham, AL 35205

Daniel J. Sheehan, Jr
Daniel Sheehan & Associates
2200 Ross Avenue, Suite 3060
Dallas, TX 75201

Randolph S. Sherman
Kaye Scholer, LLP
425 Park Avenue
12th Floor
New York, NY 10022

Peter Simshauser
Skadden, Arps, Slate, Meagher &
Flom
300 South Grand Avenue
Suite 3400
Los Angeles, CA 90071-3144

Smoothie King Co
c/o Stephen Kuhnau, Sr.
2400 Veterans Blvd
Suite 110
Kenner, LA 70062

Smoothie King Systems
c/o Stephen Kuhnau, Sr.
2400 Veterans Blvd
Suite 110
Kenner, LA 70062

Joseph J. Stroble
Watkins & Eager
The Emporium Building
Suite 300, P O Box 650
400 East Capitol Street
Jackson, MS 39205-0650

Terry O. Tottenham
Fulbright & Jaworski, LLP
600 Congress Avenue
Suite 2400
Austin, TX 78701

C. Crews Townsend
Miller & Martin
Volunteer Building, Suite 1000
832 Georgia Avenue
Chattanooga, TN 37402

Jack Etherton Truitt
Truitt Law Firm
251 Highway 21
Madisonville, LA 70447

David Van Every
Law Office of Van Every
PO Box 761
Columbus, MS 39703-0761

Alan R. Vickery
Sedgwick, Detert, Moran & Arnold
1717 Main Street
Suite 5400
Dallas, TX 75201

Jimmy Brian Wilkins
Watkins & Eager
P O Box 650
Jackson, MS 39205-0650

James Williams
Miller & Martin
Volunteer Building, Suite 1000
832 Georgia Avenue
Chattanooga, TN 37402

Frank A Wood, Jr
Watkins & Eager
The Emporium Building
Suite 300, P.O Box 650
400 East Capitol Street
Jackson, MS 39205

Robert B Worley, Jr
Jones, Walker, Waechter, et al
201 St Charles Avenue
49th Floor
New Orleans, LA 70170

# INVOLVED JUDGES LIST
## DOCKET NO. 1407
### IN RE PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION

Hon  David Briones
U S. District Judge
U.S Courthouse
511 E. San Antonio Street
El Paso, TX 79901-2401

Hon. Glen H. Davidson
Chief Judge, U S District Court
P O. Box 767
Aberdeen, MS 39730-0767

Hon. Kurt D. Engelhardt
U.S. District Judge
C-317 U.S Courthouse
500 Camp Street
New Orleans, LA 70130

Hon Martin L.C. Feldman
U S District Judge
C-555 U.S Courthouse
500 Camp Street
New Orleans, LA 70130-3318

Hon Elizabeth D Laporte
U S Magistrate Judge
Phillip Burton U.S. Courthouse
Box 36060
450 Golden Gate Avenue
San Francisco, CA 94102

Hon Tom S Lee
Chief Judge, U S District Court
110 James O Eastland U.S Courthouse
245 East Capital Street
Jackson, MS 39201

Hon Philip R Martinez
U S District Judge
U S Courthouse
511 East San Antonio Avenue
El Paso, TX 79901

Hon Michael P Mills
U S District Judge
355 Federal Bldg  & U S Courthouse
911 Jackson Avenue, West
Oxford, MS 38653

Hon Edwin L Nelson
U S. District Judge
786 Hugo L. Black U.S. Courthouse
1729 5th Avenue North
Birmingham, AL 35203

Hon W Allen Pepper, Jr
U S District Judge
United States District Court
Post Office Box 370
Greenville, MS 38702-0370

Hon Charles W Pickering, Sr.
U S District Judge
228 U.S Courthouse & Federal Bldg
701 North Main Street
Hattiesburg, MS 39401

Hon Henry T Wingate
U S District Judge
109 James O Eastland U S Courthouse
245 East Capitol Street
Jackson, MS 39201

# INVOLVED CLERKS LIST
## DOCKET NO. 1407
### IN RE PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION

Arlen B. Coyle, Clerk
U S District Court
P O Box 190
Greenville, MS 38702-0190

Arlen B Coyle, Clerk
369 Federal Building & U.S. Courthouse
911 Jackson Avenue East
Oxford, MS 38655-3622

J T Noblin, Clerk
200 U S. Courthouse & Federal Building
701 North Main Street
Hattiesburg, MS 39401

J.T Noblin, Clerk
316 James O Eastland U S. Courthouse
245 East Capitol Street
Jackson, MS 39201

Loretta G Whyte, Clerk
C-151 U S. Courthouse
500 Camp Street
New Orleans, LA 70130-3367

Perry D Mathis, Clerk
140 Hugo L. Black U S Courthouse
1729 5th Avenue North
Birmingham, AL 35203

Richard W Wieking, Clerk
Phillip Burton U S Courthouse
Box 36060
450 Golden Gate Avenue
San Francisco, CA 94102-3489

William G Putnicki, Clerk
350 U S. Courthouse
511 East San Antonio Street
El Paso, TX 79901-2401

# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN**
Judge Wm Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS**
Judge John F Keenan
United States District Court
Southern District of New York

Judge Morey L Sear
United States District Court
Eastern District of Louisiana

Judge Bruce M Selya
United States Court of Appeals
First Circuit

Judge Julia Smith Gibbons
United States Court of Appeals
Sixth Circuit

Judge D Lowell Jensen
United States District Court
Northern District of California

Judge J Frederick Motz
United States District Court
District of Maryland

**DIRECT REPLY TO**

Michael J Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D C. 20002

Telephone [202] 502-2800
Fax [202] 502-2888

http //www jpml.uscourts gov

December 12, 2002

FILED
LODGED
RECEIVED

MAIL

**DEC 17 2002**

AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                    DEPUTY

Bruce Rifkin, Clerk
215 William Kenzo Nakamura
U S. Courthouse
1010 Fifth Avenue
Seattle, WA 98104-1130

Re:    MDL-1407 -- In re Phenylpropanolamine (PPA) Products Liability Litigation

*Billy Ray Crumpton, et al. v Bayer Corp , et al* , N D  Alabama, C A. No  2:02-1469
*Karen Lundgren v Chattem, Inc , et al* , N D  California, C.A  No  3·02-3715
*Daphne B Donnelly, et al v Bayer Corp , et al* , E D  Louisiana, C.A  No  2 02-2436 *N*
*Gloria Celestine v. Wyeth Co , et al* , E D  Louisiana, C A  No. 2·02-2468
*Patricia Harris, etc v Bayer Corp., et al* , N.D. Mississippi, C A  No  2 02-127
*Robert Towner v American Home Products Corp , et al.*, N D  Mississippi, C. A. No. 2.02-132
*Eugene Wilson, et al v American Home Products Corp , et al* , N D  Mississippi, C.A  No  2 02-133
*Florence Ingram, et al. v. Bayer Corp , et al* , N D  Mississippi, C A  No  4 02-39
*Dorothy Ann Clay, et al v American Home Products Corp , et al* , N D  Mississippi, C.A  No  4 02-14
*Kathleen Burchfield v American Home Products Corp , et al* , N D  Mississippi, C. A. No. 4 02-151
*Dina Smith, etc v. American Home Products Corp , et al* , S.D. Mississippi, C A. No. 2 02-562
*Helen Pipes, etc v American Home Products Corp , et al* , S D. Mississippi, C A  No  3 02-498
*Theresa Brooks, et al v American Home Products Corp , et al* , S D  Mississippi, C A. No  4 02-273
*Ruben Valdez, Jr , et al v Wyeth, et al* , W.D  Texas, C A  No  3 02-310
*Antonia Olivas, et al v. American Home Products Corp , et al* , W D. Texas, C.A. No. 3 02-311

Dear Mr Rifkin

I am enclosing a certified copy and additional copies of an order filed by the Judicial Panel on Multidistrict Litigation in the above-captioned matter. The act creating the Panel provides that:

Orders of transfer    shall be filed in the office of the clerk of the district court of the transferee district and shall be effective when thus filed    The clerk of the transferee district court shall forthwith transmit a certified copy of the panel's order to transfer to the clerk of the district court from which the action is being transferred   28 U S C  § 1407(c)

MD 01-01407  #00001294

As is also required by the statute, a copy of the order is being sent to the clerk for the Southern District of Georgia, the district in which the hearing on this matter was held on November 21, 2002.

A list of involved counsel is attached.

Very truly,

Michael J. Beck
Clerk of the Panel

By _____
Deputy Clerk

Enclosures/Attachment

cc:  Transferee Judge    Judge Barbara Jacobs Rothstein
     Transferor Judges: (See Attached List of Judges)
     Transferor Clerks   (See Attached List of Clerks)
     Hearing District Clerk   Scott Poff

I hereby certify that the
annexed instrument is a true
and correct copy of the original
on file in my office.
ATTEST   BRUCE RIFKIN
Clerk, U.S. District Court
Western District of Washington

By _____
        Deputy Clerk

JPML Form 2

RECEIVED    **UNITED STATES DISTRICT COURT**
U.S. DISTRICT COURT**WESTERN DISTRICT OF WASHINGTON**
EAST DISTRICT OF LA    OFFICE OF THE CLERK

BRUCE RIFKIN
CLERK

**2003 JAN -2  PM 3:07**

**LORETTA G. WHYTE
CLERK**

WILLIAM KENZO NAKAMURA
U S  COURTHOUSE, SUITE 215
SEATTLE, WASHINGTON 98104

December 18, 2002

Mr  Warren A  Cuntz, Jr

United States District Court
C-367 United States Courthouse
500 Camp Street
New Orleans, LA  70130

IN RE  MDL 1407 (PPA) PHENYLPROPANOLAMINE PRODUCTS LIABILITY LITIGATION

Dear Clerk

        Enclosed is certified copy of the Transfer Order entered by the Judicial Panel on Multidistrict Litigation.
The Order became effective December 12, 2002  We have assigned an individual Western District of
Washington (WAW) case number to your case to be transferred to us as listed below

        Please send us your file along with a certified copy of your docket entries  When you send your file,
please refer to our civil action number

| Title of Case | Your Number | WAW Number |
|---|---|---|
| Donnelly v  Bayer Corp | 2.02-2436 | **CV02-2527** |
| Celestine v  Wyeth Co | 2 02-2468 | **CV02-2528** |

Sincerely,

BRUCE RIFKIN, CLERK

BY *Valerie Barber*
Valerie Barber, Deputy Clerk
206-553-4170 ext 4

**U.S. DISTRICT COURT**
EASTERN DISTRICT OF LOUISIANA

**JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

**DEC 12 2002**

FILED    DEC 17 2002

*DOCKET NO. 1407*

FILED
CLERK'S OFFICE

LORETTA G. WHYTE
Clerk

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION

*Billy Ray Crumpton, et al. v. Bayer Corp., et al.*, N.D. Alabama, C.A. No. 2:02-1469
*Karen Lundgren v. Chattem, Inc., et al.*, N.D. California, C.A. No. 3:02-3715
*Daphine B. Donnelly, et al. v. Bayer Corp., et al.*, E.D. Louisiana, C.A. No. 2:02-2436 N
*Gloria Celestine v. Wyeth Co., et al.*, E.D. Louisiana, C.A. No. 2:02-2468 F
*Patricia Harris, etc. v. Bayer Corp., et al.*, N.D. Mississippi, C.A. No. 2:02-127
*Robert Towner v. American Home Products Corp., et al.*, N.D. Mississippi, C.A. No. 2:02-132
*Eugene Wilson, et al. v. American Home Products Corp., et al.*, N.D. Mississippi, C.A. No. 2:02-133
*Florence Ingram, et al. v. Bayer Corp., et al.*, N.D. Mississippi, C.A. No. 4:02-39
*Dorothy Ann Clay, et al. v. American Home Products Corp., et al.*, N.D. Mississippi, C.A. No. 4:02-149
*Kathleen Burchfield v. American Home Products Corp., et al.*, N.D. Mississippi, C.A. No. 4:02-151
*Dina Smith, etc. v. American Home Products Corp., et al.*, S.D. Mississippi, C.A. No. 2:02-562
*Helen Pipes, etc. v. American Home Products Corp., et al.*, S.D. Mississippi, C.A. No. 3:02-498
*Theresa Brooks, et al. v. American Home Products Corp., et al.*, S.D. Mississippi, C.A. No. 4:02-273
*Ruben Valdez, Jr., et al. v. Wyeth, et al.*, W.D. Texas, C.A. No. 3:02-310
*Antonia Olivas, et al. v. American Home Products Corp., et al.*, W.D. Texas, C.A. No. 3:02-311

## BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, MOREY L. SEAR,* BRUCE M. SELYA,* JULIA SMITH GIBBONS, D. LOWELL JENSEN AND J. FREDERICK MOTZ,* JUDGES OF THE PANEL

## TRANSFER ORDER

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in fifteen actions seeking to vacate Panel orders conditionally transferring their respective actions pending in the Northern District of Alabama, the Northern District of California, the Eastern District of Louisiana, the Northern District of Mississippi, the Southern District of Mississippi, and the Western District of Texas. Plaintiffs object to transfer of their actions to the Western District of Washington for inclusion in the centralized pretrial

---

*Judges Sear and Selya took no part in the decision of this matter. Additionally, Judge Motz took no part in the disposition of this matter with respect to one of the Western District of Texas actions (*Valdez*). See

- 2 -

proceedings occurring there in this docket before Judge Barbara Jacobs Rothstein. Various defendants in the actions have responded in support of transfer.

On the basis of the papers filed and hearing session held, the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Western District of Washington, and that transfer of the actions to that district for inclusion in the coordinated or consolidated pretrial proceedings occurring there will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation  The Panel is persuaded that transfer of the actions is appropriate for reasons expressed by the Panel in its original order directing centralization in this docket  The Panel held that the Western District of Washington was a proper Section 1407 forum for actions brought by persons allegedly injured by products containing Phenylpropanolamine (PPA) – a substance which, until it recently became the subject of a public health advisory issued by the Food and Drug Administration, was used as an ingredient in many nasal decongestants and weight control products  *See In re Phenylpropanolamine (PPA) Products Liability Litigation,* 173 F Supp 2d 1377 (J P M L  2001)

The plaintiffs opposing transfer of their actions premise much of their opposition to transfer on their argument that federal jurisdiction is lacking in their actions  These parties urge the Panel not to order transfer before remand motions are resolved by the appropriate transferor court  We note that remand and other motions, if not resolved in transferor courts by the time of Section 1407 transfer, can be presented to and decided by the transferee judge  *See, e g , In re Ivy,* 901 F 2d 7 (2nd Cir  1990), *In re Prudential Insurance Company of America Sales Practices Litigation,* 170 F Supp 2d 1346, 1347-48 (J P M L  2001)

IT IS THEREFORE ORDERED that, pursuant to 28 U S C  § 1407, these fifteen actions are transferred to the Western District of Washington and, with the consent of that court, assigned to the Honorable Barbara Jacobs Rothstein for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket

FOR THE PANEL·

Wm  Terrell Hodges
Chairman

# INVOLVED COUNSEL LIST
## DOCKET NO. 1407
## IN RE PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION

Alejandro Acosta, Jr
221 N Kansas
Suite 2000
El Paso, TX 79901

W  Paul Andersson
Leake & Andersson, L L P
1100 Poydras Street
Suite 1700
New Orleans, LA 70163-1701

Earl B  Austin
Baker & Botts
2001 Ross Avenue
Suite 800
Dallas, TX 75201

Michael Austin
Brumfield & Austin
P O  Box 886
McComb, MS 39648

Paul M  Bracken
Robles, Bracken, Coffman & Hughes
100 N  Stanton
Suite 1310
El Paso, TX 79901-1448

C  W  Bradley
Lemle & Kelleher, L L P
601 Poydras Street
Suite 2100
New Orleans, LA 70130-6097

Joy Goldberg Braun
Sessions, Fishman & Nathan, LLP
Suite 3500
201 St  Charles Avenue
New Orleans, LA 70170-3500

Margaret T  Brenner
Hays, McConn, Rice & Pickering
400 Two Allen Center
1200 Smith Street
Houston, TX 77002

Mary Campbell
1123 Nelson Street
Greenville, MS 38701

Edward J  Currie, Jr
Currie, Johnson, Griffin, Gaines &
Myers
P O  Box 750
Jackson, MS 39205

Jim C  Curtis
Kemp, Smith, Duncan & Hammond
P O  Drawer 2800
El Paso, TX 79999

William M  Dalehite, Jr
Steen, Reynolds & Dalehite
P O  Box 900
Jackson, MS 39205-0900

Susan M  Donovan
Lewis & Mitchell, LLC
611 Helen Keller Blvd
Tuscaloosa, AL 35404

Luke Dove, Jr
Dove & Chill
4266 I-55 North
Suite 108
Jackson, MS 39211

David E  Dukes
Nelson, Mullins, Riley &
Scarborough, LLP
1330 Lady Street
Keenan Bldg , 3rd Floor
P O  Box 11070
Columbia, SC 29211

John A  Earnhardt
Maynard, Cooper & Gale, P C
1901 Sixth Avenue, North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203

Kenneth J  Ferguson
Clark, Thomas & Winters
P O  Box 1148
Austin, TX 78767-1148

Fred's of Meridian
626 22nd Avenue, South
Meridian, MS 39302

William F  Goodman, III
Watkins & Eager
P O  Box 650
Jackson, MS 39205-0650

Carl H  Green
Mounce, Green, Myers, et al
P O  Drawer 1977
El Paso, TX 79901

Douglas A  Hofmann
Williams, Kastner & Gibbs
P O  Box 21926
Seattle, WA 98111

Jesse L  Howell, III
Copeland, Cook, Taylor & Bush
200 Concourse, Suite 200
1062 Highland Colony Parkway
P O. Box 6020
Ridgeland, MS 39158-6020

Joseph Hurson
Lane, Powell, Spears & Lubersky
1420 5th Avenue
Suite 4100
Seattle, WA 98101

Donna B  Jacobs
Butler, Snow, O'Mara, Stevens &
Cannada
P O  Box 22567
Jackson, MS 39225

Brynley James, III
Fulbright & Jaworski
300 Convent Street
Suite 2200
San Antonio, TX 78205

Brian P  Johnson
Johnson, Spalding, Doyle, West &
Trent
Bank One Center
910 Travis
Suite 1700
Houston, TX 77002

Christy D  Jones
Butler, Snow, O'Mara, Stevens &
Cannada
P O  Box 22567
Jackson, MS 39225

Richard L  Josephson
Baker & Botts
One Shell Plaza
910 Louisana Street
Suite 3000
Houston, TX 77002

Dana G Kirk
Kirk Law Firm
4265 San Felipe Street
Suite 1400
Houston, TX 77027

Joel M Kuehnert
Bradley Arant Rose & White, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35283-0709

John W Land
Bryan, Nelson, Randolph & Weathers
P O. Drawer 18109
Hattiesburg, MS 39404-8109

Thomas M Louis
Wells, Marble & Hurst, PLLC
P O Box 131
Jackson, MS 39205-0131

J Chandler Loupe
Claitor & Loupe
2223 Quail Run Drive, Suite G
Baton Rouge, LA 70808

Philip Mansour, Jr
Mansour & Mansour
P O Box 1406
143 North Edison Street
Greenville, MS 38702

Lindsey C Meador
Meador & Crump
P O Box 1319
Cleveland, MS 38732-1319

Eduardo Miranda
1214 Montana Avenue
El Paso, TX 79902

Anita K Modak-Truran
Butler, Snow, O'Mara, Stevens &
Cannada
P O Box 22567
Jackson, MS 39225

Michael B Moore
Moore & Browning
595 Market Street, Suite 1320
San Francisco, CA 94105

Michael Chad Moore
Wilkins, Stephens & Tipton
One LeFleur's Square
4735 Old Canton Road
P O Box 13429
Jackson, MS 39236

Mildred M Morris
Watkins & Eager
P O Box 650
Jackson, MS 39205

New Sunlight Grocery
919 Carrollton Avenue
Greenwood, MS 38930

John F Olinde
Chaffe, McCall, Phillips, Toler &
Sarpy
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300

Lance Eugene Palmer
Levinson, Friedman, Vhugen,
Duggan, et al
720 3rd Avenue
Suite 1800
Seattle, WA 98101

Kirk L Pittard
Waters & Kraus
3219 McKinney
Suite 3000
Dallas, TX 75204

Charles F Preuss
Drinker Biddle & Reath
225 Bush Street
15th Floor
San Francisco, CA 94104

Jeff H Ray
Ray McChristian & Jeans
5822 Cromo Drive
Suite 400
El Paso, TX 79912-1196

Edward J Rice, Jr
Adams & Reese
4500 One Shell Square
New Orleans, LA 70139

Jennifer A Riley-Collins
The Williamson Law Firm
509-A Church Avenue
Philadelphia, MS 39350

Robert B Roden
Shelby & Cartee, LLC
2956 Rhodes Circle
Birmingham, AL 35205

Daniel J Sheehan, Jr
Daniel Sheehan & Associates
2200 Ross Avenue, Suite 3060
Dallas, TX 75201

Randolph S Sherman
Kaye Scholer, LLP
425 Park Avenue
12th Floor
New York, NY 10022

Peter Simshauser
Skadden, Arps, Slate, Meagher &
Flom
300 South Grand Avenue
Suite 3400
Los Angeles, CA 90071-3144

Smoothie King Co
c/o Stephen Kuhnau, Sr
2400 Veterans Blvd
Suite 110
Kenner, LA 70062

Smoothie King Systems
c/o Stephen Kuhnau, Sr
2400 Veterans Blvd
Suite 110
Kenner, LA 70062

Joseph J Stroble
Watkins & Eager
The Emporium Building
Suite 300, P O Box 650
400 East Capitol Street
Jackson, MS 39205-0650

Terry O Tottenham
Fulbright & Jaworski, LLP
600 Congress Avenue
Suite 2400
Austin, TX 78701

C Crews Townsend
Miller & Martin
Volunteer Building, Suite 1000
832 Georgia Avenue
Chattanooga, TN 37402

Jack Etherton Truitt
Truitt Law Firm
251 Highway 21
Madisonville, LA 70447

David Van Every
Law Office of Van Every
PO Box 761
Columbus, MS 39703-0761

Alan R Vickery
Sedgwick, Detert, Moran & Arnold
1717 Main Street
Suite 5400
Dallas, TX 75201

Jimmy Brian Wilkins
Watkins & Eager
P O Box 650
Jackson, MS 39205-0650

James Williams
Miller & Martin
Volunteer Building, Suite 1000
832 Georgia Avenue
Chattanooga, TN 37402

Frank A Wood, Jr
Watkins & Eager
The Emporium Building
Suite 300, P O. Box 650
400 East Capitol Street
Jackson, MS 39205

Robert B Worley, Jr
Jones, Walker, Waechter, et al
201 St Charles Avenue
49th Floor
New Orleans, LA 70170

# INVOLVED JUDGES LIST
## DOCKET NO. 1407
## IN RE PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION

Hon David Briones
U S. District Judge
U S Courthouse
511 E San Antonio Street
El Paso, TX 79901-2401

Hon Glen H Davidson
Chief Judge, U S District Court
P O Box 767
Aberdeen, MS 39730-0767

Hon Kurt D Engelhardt
U S District Judge
C-317 U S Courthouse
500 Camp Street
New Orleans, LA 70130

Hon Martin L C Feldman
U S District Judge
C-555 U S Courthouse
500 Camp Street
New Orleans, LA 70130-3318

Hon Elizabeth D Laporte
U S Magistrate Judge
Phillip Burton U S Courthouse
Box 36060
450 Golden Gate Avenue
San Francisco, CA 94102

Hon Tom S Lee
Chief Judge, U S District Court
110 James O Eastland U S Courthouse
245 East Capital Street
Jackson, MS 39201

Hon Philip R Martinez
U S District Judge
U S Courthouse
511 East San Antonio Avenue
El Paso, TX 79901

Hon Michael P Mills
U S District Judge
355 Federal Bldg & U S Courthouse
911 Jackson Avenue, West
Oxford, MS 38653

Hon Edwin L Nelson
U S District Judge
786 Hugo L Black U S Courthouse
1729 5th Avenue North
Birmingham, AL 35203

Hon W Allen Pepper, Jr
U S District Judge
United States District Court
Post Office Box 370
Greenville, MS 38702-0370

Hon Charles W Pickering, Sr
U S District Judge
228 U S Courthouse & Federal Bldg
701 North Main Street
Hattiesburg, MS 39401

Hon Henry T Wingate
U S District Judge
109 James O Eastland U S Courthouse
245 East Capitol Street
Jackson, MS 39201

**INVOLVED CLERKS LIST**
**DOCKET NO. 1407**
**IN RE PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION**

Arlen B Coyle, Clerk
U S District Court
P O Box 190
Greenville, MS 38702-0190

Arlen B Coyle, Clerk
369 Federal Building & U S Courthouse
911 Jackson Avenue East
Oxford, MS 38655-3622

J T Noblin, Clerk
200 U S Courthouse & Federal Building
701 North Main Street
Hattiesburg, MS 39401

J T Noblin, Clerk
316 James O Eastland U S Courthouse
245 East Capitol Street
Jackson, MS 39201

Loretta G Whyte, Clerk
C-151 U S Courthouse
500 Camp Street
New Orleans, LA 70130-3367

Perry D Mathis, Clerk
140 Hugo L Black U S Courthouse
1729 5th Avenue North
Birmingham, AL 35203

Richard W Wieking, Clerk
Phillip Burton U S Courthouse
Box 36060
450 Golden Gate Avenue
San Francisco, CA 94102-3489

William G Putnicki, Clerk
350 U S Courthouse
511 East San Antonio Street
El Paso, TX 79901-2401

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

CHAIRMAN
Judge Wm Terrell Hodges
United States District Court
Middle District of Florida

MEMBERS
Judge John F Keenan
United States District Court
Southern District of New York

Judge Morey L Sear
United States District Court
Eastern District of Louisiana

Judge Bruce M Selya
United States Court of Appeals
First Circuit

Judge Julia Smith Gibbons
United States Court of Appeals
Sixth Circuit

Judge D Lowell Jensen
United States District Court
Northern District of California

Judge J Frederick Motz
United States District Court
District of Maryland

DIRECT REPLY TO

Michael J Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D C 20002

Telephone [202] 502-2800
Fax           [202] 502-2888

http //www jpml uscourts gov

December 12, 2002

Bruce Rifkin, Clerk
215 William Kenzo Nakamura
 U S Courthouse
1010 Fifth Avenue
Seattle, WA 98104-1130

Re    MDL-1407 -- In re Phenylpropanolamine (PPA) Products Liability Litigation

> *Billy Ray Crumpton, et al v Bayer Corp , et al* , N D Alabama, C A No 2 02-1469
> *Karen Lundgren v Chattem, Inc , et al* , N D California, C A No 3 02-3715
> *Daphine B Donnelly, et al v Bayer Corp , et al* , E D Louisiana, C A No 2 02-2436
> *Gloria Celestine v Wyeth Co , et al* , E D Louisiana, C A No 2 02-2468
> *Patricia Harris, etc v Bayer Corp , et al* , N D Mississippi, C A No 2 02-127
> *Robert Towner v American Home Products Corp , et al* , N D Mississippi, C A No 2 02-132
> *Eugene Wilson, et al v American Home Products Corp , et al* , N D Mississippi, C A No 2 02-133
> *Florence Ingram, et al. v Bayer Corp , et al* , N D Mississippi, C A No 4 02-39
> *Dorothy Ann Clay, et al v American Home Products Corp , et al* , N D Mississippi, C A No 4:02-149
> *Kathleen Burchfield v American Home Products Corp , et al* , N D Mississippi, C A No 4 02-151
> *Dina Smith, etc v American Home Products Corp , et al* , S D Mississippi, C A No 2 02-562
> *Helen Pipes, etc v American Home Products Corp , et al* , S D Mississippi, C.A No 3 02-498
> *Theresa Brooks, et al v American Home Products Corp , et al* , S D Mississippi, C A No 4 02-273
> *Ruben Valdez, Jr , et al v Wyeth, et al* , W D. Texas, C A No 3 02-310
> *Antonia Olivas, et al v American Home Products Corp , et al* , W D Texas, C A No 3 02-311

Dear Mr Rifkin

    I am enclosing a certified copy and additional copies of an order filed by the Judicial Panel on Multidistrict Litigation in the above-captioned matter   The act creating the Panel provides that

> Orders of transfer     shall be filed in the office of the clerk of the district court of the transferee district and shall be effective when thus filed     The clerk of the transferee district court shall forthwith transmit a certified copy of the panel's order to transfer to the clerk of the district court from which the action is being transferred   28 U S C § 1407(c)

As is also required by the statute, a copy of the order is being sent to the clerk for the Southern District of Georgia, the district in which the hearing on this matter was held on November 21, 2002

A list of involved counsel is attached

Very truly,

Michael J Beck
Clerk of the Panel

By
Deputy Clerk

Enclosures/Attachment

cc    Transferee Judge    Judge Barbara Jacobs Rothstein
      Transferor Judges  (See Attached List of Judges)
      Transferor Clerks  (See Attached List of Clerks)
      Hearing District Clerk    Scott Poff

JPML Form 29





```
CASE:      2:02-cv-02436
DOCUMENT:  34
DATE       12/18/02

CLERK.     tbl
```

Notices sent to:

```
J. Loupe  by fax to  225-767-9003
Dana Kirk  by mail.
Clayton Clark  by mail.
J. Davis  by mail.
Mary Meyer  by fax to  504-544-6077
Joy Braun  by fax to  504-582-1555
C  Bradley Jr. by fax to  504-584-9142
Jack Truitt  by fax to  985-792-1065
```

Document scanned by:_____

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN**
Judge Wm Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS**
Judge John F Keenan
United States District Court
Southern District of New York

Judge Morey L Sear
United States District Court
Eastern District of Louisiana

Judge Bruce M Selya
United States Court of Appeals
First Circuit

Judge Julia Smith Gibbons
United States Court of Appeals
Sixth Circuit

Judge D Lowell Jensen
United States District Court
Northern District of California

Judge J Frederick Motz
United States District Court
District of Maryland

**DIRECT REPLY TO**

Michael J Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D C 20002

Telephone  [202] 502-2800
Fax            [202] 502-2888
http://www.jpml.uscourts.gov

U S DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   OCT 2 , 2002

LORETTA G. WHYTE
CLERK

October 16, 2002

NOTICE OF HEARING SESSION

Dear Counsel

Pursuant to the order of the Judicial Panel on Multidistrict Litigation filed today, you are hereby notified that a hearing session has been scheduled to consider various matters pursuant to 28 U S C. § 1407

DATE OF HEARING SESSION          November 21, 2002

LOCATION OF HEARING SESSION·     Old Federal Building
                                 Third Floor Courtroom     *C A 02-2436*
                                 125 Bull Street
                                 Savannah, GA 31401

TIME OF HEARING SESSION:  In those matters designated for oral argument, counsel presenting oral argument must be present at **8:30 a.m.** in order for the Panel to allocate the amount of time for oral argument. Oral argument will commence at **9:30 a.m.**

Please direct your attention to the enclosed Hearing Session Order and Schedule of Matters for Hearing Session for a listing of the matters scheduled for consideration at this hearing session

- *Section A of this Schedule lists the matters designated for oral argument.*
- Section B of this Schedule lists the matters that the Panel has determined to consider **without oral argument**, pursuant to Rule 16 1(c), R P.J P M.L , 199 F.R D. 425, 439 (2001)

For those matters listed on Section A of the Schedule, the enclosed blue "Notice of Presentation or Waiver of Oral Argument" must be returned to this office no later than **November 4, 2002.** Note the procedures governing Panel oral argument which are outlined on the enclosed "Procedures for Oral Argument before the Judicial Panel on Multidistrict Litigation " These procedures are strictly adhered to and your cooperation is appreciated

Very truly,

*Michael J. Beck*
Michael J. Beck
Clerk of the Panel

Fee
Process
X Dktd
CtRmDep
Doc.No.

c: Clerk, U.S. District Court for the Southern District of Georgia

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

OCT 16, 2002

MICHAEL J BECK
CLERK OF THE PANEL

# *BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

## *WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, MOREY L. SEAR, BRUCE M. SELYA, JULIA SMITH GIBBONS, D. LOWELL JENSEN AND J. FREDERICK MOTZ, JUDGES OF THE PANEL*

## HEARING SESSION ORDER

IT IS ORDERED that on November 21, 2002, a hearing session will be held in Savannah, Georgia, to consider the matters on the attached Schedule under 28 U S C § 1407

IT IS FURTHER ORDERED that at said hearing session the Panel may, on its own initiative, consider transfer of any or all of the actions in those matters to any district or districts.

IT IS FURTHER ORDERED that at said hearing session the matters listed on Section A of the attached Schedule shall be designated for oral argument.

IT IS FURTHER ORDERED that at said hearing session the matters listed on Section B of the attached Schedule shall be considered without oral argument, pursuant to Rule 16 1(c), R.P J P M L , 199 F R D 425, 439 (2001)  The Panel reserves the prerogative, on any basis including submissions of parties pursuant to Panel Rule 16 1(b), to issue a subsequent notice designating any of those matters for oral argument.

IT IS FURTHER ORDERED that the Clerk of the Judicial Panel on Multidistrict Litigation shall direct notice of this hearing session to counsel for all parties involved in the matters on the attached Schedule

FOR THE PANEL.

Wm. Terrell Hodges
Chairman

MDL-1373 (Continued)

Opposition of defendant Bridgestone/Firestone North American Tire, LLC, to remand of the following action to the United States District Court for the Central District of California

### Southern District of Indiana

*Jerry Boone, et al  v  Ford Motor Co , et al* , C A  No  1.00-5069 (C D  California, C A. No  2 00-10818)

### MDL-1401 -- In re Sulzer Orthopedics Inc  Hip Prosthesis and Knee Prosthesis Products Liability Litigation

Opposition of plaintiff Hill Physicians Medical Group, Inc , to transfer of the following action to the United States District Court for the Northern District of Ohio.

### Northern District of California

*Hill Physicians Medical Group, Inc  v  Sulzer Orthopedics, Inc., et al* , C A. No. 3 02-3257

### MDL-1407 -- In re Phenylpropanolamine (PPA) Products Liability Litigation

Oppositions of plaintiffs to transfer of their respective following actions to the United States District Court for the Western District of Washington

### Northern District of Alabama

*Billy Ray Crumpton, et al  v  Bayer Corp , et al* , C A  No  2·02-1469

### Northern District of California

*Karen Lundgren v  Chattem, Inc , et al* , C A  No  3 02-3715

Schedule of Matters for Hearing Session, Section B                    p 16
Savannah, Georgia


MDL-1407 (Continued)


### Eastern District of Louisiana

*John C Delahoussye v Bayer Corp , et al.*, C A No. 2.02-1742 *A*
*Mike Byrd, et al v Bayer Corp , et al* , C A No. 2:02-1750 *L*
*Daphine B Donnelly, et al v Bayer Corp , et al* , C.A. No. 2.02-2436 *N*
*Gloria Celestine v Wyeth Co , et al* , C A No 2 02-2468 *F*
*Ann Knapper v Wyeth Co , et al* , C A. No. 2·02-2485 *B*


### Middle District of Louisiana

*Rayfield Malveaux, Jr , et al. v Bayer Corp , et al.*, C.A No 3.02-555


### Western District of Louisiana

*Margie A Pier, et al v Bayer Corp , et al* , C A No. 1 02-1196
*Gracie Patterson, et al v Bayer Corp , et al* , C.A No 3 02-1194
*Barbara Adams, et al. v Bayer Corp , et al* , C A. No. 5.02-1195
*Peggy Stroud, et al v Bayer Corp , et al* , C.A. No. 6.02-1190


### Northern District of Mississippi

*Patricia Harris, etc v Bayer Corp , et al* , C A. No. 2:02-127
*Robert Towner v American Home Products Corp , et al.*, C.A. No 2 02-132
*Eugene Wilson, et al. v American Home Products Corp , et al* , C A. No. 2:02-133
*Florence Ingram, et al v Bayer Corp., et al* , C.A. No. 4 02-39
*Dorothy Ann Clay, et al. v American Home Products Corp , et al* , C.A. No 4 02-149
*Kathleen Burchfield v American Home Products Corp , et al.*, C.A No 4 02-151


### Southern District of Mississippi

*Dina Smith, etc. v American Home Products Corp , et al* , C A. No 2.02-562
*Helen Pipes, etc v American Home Products Corp , et al* , C.A. No. 3·02-498
*Theresa Brooks, et al v American Home Products Corp , et al* , C.A. No 4 02-273


### Western District of Texas

*Ruben Valdez, Jr , et al v Wyeth, et al.*, C A. No 3 02-310
*Antonia Olivas, et al v American Home Products Corp , et al.*, C.A. No 3 02-311



# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO 02-2436 |
| VERSUS | * | |
| | * | SECTION N |
| BAYER CORPORATION, NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION; | * | MAGISTRATE 5 |
| NOVARTIS CONSUMER HEALTH, INC , | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE; SMOOTHIE KING | * | |
| CO , INC , SMOOTHIE KING SYSTEMS, | * | |
| INC , and WALGREEN LOUISIANA CO , | * | |
| INC (D/B/A "WALGREENS") | | |

* * * * * * * * * * * * * * * * * * * * * * * * *

## AMENDED CROSS-NOTICE OF
## VIDEOTAPED DEPOSITION OF CONNIE KENT

PLEASE TAKE NOTICE that in connection with *In re Phenylpropanolamine (PPA) Products Liability Litigation*, United States District Court, Western District of Washington, MDL Docket No 1407, plaintiffs will take the deposition upon oral examination of CONNIE KENT, now or formerly an employee of Bayer Corporation, on November 12, 2002 at the Holiday Inn Harbor Side Hotel Meeting Room, 33 Tamiami Trail, Punta Gorda,



581952_1 DOC

FL 33950 (1-877-639-9339, http //www holidayinnharborside com), beginning at 9.00 A M. and continuing until completed.

The deposition will be conducted pursuant to the provisions of Case Management Order No. 1,[1] will be stenographically recorded by the court reporting firm of Tate & Tate, 180 Tuckerton Road, Suite 5, Medford, NJ 08055 and will be videotaped by Inwood Multi-Media Products, Ltd , 327 West Fayette Street, Suite 222, Syracuse, NY 13202   The examination will also be videotaped by Veritext, 25B Vreeland Road, Florham Park, NJ 07932, which will have a video camera trained on the questioner during the examination   Tim O'Brien and David Jim Green will represent plaintiffs

You are at liberty to appear and examine the witness

DATED this *14th* day of October, 2002

Respectfully submitted,

Mary L  Meyer, Esq. (19966)
John F  Olinde (1515)
Charles P  Blanchard (18798)
**CHAFFE, MCCALL, PHILLIPS,**
**  TOLER & SARPY, L.L.P.**
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2300
Telephone  (504) 585-7000
**Attorneys for Bayer Corporation**

---

[1] A copy of the Case Management Order No  1 was attached to other Cross-Notices of Depositions filed in this case.

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this _14th_ day of October, 2002, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by hand delivery, facsimile, or by depositing the same in the United States mail, properly addressed, and first-class postage prepaid.



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 OCT -8 PM 3: 41

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO 02-2436 |
| VERSUS | * | |
| | * | SECTION N |
| BAYER CORPORATION, NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION, | * | MAGISTRATE 5 |
| NOVARTIS CONSUMER HEALTH, INC , | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE, SMOOTHIE KING | * | |
| CO , INC , SMOOTHIE KING SYSTEMS, | * | |
| INC , and WALGREEN LOUISIANA CO , | * | |
| INC  (D/B/A "WALGREENS") | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CROSS-NOTICE OF VIDEOTAPED
## DEPOSITION OF KERRIE KROMPF

PLEASE TAKE NOTICE that pursuant to Federal Rules of Civil Procedure, Rule 26,

*et seq* , and in connection with *In Re  Phenylpropanolamine (PPA) Products Liability Litigation,*

United States District Court, Western District of Washington, MDL Docket No  1407,

defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK") and other

manufacturer defendants will take the deposition of Kerrie Krompf at the Wyndham Hotel,

125 10th Street, Atlanta, Georgia (Telephone No  404/873-4800), commencing at 9 00 a m

Fee
Process
Dktd
CtRmDep
Doc No



a m on October 29, 2002 and continuing on October 30, 2002 (at 9 00 a m ), or such other

places, times and dates to which the parties and the witnesses may agree   A copy of the

Notice of Deposition of Kerrie Krompf is attached hereto as Exhibit A

PLEASE TAKE FURTHER NOTICE that the witness has been directed to produce

for inspection, copying and use at the deposition the documents and things described in

the attachment to Exhibit A

This deposition will be recorded by videotape as well as by stenographic means by

the court reporting firm of Tate & Tate, Inc , 180 Tuckerton Road, Suite 5, The Lexington

Building, Medford, NJ  08055

You are invited to attend and cross-examine the witness

DATED this  ⟋8th⟍  day of October, 2002

Respectfully submitted,

Mary L  Meyer, Esq  (19966)
John F  Olinde (1515)
Charles P  Blanchard (18798)
**CHAFFE, MCCALL, PHILLIPS,**
**   TOLER & SARPY, L.L.P.**
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2300
Telephone  (504) 585-7000
**Attorneys for Bayer Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this _8th_ day of October, 2002, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by hand delivery, facsimile, or by depositing the same in the United States mail, properly addressed, and first-class postage prepaid

HON  BARBARA JACOBS ROTHSTEIN, U S D J

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| IN RE  PHENYLPROPANOLAMINE (PPA) <br> PRODUCT LIABILITY LITIGATION <br> ----------------------------------------------------------- <br> <br> This document relates to all actions <br> <br> ----------------------------------------------------------- <br> <br> and to the State Court actions to which this <br> notice applies <br> ------- | **SUPPLEMENTAL NOTICE OF DEPOSITION OF KERRIE KROMPF** <br> <br> Case No  MDL-1407 |

        Pursuant to Federal Rules of Civil Procedure, Rules 26 et seq, and this Court's Order filed August 19, 2002, and in supplementation of their notice of deposition of June 10, 2002, defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK") and other manufacturer defendants will take the deposition of Kerrie Krompf at The Wyndam Hotel, 125 10th Street, Atlanta, Georgia 30309 (Tel No 404 873-4800) commencing at 9 00 a m on October 29, 2002, and continuing on October 30, 2002 (at 9 00 a m ), or such other places, times and dates to which the parties and the witness may agree

        Please take further notice that the witness has been directed to produce for inspection, copying, and use at the deposition the documents and things described in the attached Exhibit A



EXHIBIT

A

Please take further notice that the above deposition will be recorded by videotape as well as by stenographic means, by the firm Tate & Tate, Inc., 180 Tuckerton Road, Suite 5, The Lexington Building Medford, New Jersey 08055

Dated   October 2, 2002
        Buffalo, New York

                            PHILLIPS, LYTLE, HITCHCOCK, BLAINE & HUBER LLP

                            By _____
                                  Tamar P Halpern, Esq
                                  Thomas S Wiswall, Esq
                            3400 HSBC Center
                            Buffalo, New York 14203-2887
                            Telephone No   (716) 847-8400

                            DRINKER BIDDLE & REATH LLP
                            Michael J Stortz, Esq
                            Charles F Preuss, Esq
                            225 Bush Street
                            15th Floor
                            San Francisco, California 94104
                            Telephone No   (415) 397-1730

                            Attorneys for Defendant
                            SmithKline Beecham Corporation d/b/a GlaxoSmithKline

TO      Plaintiffs Lead Counsel
        Plaintiffs Liaison Counsel
        Defendants' Liaison Counsel
        Defendants' Lead Counsel
        Sarah K Biran, Esq
        Counsel in State court actions

BFFO Doc  1211190 3

## EXHIBIT "A"

As used herein, the term "document" or "documents" shall mean and include any written, printed, drawn, recorded, transcribed, filed or graphic matter, however produced, reproduced, or stored on computer or otherwise electronically stored, and any originals, copies, drafts, revisions, or amendments thereof "Document" or "Documents" shall include, by way of example and without limitation, letters, memoranda, notes, e-mails, test data, charts, x-rays, reports, medical records, records of payment, diagrams, manuals, test procedures, sketches, graphs, prints, secretarial notes, work pads, diaries, films, tapes, videotapes, photographs, computer disks, computer printouts, computer memory banks, books, publications, literature, announcements, or other writings or tangible objects  Further, "document" or "documents" requested herein extend to and include any and all such materials within the possession, custody, or control of you and your agents, attorneys, or representatives, regardless of where located.  For any document withheld from production, and any document redacted in any manner, please identify the document withheld or redacted by date, author, type of document, subject matter, recipient, and any grounds for withholding or redaction of the document  You are to produce the materials in your possession, custody, or control listed below

1.    All documents related to the initiation of the Yale Hemorrhagic Stroke Project (hereinafter "HSP").

2.    All documents related to the organizational structure of persons involved in the HSP

3     All documents relating to the study personnel's experience and credentials (including but not limited to  the curriculum vitae of each professional who participated in the study).

4     All medical literature and case reports that were considered, reviewed, relied upon, and/or utilized in any manner by you or by any investigator or other personnel involved in the HSP from the inception of the HSP until its publication in the New England Journal of Medicine.

5     All documents related to the Protocol for the HSP including, but not limited to:

   a)  all documents related to the creation or development of the Protocol,

   b)  all documents related to the estimation of the sample size, including MRI market research data,

   c)  all documents related to or containing communications with anyone regarding the Protocol,

   d)  all documents related to comments, revisions, or modifications to the Protocol, and

e) all drafts of the protocol

6   All documents related to obtaining Institutional Review Board Approval of the HSP

7   All documents related to the conduct of the HSP including, but not limited to

   a) all documents regarding or concerning the network of participating hospitals;

   b) all documents regarding the recruitment of investigators, hospitals, and all persons involved in any way in the HSP,

   c) all procedure manuals and all investigator's brochures; and

   d) all documents regarding the training of any and all persons involved in the HSP, including but not limited to training manuals, training videotapes, training attendance, identity of trainers, and confirmation of training

8   All documents related to the ascertainment of cases in the HSP including, but not limited to, all documents regarding

   a) the active surveillance program,

   b) the surveillance team;

   c) the case definition;

   d) methods of case ascertainment; and

   e) exclusion criteria

9.   All documents related to the selection of controls in the HSP including, but not limited to, all documents regarding the use of random digit dialing and all documents concerning telephone numbers that did not result in an eligible person or control.

10   All documents related to data collection and processing in the HSP including, but not limited to

   a) all data collection forms,

   b) all interview data forms,

2

c) training manuals for interviewers,

d) data logs regarding cases and controls,

e) all case identification forms,

f) all potential control forms,

g) all log-in records;

h) all data editing, coding and validation manuals,

i) all screening questionnaires;

j) all documents and records reviewed by a panel of stroke neurologists involved in the determination of whether eligibility criteria were met;

k) all documents and records reviewed or generated by study physicians,

l) all documents and records, including logs, regarding stroke patients rejected as not meeting eligibility criteria;

m) all medical records and scans (e.g., CT, MRI, MRA, angiogram, etc.),

n) all documents regarding scheduling of interviews and collection of information from all study participants,

o) all product identification books, photographs, and charts,

p) all drug containers and drug labels furnished by study participants;

q) all documents related to observations of interviews,

r) all documents related to the assignment of interviewers,

s) all documents related to surrogate/proxy interviews,

t) all documents related to the use or handling of data or information obtained from surrogate/proxy interviews,

u) all data abstraction forms,

v) all coding forms,

w) all documents related to codes, including their definition,

x) all documents relating to the monitoring of sample size,

y) all documents related to modification of any aspect of the HSP;

z) every participating subject's folder and all contents of the folder;

aa) all audio tapes of interviews of study subjects,

bb) all financial reports, and

cc) all documents regarding the disbursement of funds

11    All documents regarding the proxy respondent sub-study

12    All documents regarding communications concerning the HSP including, but not limited to, all documents regarding communications·

a) between persons participating in the conduct of the HSP (For purposes of this Item 12, "conduct" is defined to including without limitation the design of the HSP, analysis of data, variations of or amendments to the HSP protocol variations, and the drafting or revision of abstracts, summaries, manuscripts and/or submissions relating to the HSP);

b) between anyone involved in the conduct of the HSP and any other person or organization including, but not limited to, yourself, the Food and Drug Administration, the Nonprescription Drug Manufacturers Association, the Consumer Healthcare Products Association, any member of the Scientific Advisory Group, pharmaceutical companies, and/or any of their current or former employees, members or representatives,

c) between anyone involved in the conduct of the HSP and any person claiming injury from use of PPA-containing medication;

d) with physician investigators,

e) with participating hospitals including, but not limited to, communications with the surveillance officers and the admissions offices at the participating hospitals,

f) with the Principal Investigator at each participating study site,

g) with each case's physician,

    h) with any medical or scientific journals including, without limitation, the <u>New England Journal of Medicine</u>;

    i) with any physicians, epidemiologists, statisticians, or other professionals asked by any person or entity (including, but not limited to, the <u>New England Journal of Medicine</u>) to conduct a peer review of the study and its results,

    j) between HSP investigators and any member of the Scientific Advisory Group,

    k) between HSP investigators and the <u>New England Journal of Medicine</u>, and

    l) with any other person at any of the participating institutions

13    All documents related to the Scientific Advisory Group including, but not limited to, communications, reports, site visits, and travel expenses.

14.    *All documents regarding the handling, calculations, or use of any and all data obtained regarding the HSP including,* but not limited to·

    a) all electronic analysis files,

    b) all documents related to interim data analysis;

    c) all final analysis files, and

    d) all data access logs;

    e) all database dictionary files,

    f) all data collection instruments;

    g) all databases constructed from the questionnaires;

    h) all databases for each intermediate and final analysis that relates to the Final Report and the <u>New England Journal of Medicine</u> article;

    i) all analyses not included in the Final Report or the <u>New England Journal of Medicine</u> Article,

    j) all analyses done after receipt of comments from or on behalf of CHPA or any predecessor organization of CHPA,

k)  all documents concerning the use of and/or difference between data analysis via a one-tailed or two-tailed statistical test;

l)  all documents concerning the adjustment of variables and analyses used for the adjustment of variables.

15   All documents regarding the Final Report of the HSP and its preparation including, but not limited to, all communications, comments and drafts

16   All documents regarding the publication of the HSP in the New England Journal of Medicine, including but not limited to correspondence dated after publication of the HSP in the New England Journal of Medicine

17   All documents evidencing revisions, changes, additions, or deletions made to the Final Report of the HSP (and/or the data contained in that report) prior to the publication of the study's results in the New England Journal of Medicine

18.  All documents regarding conferences, discussions, or meetings with FDA regarding the HSP, including, without limitation, documents concerning preparations for October 19, 2000 hearing.

19   All documents relating to any comments about, or criticisms of, The HSP from any source including, without limitations, letters to the editor concerning the HSP

20   All documents regarding the Authors' Reply published in the April 5, 2001 New England Journal of Medicine including, but not limited to, all data analyses and communications with anyone after publication.

21.  All documents relating to the removal or refiling of any document responsive to any of the above categories



FILED
U S DISTRICT COURT
EASTERN DISTRICT OF LA

2002 OCT -4  PM 4: 06

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B  DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO  02-2436 |
| VERSUS | * | |
| | * | SECTION N |
| BAYER CORPORATION, NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION, | * | MAGISTRATE 5 |
| NOVARTIS CONSUMER HEALTH, INC , | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE, SMOOTHIE KING | * | |
| CO , INC , SMOOTHIE KING SYSTEMS, | * | |
| INC , and WALGREEN LOUISIANA CO , | * | |
| INC  (D/B/A "WALGREENS") | | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## CROSS-NOTICE OF VIDEOTAPED
## DEPOSITION OF RALPH HORWITZ

PLEASE TAKE NOTICE that pursuant to Louisiana Code of Civil Procedure Article 1429,

*et seq* , and in connection with *In Re  Phenylpropanolamine (PPA) Products Liability Litigation*,

United States District Court, Western District of Washington, MDL Docket No  1407, defendant

SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK") and other manufacturer

defendants will take the deposition of Ralph Horwitz at the Omni Hotel - New Haven, 155 Temple

Street, New Haven, CT  06510, commencing at 1 00 p m  on October 9, 2002, and continuing on



Fee
Process
X  Dktd
CtRmDep
Doc No

October 11, 2002 (at 8 30 a m ) and October 14, 2002 (at 8 30 a m ), or such other places, times and dates to which the parties and the witnesses may agree   A copy of the Notice of Deposition of Ralph Horwitz is attached hereto as Exhibit A

PLEASE TAKE FURTHER NOTICE that the witness has been directed to produce for inspection, copying and use at the deposition the documents and things described in the attachment to Exhibit A

This deposition will be recorded by videotape as well as by stenographic means by the court reporting firm of Tate & Tate, Inc , 180 Tuckerton Road, Suite 5, The Lexington Building, Medford, NJ 08055

You are invited to attend and cross-examine the witness

Dated this _____ day of October, 2002

Respectfully submitted

_____
Mary L  Meyer, Esq  (19966)
John F  Olinde (1515)
Charles P  Blanchard (18798)
**CHAFFE, MCCALL, PHILLIPS,**
**TOLER & SARPY, L.L.P.**
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2300
Telephone  (504) 585-7000
**Attorneys for Bayer Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this _____ day of October, 2002, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by hand delivery, facsimile, or by depositing the same in the United States mail, properly addressed, and first-class postage prepaid

_____

HON  BARBARA JACOBS ROTHSTEIN, U S D J

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

IN RE  PHENYLPROPANOLAMINE (PPA)           )
      PRODUCT LIABILITY LITIGATION        )
                                 )     **SUPPLEMENTAL NOTICE OF**
-------------------------------------------------------- )     **DEPOSITION OF RALPH HORWITZ**
                                 )
This document relates to all actions              )     Case No  MDL-1407
                                 )
-------------------------------------------------------- )
                                 )
and to the State Court actions to which this      )
notice applies                                    )
-------------- - -      -- ------ ------------)

        Pursuant to Federal Rules of Civil Procedure, Rules 26 et seq, and this Court's Order

filed August 19, 2002, and in supplementation of their notice of deposition of June 10, 2002,

defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK") and other manufacturer

defendants will take the deposition of Ralph Horwitz at the Omni Hotel - New Haven, 155 Temple

Street, New Haven, CT  06510, commencing at 1 00 p m  on October 9, 2002, and continuing on

October 11, 2002 (at 8 30 a m ) and October 14, 2002 (at 8 30 a m ), or such other places, times and

dates to which the parties and the witness may agree

        Please take further notice that the witness has been directed to produce for inspection,

copying, and use at the deposition the documents and things described in the attached Exhibit A



EXHIBIT

A

Please take further notice that the above deposition will be recorded by videotape as well as by stenographic means, by the firm Tate & Tate, Inc., 180 Tuckerton Road, Suite 5, The Lexington Building, Medford, New Jersey 08055

Dated  September 23, 2002
       Buffalo, New York

PHILLIPS, LYTLE, HITCHCOCK, BLAINE & HUBER LLP

By _____
       Tamar P. Halpern, Esq
3400 HSBC Center
Buffalo, New York 14203-2887
Telephone No : (716) 847-8400

DRINKER BIDDLE & REATH LLP
Michael J Stortz, Esq
Charles F Preuss, Esq
225 Bush Street
15th Floor
San Francisco, California 94104
Telephone No  (415) 397-1730

Attorneys for Defendant
SmithKline Beecham Corporation d/b/a GlaxoSmithKline

TO    Plaintiffs' Lead Counsel
      Plaintiffs' Liaison Counsel
      Defendants' Liaison Counsel
      Defendants' Lead Counsel
      Sarah K Biran, Esq
      Counsel in State court actions

BUFDoc  1205151

### EXHIBIT "A"

As used herein, the term "document" or "documents" shall mean and include any written, printed, drawn, recorded, transcribed, filed or graphic matter, however produced, reproduced, or stored on computer or otherwise electronically stored, and any originals, copies, drafts, revisions, or amendments thereof. "Document" or "Documents" shall include, by way of example and without limitation, letters, memoranda, notes, e-mails, test data, charts, x-rays, reports, medical records, records of payment, diagrams, manuals, test procedures, sketches, graphs, prints, secretarial notes, work pads, diaries, films, tapes, videotapes, photographs, computer disks, computer printouts, computer memory banks, books, publications, literature, announcements, or other writings or tangible objects. Further, "document" or "documents" requested herein extend to and include any and all such materials within the possession, custody, or control of you and your agents, attorneys, or representatives, regardless of where located. For any document withheld from production, and any document redacted in any manner, please identify the document withheld or redacted by date, author, type of document, subject matter, recipient, and any grounds for withholding or redaction of the document. You are to produce the materials in your possession, custody, or control listed below:

1.  All documents related to the initiation of the Yale Hemorrhagic Stroke Project (hereinafter "HSP").

2.  All documents related to the organizational structure of persons involved in the HSP

3.  All documents relating to the study personnel's experience and credentials (including but not limited to  the curriculum vitae of each professional who participated in the study).

4.  All medical literature and case reports that were considered, reviewed, relied upon, and/or utilized in any manner by you or by any investigator or other personnel involved in the HSP from the inception of the HSP until its publication in the New England Journal of Medicine.

5.  All documents related to the Protocol for the HSP including, but not limited to:

    a)  all documents related to the creation or development of the Protocol;

    b)  all documents related to the estimation of the sample size, including MRI market research data;

    c)  all documents related to or containing communications with anyone regarding the Protocol;

    d)  all documents related to comments, revisions, or modifications to the Protocol, and

e) all drafts of the protocol.

6    All documents related to obtaining Institutional Review Board Approval of the HSP

7    All documents related to the conduct of the HSP including, but not limited to:

   a) all documents regarding or concerning the network of participating hospitals; ·

   b) all documents regarding the recruitment of investigators, hospitals, and all persons involved in any way in the HSP;

   c) all procedure manuals and all investigator's brochures; and

   d) all documents regarding the training of any and all persons involved in the HSP, including but not limited to training manuals, training videotapes, training attendance, identity of trainers, and confirmation of training.

8    All documents related to the ascertainment of cases in the HSP including, but not limited to, all documents regarding:

   a) the active surveillance program;

   b) the surveillance team;

   c) the case definition;

   d) methods of case ascertainment; and

   e) exclusion criteria.

9.   All documents related to the selection of controls in the HSP including, but not limited to, all documents regarding the use of random digit dialing and all documents concerning telephone numbers that did not result in an eligible person or control.

10   All documents related to data collection and processing in the HSP including, but not limited to·

   a) all data collection forms,

   b) all interview data forms,

2

c) training manuals for interviewers;

d) data logs regarding cases and controls;

e) all case identification forms;

f) all potential control forms;

g) all log-in records;

h) all data editing, coding and validation manuals;

i) all screening questionnaires;

j) all documents and records reviewed by a panel of stroke neurologists involved in the determination of whether eligibility criteria were met;

k) all documents and records reviewed or generated by study physicians;

l) all documents and records, including logs, regarding stroke patients rejected as not meeting eligibility criteria;

m) all medical records and scans (e.g., CT, MRI, MRA, angiogram, etc.);

n) all documents regarding scheduling of interviews and collection of information from all study participants;

o) all product identification books, photographs, and charts;

p) all drug containers and drug labels furnished by study participants;

q) all documents related to observations of interviews;

r) all documents related to the assignment of interviewers;

s) all documents related to surrogate/proxy interviews,

t) all documents related to the use or handling of data or information obtained from surrogate/proxy interviews;

u) all data abstraction forms;

v) all coding forms,

w) all documents related to codes, including their definition;

       x) all documents relating to the monitoring of sample size;

       y) all documents related to modification of any aspect of the HSP;

       z) every participating subject's folder and all contents of the folder;

       aa) all audio tapes of interviews of study subjects;

       bb) all financial reports; and

       cc) all documents regarding the disbursement of funds.

11     All documents regarding the proxy respondent sub-study.

12.    All documents regarding communications concerning the HSP including, but not limited to, all documents regarding communications:

       a) between persons participating in the conduct of the HSP. (For purposes of this Item 12, "conduct" is defined to including without limitation the design of the HSP, analysis of data, variations of or amendments to the HSP protocol variations, and the drafting or revision of abstracts, summaries, manuscripts and/or submissions relating to the HSP);

       b) between anyone involved in the conduct of the HSP and any other person or organization including, but not limited to, yourself, the Food and Drug Administration, the Nonprescription Drug Manufacturers Association, the Consumer Healthcare Products Association, any member of the Scientific Advisory Group, pharmaceutical companies, and/or any of their current or former employees, members or representatives,

       c) between anyone involved in the conduct of the HSP and any person claiming injury from use of PPA-containing medication;

       d) with physician investigators;

       e) with participating hospitals including, but not limited to, communications with the surveillance officers and the admissions offices at the participating hospitals,

       f) with the Principal Investigator at each participating study site;

       g) with each case's physician;

    h) with any medical or scientific journals including, without limitation, the <u>New England Journal of Medicine</u>;

    i) with any physicians, epidemiologists, statisticians, or other professionals asked by any person or entity (including, but not limited to, the <u>New England Journal of Medicine</u>) to conduct a peer review of the study and its results;

    j) between HSP investigators and any member of the Scientific Advisory Group;

    k) between HSP investigators and the <u>New England Journal of Medicine</u>; and

    l) with any other person at any of the participating institutions

13.    All documents related to the Scientific Advisory Group including, but not limited to, communications, reports, site visits, and travel expenses.

14    All documents regarding the handling, calculations, or use of any and all data obtained regarding the HSP including, but not limited to:

    a) all electronic analysis files;

    b) all documents related to interim data analysis;

    c) all final analysis files; and

    d) all data access logs;

    e) all database dictionary files;

    f) all data collection instruments;

    g) all databases constructed from the questionnaires;

    h) all databases for each intermediate and final analysis that relates to the Final Report and the <u>New England Journal of Medicine</u> article;

    i) all analyses not included in the Final Report or the <u>New England Journal of Medicine</u> Article;

    j) all analyses done after receipt of comments from or on behalf of CHPA or any predecessor organization of CHPA;

k) all documents concerning the use of and/or difference between data analysis via a one-tailed or two-tailed statistical test,

l) all documents concerning the adjustment of variables and analyses used for the adjustment of variables.

15. All documents regarding the Final Report of the HSP and its preparation including, but not limited to, all communications, comments and drafts.

16. All documents regarding the publication of the HSP in the <u>New England Journal of Medicine</u>, including but not limited to correspondence dated after publication of the HSP in the <u>New England Journal of Medicine</u>

17. All documents evidencing revisions, changes, additions, or deletions made to the Final Report of the HSP (and/or the data contained in that report) prior to the publication of the study's results in the <u>New England Journal of Medicine</u>.

18. All documents regarding conferences, discussions, or meetings with FDA regarding the HSP, including, without limitation, documents concerning preparations for October 19, 2000 hearing.

19. All documents relating to any comments about, or criticisms of, The HSP from any source including, without limitations, letters to the editor concerning the HSP.

20. *All documents regarding the Authors' Reply published in the April 5, 2001* <u>New England Journal of Medicine</u> *including, but not limited to, all data analyses and communications with anyone after publication.*

21. All documents relating to the removal or refiling of any document responsive to any of the above categories.



FILED
US DISTRICT COURT
EASTERN DISTRICT OF LA

2002 OCT -4  PM 4: 06

LORETTA G WHYTE
CLERK

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B  DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO  02-2436 |
| VERSUS | * | |
| | * | SECTION N |
| BAYER CORPORATION, NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION, | * | MAGISTRATE 5 |
| NOVARTIS CONSUMER HEALTH, INC , | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE, SMOOTHIE KING | * | |
| CO , INC , SMOOTHIE KING SYSTEMS, | * | |
| INC , and WALGREEN LOUISIANA CO , | * | |
| INC  (D/B/A "WALGREENS") | | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## CROSS-NOTICE OF VIDEOTAPED
## DEPOSITION OF CATHERINE VISCOLI

PLEASE TAKE NOTICE that pursuant to Louisiana Code of Civil Procedure Article 1429,

*et seq* , and in connection with *In Re  Phenylpropanolamine (PPA) Products Liability Litigation*,

United States District Court, Western District of Washington, MDL Docket No  1407, defendant

SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK") and other manufacturer

defendants will take the deposition of Catherine Viscoli at the Omni Hotel - New Haven, 155

Temple Street, New Haven, CT  06510, commencing at 9 00 a m  on October 21, 2002, and



Fee_____
Process_____
X  Dktd_____
CtRmDep_____
Doc No._____

continuing on October 22, 2002 (at 9 00 a m ) and October 23, 2002 (at 9 00 a m ), or such other places, times and dates to which the parties and the witnesses may agree    A copy of the Notice of Deposition of Catherine Viscoli is attached hereto as Exhibit A

PLEASE TAKE FURTHER NOTICE that the witness has been directed to produce for inspection, copying and use at the deposition the documents and things described in the attachment to Exhibit A

This deposition will be recorded by videotape as well as by stenographic means by the court reporting firm of Tate & Tate, Inc , 180 Tuckerton Road, Suite 5, The Lexington Building, Medford, NJ 08055

You are invited to attend and cross-examine the witness

DATED this _____ day of October, 2002

Respectfully submitted,

Mary L  Meyer, Esq  (19966)
John F  Olinde (1515)
Charles P  Blanchard (18798)
**CHAFFE, MCCALL, PHILLIPS,**
**   TOLER & SARPY, L.L.P.**
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2300
Telephone  (504) 585-7000
**Attorneys for Bayer Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this _____ day of October, 2002, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by hand delivery, facsimile, or by depositing the same in the United States mail, properly addressed, and first-class postage prepaid

HON  BARBARA JACOBS ROTHSTEIN, U S D J

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

IN RE   PHENYLPROPANOLAMINE (PPA)      )
   PRODUCT LIABILITY LITIGATION   )
                )
                )
----------------------------------------------------------- )
                )
This document relates to all actions        )
                )
----------------------------------------------------------- )
                )
and to the State Court actions to which this   )
notice applies                              )
                )

**SUPPLEMENTAL NOTICE OF
DEPOSITION OF
CATHERINE VISCOLI**

Case No  MDL-1407

Pursuant to Federal Rules of Civil Procedure, Rules 26 et seq. and this Court's Order filed August 19, 2002, and in supplementation of their notice of deposition of June 10, 2002, defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK") and other manufacturer defendants will take the deposition of Catherine Viscoli at the Omni Hotel - New Haven, 155 Temple Street, New Haven, CT  06510, commencing at 9 00 a m  on October 21, 2002, and continuing on October 22, 2002 (at 9 00 a m ) and October 23, 2002 (at 9 00 a m ), or such other places, times and dates to which the parties and the witness may agree

Please take further notice that the witness has been directed to produce for inspection, copying, and use at the deposition the documents and things described in the attached Exhibit A



**EXHIBIT**

A

Please take further notice that the above deposition will be recorded by videotape as well as by stenographic means, by the firm Tate & Tate, Inc., 180 Tuckerton Road, Suite 5, The Lexington Building, Medford, New Jersey 08055

Dated  September 23, 2002
       Buffalo, New York

PHILLIPS, LYTLE, HITCHCOCK, BLAINE & HUBER LLP

By _____
       Tamar P Halpern, Esq
3400 HSBC Center
Buffalo, New York  14203-2887
Telephone No :  (716) 847-8400

DRINKER BIDDLE & REATH LLP
Michael J. Stortz, Esq
Charles F. Preuss, Esq
225 Bush Street
15th Floor
San Francisco, California  94104
Telephone No    (415) 397-1730

Attorneys for Defendant
SmithKline Beecham Corporation d/b/a GlaxoSmithKline

TO    Plaintiffs' Lead Counsel
       Plaintiffs' Liaison Counsel
       Defendants' Liaison Counsel
       Defendants' Lead Counsel
       Sarah K Biran, Esq
       Counsel in State court actions

BFLODS - 1240518 1

## EXHIBIT "A"

As used herein, the term "document" or "documents" shall mean and include any written, printed, drawn, recorded, transcribed, filed or graphic matter, however produced, reproduced, or stored on computer or otherwise electronically stored, and any originals, copies, drafts, revisions, or amendments thereof "Document" or "Documents" shall include, by way of example and without limitation, letters, memoranda, notes, e-mails, test data, charts, x-rays, reports, medical records, records of payment, diagrams, manuals, test procedures, sketches, graphs, prints, secretarial notes, work pads, diaries, films, tapes, videotapes, photographs, computer disks, computer printouts, computer memory banks, books, publications, literature, announcements, or other writings or tangible objects. Further, "document" or "documents" requested herein extend to and include any and all such materials within the possession, custody, or control of you and your agents, attorneys, or representatives, regardless of where located. For any document withheld from production, and any document redacted in any manner, please identify the document withheld or redacted by date, author, type of document, subject matter, recipient, and any grounds for withholding or redaction of the document. You are to produce the materials in your possession, custody, or control listed below:

1. All documents related to the initiation of the Yale Hemorrhagic Stroke Project (hereinafter "HSP").

2. All documents related to the organizational structure of persons involved in the HSP.

3. All documents relating to the study personnel's experience and credentials (including but not limited to the curriculum vitae of each professional who participated in the study).

4. All medical literature and case reports that were considered, reviewed, relied upon, and/or utilized in any manner by you or by any investigator or other personnel involved in the HSP from the inception of the HSP until its publication in the New England Journal of Medicine.

5. All documents related to the Protocol for the HSP including, but not limited to:

   a) all documents related to the creation or development of the Protocol;

   b) all documents related to the estimation of the sample size, including MRI market research data;

   c) all documents related to or containing communications with anyone regarding the Protocol;

   d) all documents related to comments, revisions, or modifications to the Protocol; and

e) all drafts of the protocol.

6    All documents related to obtaining Institutional Review Board Approval of the HSP.

7.    All documents related to the conduct of the HSP including, but not limited to:

    a) all documents regarding or concerning the network of participating hospitals; .

    b) all documents regarding the recruitment of investigators, hospitals, and all persons involved in any way in the HSP;

    c) all procedure manuals and all investigator's brochures; and

    d) all documents regarding the training of any and all persons involved in the HSP, including but not limited to training manuals, training videotapes, training attendance, identity of trainers, and confirmation of training.

8    All documents related to the ascertainment of cases in the HSP including, but not limited to, all documents regarding:

    a) the active surveillance program;

    b) the surveillance team;

    c) the case definition;

    d) methods of case ascertainment; and

    e) exclusion criteria.

9.    All documents related to the selection of controls in the HSP including, but not limited to, all documents regarding the use of random digit dialing and all documents concerning telephone numbers that did not result in an eligible person or control.

10.    All documents related to data collection and processing in the HSP including, but not limited to:

    a) all data collection forms;

    b) all interview data forms;

c) training manuals for interviewers;

d) data logs regarding cases and controls,

e) all case identification forms,

f) all potential control forms,

g) all log-in records;

h) all data editing, coding and validation manuals;

i) all screening questionnaires;

j) all documents and records reviewed by a panel of stroke neurologists involved in the determination of whether eligibility criteria were met;

k) all documents and records reviewed or generated by study physicians;

l) all documents and records, including logs, regarding stroke patients rejected as not meeting eligibility criteria;

m) all medical records and scans (e g , CT, MRI, MRA, angiogram, etc.);

n) all documents regarding scheduling of interviews and collection of information from all study participants;

o) all product identification books, photographs, and charts,

p) all drug containers and drug labels furnished by study participants;

q) all documents related to observations of interviews,

r) all documents related to the assignment of interviewers;

s) all documents related to surrogate/proxy interviews;

t) all documents related to the use or handling of data or information obtained from surrogate/proxy interviews;

u) all data abstraction forms,

v) all coding forms;

w) all documents related to codes, including their definition,

x) all documents relating to the monitoring of sample size,

y) all documents related to modification of any aspect of the HSP;

z) every participating subject's folder and all contents of the folder;

aa) *all audio tapes of interviews of study subjects,*

bb) all financial reports; and

cc) all documents regarding the disbursement of funds.

11. All documents regarding the proxy respondent sub-study.

12. All documents regarding communications concerning the HSP including, but not limited to, all documents regarding communications

     a) between persons participating in the conduct of the HSP. (For purposes of this Item 12, "conduct" is defined to including without limitation the design of the HSP, analysis of data, variations of or amendments to the HSP protocol variations, and the drafting or revision of abstracts, summaries, manuscripts and/or submissions relating to the HSP);

     b) between anyone involved in the conduct of the HSP and any other person or organization including, but not limited to, yourself, the Food and Drug Administration, the Nonprescription Drug Manufacturers Association, the Consumer Healthcare Products Association, any member of the Scientific Advisory Group, pharmaceutical companies, and/or any of their current or former employees, members or representatives;

     c) between anyone involved in the conduct of the HSP and any person claiming injury from use of PPA-containing medication;

     d) with physician investigators;

     e) with participating hospitals including, but not limited to, communications with the surveillance officers and the admissions offices at the participating hospitals,

     f) with the Principal Investigator at each participating study site;

     g) with each case's physician;

    h) with any medical or scientific journals including, without limitation, the <u>New England Journal of Medicine</u>;

    i) with any physicians, epidemiologists, statisticians, or other professionals asked by any person or entity (including, but not limited to, the <u>New England Journal of Medicine</u>) to conduct a peer review of the study and its results,

    j) between HSP investigators and any member of the Scientific Advisory Group,  ..

    k) between HSP investigators and the <u>New England Journal of Medicine</u>, and

    l) with any other person at any of the participating institutions

13. All documents related to the Scientific Advisory Group including, but not limited to, communications, reports, site visits, and travel expenses.

14. All documents regarding the handling, calculations, or use of any and all data obtained regarding the HSP including, but not limited to·

    a) all electronic analysis files;

    b) all documents related to interim data analysis,

    c) all final analysis files; and

    d) all data access logs;

    e) all database dictionary files,

    f) all data collection instruments;

    g) all databases constructed from the questionnaires; .

    h) all databases for each intermediate and final analysis that relates to the Final Report and the <u>New England Journal of Medicine</u> article;

    i) all analyses not included in the Final Report or the <u>New England Journal of Medicine</u> Article;

    j) all analyses done after receipt of comments from or on behalf of CHPA or any predecessor organization of CHPA;

k) all documents concerning the use of and/or difference between data analysis via a one-tailed or two-tailed statistical test,

l) all documents concerning the adjustment of variables and analyses used for the adjustment of variables.

15. All documents regarding the Final Report of the HSP and its preparation including, but not limited to, all communications, comments and drafts.

16. All documents regarding the publication of the HSP in the New England Journal of Medicine, including but not limited to correspondence dated after publication of the HSP in the New England Journal of Medicine.

17. All documents evidencing revisions, changes, additions, or deletions made to the Final Report of the HSP (and/or the data contained in that report) prior to the publication of the study's results in the New England Journal of Medicine.

18. All documents regarding conferences, discussions, or meetings with FDA regarding the HSP, including, without limitation, documents concerning preparations for October 19, 2000 hearing.

19. All documents relating to any comments about, or criticisms of, The HSP from any source including, without limitations, letters to the editor concerning the HSP.

20. All documents regarding the Authors' Reply published in the April 5, 2001 New England Journal of Medicine including, but not limited to, all data analyses and communications with anyone after publication.

21. All documents relating to the removal or refiling of any document responsive to any of the above categories.

U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP 27 PM 4: 28

LORETTA G. WHYTE
CLERK

MINUTE ENTRY
ENGELHARDT, J
SEPTEMBER 27, 2002

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAPHINE DONNELLY                            CIVIL ACTION

VERSUS                                      NO 02-2436

BAYER CORPORATION, ET AL                    SECTION "N"

Before the Court are plaintiff's Motion to Remand [Rec Doc No 12], defendants' Motions

to Dismiss [Rec Doc Nos 5, 7, 13, 14], and defendant Novartis Consumer Health, Inc 's Motion

for Temporary Stay [Rec Doc No 19], presently noticed for hearing on Wednesday, October 2,

2002 at 9 30 a m   Based upon the reasoning set out in *Benjamin v Bayer Corp.*, No 02-886 (E

D La May 16, 2002) (Vance, J ), a copy of which is attached hereto, it is the opinion of this Court

that this matter should be TEMPORARILY STAYED pending a final ruling of the Judicial Panel

on Multidistrict Litigation on transfer of this case to Multidistrict Litigation, *In re*

*Phenylpropanolamine (PPA) Litigation*, 173 F Supp 2d 1377 (J P M L 2001)  Because the issues

involved in the plaintiff's Motion to Remand and the defendants' Motions to Dismiss are likely to

common to other cases transferred to MDL No 1407, and the policies of efficiency and consistency

of pre-trial rulings are furthered by a temporary stay, the Court **GRANTS** the **Motion for**

**Temporary Stay** filed on behalf of Novartis Consumer Health, Inc [Rec Doc No 19]

    **IT IS SO ORDERED.**

UNITED STATES DISTRICT JUDGE

DATE OF ENTRY

SEP 3 0 2002

Fee _____
Process _____
X_ Dktd _____
CtRmDep _____
Doc.No. _____

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 MAY 16 PM 3: 15

LORETTA G WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KATHERINE BENJAMIN                      CIVIL ACTION

VERSUS                                  NO: 02-0886

BAYER CORPORATION, ET AL.               SECTION: "R"

## ORDER AND REASONS

Before the Court is defendants' motion for a stay.  For the
following reasons, the Court grants the motion.

**I.   BACKGROUND**

On November 7, 2001, Katherine Benjamin filed a petition for
damages in state court against the Bayer Corporation, Glaxo
Smithkline PLC, Bristol-Meyers Production Division, Chattem,
Inc., Walgreen Louisiana Company, Inc. (d/b/a Walgreens), and K&B
of Louisiana Corporation (d/b/a "Rite Aid").  Plaintiff seeks
damages for injuries she allegedly sustained as a result of
ingesting Alka-Seltzer Plus Cold Medicine, Comtrex, Contac 12-
Hour, and Dexatrim, four over-the-counter medications that

DATE OF ENTRY
MAY 1 6 2002

contain Phenylpropanolamine (PPA). Defendants removed the case to this Court on March 25, 2002, invoking the Court's diversity jurisdiction. Defendants move to stay all proceedings pending transfer by the Judicial Panel on Multidistrict Litigation. Defendants maintain that a stay is appropriate pending a determination by the MDL on whether to transfer the case to the Western District of Washington because it will conserve judicial resources, and it will avoid the risk of inconsistent pre-trial rulings. In opposition to defendants' motion, plaintiff contends that this Court is better suited to rule on the issues of Louisiana law implicated in plaintiff's complaint and in plaintiff's pending motion to remand. Plaintiff also contends that a stay will delay the matter and cause her unnecessary expense.

## II.  DISCUSSION

"The pendency of the transfer order does not in any way defeat or limit the authority of this Court to rule upon matters properly presented to it for decision." *Calvin Boudreaux v. Metropolitan Life Ins. Co.*, 1995 WL 83788, *1 (E.D. La. 1995)(*citing In re Air Crash at Paris, France*, 376 F.Supp. 887 (JPML 1974)) The decision whether to stay proceedings is discretionary, and the exercise of discretion is guided by the policies of justice and efficiency. *Id.*

2

2 02-cv-006 #14    Page 2/4

2 02-cv-00577 #24    Page 2/5

Judicial economy would be served by a stay pending the transfer if the issues involved in the remand motion are likely to arise in the cases that have been or will be transferred to the Western District of Washington. *In re Ivy*, 901 F.2d 7, 9 (2d Cir 1990). The transferee judge "certainly has the power to determine the question of remand," and if the remand issues are common to many of the PPA cases, decisions by the transferee judge would avoid "duplicative discovery and conflicting pretrial rulings." *Calvin Boudreaux*, 1995 WL 83788 at *2 (quoting *In re Air Crash Disaster at Florida*, 368 F.Supp. 812, 813 (JPML 1973)).

Here, defendants challenge the joinder of the nondiverse defendants, Walgreens and K&B, on a number of grounds. For example, defendants claim that some of plaintiff's Louisiana redhibition claims are time-barred and that even viewing the undisputed facts in the light most favorable to plaintiff, no reasonable basis exists under which plaintiff could prevail against the nondiverse defendants. As Magistrate Judge Kirk noted in a ruling on a motion to stay in a PPA case in the Western District of Louisiana, there are numerous cases in districts throughout Louisiana alleging damages as a result of the ingestion of PPA in which the plaintiffs assert Louisiana redhibition claims against nondiverse retail sellers. *See* Bayer's Ex. N, *James Bowman v. Bayer Corporation, et al.*, No. 01-

3

1802-A, at 2    Additionally, a number of cases involving PPA have
been consolidated and transferred to the Western District of
Washington, including a case out of the Western District of
Louisiana, and many other Louisiana cases have been conditionally
transferred and await a final ruling.  *See* Bayer's Ex  B, *In re
Phenylpropanolamine (PPA) Products Liability Litigation*, Transfer
Order, MDL No. 1407, August 28, 2001.  The Court finds that
because the issues involved in this remand are likely to be
common to other transferred cases, the policies of efficiency and
consistency of pre-trial rulings are furthered by a stay of the
proceedings in this Court pending a decision on the transfer of
this case to the MDL

## III. Conclusion

For the foregoing reasons, the Court GRANTS defendants'
motion for a stay of the proceedings

New Orleans, Louisiana, this 16th day of May, 2002.

Sarah Vance

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

4





```
CASE        2:02-cv-02436
DOCUMENT    28
DATE·       09/30/02

CLERK:      tbl
```

Notices sent to:

```
J. Loupe  by fax to  225-767-9003
Dana Kirk  by mail.
Clayton Clark  by mail.
J  Davis  by mail.
Mary Meyer  by fax to  504-544-6077
Joy Braun  by fax to  504-582-1555
C  Bradley Jr. by fax to  504-584-9142
Jack Truitt  by fax to  985-792-1065
```

Document scanned by: _____



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF L/

2007 SEP 24  PM 3: 47

LORELI M G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO  02-2436 |
| VERSUS | * | |
| | * | SECTION N |
| BAYER CORPORATION, NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION; | * | MAGISTRATE 5 |
| NOVARTIS CONSUMER HEALTH, INC , | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE, SMOOTHIE KING | * | |
| CO , INC , SMOOTHIE KING SYSTEMS, | * | |
| INC , and WALGREEN LOUISIANA CO., | * | |
| INC  (D/B/A "WALGREENS") | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### CROSS-NOTICE OF VIDEOTAPED
### DEPOSITION OF LAWRENCE M. BRASS

PLEASE TAKE NOTICE that pursuant Federal Rules of Civil Procedure, Rules

27, *et seq* , and in connection with *In Re  Phenylpropanolamine (PPA) Products Liability*

*Litigation*, United States District Court, Western District of Washington, MDL Docket

No. 1407, defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline (GSK)

and other manufacturer defendants will take the deposition of Lawrence M  Brass at the

Fee
Process
X Dktd
CtRmDep
Doc. No

Omni Hotel - New Haven, 155 Temple Street, New Haven, CT 06510, commencing at 9 00 a.m on October 1, 2002, and continuing on October 4, 2002 (at 9 00 a m ) and October 10, 2002 (at 9 00 a m ), or such other places, times and dates to which the parties and the witnesses may agree  A copy of the Notice of Deposition of Lawrence M Brass is attached hereto as Exhibit A

PLEASE TAKE FURTHER NOTICE that the witness has been directed to produce for inspection, copying and use at the deposition the documents and things described in the attachment to Exhibit A

This deposition will be recorded by videotape as well as by stenographic means by the court reporting firm of Tate & Tate, Inc , 180 Tuckerton Road, Suite 5, The Lexington Building, Medford, NJ 08055

You are invited to attend and cross-examine the witness

DATED this _24th_ day of September, 2002

Respectfully submitted,

Mary L. Meyer, Esq (19966)
John F Olinde (1515)
Charles P Blanchard (18798)
**CHAFFE, MCCALL, PHILLIPS,**
    **TOLER & SARPY, L.L.P.**
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2300
Telephone (504) 585-7000
**Attorneys for Bayer Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this _24th_ day of September, 2002, served a copy of

the foregoing pleading on counsel for all parties to this proceeding, by hand delivery,

facsimile, or by depositing the same in the United States mail, properly addressed, and

first-class postage prepaid

HON  BARBARA JACOBS ROTHSTEIN  U S D J

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE   PHENYL PROPANOLAMINE (PPA)       )
       PRODUCT LIABILITY LITIGATION       )
                                      )
                                       )    **SUPPLEMENTAL NOTICE OF**
------------------------------------------------------------------ )   **DEPOSITION OF LAWRENCE M. BRASS**
                                       )
This document relates to all actions       )    Case No  MDL-1407
                                       )
----------------------------------------------------------- )
                                       )
and to the State Court actions to which this       )
notice applies       )
                                       )

        Pursuant to Federal Rules of Civil Procedure, Rules 26 et seq, and this Court's Order

filed August 19, 2002, and in supplementation of their notice of deposition of June 10, 2002,

defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK") and other manufacturer

defendants will take the deposition of Lawrence M  Brass at the Omni Hotel - New Haven, 155

Temple Street, New Haven, CT  06510, commencing at 9 00 a m  on October 1, 2002, and

continuing on October 4, 2002 (at 9 00 a m ) and October 10, 2002 (at 9 00 a m ), or such other

places, times and dates to which the parties and the witness may agree

        Please take further notice that the witness has been directed to produce for inspection,

copying, and use at the deposition the documents and things described in the attached Exhibit A



EXHIBIT

A

Please take further notice that the above deposition will be recorded by videotape as well as by stenographic means, by the firm Tate & Tate, Inc , 180 Tuckerton Road, Suite 5, The Lexington Building  Medford, New Jersey  08055

Dated  September 10, 2002
       Buffalo  New York

                    PHILLIPS, LYTLE, HITCHCOCK, BLAINE & HUBER LLP

                    By _____

                           Tamar P  Halpern, Esq
                    3400 HSBC Center
                    Buffalo, New York  14203-2887
                    Telephone No   (716) 847-8400

                    DRINKER BIDDLE & REATH LLP
                    Michael J  Stortz, Esq
                    Charles F  Preuss, Esq
                    225 Bush Street
                    15th Floor
                    San Francisco, California  94104
                    Telephone No   (415) 397-1730

                    Attorneys for Defendant
                    SmithKline Beecham Corporation d/b/a GlaxoSmithKline

TO    Plaintiffs' Lead Counsel
       Plaintiffs  Liaison Counsel
       Defendants' Lead Counsel
       Defendants  Liaison Counsel
       Counsel in State court actions

BHO Doc  122759x 1

## EXHIBIT "A"

As used herein, the term "document" or "documents" shall mean and include any written, printed, drawn, recorded, transcribed, filed or graphic matter, however produced, reproduced, or stored on computer or otherwise electronically stored, and any originals, copies, drafts, revisions, or amendments thereof "Document" or "Documents" shall include, by way of example and without limitation, letters, memoranda, notes, e-mails, test data, charts, x-rays, reports, medical records, records of payment, diagrams, manuals, test procedures, sketches, graphs, prints, secretarial notes, work pads, diaries, films, tapes, videotapes, photographs, computer disks, computer printouts, computer memory banks, books, publications, literature, announcements, or other writings or tangible objects Further, "document" or "documents" requested herein extend to and include any and all such materials within the possession, custody, or control of you and your agents, attorneys, or representatives, regardless of where located For any document withheld from production, and any document redacted in any manner, please identify the document withheld or redacted by date, author, type of document, subject matter, recipient, and any grounds for withholding or redaction of the document You are to produce the materials in your possession, custody, or control listed below

1   All documents related to the initiation of the Yale Hemorrhagic Stroke Project (hereinafter "HSP")

2   All documents related to the organizational structure of persons involved in the HSP

3   All documents relating to the study personnel's experience and credentials (including but not limited to the curriculum vitae of each professional who participated in the study)

4   All medical literature and case reports that were considered, reviewed, relied upon, and/or utilized in any manner by you or by any investigator or other personnel involved in the HSP from the inception of the HSP until its publication in the New England Journal of Medicine

5   All documents related to the Protocol for the HSP including, but not limited to

a) all documents related to the creation or development of the Protocol,

b) all documents related to the estimation of the sample size, including MRI market research data,

c) all documents related to or containing communications with anyone regarding the Protocol,

d) all documents related to comments, revisions, or modifications to the Protocol, and

e) all drafts of the protocol

6    All documents related to obtaining Institutional Review Board Approval of the HSP

7    All documents related to the conduct of the HSP including, but not limited to

a) all documents regarding or concerning the network of participating hospitals,

b) all documents regarding the recruitment of investigators, hospitals, and all persons involved in any way in the HSP,

c) all procedure manuals and all investigator's brochures, and

d) all documents regarding the training of any and all persons involved in the HSP, including but not limited to training manuals, training videotapes, training attendance, identity of trainers, and confirmation of training

8    All documents related to the ascertainment of cases in the HSP including, but not limited to, all documents regarding

a) the active surveillance program,

b) the surveillance team,

c) the case definition,

d) methods of case ascertainment, and

e) exclusion criteria

9    All documents related to the selection of controls in the HSP including, but not limited to, all documents regarding the use of random digit dialing and all documents concerning telephone numbers that did not result in an eligible person or control

10   All documents related to data collection and processing in the HSP including, but not limited to

a) all data collection forms,

b) all interview data forms,

2

c) training manuals for interviewers,

d) data logs regarding cases and controls,

e) all case identification forms,

f) all potential control forms,

g) all log-in records,

h) all data editing, coding and validation manuals,

i) all screening questionnaires,

j) all documents and records reviewed by a panel of stroke neurologists involved in the determination of whether eligibility criteria were met,

k) all documents and records reviewed or generated by study physicians,

l) all documents and records, including logs, regarding stroke patients rejected as not meeting eligibility criteria,

m) all medical records and scans (e g , CT, MRI, MRA, angiogram, etc ),

n) all documents regarding scheduling of interviews and collection of information from all study participants,

o) all product identification books, photographs, and charts,

p) all drug containers and drug labels furnished by study participants,

q) all documents related to observations of interviews,

r) all documents related to the assignment of interviewers,

s) all documents related to surrogate/proxy interviews,

t) all documents related to the use or handling of data or information obtained from surrogate/proxy interviews,

u) all data abstraction forms,

v) all coding forms,

w) all documents related to codes, including their definition,

2

x) all documents relating to the monitoring of sample size,

y) all documents related to modification of any aspect of the HSP,

z) every participating subject's folder and all contents of the folder,

aa) all audio tapes of interviews of study subjects,

bb) all financial reports, and

cc) all documents regarding the disbursement of funds

11    All documents regarding the proxy respondent sub-study

12    All documents regarding communications concerning the HSP including, but not limited to, all documents regarding communications

a) between persons participating in the conduct of the HSP (For purposes of this Item 12, "conduct" is defined to including without limitation the design of the HSP, analysis of data, variations of or amendments to the HSP protocol variations, and the drafting or revision of abstracts, summaries, manuscripts and/or submissions relating to the HSP),

b) between anyone involved in the conduct of the HSP and any other person or organization including, but not limited to, yourself, the Food and Drug Administration, the Nonprescription Drug Manufacturers Association, the Consumer Healthcare Products Association, any member of the Scientific Advisory Group, pharmaceutical companies, and/or any of their current or former employees, members or representatives,

c) between anyone involved in the conduct of the HSP and any person claiming injury from use of PPA-containing medication,

d) with physician investigators,

e) with participating hospitals including, but not limited to, communications with the surveillance officers and the admissions offices at the participating hospitals,

f) with the Principal Investigator at each participating study site,

g) with each case's physician,

A

h) with any medical or scientific journals including, without limitation. the <u>New England Journal of Medicine</u>,

i) with any physicians, epidemiologists, statisticians, or other professionals asked by any person or entity (including, but not limited to, the <u>New England Journal of Medicine</u>) to conduct a peer review of the study and its results,

j) between HSP investigators and any member of the Scientific Advisory Group,

k) between HSP investigators and the <u>New England Journal of Medicine</u>, and

l) with any other person at any of the participating institutions

13  All documents related to the Scientific Advisory Group including, but not limited to, communications, reports, site visits, and travel expenses

14  All documents regarding the handling, calculations, or use of any and all data obtained regarding the HSP including, but not limited to

a) all electronic analysis files,

b) all documents related to interim data analysis,

c) all final analysis files, and

d) all data access logs,

e) all database dictionary files,

f) all data collection instruments,

g) all databases constructed from the questionnaires,

h) all databases for each intermediate and final analysis that relates to the Final Report and the <u>New England Journal of Medicine</u> article,

i) all analyses not included in the Final Report or the <u>New England Journal of Medicine</u> Article,

j) all analyses done after receipt of comments from or on behalf of CHPA or any predecessor organization of CHPA,

k) all documents concerning the use of and/or difference between data analysis via a one-tailed or two-tailed statistical test,

l) all documents concerning the adjustment of variables and analyses used for the adjustment of variables

15    All documents regarding the Final Report of the HSP and its preparation including, but not limited to, all communications, comments and drafts

16    All documents regarding the publication of the HSP in the New England Journal of Medicine, including but not limited to correspondence dated after publication of the HSP in the New England Journal of Medicine

17    All documents evidencing revisions, changes, additions, or deletions made to the Final Report of the HSP (and/or the data contained in that report) prior to the publication of the study's results in the New England Journal of Medicine

18    All documents regarding conferences, discussions, or meetings with FDA regarding the HSP, including, without limitation, documents concerning preparations for October 19, 2000 hearing

19    All documents relating to any comments about, or criticisms of, The HSP from any source including, without limitations, letters to the editor concerning the HSP

20    All documents regarding the Authors' Reply published in the April 5, 2001 New England Journal of Medicine including, but not limited to, all data analyses and communications with anyone after publication

21    All documents relating to the removal or refiling of any document responsive to any of the above categories



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP 23  PM 3 52

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO 02-2436 |
| VERSUS | * | |
| | * | SECTION N |
| BAYER CORPORATION, NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION, | * | MAGISTRATE 5 |
| NOVARTIS CONSUMER HEALTH, INC , | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE, SMOOTHIE KING | * | |
| CO , INC , SMOOTHIE KING SYSTEMS, | * | |
| INC , and WALGREEN LOUISIANA CO , | * | |
| INC (D/B/A "WALGREENS") | | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## BAYER CORPORATION'S MOTION FOR TEMPORARY STAY OF PROCEEDINGS PENDING A FINAL RULING OF THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION ON TRANSFER OF THIS CASE TO MDL-1407

For the reasons detailed in the attached memorandum in support and those cited

by this Curt in other cases involving Phenylpropanolamine (PPA), Bayer Corporation

moves this Court to temporarily stay all proceedings in this matter pending a final ruling

of the Judicial Panel on Multidistrict Litigation on transfer of this case to MDL-1407  A stay

will further the goals of judicial efficiency and consistency by avoiding duplicative

Fee_____
Process_____
X  Dktd_____
CtRmDep_____
Doc No_____

proceedings and conflicting pretrial rulings  Further, it will not prejudice the parties, but

rather will benefit both them and the Court

Respectfully submitted,

_____

Mary L. Meyer (19966)
John F  Olinde (1515)
Charles P  Blanchard (18798)
**CHAFFE, MCCALL, PHILLIPS,
   TOLER & SARPY, L.L.P.**
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2300
Telephone:  (504) 585-7000
**Attorneys for Bayer Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all

counsel of record by hand or by depositing same in the United States Mail, postage

prepaid, this 23rd day of _Semener_, 2002

_____

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B  DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO  02-2436 |
| VERSUS | * | |
| | * | SECTION N |
| BAYER CORPORATION, NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION, | * | MAGISTRATE 5 |
| NOVARTIS CONSUMER HEALTH, INC , | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE; SMOOTHIE KING | * | |
| CO , INC , SMOOTHIE KING SYSTEMS, | * | |
| INC , and WALGREEN LOUISIANA CO , | * | |
| INC  (D/B/A "WALGREENS") | | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

**BAYER CORPORATION'S MEMORANDUM IN
SUPPORT OF MOTION FOR TEMPORARY STAY OF
PROCEEDINGS PENDING A FINAL RULING OF THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION ON TRANSFER OF THIS CASE TO MDL-1407**

<u>Background</u>

This is a product liability action involving Phenylpropanolamine (PPA), a substance

formerly found in various nasal decongestant products   The Defendants removed this

action from a Louisiana state court.

578131_1 DOC

On August 28, 2001, the Judicial Panel on Multidistrict Litigation (the "Panel") issued an order consolidating 14 similar actions involving PPA in the Western District of Washington pursuant to 28 U S C § 1407  *See In re Phenylpropanolamine (PPA) Prods Liab Litig*, Transfer Order, MDL No 1407, August 28, 2001  The Panel has since issued numerous Transfer Orders conditionally transferring hundreds of other cases involving PPA to the Western District of Washington  Many of those conditional transfers have become final

This Court and most other divisions in federal courts throughout Louisiana have stayed other similarly situated PPA cases, including cases where plaintiffs have moved to remand to state court. *See, e g , Gasper v Bayer Corp , et al*, No 02-808 (E D La Apr 10, 2002) (Engelhardt, J ) (copy attached as **Exhibit A**), *Christy v Bayer Corp , et al*, No 02-577 (E D La March 27, 2002) (Engelhardt, J ) (attached as **Exhibit B**), and *Benjamin v Bayer Corp., et al*, No 02-886 (E D La May 16, 2002) (Vance, J ) (attached as Part of **Exhibit C**)  Because a stay will promote judicial efficiency, consistency in pre-trial rulings, and convenience to the parties and witnesses, this Court should temporarily stay proceedings in this case until the Panel decides by final order whether this case will be transferred to the MDL proceeding

### Argument

### 1.     A Stay Furthers The Goals Of Judicial Efficiency and Consistency

This Court's authority to stay proceedings is "incidental to the power inherent in *every court to control the disposition of the causes on its docket with economy of time and*

effort for itself, for counsel and for litigants " *Landis v North American Co.*, 299 U S 248, 254, 57 S. Ct 163, 166, 81 L Ed 153 (1936) When a case may be transferred to an existing MDL proceeding, judicial efficiency dictates that the court exercise its authority and stay the action pending the Panel's decision on transfer. *See, e g , Rivers v Walt Disney,* 980 F Supp 1358 (C D Cal 1997) Judicial efficiency results from a stay because if a case is later transferred to an MDL proceeding, the transferor court will have "needlessly expended its energies familiarizing itself with the intricacies of a case that would be heard by another judge [and] any efforts on behalf of     [the transferor] court concerning case management will most likely have to be replicated by the judge that is assigned to handle the consolidated litigation     " *Rivers*, 980 F Supp. at 1360 - 1361 For these reasons, "a majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the Panel because of the judicial resources that are conserved." *Rivers* at 1362

In *Gasper v Bayer Corporation, et al*, No 02-0808 (E D La Apr 10, 2002), a similarly situated PPA case, this Court likewise concluded that "it is in the best interest of the parties and the judicial system to temporarily stay all proceedings in this action" pending the Panel's final ruling on the transfer of the case to MDL 1407 This Court also held that a temporary stay order will not prejudice the parties, because they "will eventually have their respective motions to remand and to dismiss resolved either before the MDL Panel if the transfer is ordered, or before this Court if transfer is denied " *See* **Exhibit A**, attached

In *Christy v Bayer Corp , et al*, No 02-577 (E D La), this Court granted a similar stay pending the Panel's final ruling on transfer    *See* **Exhibit B.**  The Court later denied plaintiffs' motion to lift the stay in that case based on plaintiffs' challenges to the Court's jurisdiction   This Court held that "It remains the opinion of this Court that the issues raised in plaintiff's Motion to Remand     should be determined by the transferee court in the event the matter is transferred to MDL No 1407 "  *See* **Exhibit C**.  Consistent with this Court's prior opinions and the goals of judicial economy and efficiency, an overwhelming majority of other Louisiana federal judges have also issued stay orders in PPA cases, despite pending motions to remand [1]

In fact, plaintiffs' counsel in this case has moved for a stay pending transfer in other PPA cases   For example, in *Barrilleaux v American Home Products Corp , et al*, No 02-170 (E D  La ), plaintiffs' counsel agreed that a stay would "serve both parties and [the] Court" and "would save judicial resources "  *See* Motion attached as **Exhibit D**   While the plaintiff in *Barrilleaux* did not fraudulently join non-diverse parties or seek remand to state court, the goals of efficiency and consistency are best served by a stay even where jurisdictional issues exist   On April 15, 2002, the Judicial Panel on Multidistrict Litigation

---

[1] *See e g , Mercier v Crolino Pharmacy, et al*, No 02-413, (E D La ) (McNamara, J ), *Craft v Whitehall-Robins Health Care, et al*, No 01-3490, (E D La ) (Feldman, J ), *Doreen Martin v Bayer Corporation, et al*, No 01-3477, (E D La ) (Duval, J ), *Garcia v SmithKline Beecham Corp , et al*, No 01-3424, (E D La ) (Beer, J ), *Peterson v Bayer Corp , et al*, No 01-3467 (E D  La  (Fallon, J ), *Victor v Bayer Corp , et al*, No 02-809 (E D  La  (Berrigan, J )  *Gray v Bayer Corporation, et al*, No  01-1761, (W D La ) (Doherty, J ), *Ashley v American Home Products Corporation, et al*, No 02-CV-239, (W D La ) (Payne M J ), *Ford v Whitehall-Robins,* No 02-235, (M D  La ) (Tyson, J ), *Leatherman v Bayer Corporation, et al*, No  02-218 (Brady, J )  However, Judge Lemmon, Judge Lemelle and Judge Barbier have denied similar motions to stay

578131_1 DOC

4

rejected a plaintiff's challenge to federal jurisdiction as grounds for denying transfer to

MDL-1407

> Plaintiffs premise much of their opposition to transfer on their argument that
> federal jurisdiction is lacking in their actions  These parties urge the Panel not
> to order transfer before their motions are resolved by the transferor court  We
> note, however, that remand and other motions, if not resolved in the
> transferor court by the time of Section 1407 transfer, can be presented to and
> decided by the transferee judge  *See, e.g., In re Ivy,* 901 F 2d 7 (2nd Cir 1990),
> *In re Prudential Insurance Company of America Sales Practices Litigation,* 170
> F Supp 2d 1346, 1347-48 (J P M L  2001)

*See* Order attached as **Exhibit E**

Furthermore, because the jurisdictional objections at issue in this case are common

to numerous other PPA cases  Thus, the risk of inconsistent pre-trial rulings exists, likewise

supporting a stay  *See Ivy v. Diamond Shamrock Chem. Co ,* 901 F 2d 7, 9 (2d Cir 1990)

(affirming Panel's rejection of plaintiffs' request that remand motion be decided by

transferor court, holding that "[t]he jurisdictional issue in question is easily capable of

arising in hundreds or even thousands of cases in district courts throughout the nation,"

and that "[c]onsistency as well as economy is thus served" if "the jurisdictional objections

[are] heard and resolved by a single court")

A stay is also appropriate because it is very likely that this case will be finally

transferred to MDL-1407   A tag-along action is transferred to an existing MDL if it shares

common issues of fact with the MDL cases, promotes the convenience of parties and

witnesses, and advances the just and efficient conduct of the actions   *See In re Stirling

Homex Corp. Sec  Litig ,* 442 F Supp 547, 549 (J.P M L  1977), *In re Equity Funding Corp  of Am

Sec  Litig.,* 397 F Supp  884, 884-85 (J P M L  1975)   Plaintiffs' claims and allegations

concerning PPA involve numerous common issues of fact with the cases already part of the MDL

### 2. A Stay Does Not Unduly Prejudice The Plaintiffs

Plaintiffs will not be unduly prejudiced by a temporary stay. If plaintiffs timely oppose transfer, the Panel will address plaintiffs' objections at its next appropriate session *See* R P J P M L 7 4(d)  The delay will likely be brief and does not warrant denying Bayer's requested stay

Moreover, any potential prejudice from a short delay is far outweighed by the benefits of issuing a stay that promotes judicial efficiency and avoids inconsistent results  A stay would be limited to the brief period until the Panel decides whether to transfer and consolidate the instant action in MDL-1407  At that point, the plaintiffs may proceed in the Western District of Washington if the transfer is ordered, or in this Court if the transfer is denied  Under these circumstances, the benefits of a temporary stay minimize and outweigh any potential prejudice to the plaintiffs  *See, e.g., Weinke v Microsoft Corp.*, 84 F Supp 2d 989, 990 (W D Wis 2000) (rejecting plaintiff's assertions that a stay pending resolution of transfer issues would result in a "prolonged delay" and holding that plaintiff's "cursory assertions of prejudice do not outweigh the disadvantages of litigating identical claims in a multitude of venues  . [and] in light of the pending MDL ruling on transfer  this action should be stayed in the interest of judicial economy and to avoid inconsistent results ")

In contrast, Bayer will be substantially prejudiced if the Court denies the stay. A temporary stay will prevent the Bayer from incurring the unnecessary expense of engaging in duplicative pretrial proceedings. The potential for duplicative pretrial motions and jurisdictional objections represents the sort of "hardship and inequity" that courts consider when deciding a motion to stay. *See Aikins v. Microsoft Corp.*, 2000 WL 310391 at *2 (E.D. La. March 24, 2000) (finding a stay was appropriate to avoid "considerable hardship and inequity" to a defendant faced with multiple suits, many with similar jurisdictional objections, in multiple courts). This sort of duplicative pretrial activity is exactly what the MDL proceeding in this case is designed to prevent. *See* MDL Transfer Order at p. 2.

## Conclusion

For the foregoing reasons, this Court should grant Bayer's Motion for Temporary Stay of Proceedings Pending a Final Ruling of the Panel on Transfer of this Case to MDL-1407 and stay all pretrial proceedings, including, but not limited to, a stay of all hearings, disclosures, and deadlines established by the Federal Rules of Civil Procedure and Local Rules of this Court.

Respectfully submitted,

_____

Mary L. Meyer, Esq. (19966)
John F. Olinde (1515)
Charles P. Blanchard (18798)
**CHAFFE, MCCALL, PHILLIPS,**
   **TOLER & SARPY, L.L.P.**
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2300
Telephone (504) 585-7000
**Attorneys for Bayer Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all

counsel of record by hand or by depositing same in the United States Mail, postage

prepaid, this _____ day of _____, 2002

FILED
U S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 APR 10  AM 10: 35

LORETTA G. WHYTE
CLERK

MINUTE ENTRY
ENGELHARDT, J.
APRIL 9, 2002

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CAROL GASPAR                                          CIVIL ACTION

VERSUS                                               NO 02-0808

BAYER CORPORATION, ET AL                             SECTION "N"

Given the nature of the issues raised in the pending motions set for hearing in this case, the Court is of the opinion that it is in the best interest of the parties and the judicial system to temporarily stay all proceedings in this action pending a final ruling of the Judicial Panel on Multidistrict Litigation on Transfer to MDL-1407 -- In re Phenylpropanolamine (PPA) Products Liability Litigation. Neither the plaintiff nor the defendants are not prejudiced by this stay because the companies can bring their objections to transfer before the MDL Panel, and because the stay will only remain in effect until the MDL panel rules on the transfer  Plaintiff and the defendants, Bayer Corporation and Chattem, Inc., will eventually have their respective motions to remand and to dismiss resolved either before the MDL Panel if the transfer is ordered, or before this Court if transfer is denied  This order shall not prejudice the rights of the parties to this litigation. Accordingly,

IT IS ORDERED that the captioned matter is TEMPORARILY STAYED pending the final ruling of the Judicial Panel on Multidistrict Litigation on Transfer to MDL-1407

UNITED STATES DISTRICT JUDGE

DATE OF ENTRY

APR 1 0 2002

EXHIBIT

A

Fee____
Process__
X_Dktd___
CtRmDep__
Doc.No.___



FILED
U S DISTRICT COURT
EASTERN DISTRICT OF LA

2002 MAR 27 PM 4: 25

LORETTA G. WHYTE
CLERK

MINUTE ENTRY
ENGELHARDT, J
MARCH 27, 2002

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

RONALD CHRISTY                                    CIVIL ACTION

VERSUS                                            NO 02-0577

BAYER CORPORATION, ET AL                          SECTION "N"

Given the nature of the issues raised in the pending motion to dismiss and motion to remand presently set for hearing in this case, the Court is of the opinion that it is in the best interest of the parties and the judicial system to temporarily stay all proceedings in this action pending a final ruling of the Judicial Panel on Multidistrict Litigation on Transfer to MDL-1407 – In re Phenylpropanolamine (PPA) Products Liability Litigation  The defendant Bayer Corporation is not prejudiced by this stay because the company can bring its objections to transfer before the MDL Panel, and because the stay will remain in effect only until the MDL panel rules on the transfer  Defendant Bayer Corporation eventually will have its Motion to Dismiss resolved and plaintiff will have his Motion to Remand resolved either before the MDL Panel, if the transfer is ordered, or before this Court if the transfer is denied  This order shall not prejudice the rights of the parties to this litigation  Accordingly,



DATE OF ENTRY
MAR 2 8 2002

EXHIBIT
B

Fee_____
Process_____
X Dktd _____
CtRmDep_____
Doc No._____

IT IS ORDERED that the captioned matter is TEMPORARILY STAYED pending the

final ruling of the Judicial Panel on Multidistrict Litigation on Transfer to MDL-1407

UNITED STATES DISTRICT JUDGE

2



U S DISTRICT COURT
EASTERN DISTRICT OF LA

2002 MAY 21  PH 1: 27

LORETTA G. WHYTE
CLERK

MINUTE ENTRY
ENGELHARDT, J
MAY 20, 2002

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

RONALD CHRISTY                                    CIVIL ACTION

VERSUS                                            NO 02-0577

BAYER CORPORATION, ET AL                          SECTION "N"


Considering Plaintiff's Motion to Lift Stay, Re-Open Case, for Costs, Attorney

Fees, and for Issuance of Rule 11 Sanctions, presently set for hearing at 9 30 a m  on May 29,

2002, **IT IS ORDERED** that the motion is **DENIED**, based on the reasoning set out in *Benjamin*

*v Bayer Corp* , No  02-0886 (E D. La May 16, 2002) (Vance, J ), a copy of which is attached

hereto   It remains the opinion of this Court that the issues raised in plaintiff's Motion to

Remand, including plaintiff's request for costs and Rule 11 sanctions, should be determined by

the transferee court in the event this matter is transferred to MDL No. 1407


KURT D ENGELHARDT
UNITED STATES DISTRICT JUDGE

DATE OF ENTRY

MAY 2 2 2002

**EXHIBIT**
C



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 MAY 16 PM 3: 15

LORETTA G WHYTE
CLERK

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KATHERINE BENJAMIN** | **CIVIL ACTION** |
| **VERSUS** | **NO: 02-0886** |
| **BAYER CORPORATION, ET AL.** | **SECTION: "R"** |

### ORDER AND REASONS

Before the Court is defendants' motion for a stay.  For the
following reasons, the Court grants the motion.

### I.   BACKGROUND

On November 7, 2001, Katherine Benjamin filed a petition for
damages in state court against the Bayer Corporation, Glaxo
Smithkline PLC, Bristol-Meyers Production Division, Chattem,
Inc., Walgreen Louisiana Company, Inc. (d/b/a Walgreens), and K&B
of Louisiana Corporation (d/b/a "Rite Aid").  Plaintiff seeks
damages for injuries she allegedly sustained as a result of
ingesting Alka-Seltzer Plus Cold Medicine, Comtrex, Contac 12-
Hour, and Dexatrim, four over-the-counter medications that

DATE OF ENTRY
MAY 1 6 2002

Process
Dktd
C-RmDep
Doc No

contain Phenylpropanolamine (PPA). Defendants removed the case
to this Court on March 25, 2002, invoking the Court's diversity
jurisdiction. Defendants move to stay all proceedings pending
transfer by the Judicial Panel on Multidistrict Litigation.
Defendants maintain that a stay is appropriate pending a
determination by the MDL on whether to transfer the case to the
Western District of Washington because it will conserve judicial
resources, and it will avoid the risk of inconsistent pre-trial
rulings. In opposition to defendants' motion, plaintiff contends
that this Court is better suited to rule on the issues of
Louisiana law implicated in plaintiff's complaint and in
plaintiff's pending motion to remand. Plaintiff also contends
that a stay will delay the matter and cause her unnecessary
expense

## II. DISCUSSION

"The pendency of the transfer order does not in any way
defeat or limit the authority of this Court to rule upon matters
properly presented to it for decision." *Calvin Boudreaux v.*
*Metropolitan Life Ins. Co.*, 1995 WL 83788, *1 (E.D. La.
1995)(*citing In re Air Crash at Paris, France*, 376 F.Supp. 887
(JPML 1974)). The decision whether to stay proceedings is
discretionary, and the exercise of discretion is guided by the
policies of justice and efficiency. *Id.*

2

Judicial economy would be served by a stay pending the transfer if the issues involved in the remand motion are likely to arise in the cases that have been or will be transferred to the Western District of Washington. *In re Ivy*, 901 F.2d 7, 9 (2d Cir 1990). The transferee judge "certainly has the power to determine the question of remand," and if the remand issues are common to many of the PPA cases, decisions by the transferee judge would avoid "duplicative discovery and conflicting pretrial rulings." *Calvin Boudreaux*, 1995 WL 83788 at *2 (*quoting In re Air Crash Disaster at Florida*, 368 F.Supp. 812, 813 (JPML 1973)).

Here, defendants challenge the joinder of the nondiverse defendants, Walgreens and K&B, on a number of grounds. For example, defendants claim that some of plaintiff's Louisiana redhibition claims are time-barred and that even viewing the undisputed facts in the light most favorable to plaintiff, no reasonable basis exists under which plaintiff could prevail against the nondiverse defendants. As Magistrate Judge Kirk noted in a ruling on a motion to stay in a PPA case in the Western District of Louisiana, there are numerous cases in districts throughout Louisiana alleging damages as a result of the ingestion of PPA in which the plaintiffs assert Louisiana redhibition claims against nondiverse retail sellers. *See* Bayer's Ex. N, *James Bowman v. Bayer Corporation, et al.*, No. 01-

3

1802-A, at 2   Additionally, a number of cases involving PPA have been consolidated and transferred to the Western District of Washington, including a case out of the Western District of Louisiana, and many other Louisiana cases have been conditionally transferred and await a final ruling.   See Bayer's Ex  B, In re Phenylpropanolamine (PPA) Products Liability Litigation, Transfer Order, MDL No. 1407, August 28, 2001.   The Court finds that because the issues involved in this remand are likely to be common to other transferred cases, the policies of efficiency and consistency of pre-trial rulings are furthered by a stay of the proceedings in this Court pending a decision on the transfer of this case to the MDL

III. Conclusion

For the foregoing reasons, the Court GRANTS defendants' motion for a stay of the proceedings.

New Orleans, Louisiana, this 16th day of May, 2002.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

4



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 FEB -7  A 11: 44

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

* * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| **COLIN BARRILLEAUX, ET AL** | * | **CIVIL ACTION** |
| | * | **NO. 02-CV-0170** |
| **v.** | * | |
| | * | **SECTION "J"** |
| **AMERICAN HOME PRODUCTS** | * | |
| **CORPORATION, ET AL** | * | **MAGISTRATE: 2** |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

### JOINT MOTION TO STAY PROCEEDINGS

MAY IT PLEASE THE COURT

The above matter is one of several hundred actions, which has been requested to be a "tag-along" action pursuant to MDL-1407 - in re Phenylpropanolamine (PPA) Products Liability Litigation.

As plaintiffs' counsel will not file any objections and/or oppose the tag-along procedures, the MDL Panel will designate the above matter as a tag-along action, and stay the above proceedings.

Plaintiffs' and defense counsel seek to stay the above proceedings, pending this decision from the MDL Panel, as it would serve both parties and this Honorable Court to delay any action

1



EXHIBIT
12

DATE OF ENTRY
FEB - 8 2002

on the above matter, which will be transferred to another jurisdiction in a matter of days, based upon other actions already transferred. As such, the stay will save Judicial Resources, and the parties' time and expenses in responding to said motions

Respectfully submitted,

CLAITOR & LOUPE, L.L.C.

By _____

J. CHANDLER LOUPE, T.A
State Bar No. 19955
2223 Quail Run Drive, Suite G
Baton Rouge, Louisiana 70808
225/767-2222 (Telephone)
225/767-9003 (Facsimile)

**KIRK LAW FIRM**
DANA G KIRK
MI State Bar No. 100188
TX State Bar No. 11057500
4265 San Felipe St., Ste 1400
Houston, TX 77027
713/651-0050 (Telephone)
713/651-0051 (Facsimile)

**CLARK, DEPEW & TRACEY, LTD., L.L.P.**
CLAYTON CLARK
TX State Bar No 04275750
440 Louisiana, Ste. 1600
Houston, TX 77002
713/757-1400 (Telephone)
713/759-1217 (Facsimile)

**J. ROBERT DAVIS, L.L.P.**
J. ROBERT DAVIS
TX State Bar No 00788859
440 Louisiana, Ste. 1600
Houston, TX 77002
713/425-5255 (Telephone)
713/425-5355 (Facsimile)

*ATTORNEYS FOR PLAINTIFFS*

2

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served upon counsel of record by

placing same in the United States mail, properly addressed and postage prepaid

DATED, this 6th day of February, 2002

J. Chandler Loupe

3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
* * * * * * * * * * * * * * * * * * * * * * * *
COLIN BARRILLEAUX, ET AL        *       CIVIL ACTION
                                *       NO. 02-CV-0170
v.                              *
                                *       SECTION "J"
AMERICAN HOME PRODUCTS          *
CORPORATION, ET AL              *       MAGISTRATE: 2
                                *
* * * * * * * * * * * * * * * * * * * * * * * *
```

## O R D E R

Considering the above and foregoing Joint Motion to Stay Proceedings,

IT IS ORDERED that the above proceeding be Stayed pending a decision of the Judicial

Panel on Multidistrict Litigation on whether to Stay and Transfer said action.

New Orleans, Louisiana this _____ day of _____ February _____, 2002.

_____
JUDGE

4

# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge Morey L. Sear
United States District Court
Eastern District of Louisiana

Judge Bruce M. Selya
United States Court of Appeals
First Circuit

Judge Julia Smith Gibbons
United States District Court
Western District of Tennessee

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

**DIRECT REPLY TO:**

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone:  [202] 502-2800
Fax:        [202] 502-2888

http://www.jpml.uscourts.gov

April 15, 2002

RECEIVED
APR 19 2002

## TO INVOLVED COUNSEL

Re:  MDL-1407 -- In re Phenylpropanolamine (PPA) Products Liability Litigation

> *Stephanie L. Horne v. American Home Products, et al.*, W.D. Kentucky, C.A. No. 3:01-631
> *Alejandro Garcia, et al. v. SmithKline Beecham Corp.*, et al., E.D. Louisiana, C.A. No. 2.01-3424
> *Wendell Phillips v. SmithKline Beecham Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3448
> *Kenneth Peterson, et al. v. Bayer Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3467
> *Doreen Martin v. Bayer Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3477
> *Jeanette P. Favorite, et al. v. Bayer Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3478
> *Paula J. Sumling, et al. v. Bayer Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3480
> *Quincy Garrison, et al. v. Whitehall-Robins Healthcare, et al.*, E.D. Louisiana, C.A. No. 2:01-3484
> *Wallace Craft, Sr., et al. v. Whitehall-Robins Healthcare, et al.*, E.D. Louisiana, C.A. No. 2:01-3490
> *Mary Lee, et al. v. Whitehall-Robins Healthcare, et al.*, E.D. Louisiana, C.A. No. 2:01-3522
> *Lydia Dyson v. American Home Products Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3548
> *Denny Vick, etc. v. Novartis Corp., et al.*, S.D. Mississippi, C.A. No. 4:01-329
> *Catherine Uwagboe v. Whitehall-Robins, et al.*, S.D. Mississippi, C.A. No. 5:01-339
> *Freddie L. Alexander v. Bayer Consumer Care, et al.*, S.D. Mississippi, C.A. No. 5:01-340

Dear Counsel:

For your information, I am enclosing a copy of an order filed today by the Judicial Panel on Multidistrict Litigation involving this matter.

Very truly,

Michael J. Beck
Clerk of the Panel

By
Deputy Clerk

Enclosure



JPML Form 34B

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 5 2002

FILED
CLERK'S OFFICE

## DOCKET NO. 1407

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION

*Stephanie L. Horne v. American Home Products, et al.*, W.D. Kentucky, C.A. No. 3:01-631
*Alejandro Garcia, et al. v. SmithKline Beecham Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3424
*Wendell Phillips v. SmithKline Beecham Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3448
*Kenneth Peterson, et al. v. Bayer Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3467
*Doreen Martin v. Bayer Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3477
*Jeanette P. Favorite, et al. v. Bayer Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3478
*Paula J. Sumling, et al. v. Bayer Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3480
*Quincy Garrison, et al. v. Whitehall-Robins Healthcare, et al.*, E.D. Louisiana, C.A. No. 2:01-3484
*Wallace Craft, Sr., et al. v. Whitehall-Robins Healthcare, et al.*, E.D. Louisiana, C.A. No. 2:01-3490
*Mary Lee, et al. v. Whitehall-Robins Healthcare, et al.*, E.D. Louisiana, C.A. No. 2:01-3522
*Lydia Dyson v. American Home Products Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3548
*Denny Vick, etc. v. Novartis Corp., et al.*, S.D. Mississippi, C.A. No. 4:01-329
*Catherine Uwagboe v. Whitehall-Robins, et al.*, S.D. Mississippi, C.A. No. 5:01-339
*Freddie L. Alexander v. Bayer Consumer Care, et al.*, S.D. Mississippi, C.A. No. 5:01-340

## BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, MOREY L. SEAR, BRUCE M. SELYA,* JULIA SMITH GIBBONS, D. LOWELL JENSEN AND J. FREDERICK MOTZ, JUDGES OF THE PANEL

## TRANSFER ORDER

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in fourteen Western District of Kentucky, Eastern District of Louisiana or Southern District of Mississippi actions. These parties move the Panel to vacate its orders conditionally transferring their actions to the Western District of Washington for inclusion in the centralized pretrial proceedings occurring there in this docket before Judge Barbara Jacobs Rothstein. Various defendants in the actions support transfer.

On the basis of the papers filed and hearing session held, the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Western District of Washington, and that transfer of the actions to that district for inclusion in the coordinated or consolidated pretrial proceedings occurring there will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. The Panel is persuaded that transfer of the actions is appropriate for reasons expressed by the Panel in its original order directing

---

*Judge Selya took no part in the decision of this matter.

- 2 -

centralization in this docket. The Panel held that the Western District of Washington was the proper Section 1407 forum for actions brought by persons allegedly injured by products containing Phenylpropanolamine – a substance which, until it recently became the subject of a public health advisory issued by the Food and Drug Administration, was used as an ingredient in many nasal decongestants and weight control products. *See In re Phenylpropanolamine (PPA) Products Liability Litigation*, 173 F.Supp.2d 1377 (J.P.M.L. 2001).

Plaintiffs premise much of their opposition to transfer on their argument that federal jurisdiction is lacking in their actions. These parties urge the Panel not to order transfer before their motions are resolved by the transferor court. We note, however, that remand and other motions, if not resolved in the transferor court by the time of Section 1407 transfer, can be presented to and decided by the transferee judge. *See, e.g., In re Ivy*, 901 F.2d 7 (2nd Cir. 1990); *In re Prudential Insurance Company of America Sales Practices Litigation*, 170 F.Supp.2d 1346, 1347-48 (J.P.M.L. 2001).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these fourteen actions are transferred to the Western District of Washington and, with the consent of that court, assigned to the Honorable Barbara Jacobs Rothstein for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO 02-2436 |
| VERSUS | * | |
| | * | SECTION N |
| BAYER CORPORATION, NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION, | * | MAGISTRATE 5 |
| NOVARTIS CONSUMER HEALTH, INC , | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE, SMOOTHIE KING | * | |
| CO , INC , SMOOTHIE KING SYSTEMS, | * | |
| INC , and WALGREEN LOUISIANA CO , | * | |
| INC  (D/B/A "WALGREENS") | | |

* * * * * * * * * * * * * * * * * * * * * * * *

## NOTICE OF HEARING

PLEASE TAKE NOTICE that Bayer Corporation, will bring on for hearing on October 16, 2002, at 9 30 a m  before Judge Kurt D  Engelhardt at the United States District Courthouse for the Eastern District of Louisiana, 500 Camp Street, New Orleans, Louisiana 70130, the accompanying Motion for Temporary Stay of Proceedings Pending a Final Ruling of the Judicial Panel on Multidistrict Litigation on Transfer of This Case to MDL-1407

578131_1 DOC

Respectfully submitted,

Mary L Meyer (19966)
John F Olinde (1515)
Charles P Blanchard (18798)
**CHAFFE, MCCALL, PHILLIPS,**
    **TOLER & SARPY, L.L.P.**
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2300
Telephone  (504) 585-7000
**Attorneys for Bayer Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all

counsel of record by depositing same in the United States Mail, postage prepaid, this 2 3ᵈ

day of _____ September, 2002





CASE.       2·02-cv-02436/P
DOCUMENT: 26
DATE       09/27/02

CLERK:     tbl

*** There will be no noticing for this document ***

Document scanned by: _27 (TbL)_



U S T STRICT COURT
L STURMER T CT OF LA

2002 SEP 23 PM 3:51

LORETTA G. WHYTE
CLERK

(the unsigned
jac)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

DAPHINE B DONNELLY, and          *    CIVIL ACTION
JEROME DONNELLY, Husband         *
                                 *    NO 02-2436
VERSUS                           *
                                 *    SECTION N
BAYER CORPORATION, NOVARTIS      *
PHARMACEUTICALS CORPORATION,     *    MAGISTRATE 5
NOVARTIS CONSUMER HEALTH, INC ,  *
4LIFE RESEARCH, LC, Successor by *
merger to SHAPERITE, SMOOTHIE KING *
CO , INC , SMOOTHIE KING SYSTEMS, *
INC , and WALGREEN LOUISIANA CO , *
INC (D/B/A "WALGREENS")          *
* * * * * * * * * * * * * * * * * * * * * * * * * * *

## BAYER CORPORATION'S MOTION FOR EXPEDITED HEARING ON MOTION FOR TEMPORARY STAY OF PROCEEDINGS PENDING A FINAL RULING OF THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION ON TRANSFER OF THIS CASE TO MDL-1407

Bayer Corporation hereby moves for an expedited hearing on its Motion for

Temporary Stay of Proceedings Pending Final Ruling of the Judicial Panel on Multidistrict

Litigation on Transfer of this Case to MDL-1407  Bayer Corporation's reasons supporting

this request are contained in the attached memorandum in support

Fee
Process
X Dktd
CkmDep
Do No

Respectfully submitted,

Mary L Meyer (19966)
John F Olinde (1515)
Charles P Blanchard (18798)
**CHAFFE, MCCALL, PHILLIPS,**
**    TOLER & SARPY, L.L.P.**
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2300
Telephone (504) 585-7000
**Attorneys for Bayer Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all

counsel of record by hand or by depositing same in the United States Mail, postage

prepaid, this 31 day of September, 2002.

2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO 02-2436 |
| VERSUS | * | |
| | * | SECTION N |
| BAYER CORPORATION, NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION, | * | MAGISTRATE 5 |
| NOVARTIS CONSUMER HEALTH, INC , | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE, SMOOTHIE KING | * | |
| CO , INC , SMOOTHIE KING SYSTEMS, | * | |
| INC , and WALGREEN LOUISIANA CO , | * | |
| INC (D/B/A "WALGREENS") | | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

**BAYER CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION
FOR EXPEDITED HEARING ON MOTION FOR TEMPORARY STAY OF
PROCEEDINGS PENDING A FINAL RULING OF THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION ON TRANSFER OF THIS CASE TO MDL-1407**

On September 9, 2002, plaintiffs filed their Motion to Remand in this case  Plaintiffs'
motion to remand is set for hearing on October 2, 2002  This Court should not decide
plaintiff's motion until after the Judicial Panel on Multidistrict Litigation determines
whether this case will be transferred to the Western District of Washington as part of
MDL-1407

As explained in Bayer Corporation's ("Bayer") Memorandum in Support of Motion for Temporary Stay, this Court and courts encompassing several divisions of the Eastern District of Louisiana have issued stay orders in PPA cases pending a decision on transfer to the MDL proceeding  *See*  Bayer's Memorandum in Support of Motion for Temporary Stay

A stay of plaintiff's remand motion and all other proceedings in this case pending the Panel's decision on transfer would further the goals of judicial efficiency and consistency by avoiding duplicative proceedings and conflicting pre-trial rulings  If the Panel orders transfer, the MDL Court may decide the remand motion in this case and numerous other similar cases in a consistent manner  If the Panel denies transfer, this Court can then decide the motion to remand  Accordingly, the Court should stay this case, including plaintiff's motion to remand, pending a final order from the Panel on transfer

For the foregoing reasons, as well as those contained in Bayer's Memorandum in Support of its Motion for Temporary Stay filed this date, Bayer requests that this Court set Bayer's Motion for Temporary Stay of Proceedings Pending Final Ruling of the Judicial Panel on Multidistrict Litigation on Transfer of this Case to MDL-1407 for hearing on or before October 2, 2002 so that it may be considered before plaintiff's Motion to Remand

Respectfully submitted,

Mary L Meyer, Esq (19966)
John F Olinde (1515)
Charles P Blanchard (18798)
**CHAFFE, MCCALL, PHILLIPS,**
   **TOLER & SARPY, L.L.P.**
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2300
Telephone (504) 585-7000
**Attorneys for Bayer Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all

counsel of record by hand or by depositing same in the United States Mail, postage

prepaid, this 2nd day of Septomor , 2002

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO 02-2436 |
| VERSUS | * | |
| | * | SECTION N |
| BAYER CORPORATION, NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION, | * | MAGISTRATE 5 |
| NOVARTIS CONSUMER HEALTH, INC , | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE, SMOOTHIE KING | * | |
| CO , INC , SMOOTHIE KING SYSTEMS, | * | |
| INC , and WALGREEN LOUISIANA CO , | * | |
| INC (D/B/A "WALGREENS") | | |

* * * * * * * * * * * * * * * * * * * * * * * *

## O R D E R

Considering Bayer Corporation's Motion for Expedited Hearing on Motion for Temporary Stay of Proceedings Pending Final Ruling of the Judicial Panel on Multidistrict Litigation on Transfer of this Case to MDL-1407

**IT IS ORDERED** that Bayer Corporation's Motion for Temporary Stay of Proceedings Pending Final Ruling of the Judicial Panel on Multidistrict Litigation on Transfer of this Case to MDL-1407 is set for hearing on the _____ day of _____, 2002 at _____

578138_1 DOC

New Orleans, Louisiana this _____ day of _____, 2002

_____
UNITED STATES DISTRICT JUDGE





```
CASE       2 02-cv-02436/P
DOCUMENT·  25
DATE:      09/27/02

CLERK:     tbl
```

*** There will be no noticing for this document ***

Document scanned by: ⁊ (TXOL)

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP 24  PM 3: 37

LORETTA G WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE DONNELLY, ET AL | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO  02-CV-02436 |
| | * | |
| BAYER CORPORATION, ET AL | * | JUDGE ENGELHARDT |
| | * | |
| *  *  *  *  *  *  *  *  *  *  *  *  * | | MAGISTRATE JUDGE SHUSHAN |

## RESPONSE IN OPPOSITION TO BAYER CORPORATION'S MOTION FOR TEMPORARY STAY

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Daphine Donnelly and Jerome Donnelly (hereinafter referred to as "Plaintiffs"), who respectfully submit this Response in Opposition to Bayer Corporation's Motion For Temporary Stay of Proceedings

1    Background

Plaintiffs filed this suit in the 34th Judicial District Court against Bayer Corporation, Novartis Pharmaceuticals Corporation, Novartis Consumer Health, Inc , 4Life Research, Successor by merger to Shaperite, Smoothie King Co , Inc , Smoothie King Systems, Inc , and Walgreen Louisiana Co , Inc , d/b/a "Walgreens" for marketing, selling, distributing, and/or manufacturing Shaperite, Alka Seltzer Plus and Tavist-D, all PPA-containing products

Defendants, Novartis Pharmaceuticals Corporation and Novartis Consumer Health, Inc filed a Notice of Removal on August 7th, 2002, and subsequently a Motion to Dismiss for Failure to State a Claim Upon which Relief Can Be Granted on September 6, 2002 Thereafter, Plaintiffs filed a Motion

Fee_____
Process_____
X  Dktd_____
___ CtRmDep_____
Doc No_____

to Remand, Response in Opposition to Defendants' Motions to Dismiss for Failure to State a Claim Upon which Relief Can Be Granted and now file this Response in Opposition to Defendant's Motion to Temporary Stay   Plaintiffs respectfully request that this Court rule on Plaintiff's Motion to Remand and Response to Defendant Novartis Pharmaceuticals Corporation's and Novartis Consumer Health, Inc 's Motions for Dismissal, thus, denying Defendant Bayer Corporation's Motion to Temporary Stay

2    Argument

The case subject to this Response in Opposition to Defendant's Motion was improvidently removed to Federal Court by the manufacturer defendants of products which contained Phenylpropanolamine (hereinafter "PPA")   Plaintiffs responded by filing a Motion to Remand and seek to have the Court rule on this Motion before the case is transferred to the Judicial Panel on Multidistrict Litigation (hereinafter "MDL Panel")   Because the Louisiana Federal Courts lack jurisdiction over the matter, it would be a waste of judicial resources and economy for the MDL Panel to allow the Western District of Washington to preside over the case that belongs in state court   Moreover, Louisiana Federal Courts are well-versed in matters pertaining to Louisiana law and therefore is the forum of choice to decide the issue of remand   As such, Defendant's Motion to Temporary Stay should be denied and this court should rule on Plaintiff's Motion to Remand

This issue is not a novel theory, although not binding to this Court, Judge Lemelle, sitting in the Eastern District of Louisiana, has previously denied such a Motion   In that case, even when a Conditional Transfer Order to the MDL Panel had been filed, Judge Lemelle denied the Motion to Stay, citing Rule 1 5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, finding that the District Court of Louisiana retained jurisdiction to hear all such matters before the case is officially transferred to the MDL Panel pursuant to the rule   (See Andry, et al  v  American

Home Products Corporation, et al., No 02-0173 (Lemelle, J, E D La February 8, 2002) (Exhibit A hereto) Although a Conditional Transfer Order has been filed in this matter, Plaintiffs have opposed such transfer This Court however retains the authority and jurisdiction to deny the Motion to Stay and rule on other maters currently pending before the Court

3    Conclusion

For the foregoing reasons, Plaintiffs pray that Bayer Corporation's Motion to Temporary Stay be denied

Respectfully submitted,

By _Chandler Loupe/gmu_

**J. CHANDLER LOUPE**
**CLAITOR & LOUPE, LLC**
State Bar No 19955
2223 Quail Run Drive, Suite G
Baton Rouge, Louisiana 70808
225/767-2222 (Telephone)
_225/767-9003 (Facsimile)_

**KIRK LAW FIRM**
DANA G KIRK
MS State Bar No 100188
TX State Bar No 11057500
4265 San Felipe St, Ste 1400
Houston, TX 77027
713/651-0050 (Telephone)
713/651-0051 (Facsimile)

**CLARK, DEPEW & TRACEY, LTD., L.L.P.**
CLAYTON CLARK
TX State Bar No 04275750
440 Louisiana, Ste 1600
Houston, TX 77002
713/757-1400 (Telephone)
713/759-1217 (Facsimile)

**J. ROBERT DAVIS, L.L.P.**
J ROBERT DAVIS
TX State Bar No 00788859
440 Louisiana, Ste 1600
Houston, TX 77002
713/425-5255 (Telephone)
713/425-5355 (Facsimile)

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served upon counsel of record by

placing same in the United States mail, properly addressed and postage prepaid

DATED, this 24th day of Sept , 2002

*Chandler Loupe/gmu*

**J. Chandler Loupe**



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 FEB -7  A 11: 44

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATHLEEN ANDRY, ET AL | * | CIVIL ACTION |
| | | NO. 02-CV-0173 |
| | | |
| | | SECTION "B" |
| AMERICAN HOME PRODUCTS | * | |
| CORPORATION, ET AL | | MAGISTRATE· |

### JOINT MOTION TO STAY PROCEEDINGS

MAY IT PLEASE THE COURT

 The above matter is one of several hundred actions, which has been requested to be a

"tag-along" action pursuant to MDL-1407 - in re Phenylpropanolamine (PPA) Products Liability

Litigation

 As plaintiffs' counsel will not file any objections and/or oppose the tag-along procedures,

the MDL Panel will designate the above matter as a tag-along action, and stay the above

proceedings.

 Plaintiffs' and defense counsel seek to stay the above proceedings, pending this decision

from the MDL Panel, as it would serve both parties and this Honorable Court to delay any action

DATE OF ENTRY
FEB 1 3 2002

1





on the above matter, which will be transferred to another jurisdiction in a matter of days, based

upon other actions already transferred   As such, the stay will save Judicial Resources, and the

parties' time and expenses in responding to said motions

Respectfully submitted,

CLAITOR & LOUPE, L.L.C

By

J  CHANDLER LOUPE, T A
State Bar No  19955
3223 Quail Run Drive, Suite G
Baton Rouge, Louisiana 70808
225/767-2222 (Telephone)
225/767-9003 (Facsimile)

KIRK LAW FIRM
DANA G  KIRK
MI State Bar No  100188
TX State Bar No. 11057500
4265 San Felipe St., Ste 1400
Houston, TX 77027
713/651-0050 (Telephone)
713/651-0051 (Facsimile)

CLARK, DEPEW & TRACEY, LTD., L L P.
CLAYTON CLARK
TX State Bar No. 04275750
440 Louisiana, Ste  1600
Houston, TX 77002
713/757-1400 (Telephone)
713/759-1217 (Facsimile)

J. ROBERT DAVIS, L.L.P
J  ROBERT DAVIS
TX State Bar No. 00788859
440 Louisiana, Ste. 1600
Houston, TX 77002
713/425-5255 (Telephone)
713/425-5355 (Facsimile)

*ATTORNEYS FOR PLAINTIFFS*

2

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served upon counsel of record by

placing same in the United States mail, properly addressed and postage prepaid

DATED, this 6th day of February, 2002.

J. Chandler Loupe

3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
* * * * * * * * * * * * * * * - - * - * * * * * *
KATHLEEN ANDRY, ET AL              *         CIVIL ACTION
                                   *         NO. 02-CV-0173
v.                                 *
                                   *         SECTION "B"
AMERICAN HOME PRODUCTS             *
CORPORATION, ET AL                 *         MAGISTRATE
                                   *
* * * * * * * * * * * * * * * * * * * * * * * * * *
```

## ORDER

Considering the above and foregoing Joint Motion to Stay Proceedings,

IT IS ORDERED that the above proceedings be Stayed pending a decision of the Judicial Panel on Multidistrict Litigation on whether to Stay and Transfer said action

New Orleans, Louisiana this _____ day of _____, 2002

_____
JUDGE

4





```
CASE:        2:02-cv-02436/P
DOCUMENT: 24
DATE:        09/24/02

CLERK:       tbl
```

\*\*\* There will be no noticing for this document \*\*\*

Document scanned by: _____

FILED
U S DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP 24  PM 3: 47

LORETTA G WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO 02-2436 |
| VERSUS | * | |
| | * | SECTION N |
| BAYER CORPORATION, NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION, | * | MAGISTRATE 5 |
| NOVARTIS CONSUMER HEALTH, INC , | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE, SMOOTHIE KING | * | |
| CO , INC , SMOOTHIE KING SYSTEMS, | * | |
| INC , and WALGREEN LOUISIANA CO., | * | |
| INC (D/B/A "WALGREENS") | | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## OPPOSITION OF BAYER CORPORATION, NOVARTIS PHARMACEUTICALS CORPORATION, AND NOVARTIS CONSUMER HEALTH, INC TO PLAINTIFFS' MOTION TO REMAND

As Bayer Corporation ("Bayer"), Novartis Pharmaceuticals Corporation, and Novartis Consumer Health, Inc explain in their motion to temporarily stay these proceedings pending transfer of this suit to the MDL-1407 proceeding in the Western District of Washington consolidating numerous cases concerning Phenylpropanolamine ("PPA"), this Court should not address the merits of plaintiffs' remand motion But even if this Court declined to issue a stay, it should deny remand and retain jurisdiction under

28 U.S.C. § 1332    The sole question here is whether Walgreen Louisiana Co., Inc ("Walgreen"), Smoothie King Co., Inc., and Smoothie King Systems, Inc. (collectively "Smoothie King"), the only non-diverse defendants, were fraudulently joined. The record and the law establish fraudulent joinder in this case

## BACKGROUND

Plaintiffs, Daphine and Jerome Donnelly, filed this suit in Louisiana state court to recover personal-injury and loss-of-consortium damages allegedly resulting from Mrs. Donnelly's use of cold and appetite-suppressant medications allegedly containing PPA Bayer, Novartis Pharmaceuticals Corporation, Novartis Consumer Health, Inc., and 4Life Research, LC ("4Life") are alleged to be the manufacturers of the medications    *See* Petition, ¶ 2    Additional defendants are Walgreen and Smoothie King, the "retailer/seller defendants," who allegedly advertised and sold the medications    *See* Petition, ¶¶ 3 and 9    Bayer and removed the action to federal court based on diversity jurisdiction    Plaintiff is a Louisiana citizen    Bayer, Novartis Pharmaceuticals Corporation, Novartis Consumer Health, Inc., and 4Life are companies that are incorporated and have their principal places of business in states other than Louisiana    Walgreen and Smoothie King, though citizens of Louisiana, are fraudulently joined    And the matter in controversy exceeds $75,000    *See* Notice of Removal

Mrs. Donnelly allegedly purchased medications containing PPA at Walgreen's "pharmaceutical/retail store" and Smoothie King's "nutritional/retail store" in Chalmette, Louisiana before ingesting them and suffering a stroke on January 12, 1991    *See* Petition, ¶ 9. Plaintiffs purport to assert claims against Walgreen and Smoothie King

under La Civ. Code arts 2520, *et seq.* for breach of the warranty against redhibitory defects by allegedly failing to notify plaintiffs of the side-effects of the medications despite actual knowledge, under La Civ Code art 2524 for alleged failure to sell a product fit for its ordinary usage, under la Civ Code art 2529 for allegedly delivering products not of the kind or quality specified by the seller, and claims in negligence, "want of care," gross negligence, strict liability, and intentional and willful "conspiracy" with the manufacturers in allegedly concealing the hazardous nature of the over-the-counter medications sold    *See* Petition, ¶ 17, *et seq.*; Memorandum in Support of Motion to Remand, pp 2-3  But plaintiffs cannot prevail on these claims against Walgreen and Smoothie King under Louisiana law.

Significantly, plaintiffs allege that "Pharmaceutical manufacturer defendants failed to alert users, potential users, and retail dealers who would be expected to sell and/or recommend its products, of the hazards associated with said products' usage, and further actively promoted and advertised their products in a manner that suggested the design of their products was safe" (Petition, ¶ 15) (emphasis added)  In light of that allegation, plaintiffs refute their own allegations that the retailer/seller defendants had "actual knowledge" of redhibitory defects, "knew or should have known" of the alleged risk of harm, and intentionally and willfully conspired with the manufacturers to conceal material facts concerning the alleged hazards in the medications

The affidavit of Steve Kuhnau, Chairman of the Board of Directors of Smoothie King, further establishes that Smoothie King first operated a store in Chalmette, Louisiana on February 17, 1992 and operated no other store in that location in the history of its

franchising business    *See* **Exhibit A** attached, ¶ 2-4    Plaintiffs allege that Daphne Donnelly suffered a stroke over a month earlier, on January 12, 1991    *See* Petition, ¶ 10    Under these circumstances, it was impossible that she purchased PPA medication at a Smoothie King "nutritional/retail store located in the City of Chalmette, State of Louisiana" as alleged in the petition

Walgreen's responses to Novartis Consumer Health, Inc's and Bayer's Requests for Admission (**Exhibits B and C** attached) establish that Walgreen did not design, manufacture, test, process, label, package, distribute, sell, market, warrant, promote, represent, or advertise the medications as its own products, did not hold itself out as manufacturer of the medication, and did not exercise or attempt to exercise any control or influence over any characteristic of the design, composition, warnings, warranties, or quality of the medications, which it purchased and sold in unaltered, sealed packages that the manufacturers had labeled and packaged (Response Nos 2-6)    At the time of the alleged sale, Walgreen did not know of or omit to declare any alleged defect in the medications that it sold (Response No 7)    Walgreen neither made nor implied any warranties concerning the testing, safety, effectiveness, or ingredients of the medicines (Response No 8)    At no time before filing suit did plaintiffs give Walgreen notice of any alleged redhibitory defect in the medications allegedly purchased or tendered them to Walgreen for a rescission of the sale and return of the purchase price and expenses of sale (Response No 10).

## LAW AND ARGUMENT

This Court determines removal jurisdiction on the basis of the claims stated in the state-court petition at the time of removal   *Cavallini v. State Farm Mut. Auto. Ins Co*, 44 F 3d 256, 264 (5th Cir 1995)   Conclusory allegations or legal conclusions put forward as factual findings do not establish a cause of action against a non-diverse defendant *Strickland v. Brown Morris Pharmacy, Inc*, 1996 WL 537736, *2 (E.D.La Sept 20, 1996)   "[A] removing party's claim of fraudulent joinder to destroy diversity is viewed similar to a motion for summary judgment"   *LeJeune v Shell Oil Co.*, 950 F 2d 267, 271 (5th Cir 1992) The court can determine "[b]y summary judgment or otherwise" whether joinder is fraudulent   *Keating v. Shell Chemical Co*, 610 F 2d 328, 333 (5th Cir 1980)   "[F]raudulent joinder claims can be resolved by 'piercing the pleadings' and considering summary judgment-type evidence . ."   *Cavallini v. State Farm Mut Auto Ins Co*, 44 F 3d at 263   A plaintiff cannot simply rely on conclusory allegations of the petition in the face of the removing defendant's summary-judgment type evidence showing no reasonable possibility of recovery against the named non-diverse defendant under state law   *See Carriere v. Sears, Roebuck and Co.*, 893 F 2d at 100-102 (even though the petition alleged that the resident co-employee defendants were "substantially certain" that harmful consequences would result from their conduct, the non-diverse defendants' affidavits and depositions demonstrated no possibility of recovery against them on an intentional tort theory under Louisiana law).

## I.   Plaintiffs Have Fraudulently Joined Smoothie King

As explained above, the unrefuted affidavit of Smoothie King's chairman establishes that it did not operate any "nutritional/retail store" in Chalmette, Louisiana

when Mrs. Donnelly allegedly purchased "Shapefast® and suffered a stroke." Thus, plaintiffs have no possibility of recovery against Smoothie King, and it is fraudulently joined

In support of their motion to remand, plaintiffs have no countervailing evidence to dispute Smoothie King's affidavit. Instead, they assert at page 10 of their memorandum "that further discovery is necessary regarding this issue " But a plaintiff cannot support remand by arguing that future discovery may reveal the culpability of the non-diverse defendant, instead, the court looks to the allegations contained in the petition. *Strickland v Brown Morris Pharmacy Inc*, cited above. A transparent attempt to manufacture a factual dispute, or to raise the specter of potential liability arising out of facts that might come forth in discovery, does not deprive the court of its jurisdiction. *See Poulos v. Naas Foods, Inc*, 959 F 2d 69, 74 (7th Cir 1992) ("Although [the removing defendant] bears a heavy burden to establish fraudulent joinder, it need not negate any possible theory that [the plaintiff] might allege in the future; only [the] present allegations count  If [the plaintiff's] theory were right, he could defeat diversity jurisdiction by joining his grandmother as a defendant--surely some set of facts might make her liable ") (Emphasis in original)

## II.    Plaintiffs Have Fraudulently Joined Walgreen

### A.    Plaintiffs have no viable cause of action under Louisiana law against a retail pharmacy

Because Louisiana law limits a pharmacist's liability to filling prescriptions and warning of overdoses, the pharmacy had no duty to warn the plaintiff about possible side

effects [associated with a drug], and there can be no claim against it in either tort or redhibition " *See Williams v Warner-Lambert Co*, No 01-0690 (W.D La. July 27, 2001) (**Exhibit D** attached)  Louisiana law is consistent with the uniform national rule that a pharmacist has no duty to warn its customers about potential hazards or side-effects of prescription drugs. *See Jones v Irvin*, 602 F Supp 399, 400-01 (S D Ill 1985) ("A pharmacist has no duty to warn" about alleged side-effects associated with a prescription drug, and "[t]here is no conflict of authority as to the duty required of a druggist in his dealing with his customers "). *See also In re Rezulin Products Liability Litigation*, 133 F Supp 2d 272, 289 and n. 55 (S.D N Y 2001) (exhaustively surveying the jurisprudence, citing cases from several states, and concluding that plaintiffs had no reasonable possibility of recovery against the pharmacist under Louisiana law).

    To date, in 26 PPA cases removed from Louisiana state courts, including *Perksin v Bayer Corporation*, No. C01-2023R (W D Wash  Feb. 26, 2002), Judge Rothstein, the presiding judge in MDL-1407, has denied motions to remand, upon finding fraudulent joinder of the non-diverse drug stores who had allegedly sold the over-the-counter medications  *See* **Exhibit E**  *See also* list of cases in Bayer's Memorandum in Support of Motion for Temporary Stay  Rejecting the plaintiff's arguments that he had viable causes of action in redhibition and negligence, the *Perksin* court correctly recognized that he had provided no factual support for his conclusory allegations that the defendant retail pharmacy, K&B/Rite Aid, had known of potential dangers in the medication  *Id*  at 5-6  K&B/Rite Aid's responses to requests for admissions had pierced the pleadings with evidence that it had no control over the pre-packaged, sealed medications and had no

knowledge of any potential dangers  *Id* at 6 and 10  The *Perksin* court further observed that remand of the case would prove "inequitable" because "[s]uch a tenuous cause of action based on de minimis recovery should not defeat federal jurisdiction "  *Id* at 6-7

Importantly, citing Louisiana decisions, *supra*, the *Perksin* court recognized that pharmacists have no duties to warn of potential side-effects from prescription drugs or to inspect the medication under Louisiana law  *Id* at 7-8  Whether sounding in tort or contract, plaintiff's alleged causes of action against the retail pharmacy had no reasonable probability of success in a PPA case, even though it involved an over-the-counter medication:

> The limitation on liability for pharmacies logically extends to over-the-counter medications, for which pharmacies have even less direct responsibility.  For example, the court in *Strickland v Brown Morris Pharmacy, Inc* , 1996 WL 537736 (E D La 1996), denied remand in a suit against a pharmacy for the sale of Primatine Mist, a non-prescription medication  The court cited La Civ Code art 2545, the redhibition statute regarding bad faith sellers, and held that the plaintiff had no cause of action against a pharmacy that sold the product in good faith. *See also Sharkey v Sterling Drug, Inc.*, 600 So 2d 701, 715 (La Ct App 1992) (upholding dismissal of redhibition claim against good faith pharmacists who sold nonprescription aspirin), *see also In Re Diet Drugs*, 1998 WL 254976 (E D Pa 1998) (denying remand motion and finding fraudulent joinder of Louisiana pharmacies accused of breach of warranty for good faith sales of nonprescription diet drugs)  Just as in these cases, Walgreen and K&B had no knowledge of potential dangers in the nonprescription medications it sold, and plaintiff cannot pursue a cause of action against the pharmacy
>
> Plaintiff argues that the over-the-counter cases sounded in tort or alleged knowledge by the pharmacist  However, as explained above, Louisiana courts have applied the limitation of liability to contract claims in the prescription drug context  The reasoning applies with even greater force for



> nonprescription medications sold by innocent pharmacists,
> because the pharmacist does not even have a duty to measure
> a nonprescription drug or warn of possible overdose As a
> result, plaintiff's cause of action against K&B has no
> reasonable probability of success whether couched as tort or
> redhibition

*Id* at 8-9 Even if K&B/Rite Aid were not a pharmacist, the *Perksin* court further concluded that the plaintiff's complaint still would fail because any non-manufacturer or seller of a product is liable in tort only if he knew or should have known that the product sold was defective and failed to declare it *Id* at 9-10 The *Perksin* court recognized that K&B/Rite Aid's responses to requests for admission "refute the plaintiff's broad, unsupported assertions that K&B knew of dangers" and that "plaintiff has not alleged facts supporting its allegation that K&B knew or should have known of the dangers . " *Id.* at 10. "[A] plaintiff cannot defeat federal jurisdiction by relying solely on conclusory allegations." *Id.* at 5-6

Furthermore, plaintiffs have no viable claim against Walgreen for allegedly failing to alert Mrs Donnelly of the alleged hazard in the prepackaged and FDA-approved medications it allegedly sold Federal law and FDA regulations specify the required labeling and preempt a failure-to-warn claim under state law against the manufacturer of an FDA-approved over-the-counter cold medication *See Green v BDI Pharmaceuticals*, 803 So 2d 68, 74-75 (La App 2d Cir. 2001) A responsible retailer selling an FDA-regulated medication in a sealed package with an approved label is certainly not required to second-guess the federal agency that regulates the product. Plaintiffs have not alleged and cannot allege that Walgreen sold anything other than medications that the FDA had

approved at the time   Thus, no legal or factual basis exists for their conclusory allegations that Walgreen knew or should have known of the alleged hazard and is liable under Louisiana law for allegedly failing to warn of it

Plaintiff cites *Mosley v. Bayer Corporation, et al*, No  01-3479 (E D La  Jan  29, 2002), a PPA case where the court granted a motion to remand   But, the *Mosley* court concluded that plaintiff's cause of action in redhibition had not necessarily prescribed if the claim were against a bad-faith seller   The court further noted that plaintiff's claims would have prescribed if the defendant were a good-faith seller   The *Mosley* decision, however, did not address the insufficiency of the plaintiff's conclusory allegations that the named retail pharmacy knew or should have known of the alleged defects when the medication was sold   It likewise did not discuss the prerequisites for a "good-faith" redhibition claim or the effect of summary-judgment evidence that pierces the conclusory allegations of the petition

Judge Lemmon's decision granting remand in *St. Amant v  Bayer Corporation*, No  01-3421 (E D La. Mar  5, 2002), likewise does not compel a remand in this case   Citing *Strickland*, Judge Lemmon recognized that the conclusory statement in the petition that the retail pharmacy "knew or should have known" of the alleged defect was insufficient to support a "bad-faith" redhibition claim against the retail pharmacy, because the plaintiff had not alleged any facts demonstrating that the defendant seller actually knew of the defect   Here, plaintiff has alleged no claim against Walgreen as a "good-faith" seller, but rather makes similar conclusory allegations in an attempt to assert causes of action in tort and redhibition that require plaintiff to prove that the retail/seller knew or

Bayer'sOppRemand doc                    10

should have known of the alleged defect  Moreover, like *Mosley*, the *St  Amant* decision does not address the requirements for a "good-faith" redhibition claim or the effect of summary-judgment evidence that pierces the conclusory allegations of the petition  Plaintiff has no possibility of recovery against Walgreen in this case because plaintiff herself alleges that the manufacturing defendants failed to alert the retail dealers about the alleged hazards and because Walgreen has pierced the pleadings with admissions that it had no knowledge of the alleged defect in the prepackaged medications.

In *Coleman v. Bayer Corporation, et al* , No. 02-333 (E.D La  Apr  2, 2002), cited by plaintiffs, Judge Barbier remanded a PPA case upon concluding that the petition stated a claim against Walgreen as a "bad faith" seller  The *Coleman* court noted the plaintiff's allegations and arguments that all of the defendants, including Walgreen, knew or should have known of the allegedly dangerous side-effects of consuming products with PPA  But the *Coleman* court erroneously relied on conclusory allegations that plaintiff's own petition had refuted by alleging that the manufacturer defendants failed to alert the retail dealers about the alleged hazards.    The *Coleman* court likewise did not address Walgreen's responses to requests for admission that pierced plaintiffs' conclusory allegations of its knowledge  The *Coleman* decision thereby reaches a result contrary to *Strickland*, cited above, as well as *Perksin*, **Exhibit E** attached

Equally misplaced is plaintiffs' reliance on *Garner v. Louisiana Housing*, 798 So 2d 295 (La. App. 4 Cir  2001), *Hopper v  Crown*, 560 So 2d 890 (La  App  1 Cir. 1990); and *Ross v. John's Bargain Stores Corp.*, 464 F 2d 111 (5th Cir  1972), cited at pages 8-11 of their memorandum in support of the motion to remand.  *Garner* affirmed rescission of a sale of

a defective motor home where the seller offered no competent evidence to rebut a presumption that he had knowledge of the defects. *Hopper* reversed a summary judgment in favor of a seller of a steel roll-up door, where the seller had failed to properly submit an affidavit to carry his burden of proving that there was no issue of fact as to whether he actually knew that the door would creep down or that the defect was non-apparent  In *Ross*, the Fifth Circuit likewise reversed a summary judgment in favor of a retailer of a flammable nightgown where widespread publicity had been given to the serious problem of flammable nightwear  Unlike the instant case, none of the cited decisions involved the fraudulent joinder of a retail pharmacy selling FDA-regulated medications in sealed packages or the conclusory allegations of a petition pierced by summary-judgment evidence

Plaintiff argues that "the burden of proving fraudulent joinder is a heavy one," citing *Crowe v  Coleman*, 113 F 3d 1536, 1538 (11th Cir  1997) and *B., Inc  v  Miller Brewing Co.*, 663 F 2d 545, 550 (5th Cir  1981)  Importantly, the *B., Inc.* case focuses "on the facts alleged by the plaintiff "  Moreover, the removing defendant can pierce conclusory allegations in the petition through summary-judgment type evidence. *Cavallini v  State Farm Mut  Auto  Ins  Co.*, 44 F 3d at 264  Furthermore, the Fifth Circuit has expressly rejected the contention "that any mere theoretical possibility of recovery under local law--no matter how remote or fanciful--suffices to preclude removal "  *Badon v  RJR Nabisco, Inc ,* 236 F 3d 282, 286, n  4 (5th Cir  2000)  The Fifth Circuit requires "a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder "  *Id.* (emphasis in original)  No reasonable basis exists for recovery

against Walgreen in this case based on the conclusory allegations of the petition that Walgreen's responses pierce and refute.

**B.    Plaintiff has no viable redhibition and breach-of-implied-warranty claims against Walgreen under Louisiana law**

Plaintiffs argue that the retailer/seller defendants "knew or had reason to know" of the alleged "adverse effects of the PPA containing products" they sold and that they are liable for alleged breach of the warranty against redhibitory defects, failure to deliver a product of the kind specified by the seller, and failure to sell a product fit for its ordinary usage  But plaintiffs have neither alleged the necessary elements of such claims nor sought the type of damages recoverable against them    Furthermore, Walgreen's responses to Bayer's requests for admission pierce the conclusory allegations of the petition

**1.    Plaintiffs' redhibition/breach-of-implied warranty claims against Walgreen are time-barred**

Plaintiff, Daphine Donnelly, allegedly suffered a stroke "[o]n January 12, 1991," after allegedly ingesting PPA-containing medications purchased from Walgreen (Petition, ¶ 10)  Although plaintiffs do not specify the dates of purchase before then, they did not file this suit until July 2, 2002--more than four years after Mrs. Donnelly allegedly ingested and sustaining her injuries  Her alleged claims in redhibition/breach of warranty against Walgreen are time-barred

Under former La  Civ  Code art  2534, an action in redhibition against a seller without knowledge of a defect "must be instituted within a year, at the farthest, commencing from the date of the sale "  Under former La  Civ  Code art. 2546, an action

against a seller who knew of the vice and neglected to declare it to the purchaser had to be filed within a year of the discovery of the vice  Effective January 1, 1995, Article 2534 was amended to provide for a four-year prescriptive period for a claim against a good-faith seller

> A. (1)  The action for redhibition against a seller who did not know of the existence of a defect in the thing sold prescribes in four years from the day delivery of such thing was made to the buyer or one year from the date the defect was discovered by the buyer, whichever occurs first  [Emphasis added].

*DM&M v. Modern Auto Wreckers, Inc.*, 731 So 2d 1007, 1009 (La  App  4th Cir  1999)  Under present La. Civ. Code art  2534(B), an action against a seller who knew of the defect in the thing sold prescribes in one year from the date the buyer discovers the defect  Thus, the discovery rule of *contra non valentem* suspends the running of the one-year prescriptive period against a good-faith seller for up to four years from the date the product was sold  But if four years should pass before the buyer discovers the defect, the plaintiffs' claim against the good faith seller is time-barred, regardless of the plaintiffs' knowledge or lack thereof  Under either former or amended Article 2534, plaintiffs' claims against Walgreen are untimely

Plaintiffs have no basis for recovery against Walgreen on grounds that it is a bad-faith seller who knew of the alleged defect in the thing sold  Plaintiffs negate their own conclusory allegations, and Walgreen pierces the pleadings by admitting that it did not manufacture the medications, that it exercised no control over their design, composition, warnings, warranties, or quality, that it did not know of or omit to declare any alleged characteristics in the prepackaged and sealed medications that it sold, and that it made no

warranties concerning the testing, safety, effectiveness, or ingredients of the medications (Response Nos 2-9)    No presumption exists that this non-manufacturer had such knowledge    *See McGough v Oakwood Mobile Homes, Inc.*, 779 So.2d 793, 802 (La App 2d Cir 2000)    Because Walgreen is a good-faith seller, all alleged redhibition/breach of warranty claims against it are time-barred under La. Civ. Code art 2534, as plaintiffs filed them more than four years after the alleged sales

### 2.    Plaintiffs cannot claim personal-injury and compensatory damages against Walgreen in redhibition/breach of warranty

Redhibition is unavailable in Louisiana as a theory of recovery for personal-injury damages, redhibition is limited to recovery of pecuniary or "economic" loss    *Grenier v Medical Engineering Corp.*, 243 F 3d 200, 206, n 5 (5th Cir 2001), *Jefferson v Lead Industries Ass'n, Inc*, 106 F 3d 1245, 1251 (5th Cir 1997); *Pipitone v Biomatrix, Inc*, 2001 WL 568611, **7-8 (E D La May 22, 2001)    La Civ Code arts 2524 (fitness for ordinary use) and 2529 (thing not of a kind specified) contemplate that the buyer's rights and remedies are governed by the rules of sale and conventional obligations. Under La Civ Code arts 1995 and 1998, the damages for alleged breach of a conventional obligation are economic, not non-pecuniary damages. Plaintiffs therefore have no viable claim in redhibition or breach of implied warranty as a theory of recovery against Walgreen for compensatory personal-injury damages

Plaintiffs alleges that she "has suffered and still suffers serious and grievous injuries as a result of ingesting PPA/ephedrine containing products "    (Petition, ¶ 10) Her alleged injuries include "paralysis to the right side of her body "    *Id*    Plaintiffs assert

that Mrs Donnelly has "sustained physical and mental pain and suffering, loss of income, loss of consortium, loss of enjoyment of life, and other damages to be shown at trial " (Petition, ¶ 12)   Mr Donnelly alleges loss of consortium "as a result of his spouse's debilitating and impaired condition " (Petition, ¶ 13). Although plaintiffs allege a claim for breach of warranty against redhibitory defects, even there, the allegations are that the retailer/seller defendants "failed to give Petitioner notice of the dangerous side-effects" of the medications they sold and "failed to adequately inform the Petitioner of the dangers inherent" in them (Petition, ¶ 16)   When read in the context of the entire petition, plaintiff's purported redhibition and breach-of-warranty claims are nothing more than a restatement of the personal-injury claims, which are not recoverable in an action for redhibition/breach of warranty.

Furthermore, under La Civ Code art. 2520, "The seller warrants the buyer against redhibitory defects, or vices, in the thing sold "  The terms "defects" or "vices" within the meaning of this article contemplate "physical imperfection or deformity, a lacking of a necessary competent or level of quality." *Scogin v Smith*, 612 So 2d 739, 741 (La. App. 1 Cir 1992), *Perksin v Bayer* (**Exhibit E** attached, at 3).   Examples of redhibitory vices include a cracked engine block, termite damage, an inadequate building foundation, and a contaminated Popsicle   *PPG Industries, Inc. v. Industrial Laminates Corp* , 664 F.2d 1332, 1336 (5th Cir 1982).   *See also Lonkowski v. R J Reynolds Tobacco Co* , 1996 WL 888182 (W D La. Dec 10, 1996)   "The existence of such a defect gives a buyer the right to obtain rescission of the sale." La Civ. Code art 2520   Here, plaintiffs do not plead a redhibitory defect or seek rescission within the meaning of Article 2520   Instead, they seek personal-

injury damages because the retailer/seller defendants failed to notify and warn them of side-effects of the medications. Those allegations are essentially that the product was "unreasonably dangerous" under the LPLA, La R S. 9 2800 51, *et seq.* But plaintiffs have not alleged that Walgreen is a "manufacturer "

### 3. Plaintiffs have no viable claim against Walgreen as a seller who knew of the alleged defect

La Civ Code art 2545 provides that "[a] seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the purchase price with interest from the time it was paid, for the reimbursement of reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney's fees " The article further provides that "[a] seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing "

In contrast to a manufacturer's presumed knowledge of the alleged defect and its possible resultant liability as a "bad-faith seller" under Article 2545, a plaintiff must prove that a non-manufacturing seller had knowledge of the alleged defect in order to recover against it under this codal article  *See McGough v. Oakwood Mobile Homes, Inc.*, 779 So 2d 793, 802 (La. App. 2d Cir  2000) ("A seller who is not the manufacturer of the thing is not presumed to have knowledge of the defect, it must be proven that the seller knew of the defect "), *Strickland v  Brown Morris Pharmacy, Inc* , 1996 WL 537736, *2 (E D La  Sept  20, 1996) ("[I]n Louisiana, a non-manufacturer seller of a defective product may be liable for

damages only if he knew or should have known of the dangerous characteristic of the product" (citing *Winchell v. Johnson Properties, Inc.*, 640 So 2d 399, 401 (La App 3rd Cir 1994) and La Civ Code art 2545.)), *In Re Diet Drugs*, 1998 WL 254976, *4, n 6 (E D Pa Apr 16, 1998) ("[U]nder Louisiana law, a retailer can be liable to a consumer for breach of an implied warranty only upon showing that the retailer knew or should have known that the product is unwholesome ")

Plaintiffs seek damages and attorney's fees from Walgreen by invoking La Civ Code art 2520, et seq (warranty against redhibitory defects), art. 2524 (failure to sell a product fit for ordinary usage where the buyer relies on the retailer's skill or judgment in selecting the thing), and art 2529 (thing delivered is different from the kind that the contract or the seller represents) (Petition, ¶ 17)  Plaintiffs allege in a conclusory fashion that the retailer/seller defendants "had actual knowledge of the existence of said redhibitory defects at the time of the sale," that they "knew Petitioner's intended usage of the subject over-the-counter medications and knew of Petitioner's reliance on the skill and judgment of retailer/seller defendants in the sale of their over-the-counter medications," and that they "misrepresented" the medications "as being safe for human consumption" and "failed to adequately inform" plaintiff of their alleged inherent dangers  *Id*  But plaintiffs do not allege that they spoke to a Walgreen employee or received anything other than the prepackaged and sealed medication that Mrs Donnelly herself selected and chose to buy  Moreover, plaintiffs completely negate their own allegations by asserting that the "[p]harmaceutical manufacturer defendants failed to alert .  . retail dealers who would be expected to sell and/or recommend its products, of the hazards

associated with said products' usage, and further actively promoted and advertised their products in a manner that suggested the design of their products was safe" (Petition, ¶ 15) Thus, the complaint precludes recovery under Articles 2520, 2524, 2529, and 2545 Conclusory allegations contradicted by other portions of the complaint cannot defeat federal jurisdiction, and they fail to warrant remand  *See Perksin v. Bayer* (**Exhibit E** attached, at 5-6)

Again, Walgreen's responses to requests for admission pierce the conclusory allegations of plaintiffs' petition  *See* **Exhibits A and B** attached  Walgreen admits that it did not manufacture the medications or hold itself out as a manufacturer, that it had no control or influence over any characteristic of the unaltered, prepackaged, and sealed medications that it sold, that it did not know of or omit to declare any alleged defect in the medications, and that it made no warranties concerning the testing, safety, effectiveness, or ingredients of the medicines (Response Nos 2-9)  Thus, plaintiffs have not alleged and cannot establish the necessary elements of a claim against Walgreen under Article 2545 *See Perksin v  Bayer* (**Exhibit E** attached, at 5-6)

At page 4 of their memorandum, plaintiffs assert that "evidence will be exchanged during discovery and likewise be presented during trial which proves that defendants knowingly concealed that its PPA containing products were potentially unsafe for human consumption"  But this Court must look to the petition at the time of removal  Plaintiffs cannot make conclusory allegations and assert that future discovery may show that a fraudulently joined defendant is culpable  *Strickland,* cited above

### 4. Plaintiffs have not alleged a claim against Walgreen under La. Civ. Code art. 2531

La Civ Code art. 2531 provides that a seller who did not know that the thing he sold had a defect is bound to repair, remedy, or correct it.  If a good-faith seller cannot or fails to do so, he may be bound to return the price to the buyer with interest from the time that it was paid and to reimburse the buyer for the reasonable expenses occasioned by the sale, as well as those incurred to preserve the thing less a credit to which the seller is entitled if the buyer made use of the thing or obtained some value from it  Article 2531 is irrelevant to plaintiffs' claims and serves as no reasonable basis for stating a claim against Walgreen

Plaintiffs do not mention La. Civ. Code art  2531 in the complaint or seek relief under it against Walgreen as a good-faith seller  The motion to remand and the petition seek damages and attorney's fees against it only as a "bad-faith" seller who allegedly knew of the alleged defect at the time of sale.  Moreover, under La Civ Code art  2520, "[t]he seller warrants the buyer against redhibitory defects, or vices, in the thing sold" and that "[t]he existence of such a defect gives a buyer the right to obtain rescission of the sale "  Plaintiffs have not pleaded that Walgreen rescind the sale, return the purchase price, and pay for the sale expenses  The prayer contains no paragraph referencing La Civ  Code art. 2531 or seeking such recovery of such special damages, which must be specifically alleged   "Without such basic details, plaintiff is making only conclusory allegations that cannot support remand "  *See Perksin v  Bayer* (**Exhibit E** attached, at 4)

Moreover, even if alleged, such a de minimis claim cannot defeat removal jurisdiction *See Perksin v Bayer* (**Exhibit E** attached, at 6-7)

Furthermore, under La Civ Code art 2522, "[t]he buyer must give the seller notice of the existence of a redhibitory defect in the thing sold " The buyer must "tender" the allegedly defective product by offering to return it to the seller before filing any action in redhibition *See Lindy Investments v Shakertown Corp*, 209 F 3d 802, 805-06 (5th Cir 2000) Under La Civ. Code art 2522, a buyer is not required to give notice when "the seller has actual knowledge of the existence of the redhibitory defect in the thing sold." But Walgreen's responses pierce any conclusory allegations that it had knowledge of any alleged hazard concerning the medications in this case Indeed, as noted above, plaintiffs allege that the manufacturers "failed to alert    . retail dealers who would be expected to sell and/or recommend its products, of the hazards associated with said products' usage.

" (Petition, ¶ 15)

Plaintiffs do not allege that they gave any notice to Walgreen of any alleged redhibitory defect in the medications, that they requested that it return the purchase price, or that they tendered the unused products to it. They have failed to plead and meet the basic prerequisites for a valid cause of action in redhibition or breach of warranty against them under Article 2531 *See Perksin* (**Exhibit E** attached, at 4-5)

### C.    Plaintiffs have no viable tort claim against Walgreen under Louisiana law

Plaintiffs' tort-based claims against Walgreen are not viable under Louisiana law and serve as no grounds for contesting defendants' well-founded removal based on fraudulent joinder    Plaintiffs allege that Walgreen is a non-manufacturing retailer

(Petition, ¶¶ 3 and 17)   "A non-manufacturer seller of a defective product is responsible for damages in tort, only if he knew or should have known that the product sold was defective and failed to declare it"   *LeBleu v Homelite Div. of Textron, Inc* , 509 So.2d 563, 565 (La App 3d Cir 1987), *Perksin v. Bayer* (**Exhibit E** attached, at 9-10). "When a product is in a sealed container or package, a vendor is entitled to reasonably rely on the assumption that the product is not defective" *Barrett v R J Reynolds Co.*, 1999 WL 460778, *2 (E D La. June 29, 1999)   "The non-manufacturer vendor is not required to inspect the product prior to sale to determine the possibility that non-apparent inherent defects might exist." *Picolo v. Flex-A-Bed, Inc* , 466 So 2d 652, 654 (La App 5th Cir ), *writ denied*, 467 So 2d 1134 (La. 1985)   A seller additionally "has no duty to warn or instruct the buyers on proper use" *Strickland v Brown Morris Pharmacy Inc* , 1996 WL 537736, *2

Although a manufacturer of an allegedly defective product is presumed to know of the defect, the manufacturer's knowledge is not imputed to a mere seller under Louisiana law   *Holloway v Gulf Motors, Inc.*, 588 So 2d 1322, 1327 (La. App 2d Cir 1991) (record was devoid of facts to support a conclusion that Gulf was a bad-faith seller, it was merely a retailer, and no evidence existed that Gulf had held out the product as its own), *Barrett v. R.J. Reynolds Co* , 1999 WL 460778, *2 ("A distributor or retailer who did not manufacture, design or alter prior to sale a defective product is not responsible for injury or damages resulting from such product in the absence of a showing that he knew or should have known the product was defective "), *Strickland v Brown Morris Pharmacy, Inc.*, 1996 WL 537736, *3 ("[I]n Louisiana a non-manufacturer seller of a defective product may

be liable for damages only if he knew or should have known of the dangerous characteristic of the product").

Plaintiffs assert at pages 4-5 of their memorandum that fraud may result from inaction or silence  But both federal and Louisiana procedure require a plaintiff to plead allegations of fraud with particularity  Fed.R Civ P  9(b), La Code Civ. P. art 856  The plaintiff must state the "who, what, when, and where" of the fraud  *Williams v  WMX Technology*, 112 F 3d 175, 177-78 (5th Cir. 1995), *cert denied*, 522 U S  966 (1997).  General conclusions of fraud without particular allegations must be disregarded.  *Hardy v. Easy T V  and Appliances of Louisiana*, 804 So 2d 777, 781 (La  App  4 Cir. 2001).  Furthermore, a claim of fraud or intentional misrepresentation cannot be based on mere negligence or a mistake, a knowing and purposeful intent to deceive in order to obtain an unjust advantage is an essential element of the tort  *Bass v. Coupel*, 671 So.2d 344, 347 (La  App  1 Cir. 1995), *writ denied*, 669 So 2d 426 (La  1996).  Even negligent misrepresentation requires that the defendant must owe a duty to supply correct information and breach it.  *Barrie v V P. Exterminators, Inc*, 625 So 2d 1007, 1015 (La. 1993)  Likewise, a civil "conspiracy" is not actionable without an underlying tort that the parties agree to perpetrate and actually commit to bring about an intended outcome or result  La  Civ. Code art  2324, *Johnson v CHL Enterprises*, 115 F.Supp  723, 731 (W D.La  2000), *Butz v  Lynch*, 710 So 2d 1171, 1174 (La. App  1 Cir ), *writ denied*, 721 So 2d 473 (La  1998)

In denying a motion to remand in *Strickland v  Brown Morris Pharmacy, Inc*, cited above, Judge Fallon recognized that a seller has no duty to inspect a product or warn a buyer on its use, that conclusory allegations against the non-manufacturing retailer did

not establish a cause of action, and that the plaintiff did not even allege that the consumer had consulted with or talked to any employee or owner of the pharmacy before purchasing the medication  1996 WL 537736, *2, n3  Here, as in *Strickland*, plaintiffs have alleged no facts to support the contention that Walgreen, a non-manufacturing seller of FDA-regulated medications in sealed packages, knew or should have known of the alleged hazards and warn about them at the time of the alleged sales  Indeed, plaintiffs' own petition refutes any claim of Walgreen's actual or constructive knowledge by alleging that the "[p]harmaceutical manufacturer defendants failed to alert   . retail dealers who would be expected to sell and/or recommend its products, of the hazards associated with said products' usage . . " (Petition, ¶ 14)  In response to the requests for admission, Walgreen establishes that it did not know of or omit to declare any alleged defect in the medications that it sold, and that it neither made nor implied any warranties concerning the testing, safety, effectiveness, or ingredients of the medicines  *See* **Exhibits B and C** (Response Nos  2-9)  Thus, plaintiffs have no viable claim in negligence, want of care, gross negligence, strict liability, fraud, misrepresentation, or conspiracy against Walgreen as a non-manufacturing seller without knowledge of any alleged hazards or side-effects concerning the prepackaged medications

### CONCLUSION

This Court need not address plaintiffs' motion to remand pending a final ruling of the Panel on transfer of the case to MDL-1407.  Alternatively, the remand motion is meritless  Plaintiffs have fraudulently joined Smoothie King and Walgreen  Their citizenships should be disregarded because the petition and the undisputed facts show

that plaintiffs have pleaded no viable cause of action under Louisiana law against those

defendants  This Court has proper diversity jurisdiction over this action, and plaintiffs'

motion to remand should be denied

Respectfully submitted,

Mary L Meyer (La Bar No  19966)
John F Olinde (La. Bar No  1515)
Charles P Blanchard (La Bar No  18798)
**CHAFFE, McCALL, PHILLIPS,**
 **TOLER & SARPY, L.L.P.**
2300 Energy Centre,  1100 Poydras Street
New Orleans, LA  70163-2300
Telephone No  (504) 585-7000
**Attorneys for Bayer Corporation**

Joy G Braun (#3416)
Eric R Nowak (#27025)
Shirin E Harrell (#27495)
**SESSIONS, FISHMAN & NATHAN, L.L.P.**
201 St Charles Avenue, Suite 3500
New Orleans, LA  70170
Telephone  (504) 582-1500
**Attorneys for Novartis Pharmaceuticals**
**Corporation and Novartis Consumer Health,**
**Inc.**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this _____ day of _____ 2002, served a
copy of the foregoing pleading on counsel for all parties to this proceeding, by facsimile
transmission or by mailing the same by United States mail, properly addressed, and first
class postage prepaid

Bayer'sOppRemand doc                                    25



23

# AFFIDAVIT OF STEVE KUHNAU

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified in and for the parish and state set forth above, personally came and appeared.

## STEVE KUHNAU

who, after being duly sworn, deposed and stated the following

1.

I have personal knowledge of the facts set forth in this Affidavit and, if called as a witness, could and would competently testify to the following

2

The Smoothie King store located at 3366 Paris Road, Chalmette, Louisiana is the only store operated in Chalmette, Louisiana and there has been no other store operating in that geographic location in the history of the Smoothie King franchising business.

3

The Franchise Agreement #20 which authorizes this Chalmette, Louisiana location was executed by franchisees on October 9, 1991

4

This Smoothie King store opened on February 17, 1992 at the location of 3366 Paris Road, Chalmette, Louisiana



EXHIBIT

A

WITNESSES

_____

_____

**STEVE KUHNAU**
Chairman, Board of Directors

SWORN TO AND SUBSCRIBED before me, this _26_ day of July, 2002, in New Orleans, Louisiana

_____
Notary Public

H:\DOCS\S\SMOOT\00001\PPA case\Donovan Affidavit.wpd

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B. DONNELLY | * | CIVIL ACTION NO. |
| AND JEROME DONNELLY, HUSBAND | * | 02-2436 |
| | * | |
| VERSUS | * | SECTION " N " |
| | * | |
| BAYER CORPORATION, NOVARTIS | * | MAGISTRATE "1" |
| PHARMACEUTICALS CORP , NOVARTIS | * | |
| CONSUMER HEALTH, INC., 4LIFE RESEARCH, | * | |
| L.C. SUCCESSOR BY MERGER TO SHAPERITE | * | |
| SMOOTHIE KING CO., SMOOTHIE KING | * | |
| SYSTEMS, INC., WALGREEN LOUISIANA | * | |
| COMPANY, INC. (D/B/A "WALGREENS") | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## RESPONSES TO REQUESTS FOR ADMISSION

NOW INTO COURT, through undersigned counsel, comes defendant, Walgreen Louisiana

Company, Inc., who responds to the Request for Admissions of defendant, Novartis Consumer

Health, Inc., as follows:

**Request for Admission No. 1:**

Walgreen operated and operates drug stores in Louisiana under the name "Walgreens."

## RESPONSE TO REQUEST NO. 1:

Admitted.

**Request for Admission No. 2:**

In the State of Louisiana, Walgreens sold Tavist-D® products, manufactured by Novartis

Consumer Health, Inc.

## RESPONSE TO REQUEST NO. 2:

Admitted.

EXHIBIT

tabbies

B

**Request for Admission No. 3:**

At no time did Walgreen design, manufacture, test, process, label, package, distribute, sell,
market, warrant, promote, represent, or advertise Tavist-D® products as its own products or hold
itself out to the public as the manufacturer of Tavist-D® products

### RESPONSE TO REQUEST NO. 3:

Admitted

**Request for Admission No. 4:**

At no time did Walgreen exercise or attempt to exercise any control or influence over any
characteristic of the design, composition, warnings, warranties, or quality of Tavist-D® products.

### RESPONSE TO REQUEST NO. 4:

Admitted.

**Request for Admission No. 5:**

Walgreen purchased for resale all Tavist-D® products in sealed packages that had been
labeled and packaged by the respective manufacturer.

### RESPONSE TO REQUEST NO. 5:

Admitted

**Request for Admission No. 6:**

Walgreen sold Tavist-D® products in the same sealed packages without altering or
repackaging in any manner the contents of the packages.

### RESPONSE TO REQUEST NO. 6:

Admitted

**Request for Admission No. 7:**

Walgreen displayed for sale in its drug stores the Tavist-D® products with other medicines and cold remedies manufactured by companies other than Novartis Consumer Health, Inc

### RESPONSE TO REQUEST NO. 7:

Admitted.

**Request for Admission No. 8:**

Walgreen did not know of, or omit to declare, any problems, dangerous risks, hazards, or facts indicating that the Tavist-D® products that it sold had a defect or were unsafe, hazardous, or harmful in their normal and intended uses

### RESPONSE TO REQUEST NO. 8:

Admitted.

**Request for Admission No. 9:**

Walgreen did not know of, or omit to declare, any characteristic in the Tavist-D® products that it sold that rendered these products unreasonably dangerous for normal use or that rendered these products useless or so inconvenient that it must be presumed that buyers would not have bought these products if they had known of the defect.

### RESPONSE TO REQUEST NO. 9:

Admitted.

**Request for Admission No. 10:**

Walgreen did not know of, nor did it omit to declare, any defect in the Tavist-D® products that it sold

### RESPONSE TO REQUEST NO. 10:

Admitted.

**Request for Admission No. 11:**

Walgreen neither made nor implied any warranties whatsoever concerning the testing, safety, effectiveness, or ingredients of the Tavist-D® products that it sold.

### RESPONSE TO REQUEST NO. 11:

Admitted.

**Request for Admission No. 12:**

At no time prior to filing of suit did the plaintiff(s) in this case give notice to Walgreen of any alleged redhibitory defect in the Tavist-D® products that plaintiff had allegedly purchased from Walgreen.

### RESPONSE TO REQUEST NO. 12:

Admitted

**Request for Admission No. 13:**

At no time prior to filing of suit did plaintiff in this case tender Tavist-D ® products to Walgreen for a rescission of the sale and return of the purchase price and expenses of sale.

### RESPONSE TO REQUEST NO. 13:

Admitted.

Respectfully submitted,

THE TRUITT LAW FIRM
A Limited Liability Company

JACK E. TRUITT, BAR NO. 18476, T.A.
251 Highway 21
Madisonville, Louisiana 70447
Telephone: (985) 792-1062
Facsimile: (985) 792-1065
Email: mail@truittlaw.com
Counsel for Walgreen Louisiana Company, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been duly served on all counsel

of record by depositing same into the U.S. Mail, postage pre-paid, this September 23, 2002, or by

any other means authorized by law.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B. DONNELLY | * | CIVIL ACTION NO. |
| AND JEROME DONNELLY, HUSBAND | * | 02-2436 |
| | * | |
| VERSUS | * | SECTION " N " |
| | * | |
| BAYER CORPORATION, NOVARTIS | * | MAGISTRATE "1" |
| PHARMACEUTICALS CORP , NOVARTIS | * | |
| CONSUMER HEALTH, INC., 4LIFE RESEARCH, | * | |
| L.C SUCCESSOR BY MERGER TO SHAPERITE | * | |
| SMOOTHIE KING CO , SMOOTHIE KING | * | |
| SYSTEMS, INC., WALGREEN LOUISIANA | * | |
| COMPANY, INC (D/B/A "WALGREENS") | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## RESPONSES TO REQUESTS FOR ADMISSION

NOW INTO COURT, through undersigned counsel, comes defendant, Walgreen Louisiana

Company, Inc , who responds to the Request for Admissions of defendant, Bayer Corporation, as

follows:

**Request for Admission No. 1:**

Walgreen sold in the State of Louisiana various Alka Seltzer Plus effervescent medicines

manufactured by Bayer that contained Phenylpropanolamine ("PPA"), including Alka Seltzer Plus

Cold effervescent medicine, Alka Seltzer Plus Cold & Sinus effervescent medicine, Alka Seltzer

Plus Night Time effervescent medicine, Alka Seltzer Plus Cold and Cough effervescent medicine

and Alka Seltzer Plus Cold & Flu effervescent medicine (collectively the "Alka Seltzer Plus

Effervescent Medicines")

## RESPONSE TO REQUEST NO. 1:

Admitted



**EXHIBIT**

C

**Request for Admission No. 2:**

At no time did Walgreen design, manufacture, test, process, label, package, distribute, sell, market, warrant, promote, represent, or advertise Alka Seltzer Plus Effervescent Medicines as its own products, or otherwise hold itself out to the public as a manufacturer of Alka Seltzer Plus Effervescent Medicines

**RESPONSE TO REQUEST NO. 2:**

Admitted

**Request for Admission No. 3:**

At no time did Walgreen exercise or attempt to exercise any control or influence over any characteristic of the design, composition, warnings, warranties, or quality of Alka Seltzer Plus Effervescent Medicines

**RESPONSE TO REQUEST NO. 3:**

Admitted

**Request for Admission No. 4:**

Walgreen purchased for resale all Alka Seltzer Plus Effervescent Medicines in sealed packages, which had been labeled and packaged by the manufacturer.

**RESPONSE TO REQUEST NO. 4:**

Admitted

**Request for Admission No. 5:**

Walgreen sold Alka Seltzer Plus Effervescent Medicines in the same sealed packages without altering or repackaging in any manner the contents of the packages.

**RESPONSE TO REQUEST NO. 5:**

Admitted

**Request for Admission No. 6:**

Walgreen displayed for sale in its drug stores the Alka Seltzer Plus Effervescent Medicines with other manufacturers' over-the-counter drugs and cold remedies

### RESPONSE TO REQUEST NO. 6:

Admitted.

**Request for Admission No. 7:**

Walgreen did not know of or omit to declare any alleged defect in the Alka Seltzer Plus Effervescent Medicines that it sold

### RESPONSE TO REQUEST NO. 7:

Admitted.

**Request for Admission No. 8:**

Walgreen neither made nor implied any warranties whatsoever concerning the testing, safety, effectiveness, or ingredients of the Alka Seltzer Plus Effervescent Medicines.

### RESPONSE TO REQUEST NO. 8:

Admitted

**Request for Admission No. 9:**

At no time prior to filing of suit did the plaintiff(s) in this case give notice to Walgreen of any alleged redhibitory defect in the Alka Seltzer Plus Effervescent Medicines that plaintiff(s) had allegedly purchased from Walgreen

### RESPONSE TO REQUEST NO. 9:

Admitted.

**Request for Admission No. 10:**

At no time prior to filing of suit did plaintiff(s) in this case tender Alka Seltzer Plus Effervescent Medicines to Walgreen for a rescission of the sale and return of the purchase price and expenses of sale

**RESPONSE TO REQUEST NO. 10:**

Admitted.

Respectfully submitted,

**THE TRUITT LAW FIRM**
A Limited Liability Company

JACK E TRUITT, BAR NO 18476, T.A.
251 Highway 21
Madisonville, Louisiana 70447
Telephone: (985) 792-1062
Facsimile (985) 792-1065
Email: mail@truittlaw.com
Counsel for Walgreen Louisiana Company, Inc

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been duly served on all counsel of record by depositing same into the U S. Mail, postage pre-paid, this September 17, 2002, or by any other means authorized by law.

U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

JUL 27 2001

ROBERT H. SHEMWELL, CLERK
BY_____
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| ROBERT WILLIAMS | * | CIVIL ACTION NO. 01-0690 |
| VERSUS | * | JUDGE WALTER |
| WARNER-LAMBERT CO., ET AL | * | MAGISTRATE JUDGE HAYES |

## RULING

Before the court is a motion to remand filed by plaintiffs (Document #8).[1] For reasons stated below, the motion to remand is DENIED.

This matter was filed in the Fifth Judicial Court for the Parish of Richland on March 19, 2001, seeking damages arising as a result of taking Rezulin, a prescription drug used in the treatment of diabetes. Defendants timely removed this matter on the basis of diversity jurisdiction, maintaining that the plaintiff fraudulently joined Tom's Drug, Carol C. Eley and David M. Clary. The plaintiff moved to remand the case to State court, based on a lack of complete diversity of citizenship. In response, defendants assert that the plaintiff has no claim for failure to warn about adverse side effects against the pharmacy that dispensed the drug or against the pharmaceutical representatives who provided the drug to the pharmacies, because under Louisiana law neither the pharmacy nor the pharmaceutical representatives have such a duty.

A party claiming fraudulent joinder carries a heavy burden of persuasion and must show either that there is no possibility that the plaintiff would be able to establish a cause of action against

---

[1] As this is not one of the motions excepted in 28 U.S.C. §636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).



EXHIBIT

D

the non-diverse defendants or that there has been outright fraud in the plaintiff's pleadings of the

jurisdictional facts. *B., Inc., v. Miller Brewing Co.*, 663 F.2d 545 (5ᵗʰ Cir. 1981). This Court does

not decide whether the plaintiff will actually or even probably prevail on the merits, but looks only

for a possibility that he may do so. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40 (5ᵗʰ Cir. 1992).

The court finds that the defendants have satisfied their burden. Under Louisiana law, a

pharmacist has a limited duty with regard to filling prescriptions for medications.

> A pharmacist has a duty to file a prescription correctly and to warn the patient or to
> notify the prescribing physician of an excessive dosage or of obvious inadequacies
> on the face of the prescription which create a substantial risk of harm to the patient.
> *Guillory v. Dr. X*, 679 So.2d 1004, 1010 (La.App. 3 Cir. 1996)(citing *Hayes v.
> Travelers Insurance Company*, 609 So.2d 1084 (La.App. 2 Cir. 1992) *writ denied*,
> 613 So.2d 975 (La. 1993).

However, a pharmacist does not have a duty to warn customers of the hazardous side effects

associated with a drug. *Gassen v. East Jefferson General Hospital*, 628 So.2d 256, 259 (La.App.

5 Cir. 1993). Because Louisiana law limits a pharmacist's liability to properly ˙ ˙˙ _ . ˙˙  .

and warning of overdoses, the pharmacy had no duty to warn the plaintiff about possible side effects,

and there can be no claim against it in either tort or redhibition.

Plaintiff cannot establish liability against defendant Carol Eley for two reasons. First, Eley's

unrefuted affidavit establishes that he never called on any physician in Richland Parish, and thus

could not have called on the plaintiff's physician. Therefore, pretermitting an argument regarding

any duties he might have had, there is no basis on which plaintiff could possibly establish a cause

of action against Eley.

Finally, under Louisiana law, the only personal duty a detail man or pharmaceutical

representative has toward a plaintiff is to deliver and explain the new package inserts to the

physicians within the detail man's territory. *Wallace v. Upjohn Company*, 535 So.2d 1110, 1117

(La.App. 1 Cir. 1988). Eley and Clary, have both submitted unrefuted affidavits stating that they supplied physicians with copies of the FDA approved package insert regarding Rezulin each time they supplied information regarding Rezulin, and that, if questions were raised by physicians not addressed by the package insert, then Eley and Clary both put the doctor in contact with the 1-800 number for Warner-Lambert medical affairs. Under Louisiana law, they had no other duty.

Plaintiff makes conclusory allegations of fraud against Eley and Clary, but his pleadings fail to meet the particularity standard for pleading fraud under FRCP Rule 9(b), and in any case are insufficient to overcome the unrefuted affidavits. Thus, there is no basis for personal liability against either Eley or Clary.

Given the unrefuted affidavits of the defendants, the lack of any factual allegations or support for the conclusory allegations contained within the plaintiff's original petition, and the limited duties imposed on territory managers under Louisiana law, it is the finding of this court that the plaintiff has no legitimate claim against the territory managers and that they were improperly joined in these proceedings. Therefore, plaintiff's motion to remand is DENIED.

THUS DONE AND SIGNED at Monroe, Louisiana, this 27 day of July, 2001.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

COPY SENT:
DATE: 7/31/01
BY: ___
TO: ___

3

RECEIVED

5 ...

FILED
LODGED
ENTERED
RECEIVED

FEB 26 2002 ZG

CV 01 02023 J00000037

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

JAMES PERKSIN,

            Plaintiff,

    v.

BAYER CORPORATION, et al.,

            Defendants.

NO. C01-2023R

ORDER DENYING PLAINTIFF'S
MOTION FOR REMAND

**THIS MATTER** comes before the court on the motion of plaintiff James Perksin to remand the case to state court in Louisiana. Having reviewed the papers filed in support of and in opposition to this motion, the court rules as follows:

## I. BACKGROUND

Plaintiff purchased the over-the-counter drugs Alka-Seltzer Plus Cold Medicine, Robitussin CF, and Contac 12 Hour Cold Capsules from an unidentified Rite Aid drugstore in Caddo Parish, Louisiana. Plaintiff later consumed the medication. Sometime during 1998, plaintiff suffered a stroke. The medicines contained the ingredient Phenylpropanolamine ("PPA"). On August 24, 2001, plaintiff filed a complaint in Louisiana state court that links the PPA in the cold medicine with plaintiff's stroke.

The complaint alleges several causes of action against

ORDER
Page - 1 -

EXHIBIT

E

1   manufacturers and distributors of products that contain PPA.

2   The complaint also names K & B Louisiana Corporation ("K&B") as

3   a defendant in two of the causes of action, breach of warranty

4   in redhibition and negligence.  K&B operates Rite Aid drugstores

5   throughout Louisiana that sell over-the-counter medications

6   containing PPA.

7      Defendants removed the complaint to federal court on the

8   basis that plaintiff fraudulently joined K&B as a defendant.

9   Plaintiff then moved to remand to state court.  After the parties

10   briefed the motion, the case was transferred to this court as

11   part of a multi-district litigation.

12

13                 II.  ANALYSIS

14      A plaintiff cannot defeat federal jurisdiction by fraudu-

15   lently joining a non-diverse party against whom "there is no

16   reasonable basis for predicting that plaintiffs might establish

17   liability . . . ."  Badon v. RJR Nabisco, Inc., 224 F.3d 382, 292

18   (5th Cir. 2000).  The court determines jurisdiction based on the

19   claims as stated at the time of removal; arguments about what

20   future discovery may reveal cannot justify remand.  See Cavallini

21   v. State Farm Mut. Auto. Ins. Co., 44 F.3d 256, 264 (5th Cir.

22   1995).  The court must view the facts in the light most favorable

23   to the plaintiff; however, the court may pierce the pleadings and

24   consider "summary judgment-type evidence."  Id. at 263.  A

25   plaintiff also cannot defeat removal by relying on conclusory

26   allegations that fail to state a cause of action.  See Jernigan

ORDER
Page - 2 -

v. Ashland Oil, Inc., 989 F.2d 812 (5th Cir. 1993); Addition v. Allstate Ins. Co., 58 F. Supp.2d 729, 733-34 (E.D. La. 1996).

Defendants allege that plaintiff fraudulently joined defendant K&B, while plaintiff claims that he has a legitimate contract cause of action against K&B for breach of warranty in redhibition, under La. Civ. Code art. 2520 et seq., and a cause of action against K&B in negligence. Plaintiff does not argue that any other causes of action in the complaint apply to K&B.

**A.    Breach of Warranty in Redhibition**

Under Louisiana law, a seller "warrants the buyer against redhibitory defects, or vices, in the thing sold." La. Civ. Code art. 2520. A redhibitory defect or vice involves a "physical imperfection or deformity, a lacking of a necessary competent or level of quality." Scogin v. Smith, 612 So.2d 739, 741 (La. Ct. App. 1992). The buyer of a product with a redhibitory defect must tender the product to the seller and seek rescission of the sale. La. Civ. Code art. 2520, 2530. A good faith seller is liable only for the cost of the product if it cannot repair the item. La. Civ. Code art. 2531. The buyer can hold a bad faith seller liable for consequential damages and attorney's fees as well. La. Civ. Code art. 2545.

**1.    Failure to Plead Elements of Redhibition**

It is unclear from the motion to remand whether plaintiff is alleging a cause of action against K&B as a good faith seller under La. Civ. Code art. 2531 or as a bad faith seller under article 2545. While a portion of the memorandum argues that K&B

ORDER
Page - 3 -

1  knew of the medications' alleged redhibitory effects, the same
2  brief distinguishes bad faith cases and focuses on K&B's poten-
3  tial status as a good faith seller.  Regardless, the complaint
4  does not include sufficient facts to support a claim against K&B
5  under either theory.

6          <u>a.</u>   <u>Article 2531</u>

7          First, the complaint never alleges liability under article
8  2531.  The only redhibition liability provision cited is article
9  2545, which applies to bad faith sellers who knew of the defect.
10 In the damages portion of the complaint, plaintiff again cites
11 article 2545 and fails to cite article 2531.  By its own terms,
12 the complaint does not allege a cause of action against K&B under
13 article 2531.

14         Second, the allegations of the complaint fail to provide
15 specific facts that would support a cause of action against K&B
16 under article 2531 even if plaintiff had invoked that provision.
17 As explained above, the court must assess the remand motion based
18 on the facts as stated in the complaint, and the court may pierce
19 the pleadings to assess conclusory allegations.  The complaint
20 does not allege that plaintiff sought rescission of the sale, nor
21 does it allege that plaintiff provided K&B with notice of the
22 alleged defect, nor does it provide details regarding where and
23 when plaintiff purchased the products.  Without such basic
24 details, plaintiff is making only conclusory allegations that
25 cannot support remand.  <u>See</u> <u>Jernigan</u>, 989 F.2d 812; <u>Addition</u>, 58
26 F. Supp.2d at 733-34.

ORDER
Page - 4 -

1    The complaint fails to allege that plaintiff sought rescis-
2  sion of the sale and return of the purchase price - a key element
3  of redhibition.  Cf. Mitchell v. Popiwchak, 677 So.2d 1050, 1054
4  (La. Ct. App. 1996) (request for purchase price satisfies tender
5  requirement).  Plaintiff argues that the complaint alleges
6  rescission as a remedy, but there is no allegation that plaintiff
7  sought rescission prior to filing the lawsuit as required.

8    In addition, notice and tender are prerequisites to bringing
9  a redhibition claim.  See Lindy Inv., LP v. Shakertown Corp., 209
10  F.3d 802, 805-06 (5th Cir. 2000).  Plaintiff does not allege that
11  K&B received notice of the defect, much less allege that plain-
12  tiff tendered the product to K&B.  Finally, plaintiff fails to
13  allege any details regarding the store that sold the medication.
14  Cf. Long v. Bruns, 727 So.2d 664 (La. Ct. App. 1999) (complaint
15  dismissed for failure to plead proper seller).  By failing to
16  allege many of the basic elements of a cause of action under
17  section 2531, plaintiff has no reasonable possibility of holding
18  K&B liable.

19        b.    Article 2545

20    Article 2545 applies to bad faith sellers who knew or should
21  have know of the defect.  La. Civ. Code art. 2545.  Plaintiff
22  alleges in the complaint that "all Defendants have actual knowl-
23  edge" of the alleged defects.  This statement lacks factual
24  support, contradicts other portions of the complaint, and fails
25  to warrant remand.

26    As explained above, a plaintiff cannot defeat federal

ORDER
Page - 5 -

1 jurisdiction by relying solely on conclusory allegations.
2 Plaintiff provides no factual support for the broad allegation
3 that the drugstore knew of potential dangers in the medications.
4 On remand, the parties may pierce the pleadings with additional
5 evidence to clarify such allegations. Defendants have supplied
6 the court with requests for admission from K&B that refute
7 plaintiff's assertion. K&B had no control over the pre-packaged,
8 sealed medications and had no knowledge of any potential dangers.
9 Def. Mem., Exhibit A. Plaintiff has not countered with any
10 specific facts to support its broad allegation.

11      Moreover, plaintiff's own complaint acknowledges that K&B
12 had no knowledge of alleged defects. For example, the complaint
13 alleges that the medication did not change from the time it left
14 the manufacturers to the time it reached the customer. It also
15 alleges that the manufacturers had exclusive possession of
16 information about potential hazards. In the negligence allega-
17 tions, the complaint accuses the manufacturers of knowing about
18 dangers but does not include K&B in those allegations. These
19 statements contradict plaintiff's conclusory allegation that K&B
20 knew or should have known about a potentially redhibitory effect.
21 Plaintiff has failed to plead facts to state a cause of action
22 under article 2545 and has no reasonable probability of success
23 against K&B.

24      2.   Plaintiff's Claims are De Minimis

25      Remanding this case also would prove inequitable. The only
26 relief from K&B to which plaintiff would be entitled, if the

ORDER
Page - 6 -

complaint properly pleaded the elements of a cause of action
under article 2531, would be the purchase price of the medica-
tion.  Such a tenuous cause of action based on _de minimis_ recov-
ery should not defeat federal jurisdiction.  As the court in a
class action involving other over-the-counter drugs sold by good
faith Louisiana pharmacies stated, such claims are "improper at
best and fraudulent at worst."  In re Diet Drugs, 1998 WL 254976,
at 4 (E.D. Pa. 1998).  The court denied a motion to remand
because the plaintiff had fraudulently joined the pharmacies.
Id.  Similarly, the alleged cause of action against K&B would
accomplish minimal recovery, if any.

### 3.    No Cause of Action in Redhibition Exists Against Pharmacies for Sale of Medication

Louisiana law prohibits liability against a pharmacy or
drugstore that sells allegedly defective or dangerous medication.
In re Rezulin Prod. Liab. Litig., 133 F. Supp.2d 272, 289
(S.D.N.Y. 2001) (describing law of Louisiana and similar rule in
several other states).  Pharmacists have no duty to warn of
potential side effects from prescription drugs nor a duty to
inspect the medication.  See Gassen v. East Jefferson Gen. Hosp.,
628 So.2d 256, 259 (La. 1993).  The duty is limited to properly
filling a prescription and warning of overdoses.  See Guillory v.
Doctor X, 679 So.2d 1004, 1010 (La. Ct. App. 1996).

Louisiana courts recently have confirmed that this limit on
liability for prescriptions applies to contract theories as well
as tort causes of action.  They have held that plaintiffs cannot

ORDER
Page - 7 -

1  sue pharmacists for redhibition or breach of warranty.  See
2  McKinney v. Warner Lambert, No. 01-1103 (E.D. La. May 15, 2001);
3  Williams v. Warner-Lambert Co., No. 01-0690 (W.D. La. July 27,
4  2001).  For example, the Williams court denied remand and stated
5  that plaintiff had no possibility of recovery, because the
6  pharmacy submitted an affidavit confirming that the pharmacy had
7  no knowledge of the prescription's potential side effects.
8  Williams, No. 01-0690 (W.D. La. July 27, 2001).  These decisions
9  are consistent with the uniform rule described above that a
10 pharmacy has no duty to warn.

11      The limitation on liability for pharmacies logically extends
12 to over-the-counter medications, for which pharmacies have even
13 less direct responsibility.  For example, the court in Strickland
14 v. Brown Morris Pharmacy, 1996 WL 537736 (E.D. La. 1996), denied
15 remand in a suit against a pharmacy for the sale of Primatine
16 Mist, a non-prescription medication.  The court cited La. Civ.
17 Code art. 2545, the redhibition statute regarding bad faith
18 sellers, and held that the plaintiff had no cause of action
19 against a pharmacy that sold the product in good faith.  See also
20 Sharkey v. Sterling Drug, Inc., 600 So.2d 701, 715 (La. Ct. App.
21 1992) (upholding dismissal of redhibition claim against good
22 faith pharmacist who sold nonprescription aspirin); see also In
23 re Diet Drugs, 1998 WL 254976 (E.D. Pa. 1998) (denying remand
24 motion and finding fraudulent joinder of Louisiana pharmacies
25 accused of breach of warranty for good faith sales of nonpre-
26 scription diet drugs).  Just as in these cases, K&B had no

ORDER
Page - 8 -

1  knowledge of potential dangers in the nonprescription medications
2  it sold, and plaintiff cannot pursue a cause of action against
3  the pharmacy.

4      Plaintiff argues that the over-the-counter cases sounded in
5  tort or alleged knowledge by the pharmacists.  However, as
6  explained above, Louisiana courts have applied the limitation on
7  liability to contract claims in the prescription drug context.
8  The reasoning applies with even greater force for nonprescription
9  medication sold by innocent pharmacists, because the pharmacist
10  does not even have a duty to measure a nonprescription drug or
11  warn of possible overdose.  As a result, plaintiff's cause of
12  action against K&B has no reasonable probability of success
13  whether couched as tort or redhibition.[']

14  **B.    Negligence**

15      Plaintiff argues remand is necessary because the complaint
16  states a claim for negligence against K&B.  To the contrary, as
17  explained above, K&B's status as a pharmacy prevents plaintiff
18  from alleging a tort cause of action based on defective medica-
19  tion.  Even if K&B were not a pharmacist, plaintiff's complaint
20  still would fail.  Any non-manufacturer seller of a product is

21

22      [']Plaintiff also relies on <u>Badon v. RJR Nabisco, Inc.</u>, 236
23  F.3d 282 (5th Cir. 2000), in which the court granted remand in a
    redhibition lawsuit that joined Louisiana pharmacies.  <u>Badon</u>
24  provides little guidance, however, because it involved the
    distribution of cigarettes rather than medication - prescripti
25  or otherwise.  The liability limitations for pharmacies selli
    medications never became an issue.  As described above, cour
26  since <u>Badon</u> have continued to limit the liability of pharma

ORDER
Page - 9 -





```
CASE        2:02-cv-02436/P
DOCUMENT:   23
DATE.       09/24/02

CLERK:      tbl
```

*** There will be no noticing for this document ***

Document scanned by: _____



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP 24  PM 3: 36

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE DONNELLY, ET AL | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO 02-CV-02436 |
| | * | |
| BAYER CORPORATION, ET AL | * | JUDGE ENGELHARDT |
| | * | |
| * * * * * * * * * * * * * | * | MAGISTRATE JUDGE SHUSHAN |

## MEMORANDUM IN OPPOSITION TO NOVARTIS PHARMACEUTICALS CORPORATION'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Daphine Donnelly and

Jerome Donnelly (hereinafter referred to as "Plaintiffs"), who respectfully submit this Memorandum in

Opposition to Novartis Pharmaceuticals Corporation's Motion to Dismiss for Failure to State a

Claim Upon Which Relief Can be Granted

Defendant has filed a Motion to Dismiss asserting that Plaintiffs' claims for fault, want of care,

negligence, gross negligence, strict liability, intentional and willful conspiracy, and breach of warranty

against redhibitory defects or vices should be dismissed   Defendant asserts that the Louisiana

Products Liability Act (Louisiana Revised Statute 9 2800 54 et seq , hereinafter referred to as

"LPLA") establishes the exclusive theories of recovery against a manufacturer in a personal injury

action and does not provide for recovery based on the aforementioned claims   For the following

1

reasons, Novartis Pharmaceuticals Corporation's Motion to Dismiss should be denied

1    Background

Plaintiffs filed this suit in the 34th Judicial District Court against Bayer Corporation, Novartis Pharmaceuticals Corporation, Novartis Consumer Health, Inc , 4Life Research, Successor by merger to Shaperite, Smoothie King Co , Inc , Smoothie King Systems, Inc , and Walgreen Louisiana Co , Inc , d/b/a "Walgreens" for marketing, selling, distributing, and/or manufacturing Shaperite, Alka Seltzer Plus and Tavist-D, all PPA-containing products

Plaintiffs claim in the Petition for Damages that the Defendant, directly or indirectly, manufactured and sold medications that contained Phenylpropanolamine ("PPA") to Plaintiff, Daphne Donnelly  (Petition ¶ 8-12)  Plaintiffs allege that Defendant knew or should have known about medical research and publications associating PPA with serious health risks  (Petition ¶ 6-7) Defendant (Bayer) failed to provide warnings of these side-effects and risks associated with the use of PPA-containing medications (Petition ¶ 15)  Plaintiffs have averred that defendant was aware of these risks associated with PPA and concealed its knowledge of the risks from Plaintiff and consumers   (Petition ¶ 16)   As a result of ingesting the PPA-containing medication, Plaintiff, Daphne Donnelly, suffered a stroke on or about January 1991 which resulted in, but not limited to, paralysis of the right side of the body   (Petition ¶ 10)

2    Argument

1    Applicable Standard

In evaluating a Motion to Dismiss filed under F R C P , 12(b)(6), the moving party bears the burden of showing that the plaintiff can prove no set of facts consistent with the allegations in the Petition for Damages which would entitle it to relief  *Baton Rouge Building and Construction*

*Trades Council, AFL-CIO v Jacobs Constructors, Inc*, 804 F 2d 879 (5th Cir, 1986)  In addition, the reviewing Court "must accept as true well-plead averments and view then in light most favorable to the plaintiff" *American Waste and Pollution Control Co v Browning-Ferris, Inc*, 949 F 2d 1384, 1386 (5th Cir 1991)

2      Plaintiff Has Asserted Viable Claims for Compensatory Damages Under Louisiana Law

Plaintiffs have asserted allegations under the LPLA, which admittedly controls the claims set forth by the Plaintiffs  Under the LPLA, Plaintiffs can prove a product is "unreasonably dangerous or defective  (1) in construction or composition, (2) in design, (3) because of inadequate warning, or (4) because of nonconformity to an express warranty " La R S  9 2800 54 *et seq*

Nonetheless, plaintiffs' allegations regarding fault, want of care, negligence, gross negligence, strict liability, intentional and willful conspiracy, and breach of warranty against redhibitory defects or vices relating to non-economic damages can still support Plaintiff's LPLA claims and breach of warranty against redhibitory defects relating to economic damages  In *Busse, et al v Bayerische Motoren Werke, A G, et al*, 1996 WL 732837 (E D La  1996), the plaintiff alleged claims for negligence, redhibition and products liability claims against a product manufacturer  Similar to the instant matter, the defendant in *Busse* moved for summary judgment as to claims by the plaintiff not cognizable under the LPLA  The Court denied the motion stating that the allegations of negligence supported plaintiff's claim for relief under the LPLA  *Id*

This is consistent as the theories articulated under the LPLA "are predicated on principles of strict liability, negligence, or warranty, respectively  " *Jefferson v Lead Industries Assoc, Inc et al*, 106 F 3d 1245, 1251 (5th Cir  1997)  Therefore, the allegations set forth in plaintiff's Petition for

3

Damages relating to fault, want of care, negligence, gross negligence, strict liability, intentional and willful conspiracy, and breach of warranty against redhibitory defects or vices should not be dismissed as they further strengthen Plaintiff's other claims

Nor should Plaintiffs' redhibition claims be dismissed    Redhibition is a viable means to recover pecuniary losses from the manufacturer    In fact, the court in *Masculin, et al v Grinnell Corp, et al*, 2001 WL 8584 (E D La  2001) ruled that the LPLA does not preclude recovery under redhibition for losses arising from breach of warranty    Therefore, the allegations and causes of actions set forth in the Petition for Damages relating to breach of warranty should not be dismissed (Petition ¶ ¶ 13-16)

3     Conclusion

For the foregoing reasons, Plaintiffs pray that Novartis Pharmaceuticals Corporation's Motion to Dismiss be denied

Respectfully submitted,

By  Chandler Loupe/*gmw*

**J. CHANDLER LOUPE**
**CLAITOR & LOUPE, LLC**
State Bar No  19955
2223 Quail Run Drive, Suite G
Baton Rouge, Louisiana 70808
225/767-2222 (Telephone)
225/767-9003 (Facsimile)

**KIRK LAW FIRM**
DANA G  KIRK
MS State Bar No  100188
TX State Bar No  11057500
4265 San Felipe St , Ste 1400
Houston, TX 77027
713/651-0050 (Telephone)
713/651-0051 (Facsimile)

4

**CLARK, DEPEW & TRACEY, LTD., L.L.P.**
CLAYTON CLARK
TX State Bar No 04275750
440 Louisiana, Ste 1600
Houston, TX 77002
713/757-1400 (Telephone)
713/759-1217 (Facsimile)

**J. ROBERT DAVIS, L.L.P.**
J ROBERT DAVIS
TX State Bar No 00788859
440 Louisiana, Ste 1600
Houston, TX 77002
713/425-5255 (Telephone)
713/425-5355 (Facsimile)

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served upon counsel of record by placing same in the United States mail, properly addressed and postage prepaid

DATED, this 24th day of Sept , 2002

Chandler Loupe fmw

**J. Chandler Loupe**

5





```
CASE:      2:02-cv-02436/P
DOCUMENT: 22
DATE:      09/24/02

CLERK:     tbl
```

*** There will be no noticing for this document.***

Document scanned by: _____

FILED
U.S DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP 24 PM 3: 36

LORETTA G WHYTE
CLERK



## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE DONNELLY, ET AL | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO  02-CV-02436 |
| | * | |
| BAYER CORPORATION, ET AL | * | JUDGE ENGELHARDT |
| | * | |
| * * * * * * * * * * * * * | MAGISTRATE JUDGE SHUSHAN |

### MEMORANDUM IN OPPOSITION TO NOVARTIS CONSUMER HEALTH, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Daphine Donnelly and Jerome Donnelly (hereinafter referred to as "Plaintiffs"), who respectfully submit this Memorandum in Opposition to Novartis Consumer Health, Inc 's  Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted

Defendant has filed a Motion to Dismiss asserting that Plaintiffs' claims for fault, want of care, negligence, gross negligence, strict liability, intentional and willful conspiracy, and breach of warranty against redhibitory defects or vices should be dismissed   Defendant asserts that the Louisiana Products Liability Act (Louisiana Revised Statute 9 2800 54 et seq , hereinafter referred to as "LPLA") establishes the exclusive theories of recovery against a manufacturer in a personal injury action and does not provide for recovery based on the aforementioned claims   For the following

1

reasons, Novartis Pharmaceuticals Corporation's Motion to Dismiss should be denied

1    Background

Plaintiffs filed this suit in the 34th Judicial District Court against Bayer Corporation, Novartis

Pharmaceuticals Corporation, Novartis Consumer Health, Inc, 4Life Research, Successor by merger

to Shaperite, Smoothie King Co, Inc, Smoothie King Systems, Inc, and Walgreen Louisiana Co,

Inc, d/b/a "Walgreens" for marketing, selling, distributing, and/or manufacturing Shaperite, Alka

Seltzer Plus and Tavist-D, all PPA-containing products

Plaintiffs claim in the Petition for Damages that the Defendant, directly or indirectly,

manufactured and sold medications that contained Phenylpropanolamine ("PPA") to Plaintiff,

Daphine Donnelly (Petition ¶ 8-12) Plaintiffs allege that Defendant knew or should have known

about medical research and publications associating PPA with serious health risks (Petition ¶ 6-7)

Defendant (Bayer) failed to provide warnings of these side-effects and risks associated with the use of

PPA-containing medications (Petition ¶ 15) Plaintiffs have averred that defendant was aware of

these risks associated with PPA and concealed its knowledge of the risks from Plaintiff and

consumers (Petition ¶ 16) As a result of ingesting the PPA-containing medication, Plaintiff,

Daphine Donnelly, suffered a stroke on or about January 1991 which resulted in, but not limited to,

paralysis of the right side of the body (Petition ¶ 10)

2    Argument

1    Applicable Standard

In evaluating a Motion to Dismiss filed under F R C P, 12(b)(6), the moving party bears the

burden of showing that the plaintiff can prove no set of facts consistent with the allegations in the

Petition for Damages which would entitle it to relief *Baton Rouge Building and Construction*

2

*Trades Council, AFL-CIO v Jacobs Constructors, Inc*, 804 F 2d 879 (5th Cir, 1986)  In addition, the reviewing Court "must accept as true well-plead averments and view then in light most favorable to the plaintiff" *American Waste and Pollution Control Co v Browning-Ferris, Inc*, 949 F 2d 1384, 1386 (5th Cir 1991)

    2      Plaintiff Has Asserted Viable Claims for Compensatory Damages Under Louisiana Law

Plaintiffs have asserted allegations under the LPLA, which admittedly controls the claims set forth by the plaintiff  Under the LPLA, Plaintiffs can prove a product is "unreasonably dangerous or defective  (1) in construction or composition, (2) in design, (3) because of inadequate warning, or (4) because of nonconformity to an express warranty " La R S  9 2800 54 *et seq*

Nonetheless, Plaintiffs' allegations regarding fault, want of care, negligence, gross negligence, strict liability, intentional and willful conspiracy, and breach of warranty against redhibitory defects or vices relating to non-economic damages can still support Plaintiff's LPLA claims and breach of warranty against redhibitory defects relating to economic damages  In *Busse, et al v Bayerische Motoren Werke, A G, et al*, 1996 WL 732837 (E D La  1996), the plaintiff alleged claims for negligence, redhibition and products liability claims against a product manufacturer  Similar to the instant matter, the defendant in *Busse* moved for summary judgment as to claims by the plaintiff not cognizable under the LPLA  The Court denied the motion stating that the allegations of negligence supported plaintiff's claim for relief under the LPLA  *Id*

This is consistent as the theories articulated under the LPLA "are predicated on principles of strict liability, negligence, or warranty, respectively  " *Jefferson v Lead Industries Assoc, Inc et al*, 106 F 3d 1245, 1251 (5th Cir 1997)  Therefore, the allegations set forth in plaintiff's Petition for

3

Damages relating to fault, want of care, negligence, gross negligence, strict liability, intentional and willful conspiracy, and breach of warranty against redhibitory defects or vices should not be dismissed as they further strengthen Plaintiff's other claims

Nor should Plaintiffs' redhibition claims be dismissed. Redhibition is a viable means to recover pecuniary losses from the manufacturer. In fact, the court in *Masculin, et al. v. Grinnell Corp., et al.*, 2001 WL 8584 (E.D. La. 2001) ruled that the LPLA does not preclude recovery under redhibition for losses arising from breach of warranty. Therefore, the allegations and causes of actions set forth in the Petition for Damages relating to breach of warranty should not be dismissed. (Petition ¶ ¶ 13-16)

3    Conclusion

For the foregoing reasons, Plaintiffs pray that Novartis Pharmaceuticals Corporation's Motion to Dismiss be denied.

Respectfully submitted,

By    Chandler Loupe /gmw

**J. CHANDLER LOUPE**
**CLAITOR & LOUPE, LLC**
State Bar No. 19955
2223 Quail Run Drive, Suite G
Baton Rouge, Louisiana 70808
225/767-2222 (Telephone)
225/767-9003 (Facsimile)

**KIRK LAW FIRM**
DANA G. KIRK
MS State Bar No. 100188
TX State Bar No. 11057500
4265 San Felipe St., Ste 1400
Houston, TX 77027
713/651-0050 (Telephone)
713/651-0051 (Facsimile)

4

**CLARK, DEPEW & TRACEY, LTD., L.L.P.**
CLAYTON CLARK
TX State Bar No 04275750
440 Louisiana, Ste 1600
Houston, TX 77002
713/757-1400 (Telephone)
713/759-1217 (Facsimile)

**J ROBERT DAVIS, L.L.P.**
J ROBERT DAVIS
TX State Bar No 00788859
440 Louisiana, Ste 1600
Houston, TX 77002
713/425-5255 (Telephone)
713/425-5355 (Facsimile)

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served upon counsel of record by

placing same in the United States mail, properly addressed and postage prepaid

DATED, this 24th day of Sept, 2002

*Chandler Loupe/gw*

**J. Chandler Loupe**

5





CASE:       2:02-cv-02436/P
DOCUMENT: 21
DATE·       09/24/02

CLERK.      tbl


*** There will be no noticing for this document ***


Document scanned by _____



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP 24  PM 3: 35

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE DONNELLY, ET AL | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO  02-CV-02436 |
| | * | |
| BAYER CORPORATION, ET AL | * | JUDGE ENGELHARDT |
| | * | |
| * * * * * * * * * * * * | * | MAGISTRATE JUDGE SHUSHAN |

## RESPONSE IN OPPOSITION TO NOVARTIS PHARMACEUTICALS CORPORATION'S MOTION FOR TEMPORARY STAY

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Daphine Donnelly and

Jerome Donnelly (hereinafter referred to as "Plaintiffs"), who respectfully submit this Response  in

Opposition to Novartis Pharmaceuticals Corporation's  Motion For Temporary Stay of Proceedings

1    Background

Plaintiffs filed this suit in the 34th Judicial District Court against Bayer Corporation, Novartis

Pharmaceuticals Corporation, Novartis Consumer Health, Inc , 4Life Research, Successor by merger

to Shaperite, Smoothie King Co , Inc , Smoothie King Systems, Inc , and Walgreen Louisiana Co ,

Inc , d/b/a "Walgreens" for marketing, selling, distributing, and/or manufacturing Shaperite, Alka

Seltzer Plus and Tavist-D, all PPA-containing products

Defendants, Novartis Pharmaceuticals Corporation and Novartis Consumer Health, Inc  filed a

Notice of Removal on August 7th, 2002, and subsequently a Motion to Dismiss for Failure to State a

Claim Upon which Relief Can Be Granted on September 6, 2002  Thereafter, Plaintiffs have filed a

Fee
Process
Dktd
CtRmDep
Doc No

Motion to Remand, Response in Opposition to Defendants' Motions to Dismiss for Failure to State a Claim Upon which Relief Can Be Granted and now file this Response in Opposition to Defendant's Motion to Temporary Stay  Plaintiffs respectfully request that this Court to rule on Plaintiff's Motion to Remand and Response to Defendant's Motion for Dismissal, thus, denying Defendant's Motion to Temporary Stay

2    Argument

The case subject to this Response in Opposition to Defendant's Motion was improvidently removed to Federal Court by the manufacturer Defendants of products which contained Phenylpropanolamine (hereinafter "PPA")  Plaintiffs have responded by filing a Motion to Remand and seek to have the Court rule on this Motion before the case is transferred to the Judicial Panel on Multidistrict Litigation (hereinafter "MDL Panel")  Because the Louisiana Federal Courts lack jurisdiction over the matter, it would be a waste of judicial resources and economy for the MDL Panel to allow the Western District of Washington to preside over the case that belongs in state court  Moreover, Louisiana Federal Courts are well-versed in matters pertaining to Louisiana law and therefore is the forum of choice to decide the issue of remand  As such, Defendant's Motion to Temporary Stay should be denied and this court should rule on Plaintiff's Motion to Remand

This issue is not a novel theory, although not binding to this Court, Judge Lemelle, sitting in the Eastern District of Louisiana, has previously denied such a motion  In that case, even when a Conditional Transfer Order to the MDL Panel had been filed, Judge Lemelle denied the Motion to Stay, citing Rule 1 5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, finding that the District Court of Louisiana retained jurisdiction to hear all such matters before the case is officially transferred to the MDL Panel pursuant to the rule  (See <u>Andry, et al  v  American Home Products Corporation, et al</u>, No  02-0173 (Lemelle, J , E D  La  February 8, 2002) (Exhibit A

hereto)  Although a Conditional Transfer Order has been filed in this matter, Plaintiffs have opposed

such transfer   This Court retains the authority and jurisdiction to deny the Motion to Stay and rule

on other matters currently pending before the Court

3      Conclusion

For the foregoing reasons, Plaintiffs pray that Novartis Pharmaceuticals Corporation's Motion

to Temporary Stay be denied

Respectfully submitted,

By      *Chandler Loupe/gmw*

**J. CHANDLER LOUPE**
**CLAITOR & LOUPE, LLC**
State Bar No  19955
2223 Quail Run Drive, Suite G
Baton Rouge, Louisiana 70808
225/767-2222 (Telephone)
225/767-9003 (Facsimile)

**KIRK LAW FIRM**
DANA G  KIRK
MS State Bar No  100188
TX State Bar No  11057500
4265 San Felipe St , Ste 1400
Houston, TX 77027
713/651-0050 (Telephone)
713/651-0051 (Facsimile)

**CLARK, DEPEW & TRACEY, LTD., L.L.P.**
CLAYTON CLARK
TX State Bar No  04275750
440 Louisiana, Ste  1600
Houston, TX 77002
713/757-1400 (Telephone)
713/759-1217 (Facsimile)

**J. ROBERT DAVIS, L.L.P.**
J ROBERT DAVIS
TX State Bar No 00788859
440 Louisiana, Ste 1600
Houston, TX 77002
713/425-5255 (Telephone)
713/425-5355 (Facsimile)

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served upon counsel of record by

placing same in the United States mail, properly addressed and postage prepaid

DATED, this 24th day of Sept , 2002

Chandler Loupe /gmw

**J. Chandler Loupe**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 FEB -7 A 11: 44

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATHLEEN ANDRY, ET AL | * | CIVIL ACTION |
| | * | NO. 02-CV-0173 |
| | * | |
| | * | SECTION "B" |
| AMERICAN HOME PRODUCTS | * | |
| CORPORATION, ET AL | * | MAGISTRATE· |
| | * | |

## JOINT MOTION TO STAY PROCEEDINGS

MAY IT PLEASE THE COURT:

The above matter is one of several hundred actions, which has been requested to be a

"tag-along" action pursuant to MDL-1407 - in re Phenylpropanolamine (PPA) Products Liability

Litigation.

As plaintiffs' counsel will not file any objections and/or oppose the tag-along procedures,

the MDL Panel will designate the above matter as a tag-along action, and stay the above

proceedings.

Plaintiffs' and defense counsel seek to stay the above proceedings, pending this decision

from the MDL Panel, as it would serve both parties and this Honorable Court to delay any action

DATE OF ENTRY

FEB 1 3 2002

1



09/24/2002 TUE 11:05   [TX/RX NO 6634]   ☑002

on the above matter, which will be transferred to another jurisdiction in a matter of days, based

upon other actions already transferred  As such, the stay will save Judicial Resources, and the

parties' time and expenses in responding to said motions.

Respectfully submitted,

CLAITOR & LOUPE, L L.C.

By:

J. CHANDLER LOUPE, T A
State Bar No. 19955
2223 Quail Run Drive, Suite G
Baton Rouge, Louisiana 70808
225/767-2222 (Telephone)
225/767-9003 (Facsimile)

KIRK LAW FIRM
DANA G. KIRK
MI State Bar No  100188
TX State Bar No. 11057500
4265 San Felipe St., Ste 1400
Houston, TX 77027
713/651-0050 (Telephone)
713/651-0051 (Facsimile)

CLARK, DEPEW & TRACEY, LTD., L L.P.
CLAYTON CLARK
TX State Bar No. 04275750
440 Louisiana, Ste  1600
Houston, TX 77002
713/757-1400 (Telephone)
713/759-1217 (Facsimile)

J. ROBERT DAVIS, L.L.P
J  ROBERT DAVIS
TX State Bar No. 00788859
440 Louisiana, Ste  1600
Houston, TX 77002
713/425-5255 (Telephone)
713/425-5355 (Facsimile)

*ATTORNEYS FOR PLAINTIFFS*

2

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served upon counsel of record by

placing same in the United States mail, properly addressed and postage prepaid

DATED, this 6th day of February, 2002.

J. Chandler Loupe

3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATHLEEN ANDRY, ET AL | * | CIVIL ACTION |
| | * | NO. 02-CV-0173 |
| v. | * | |
| | * | SECTION "B" |
| AMERICAN HOME PRODUCTS | * | |
| CORPORATION, ET AL | * | MAGISTRATE |

## ORDER

Considering the above and foregoing Joint Motion to Stay Proceedings;

IT IS ORDERED that the above proceedings be Stayed pending a decision of the Judicial Panel on Multidistrict Litigation on whether to Stay and Transfer said action

New Orleans, Louisiana this _____ day of _____, 2002

_____
JUDGE

*[Handwritten: DENIED the petition pursuant to Rule 1.5 of the District lit. petition of the panel of Multidistrict Litigation. Group/Funnell 2/8/02]*

4





```
CASE:      2:02-cv-02436/P
DOCUMENT: 20
DATE:      09/24/02

CLERK:     tbl
```

*** There will be no noticing for this document.***

Document scanned by: _____





U.S. E..........COURT
......CT OF LA

2002 SEP 13 AM II: 10

LOR.....G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DAPHINE B DONNELLY, ET AL

V

BAYER CORPORATION, ET AL

CIVIL ACTION

NO 02-cv-2436

JUDGE ENGELHARDT

MAGISTRATE SHUSHAN

### NOVARTIS CONSUMER HEALTH, INC.'S
### MOTION FOR TEMPORARY STAY

**NOW INTO COURT**, through undersigned counsel, comes defendant, Novartis Consumer

Health, Inc , and for reasons detailed in the attached memorandum in support, moves this Court for

a temporary stay of all proceedings in this matter pending a final ruling of the Judicial Panel on

Multidistrict Litigation on transfer of this case to Multidistrict Litigation, *In re*

*Phenylpropanolamine (PPA) Products Liability Litigation,* 173 F. Supp 2d 1377 ( J P M L 2001)

Respectfully submitted,

BY: _____

**Sessions Fishman & Nathan L.L.P.**
Joy Goldberg Braun (#3416) T A
Eric R Nowak (#27025)
Shirin E Harrell (#27495)
201 St Charles Avenue, Suite 3500
New Orleans, LA 70170-3500
Telephone: (504) 582-1500
and

Randolph S Sherman
Lori B Leskin
Danielle E. Finck
**Kaye Scholer LLP**
425 Park Avenue
New York, New York 10022

**Attorneys for Defendant
NOVARTIS CONSUMER HEALTH, INC.**

### CERTIFICATE OF SERVICE

I hereby certify that I have on this 13TH day of September, 2002, served a copy of the

foregoing pleading on counsel for all parties to this proceeding by ___ hand delivery, ✓ U.S

mail or _____ facsimile transmission

_Eric P. P____

**ERIC R NOWAK**

2



# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DAPHINE B. DONNELLY, ET AL.          CIVIL ACTION
                                     NO 02-cv-2436
V

                                     JUDGE ENGELHARDT

BAYER CORPORATION, ET AL

                                     MAGISTRATE SHUSHAN

## MEMORANDUM IN SUPPORT OF NOVARTIS CONSUMER HEALTH, INC.'S MOTION FOR TEMPORARY STAY

### Background

This is a product liability action alleging personal injury from the use of over-the-counter medications containing phenylpropanolamine (PPA)  The plaintiff filed the instant action in the Thirty-Fourth Judicial District Court for the Parish of St Bernard in July 2002.  The defendants removed this action to the federal district court in Louisiana

On August 28, 2001, the Judicial Panel on Multidistrict Litigation (the "Panel") issued a transfer order, pursuant to 28 U S C  § 1407, centralizing 14 similar PPA actions in the Western District of Washington  *See In re Phenylpropanolamine (PPA) Products Liability Litigation,* 173 F  Supp. 2d 1377 (J.P M L  2001)  According to the Panel, centralization of the cases, which all involved "complex core questions regarding the safety of PPA," was necessary "in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings and conserve the resources of the parties, their counsel and the judiciary "  *Id*  The Panel reached this conclusion despite "differences among

the actions in terms of named defendants, specific products involved, legal theories of recovery, status as class actions, and/or types of injury alleged " *Id*    According to the Panel, consolidation would best "promote the just and efficient conduct of the litigation" without causing inconvenience to the parties *Id*

Similar cases pending in Louisiana federal district courts were treated as potential tag-along actions.[1]  To date, the Panel has issued twenty-one Transfer Orders conditionally transferring over 350 PPA cases to the Western District of Washington [2]  Most of these conditional transfer orders have become final

Many of the cases pending in this District have already been transferred, or are in the process of being transferred, to the MDL court for further proceedings    As discussed later in this memorandum, most of the courts addressing the issues (including this Court)[3] have stayed those cases pending a final determination by the Panel on transfer    Likewise, a temporary stay in the proceedings in this case, pending a final ruling by the Panel regarding transfer of the case to the MDL, will promote judicial efficiency, consistency in pre-trial rulings and convenience to the parties and witnesses

---

[1] A "tag-along action"  means "a civil action pending in a district court and involving common question of fact with actions previously transferred under Section 1407 " R.P J P M L 1 1

[2] "Upon learning of the pendency of a potential "tag-along action,"    an order may be entered by the Clerk of the Panel transferring that action to the previously designated transferee district court on the basis of the prior hearing   and for the reasons expressed in previous opinions and orders of Panel in the litigation " R P J P M L 7 4(a)

[3] *Ohillia v  Novartis Pharmaceuticals Corp* , No  02-724

2

## 1. A Stay Furthers the Goals of Judicial Efficiency and Consistency

This Court's authority to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants "[4] Thus, while the decision to grant a stay is discretionary, "it is appropriate when it serves the interest of judicial economy and efficiency."[5] As explained by the Northern District of Illinois, a stay, although not required, promotes efficiency and consistency even when the jurisdiction is questioned

> Sending these cases to the MDL is not mandatory. But the benefits of transferring them to the MDL—the body established by Congress specifically to ameliorate the duplicative litigation and the valuable waste of judicial resources—are obvious Once transferred, the jurisdictional objections can be heard and resolved by a single court . The rewards of this approach are consistency and economy [6]

Even when jurisdictional issues have been raised, transfer to the MDL is appropriate [7] A stay promotes judicial efficiency because it prevents duplication of effort by the court if a case is later transferred to an MDL. If no stay is granted, and the case is later transferred to an MDL, the transferor court will have "needlessly expended its energies familiarizing itself with the intricacies of a case that would be heard by another judge [and] any efforts on behalf of.. [the transferor] court concerning case management will most likely have to be replicated by the judge that is assigned to handle the consolidated litigation.. "[8] According to *Rivers*, "a majority of courts have concluded that

---

[4] *Landis v North American Co* , 299 U S 248, 254, 57 S Ct 163, 166, 81, L Ed 153 (1936)

[5] *Rivers v Walt Disney Company,* 980 F Supp 1358, 1360 (C D Cal 1997)

[6] *Johnson v AMR Corp ,* 1996 WL 164415 (N D Ill , 1996) at *3

[7] *Id*

[8] *Rivers,* 980 at 1360-1361

3

it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources that are conserved "[9]

In the Eastern District of Louisiana, Judges Beer, Duval, Engelhardt, Fallon, Feldman, McNamara, Porteous and Vance have issued stay orders citing judicial efficiency and consistency in pre-trial rulings [10] Judges in the Middle District of Louisiana have also stayed several PPA cases pending the Panel's final determination on transfer.[11]  Judge Polozola's stay was in a PPA case where a motion to remand was at issue pending a transfer decision by the MDL.  Likewise, Judges Doherty and James and Magistrate Judges Payne and Kirk of the Western District of Louisiana all have recognized that judicial efficiency is best served by a stay of similarly situated PPA cases pending the Panel's final order on transfer  On or about November 14, 2001, Magistrate Judge Payne entered a stay order in over forty PPA cases pending in the Western District [12]

---

[9] *Id* at 1362

[10] *Peterson v  Bayer Corp , et al*, No  01-3467, *Dyson v  American Home Products Corp , et al*, No  01-3548, *Craft v  Whitehall-Robins Health Care, et al*, No  01-3490, *Doreen Martin v  Bayer Corp , et al*, No  013477, *Garrison v  American Home Products, et al*, No  01-3484, *Garcia v  SmithKline Beecham Corp , et al*, No  01-3448, *Favorite v  Bayer Corp , et al*, No  01-3478, *Mercier v  Ciolino Pharmacy, et al*, No  02-0413

[11] *Fortenberry v  American Home Products Corp , et al*, No  02-145, *Beals v  American Home Products Corp , et al*, No  02-148-D; *Williams v  Bayer Corp , et al*, No  02-214

[12](1) *Barbara Evans, v  Bayer Corp* , No  01-CV1486, (2) *Malvine Moore, v  Bayer Corp* , No  01-CV1487, (3) *Samuels, v  Bayer Corp* , No  01-CV1488, (4) *Dianne Thomas, v  Bayer Corp* , No  01-CV1489, (5) *Bobby Holmes, v  Bayer Corp* , No  01-CV1490, (6) *James L  Hill, Jr , v  Bayer Corp* , No  01-CV1499, (7) *Lorenzo Maiden, v  Bayer Corp* , No  01-CV1500, (8) *Rambo v  Bayer Corp* , No  01-CV1626; (9) *Ivory O'Neal v  Bayer Corp* , No  01-CV1627, (10) *Silas D  Whitaker v  Bayer Corp* , No  01-CV1628, (11) *Jerry Bowman v  Bayer Corp* , No  01-CV1629, (12) *Sam Baker v  Bayer Corp* , No  01-CV1630, (13) *Demetria Speed v  Bayer Corp* , No  01-CV1631, (14) *Demetris Calhoun v  Bayer Corp* , No  01-CV1632, (15) *Allen Ray Bolden v  Bayer Corp* , No  01-CV1634, (16) *Floyd Waters, Jr  v  Bayer Corp* , No  01-CV1819, (17) *Joe Moore v  Bayer Corp* , No  01-CV1801, (18) *Mary Jean Walker v  Bayer Corp* , No  01-CV1818, (19) *Pinkie Ruffen v  Bayer Corp* , No  01-CV-1744, (20) *Horace Douglas v  Bayer Corp* , No  01-CV1742, (21) *Charlie Jackson v  Bayer Corp* , No  01-CV1697, (22) *Bernard James v  Bayer Corp* , No  01-CV1696, (23) *W T  King v  Bayer Corp* , No  01-CV1745, (24) *Clyde Metcalf v  Bayer Corp* , No  01-CV1694, (25) *Gloria Thompson v  Bayer Corp* , No  01-CV1698, (26) *Essie Mae Turner v  Bayer Corp* , No  01-CV1739, (27) *Dwight Wiley v  Bayer Corp* , No  01-CV1660, (28) *Louis Wright v  Bayer Corp* , No  01-CV1695, (29) *Willie Lee Young v  Bayer Corp* , No  01-CV1743, (30) *Perry Hill v  Bayer Corp* , No  01-CV1741, (31) *Mozetta Johnson v  Bayer Corp* , No  01-CV1746, (32) *Ardis McCall v  Bayer Corp* , No  01-

In *James Bowman v Bayer Corp, et al,* No 01-1802-A, Magistrate Judge Kirk

recommended a stay pending the Panel's final determination on transfer because:

> . .it makes no sense for this court to decide the remand issue in each of the
> cases now pending before it and for myriad other federal courts across the
> land to be required to study the record, research the law and write opinions
> on the identical issue  In other words, judicial economy is a strong factor
> in this case in favor of a stay. (See Magistrate Judge Kirk's Report at 5,
> attached as Exhibit A)

Judge James adopted Magistrate Kirk's recommendation in *Tamika McFee v Bayer Corp,*

*et al,* No 01-1820-M and entered judgment staying that case "pending final determination by the

Panel on Multidistrict Litigation as to whether a final order of transfer will be entered in this

case "(See Exhibit B).

In addition to judicial economy, Magistrate Judge Kirk's report identifies the risk of

inconsistent pretrial rulings as another factor in support of a stay  (See Magistrate Kirk's Report in

*Bowman* at 4, attached as Exhibit A)  The jurisdictional objections at issue in this case are common

---

CV1740, (33) *R L  George v  Bayer Corp,* No 01-CV1922, (34) *Betty Clinton v  Bayer Corp,* No 01-CV-1943,
(35) *Jessie Foster v  Bayer Corp,* No 01-CV-1940, (36) *James Jones v  Bayer Corp,* No 01-CV-1941, (37) *Rufus
James Hampton v  Bayer Corp,* No 01-CV-1945, (38) *Fred Ashley v  Bayer Corp,* No 01-CV-1942, (39) *James
Perkins v  Bayer Corp,* No 01-CV-1946, (40) *Joe Johnson, Jr  v  Bayer Corp,* No 01-CV-1944, (41) *Abon
Claville v  Bayer Corp,* No 01-CV-1896, (42) *Michael Johnson v  Bayer Corp,* No 01-CV-1895, and (43) *Mickey
Lathon v  Bayer Corp,* No 01-CV-1984
*Bayer Corporation, et al,* No 01-CV-1984

to numerous other PPA cases  Thus, as Magistrate Kirk notes in his report,

> [a]lthough plaintiff argues that a Louisiana court can best decide issues
> of Louisiana law concerning the viability of the state law claims against
> defendant K&B, the fact is that there is a significant risk of inconsistent
> rulings in this and all other cases now pending in which the fraudulent
> joinder issues exists…A uniform decision with regard to those issues in
> all such cases can best be made by the transferee court, not by this court
> (*See* Magistrate Kirk's report in *Bowman* at 4)

*See also Ivy v  Diamond Shamrock Chem  Co ,* 901 F 2d 7, 9 (2d Cir. 1990) (affirming Panel's

rejection of plaintiffs' request that remand motion be decided by transferor court, holding that "[t]he

jurisdictional issue in question is easily capable of arising in hundreds or even thousands of cases

in district courts throughout the nation." and that "[c]onsistency as well as economy is thus served"

if "the jurisdictional objections . [are] heard and resolved by a single court")

Indeed, inconsistency already exists in Louisiana where remand has been adjudicated  Judge

Rothstein has denied remand in several cases,[13] while Judges Lemelle, Lemmon, and Barbier have

come to different legal conclusions in their orders to remand based on substantially similar PPA

cases [14]

---

[13] Judge Rothstein, in the ongoing MDL proceeding, has denied remand motions in numerous similar cases involving
Louisiana law  *See Perksin v  Bayer Corp , et al*, No  C01-2023R, *Claville v  Bayer Corp , et al*, No  C01-2015R,
*Lathon v  Bayer Corp , et al*, No  C01-2013R, *Ashley v  Bayer Corp , et al*, No  C01-2019R, *Monk v  Bayer Corp ,
et al*, No  C01-1799R, *Hampton v  Bayer Corp , et al*, No  C01-2022R, *Johnson v  Bayer Corp, et al*, No  C01-
2021R, *O'Neal v  Bayer Corp , et al*, No  C01-2011R, *Whitaker v  Bayer Corp , et al* No  C01-2012R, *Johnson v
Bayer Corp , et al*, No  C01-2014R, *Gray v  Bayer Corp , et al*, No  C01-1796R, *Moore v  Bayer Corp , et al*, No
01-2051R, *Bowman v  Bayer Corp , et al* No  C01-1868R, *Clinton v  Bayer Corp , et al*, No  C01-2020R, *Foster v
Bayer Corp , et al*, No  C01-2017R, *George v  Bayer Corp , et al*, No  C01-2016R, *Rambo v  Bayer Corp , et al*, No
C01-2010R, *McFee v  Bayer Corp , et al*, No  C01-1859R, *Walker v  Bayer Corp , et al*, No  C01-2053R, *Delaney v
Bayer Corp , et al*, No  C01-2052R, *Bolden v  Bayer Corp , et al*, No  C01-2070R, *Bowman v  Bayer Corp , et al*,
No  C01-2064R, *Waters v  Bayer Corp , et al*, No  C01-2054R, *Speed v  Bayer Corp , et al*, No  C01-2067R,
*Calhoun v  Bayer Corp , et al*, No  C01-2068R, and *Baker v  Bayer Corp , et al*, No  C01-2065R

[14] *Mosley v  Bayer Corporation* No  01-3479 E D  La  U S D C , *St  Amand v  Bayer Corp ,  No  01-3421 E D  La
U S D C , *Bardales v  Whitehall-Robins* No  01-3487 E D  La  U S D C , and *Coleman v  Bayer Corp ,* No  02-333
E D  La  U S D C

A stay is also appropriate because it is very likely that this case will ultimately be transferred to MDL-1407. A tag-along action is transferred to an existing MDL if it shares common issues of fact with the MDL cases, promotes the convenience of parties and witnesses, and advances the just and efficient conduct of the actions [15] Plaintiff's PPA claims and allegations involve numerous common issues of fact with the cases already part of the MDL. As Magistrate Kirk recognized in *Bowman* and *McFee* transfer "appears likely." (See Exhibit A at 6.)

### 2. A Stay Does Not Unduly Prejudice the Plaintiff

A temporary stay will not unduly prejudice the plaintiff [16] If the plaintiff timely opposes transfer, the Panel will address plaintiff's objections at its next appropriate session [17] The delay will likely be brief and does not warrant denying defendants their requested stay *See e g , American Seafood, Inc v Magnolia Processing,* 1992 WL 102762 (E D. Pa May 7, 1992) at *1 (granting motion to stay pending ruling by Panel, and noting that "[the] plaintiffs will not be substantially prejudiced by staying this action pending the decision of the JPML The stay which the court orders will only be in effect until the JPML issues its decision.")

Moreover, any potential prejudice from a short delay is far outweighed by the benefits of a stay--preventing inconsistent results and promoting judicial efficiency. A stay would be limited to the brief period pending a transfer decision by the Panel If the Panel decides on consolidation

---

[15] *See In re Stirling Homex Corp Sec Litig ,* 442 F Supp 547, 549 (J P M L 1977), *In re Equity Funding Corp of Am Sec Litig ,* 397 F Supp 884-85 (J P M L 1975)

[16] In fact, in similar PPA cases, plaintiff's counsel has recognized the benefits of a temporary stay to both the court and parties and has moved the court to stay the PPA action *Ashley v American Home Products*, USDC W D La No 02-239

[17] R P J P M L 7 4 (d)

in MDL-1407, the plaintiff may then proceed in the Western District of Washington; if transfer is denied, plaintiff then proceeds in this Court

Under these circumstances, the benefits of a temporary stay are outweighed by any potential prejudice to the plaintiff *See Egon v Del-Val-Financial Corp.*, 1991 WL 13726 (D N J.) at *1 ("even if a temporary stay can be characterized as a delay prejudicial to plaintiffs, there are considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay ") *See also Weinke v Microsoft Corp*, 84 F Supp 2d 989,990 (W.D. Wis 2000) (rejecting plaintiff's assertions that a stay pending resolution of transfer issues would result in a "prolonged delay" and holding that plaintiff's cursory assertions of prejudice do not outweigh the disadvantages of litigating identical claims in a multitude of venues. .[and] in light of the pending MDL ruling on transfer   this action should be stayed in the interest of judicial economy and to avoid inconsistent results ")

In contrast, Novartis Consumer Health, Inc and the other defendants will be substantially prejudiced if the Court denies the stay   A temporary stay will prevent the defendants from unnecessarily incurring expenses in duplicative pretrial proceedings. As Magistrate Judge Kirk noted in *Bowman* "it would be manifestly unfair to require these defendants, which have been named as defendants in dozens of other similar cases, to defend each of those cases independently   " (see Exhibit A at 5)   The potential for duplicative pretrial motions and jurisdictional objections represents the sort of "hardship and inequity" that courts consider when deciding a motion to stay. *See Aikens v Microsoft Corp*, 2000 WL 310391 at *2 (E D La March 24, 2000) (finding a stay was appropriate to avoid "considerable hardship and inequity" to a defendant faced with multiple suits,

8

many with similar jurisdictional objections, in multiple courts) It is precisely this sort of duplicative

pretrial activity that the MDL proceeding is designed to prevent

## Conclusion

For the foregoing reasons, this Court should grant Novartis Consumer Health, Inc.'s Motion

for Temporary Stay pending a final ruling of the Judicial Panel on Multidistrict Litigation on transfer

of the case to MDL Docket No 1407 and stay all pretrial proceedings, including, but not limited to,

a stay of all hearings, disclosure, and deadlines established by the Federal Rules of Civil Procedure

and Local Rules of this Court.

Respectfully submitted,

BY:  _Eric R Nowak_

**Sessions Fishman & Nathan L.L.P.**
Joy Goldberg Braun (#3416) T.A
Eric R Nowak (#27025)
Shirin E Harrell (#27495)
201 St. Charles Avenue, Suite 3500
New Orleans, LA 70170-3500
Telephone· (504) 582-1500
      and
Randolph S Sherman
Lori B Leskin
Danielle E Finck
**Kaye Scholer LLP**
425 Park Avenue
New York, New York 10022
**Attorneys for Defendant**
**NOVARTIS CONSUMER HEALTH, INC.**

9

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 13th day of September, 2002, served a copy of the

foregoing pleading on counsel for all parties to this proceeding by ___ hand delivery, ___ U S

mail or _____ facsimile transmission

Eric R Nowak

10

S/. . .

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

FILED

USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE  10 , 19 , 01
BY  TLW

JAMES BOWMAN                    CIVIL ACTION NO. 01-1802-A

VERSUS                          U.S. DISTRICT JUDGE TOM STAGG

BAYER CORPORATION, et al    U.S. MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is plaintiff's motion to remand (Doc. #13) and motions for stay of proceedings (Doc. #21, #27) filed on behalf of defendants Bayer Corporation ("Bayer") and American Home Products Corporation ("American"). The motions have been referred to the undersigned for decision and report and recommendation, respectively[1].

Plaintiff sued defendants for damages claimed as the result of the ingestion of phenylpropanolamine ("PPA"). Defendants Bayer and American are diverse defendants. However, K&B Corporation ("K&B") is a Louisiana corporation, the addition of which, if not fraudulently joined, destroys diversity. Defendants argue that K&B was fraudulently joined for the purpose of preventing jurisdiction in this court.



---

[1] Similar motions are pending before me in Henry Monk v. Bayer Corporation, et al, #01-1760-A and Tamika McFee v. Bayer Corporation, et al, #01-1820-M, Western District of Louisiana, Report and Recommendations on which are issued contemporaneously this date.



EXHIBIT
" A "

Plaintiff argues that the allegations contained in the complaint against K&B are based on Louisiana's law of redhibition, acknowledging that under Louisiana law a non-manufacturing seller of an allegedly defective product is not liable in tort, absent a showing that it knew or should have known that the product was defective and failed to declare it. Wilson v. State Farm Fire & Cas. Ins. Co., 94-1342 (La.App.3 Cir. 4/5/95), 654 So.2d 385, rehg. den., writ. den., 95,1704 (La. 10/6/95), 661 So.2d 476. Here, plaintiff does not allege that K&B knew or should have known the product was defective, but alleges only that as a retail seller it is liable in redhibition for a product proven to be defective. Defendants argue that plaintiff's allegations in the complaint are inadequate to support a cause of action for redhibition.

In addition to opposing the motion to remand, defendants have asked this court to stay the entire proceeding, including the pending ruling on the plaintiff's motion to remand, until a determination can be made as to whether this case will be transferred pursuant to order of the Judicial Panel on Multi-district Litigation. Defendants point out that there are numerous cases in this district, as well as other district courts in Louisiana and in many other states, alleging damages as a result of the ingestion of PPA.

On August 28, 2001, the Panel transferred eight civil actions to the U.S. District Court for the Western District of Washington,

2

pursuant to 28 U.S.C. §1407. *See also* Rules of Procedure of the
Judicial Panel on Multidistrict Litigation, 192 F.R.D. 459 (2000).
In addition, the Panel has issued a conditional transfer order
regarding this case. Defendants seek a stay until such time as the
Panel determines whether the final transfer order will be entered.

In support of the motions for stay, defendants point to the
possibility of inconsistent rulings among the courts concerning the
issue now pending on motion to remand in various cases of whether
or not K&B was fraudulently joined. Second, defendants argue that
judicial economy would best be served by one court deciding that
issue rather than numerous judges each independently reviewing the
evidence and the law and independently deciding the issue.
Finally, defendants argue that it would be unfair to require
defendants to respond in each court to the very same arguments in
multiple suits. In opposing defendants' motions to stay, plaintiff
argues that the decision to stay is, of course, discretionary, that
the motion to remand has been pending for over two weeks and that
it is time to decide the motion to remand whether this court
decides it or another court decides it. Plaintiff also argues that
he would be inconvenienced and incur unnecessary expenses in
litigating this matter "thousands of miles from home."

Although the decision whether or not to grant stay is
discretionary with the court, my research reveals that where issues
are presented which are similar to those pending before the

3

transferee court, the court should defer to the transferee court
for decision.  Indeed, the purpose of the transfer by the Panel on
Multidistrict Litigation is for all pretrial proceedings.  *See* 28
U.S.C. §1407(a).    See, for example, In re Rezulin Products
Liability Litigation, 133 F.Supp.2d 272 (2001).

The purpose of the conditional transfer order for "tag-a-long
actions" is to allow the parties time to oppose the proposed order
of transfer.  The delay occasioned by the conditional transfer
order is not to allow the transferee district court to quickly
decide issues pending in the litigation. *See* Rule 7.4.  192 F.R.D.
459, et seq.  This court recognizes, however, that the pendency of
a transfer order does not in any way defeat or limit the authority
of this court to rule upon matters properly presented to it for
decision.  See In re Air Crash at Paris, France, 376 F.Supp. 887
(Jud. Pan. Mult. Lit. 1974) cited in Boudreaux v. Metropolitan Life
Ins. Co., 1995 WL 83788 (E.D. La. 1995).

Although plaintiff argues that a Louisiana court can best
decide issues of Louisiana law concerning the viability of the
state law claims against defendant K&B, the fact is that there is
a significant risk of inconsistent rulings in this and all other
cases now pending in which the fraudulent joinder issue exists.  In
addition, there may be similar issues as to the addition of
diversity destroying defendants in cases pending before the Panel
from other states.  A uniform decision with regard to those issues

4

in all such cases can best be made by the transferee court, not by this court. In addition, it makes no sense for this court to decide the remand issue in each of the cases now pending before it and for myriad other federal courts across the land to be required to study the record, research the law and write opinions on the identical issue. In other words, judicial economy is a strong factor in this case in favor of a stay. In addition, it would be manifestly unfair to require these defendants, which have been named as defendants in dozens of other similar cases, to defend each of those cases independently, or to be required to respond to motions to remand separately in each of those cases. As defendants correctly point out in brief, other courts routinely stay cases in such circumstances. *See, for example*, Boudreaux v. Metropolitan Life Ins. Co., 1995 WL 83788 (E.D. La. 1995)[1].

---

[1] The Fifth Circuit has not been directly presented with this issue. *See* Republic of Panama v. American Tobacco Co., Inc., 217 F.3d 343, 347 (5th Cir. 2000). *Compare, however*, Sliman v. Warner-Lambert Co., 2001 WL 515222 (E.D. La.), Vance J. Judge Vance also decided Boudreaux, Luna v. Warner-Lambert Co., 2001 WL 515223 (E.D. La.); Dixon v. Warner-Lambert Co., 2001 WL 515226 (E.D. La.); Pearl v. Warner-Lambert Co., 2001 WL 515227 (E.D. La.); Magallanes v. Warner-Lambert Co., 2001 WL 515232 (E.D. La.); DeBlanc v. Warner-Lambert Co., 2001 WL 515234 (E.D. La.); Berry v. Warner-Lambert Co., 2001 WL 515236 (E.D. La.); Tinson v. Warner-Lambert Co., 2001 WL 531097 (E.D. La.); Spatz v. Warner-Lambert Co., 2001 WL 531100 (E.D. La.); Pellebon v. Warner-Lambert Co., 2001 WL 531104 (E.D. La.); Felker v. Warner-Lambert Co., 2001 WL 531110 (E.D. La.); Miller v. Warner-Lambert Co., 2001 WL 531113 (E.D. La.); Edwards v. Warner-Lambert Co., 2001 WL 531117 (E.D. La.); Carter v. Warner-Lambert Co., 2001 WL 515247 (E.D. La.).

In this case, transfer appears likely and it is most appropriate that the transferee court decide the remand issue.

### Conclusion

For these reasons, IT IS RECOMMENDED that the district judge stay further proceedings in this case pending final determination by the Panel on Multidistrict Litigation as to whether a final order of transfer will be entered in the case and that decision on plaintiff's motion to remand be pretermitted pending lifting of the stay or transfer of the case.

### OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes his final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING

ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL

CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on

this the _16th_ day of October 2001.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

COPY SENT:
DATE: 10/22/01
BY: ___
TO: Diliberto
Singleton
Penton
Meyer
Arhand
Richard

7

FILED

NOV 1 6 2001

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

TAMIKA McFEE                    CIVIL ACTION NO. 01-1820-M

VERSUS                          U.S. DISTRICT JUDGE ROBERT G. JAMES

BAYER CORPORATION, et al        U.S. MAGISTRATE JUDGE JAMES D. KIRK

## J U D G M E N T

For the reasons contained in the Report and Recommendation of the Magistrate Judge previously filed herein, and after an independent review of the entire record, and concurring with the Magistrate Judge's findings under the applicable law;

IT IS ORDERED that Bayer Corporation's motion for stay [Doc. #15] is GRANTED, STAYING this case pending final determination by the Panel on Multidistrict Litigation as to whether a final order of transfer will be entered in the case.

IT IS FURTHER ORDERED that a decision on plaintiff's motion to remand [Doc. #8] is pretermitted pending lifting of the stay or transfer of the case.

THUS ORDERED AND SIGNED in Chambers at Monroe, Louisiana, on this ___ day of _November_ 2001.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

JUDGMENT ENTERED
11/19/01
BY _____
COPY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION



FILED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE  10 , 19 , 01
BY _____ Tlw

TAMIKA McFEE                          CIVIL ACTION NO. 01-1820-M

VERSUS                               U.S. DISTRICT JUDGE ROBERT G. JAMES

BAYER CORPORATION,
GLAXOSMITHKLINE PLC AND
K&B CORPORATION          U.S. MAGISTRATE JUDGE JAMES D. KIRK

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is plaintiff's motion to remand [Doc. #8] and motion for stay of proceedings [Doc. #15] filed on behalf of defendant Bayer Corporation ("Bayer"). The motions have been referred to the undersigned for decision and report and recommendation, respectively[1].

Plaintiff sued defendants for damages claimed as the result of the ingestion of phenylpropanolamine ("PPA"). Defendants Bayer and GlaxoSmithKline PLC ("GSK") are diverse defendants. However, K&B Corporation ("K&B") is a Louisiana corporation, the addition of which, if not fraudulently joined, destroys diversity. Defendant argues that K&B was fraudulently joined for the purpose of preventing jurisdiction in this court.

---

[1] Similar motions are pending before me in Henry Monk v. Bayer Corporation, et al, #01-1760-A and Tamika McFee v. Bayer Corporation, et al, #01-1820-M, Western District of Louisiana, Report and Recommendations on which are issued contemporaneously this date.



EXHIBIT
"B"

Plaintiff argues that the allegations contained in the complaint against K&B are based on Louisiana's law of redhibition, acknowledging that under Louisiana law a non-manufacturing seller of an allegedly defective product is not liable in tort, absent a showing that it knew or should have known that the product was defective and failed to declare it. <u>Wilson v. State Farm Fire & Casualty Ins. Co.</u>, 94-1342 (La.App.3 Cir. 4/5/95), 654 So.2d 385, <u>rehg. den.</u>, <u>writ. den.</u>, 95,1704 (La. 10/6/95), 661 So.2d 476. Here, plaintiff does not allege that K&B knew or should have known the product was defective, but alleges only that as a retail seller it is liable in redhibition for a product proven to be defective. Defendant argues that plaintiff's allegations in the complaint are inadequate to support a cause of action for redhibition.

In addition to opposing the motion to remand, defendant has asked this court to stay the entire proceeding, including the pending ruling on the plaintiff's motion to remand, until a determination can be made as to whether this case will be transferred pursuant to order of the Judicial Panel on Multidistrict Litigation. Defendant points out that there are numerous cases in this district, as well as other district courts in Louisiana and in many other states, alleging damages as a result of the ingestion of PPA.

On August 28, 2001, the Panel transferred eight civil actions to the U.S. District Court for the Western District of Washington,

2

pursuant to 28 U.S.C. §1407. *See also* Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 192 F.R.D. 459 (2000).

In support of the motion for stay, defendant points to the possibility of inconsistent rulings among the courts concerning the issue now pending on motion to remand in various cases of whether or not K&B was fraudulently joined. Second, defendant argues that judicial economy would best be served by one court deciding that issue rather than numerous judges each independently reviewing the evidence and the law and independently deciding the issue. Finally, defendant argues that it would be unfair to require defendant to respond in each court to the very same arguments in multiple suits. In opposing Bayer's motion to stay, plaintiff argues that the decision to stay is, of course, discretionary, that the motion to remand has been pending for over two weeks and that it is time to decide the motion to remand whether this court decides it or another court decides it. Plaintiff also argues that she would be inconvenienced and incur unnecessary expenses in litigating this matter "thousands of miles from home."

Although the decision whether or not to grant stay is discretionary with the court, my research reveals that where issues are presented which are similar to those pending before the transferee court, the court should defer to the transferee court for decision. Indeed, the purpose of the transfer by the Panel on Multidistrict Litigation is for all pretrial proceedings. See 28

3

U.S.C. §1407(a).    See, *for example*, <u>In re Rezulin Products</u> <u>Liability Litigation</u>, 133 F.Supp.2d 272 (2001).

The purpose of the conditional transfer order for "tag-a-long actions" is to allow the parties time to oppose the proposed order of transfer.    The delay occasioned by the conditional transfer order is not to allow the transferee district court to quickly decide issues pending in the litigation. *See* Rule 7.4. 192 F.R.D. 459, et seq. This court recognizes, however, that the pendency of a transfer order does not in any way defeat or <u>limit</u> the authority of this court to rule upon matters properly presented to it for decision.    See <u>In re Air Crash at Paris, France</u>, 376 F.Supp. 887 (Jud. Pan. Mult. Lit. 1974) cited in <u>Boudreaux v. Metropolitan Life</u> <u>Ins. Co.</u>, 1995 WL 83788 (E.D. La. 1995).

Although plaintiff argues that a Louisiana court can best decide issues of Louisiana law concerning the viability of the state law claims against defendant K&B, the fact is that there is a significant risk of inconsistent rulings in this and all other cases now pending in which the fraudulent joinder issue exists. In addition, there may be similar issues as to the addition of diversity destroying defendants in cases pending before the Panel from other states.  A uniform decision with regard to those issues in all such cases can best be made by the transferee court, not by this court.    In addition, it makes no sense for this court to decide the remand issue in each of the cases now pending before it

4

and for myriad other federal courts across the land to be required
to study the record, research the law and write opinions on the
identical issue.    In other words, judicial economy is a strong
factor in this case in favor of a stay.    In addition, it would be
manifestly unfair to require this defendant, which has been named
as defendant in dozens of other similar cases, to defend each of
those cases independently, or to be required to respond to motions
to remand separately in each of those cases.    As defendant
correctly points out in brief, other courts routinely stay cases in
such circumstances.    See, for example, Boudreaux v. Metropolitan
Life Ins. Co., 1995 WL 83788 (E.D. La. 1995)[2].

    In this case, transfer appears likely and it is most
appropriate that the transferee court decide the remand issue.

_____

    [2] The Fifth Circuit has not been directly presented with
this issue.    See Republic of Panama v. American Tobacco Co.,
Inc., 217 F.3d 343, 347 (5th Cir. 2000).    Compare, however,
Sliman v. Warner-Lambert Co., 2001 WL 515222 (E.D. La.), Vance J.
Judge Vance also decided Boudreaux, Luna v. Warner-Lambert Co.,
2001 WL 515223 (E.D. La.); Dixon v. Warner-Lambert Co., 2001 WL
515226 (E.D. La.); Pearl v. Warner-Lambert Co., 2001 WL 515227
(E.D. La.); Magallanes v. Warner-Lambert Co., 2001 WL 515232
(E.D. La.); DeBlanc v. Warner-Lambert Co., 2001 WL 515234 (E.D.
La.); Berry v. Warner-Lambert Co., 2001 WL 515236 (E.D. La.);
Tinson v. Warner-Lambert Co., 2001 WL 531097 (E.D. La.); Spatz v.
Warner-Lambert Co., 2001 WL 531100 (E.D. La.); Pellebon v.
Warner-Lambert Co., 2001 WL 531104 (E.D. La.); Felker v. Warner-
Lambert Co., 2001 WL 531110 (E.D. La.); Miller v. Warner-Lambert
Co., 2001 WL 531113 (E.D. La.); Edwards v. Warner-Lambert Co.,
2001 WL 531117 (E.D. La.); Carter v. Warner-Lambert Co., 2001 WL
515247 (E.D. La.).

## Conclusion

For these reasons, IT IS RECOMMENDED that the district judge stay further proceedings in this case pending final determination by the Panel on Multidistrict Litigation as to whether a final order of transfer will be entered in the case and that decision on plaintiff's motion to remand be pretermitted pending lifting of the stay or transfer of the case.

### OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes his final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING

6

ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL

CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on

this the ___16th___ day of October 2001.



JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

COPY SENT:
DATE: 10/22/01
BY: ___
TO: Singleton
Penton
Diliberto
Blanchard
Armand
Irwin

7

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

DAPHINE B. DONNELLY, ET AL

V

BAYER CORPORATION, ET AL.

CIVIL ACTION
NO. 02-cv-2436

JUDGE ENGELHARDT

MAGISTRATE SHUSHAN

**NOTICE OF HEARING**

**PLEASE TAKE NOTICE** that defendant, Novartis Consumer Health, Inc. through

undersigned counsel, will bring its's Motion for Temporary Stay for hearing before the United States

District Court for the Eastern District of Louisiana, 500 Camp Street, New Orleans, Louisiana, on

the 2nd day of October, 2002, at 9 30 o'clock a.m .

Respectfully submitted,

BY:    *Eric R. Nowak*

**Sessions Fishman & Nathan L.L.P.**
Joy Goldberg Braun (#3416) T A
Eric R. Nowak (#27025)
Shirin E. Harrell (#27495)
201 St Charles Avenue, Suite 3500
New Orleans, LA 70170-3500
Telephone: (504) 582-1500
and

Randolph S  Sherman
Lori B  Leskin
Danielle E  Finck
**Kaye Scholer LLP**
425 Park Avenue
New York, New York 10022

**Attorneys for Defendant
NOVARTIS CONSUMER HEALTH, INC.**

### CERTIFICATE OF SERVICE

I hereby certify that I have on this 13TH day of September, 2002, served a copy of the

foregoing pleading on counsel for all parties to this proceeding by ___ hand delivery, _____ U S.

mail or _____ facsimile transmission.

_____
ERIC R  NOWAK

2





```
CASE:      2 02-cv-02436/P
DOCUMENT   19
DATE:      09/13/02

CLERK·     tbl
```

*** There will be no noticing for this document ***

Document scanned by: _____

FILED
U S DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP 11  PM 4: 04

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B  DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO  02-CV-2436 |
| VERSUS | * | |
| | * | JUDGE ENGELHARDT |
| BAYER CORPORATION, NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION, | * | MAGISTRATE JUDGE SHUSHAN |
| NOVARTIS CONSUMER HEALTH, INC , | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE, SMOOTHIE KING | * | |
| CO , INC , SMOOTHIE KING SYSTEMS, | * | |
| INC , and WALGREEN LOUISIANA CO , | * | |
| INC  (D/B/A "WALGREENS") | | |

* * * * * * * * * * * * * * * * * * * * * * * * *

## CROSS-NOTICE OF VIDEOTAPED
## DEPOSITION OF WALTER KERNAN

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure, Rules 26

*et seq* , and in accordance with the Order of the United States District Court for the Western

District of Washington, filed August 19, 2002, in the matter of *In Re  Phenylpropanolamine*

*(PPA) Products Liability Litigation*, MDL Docket No  1407, defendant Bayer Corporation and

other manufacturer defendants will take the deposition of Walter N  Kernan at the Omni Hotel -

New Haven, 155 Temple Street, New Haven, CT 06510, commencing at 8 30 a m  on September

Fee
Process
X  Dktd  7KR
CtRmDap
Do  No  7R

18, 2002, and continuing on September 19, 2002 (at 8 30 a m ) and September 20, 2002 (at 1 00 p m ), or such other places, times and dates to which the parties and the witness may agree

Please take further notice that the witness has been directed to produce for inspection, copying, and use at the deposition the documents and things described in the attached Exhibit A

Please take further notice that the above deposition will be recorded by videotape as well as by stenographic means.  The name and address of the videographer(s) will be provided prior to commencement of the deposition

Respectfully submitted,

Mary L  Meyer, Esq  (19966)
John F  Olinde (1515)
Charles P  Blanchard (18798)
**CHAFFE, MCCALL, PHILLIPS,**
   **TOLER & SARPY, L.L.P.**
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2300
Telephone  (504) 585-7000
**Attorneys for Bayer Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this _11th_ day of September, 2002, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by hand delivery, facsimile, or by depositing the same in the United States mail, properly addressed, and first-class postage prepaid

## EXHIBIT "A"

As used herein, the term "document" or "documents" shall mean and include any written, printed, drawn, recorded, transcribed, filed or graphic matter, however produced, reproduced, or stored on computer or otherwise electronically stored, and any originals, copies, drafts, revisions, or amendments thereof "Document" or "Documents" shall include, by way of example and without limitation, letters, memoranda, notes, e-mails, test data, charts, x-rays, reports, medical records, records of payment, diagrams, manuals, test procedures, sketches, graphs, prints, secretarial notes, work pads, diaries, films, tapes, videotapes, photographs, computer disks, computer printouts, computer memory banks, books, publications, literature, announcements, or other writings or tangible objects Further, "document" or "documents" requested herein extend to and include any and all such materials within the possession, custody, or control of you and your agents, attorneys, or representatives, regardless of where located For any document withheld from production, and any document redacted in any manner, please identify the document withheld or redacted by date, author, type of document, subject matter, recipient, and any grounds for withholding or redaction of the document You are to produce the materials in your possession, custody, or control listed below

1    All documents related to the initiation of the Yale Hemorrhagic Stroke Project (hereinafter "HSP")

2    All documents related to the organizational structure of persons involved in the HSP

3    All documents relating to the study personnel's experience and credentials (including but not limited to the curriculum vitae of each professional who participated in the study)

4    All medical literature and case reports that were considered, reviewed, relied upon, and/or utilized in any manner by you or by any investigator or other personnel involved in the HSP from the inception of the HSP until its publication in the New England Journal of Medicine

5    All documents related to the Protocol for the HSP including, but not limited to

    a)    all documents related to the creation or development of the Protocol,

    b)    all documents related to the estimation of the sample size, including MRI market research data,

    c)    all documents related to or containing communications with anyone regarding the Protocol,

    d)    all documents related to comments, revisions, or modifications to the Protocol, and

e)      all drafts of the protocol

6       All documents related to obtaining Institutional Review Board Approval of the HSP

7       All documents related to the conduct of the HSP including, but not limited to

a)      all documents regarding or concerning the network of participating hospitals,

b)      all documents regarding the recruitment of investigators, hospitals, and all persons involved in any way in the HSP,

c)      all procedure manuals and all investigator's brochures, and

d)      all documents regarding the training of any and all persons involved in the HSP, including but not limited to training manuals, training videotapes, training attendance, identity of trainers, and confirmation of training

8       All documents related to the ascertainment of cases in the HSP including, but not limited to, all documents regarding

a)      the active surveillance program,

b)       the surveillance team,

c)      the case definition,

d)      methods of case ascertainment, and

e)      exclusion criteria

9       All documents related to the selection of controls in the HSP including, but not limited to, all documents regarding the use of random digit dialing and all documents concerning telephone numbers that did not result in an eligible person or control

10      All documents related to data collection and processing in the HSP including, but not limited to

a)      all data collection forms,

b)      all interview data forms,

c)      training manuals for interviewers,

d)      data logs regarding cases and controls,

e)      all case identification forms,

f)      all potential control forms;

g)      all log-in records,

h)      all data editing, coding and validation manuals,

i)      all screening questionnaires,

j)      all documents and records reviewed by a panel of stroke neurologists involved in the determination of whether eligibility criteria were met,

k)      all documents and records reviewed or generated by study physicians,

l)      all documents and records, including logs, regarding stroke patients rejected as not meeting eligibility criteria,

m)      all medical records and scans (e.g , CT, MRI, MRA, angiogram, etc ),

n)      all documents regarding scheduling of interviews and collection of information from all study participants,

o)      all product identification books, photographs, and charts,

p)      all drug containers and drug labels furnished by study participants,

q)      all documents related to observations of interviews,

r)      all documents related to the assignment of interviewers,

s)      all documents related to surrogate/proxy interviews,

t)      all documents related to the use or handling of data or information obtained from surrogate/proxy interviews,

u)      all data abstraction forms,

v)      all coding forms,

w)      all documents related to codes, including their definition,

x)      all documents relating to the monitoring of sample size,

y)    all documents related to modification of any aspect of the HSP,

z)    every participating subject's folder and all contents of the folder,

aa)   all audio tapes of interviews of study subjects,

bb)   all financial reports, and

cc)   all documents regarding the disbursement of funds

11    All documents regarding the proxy respondent sub-study

12    All documents regarding communications concerning the HSP including, but not limited to, all documents regarding communications·

a)    between persons participating in the conduct of the HSP (For purposes of this Item 12, "conduct" is defined to including without limitation the design of the HSP, analysis of data, variations of or amendments to the HSP protocol variations, and the drafting or revision of abstracts, summaries, manuscripts and/or submissions relating to the HSP),

b)    between anyone involved in the conduct of the HSP and any other person or organization including, but not limited to, yourself, the Food and Drug Administration, the Nonprescription Drug Manufacturers Association, the Consumer Healthcare Products Association, any member of the Scientific Advisory Group, pharmaceutical companies, and/or any of their current or former employees, members or representatives,

c)    between anyone involved in the conduct of the HSP and any person claiming injury from use of PPA-containing medication,

d)    with physician investigators,

e)    with participating hospitals including, but not limited to, communications with the surveillance officers and the admissions offices at the participating hospitals,

f)    with the Principal Investigator at each participating study site,

g)    with each case's physician,

h)    with any medical or scientific journals including, without limitation, the New England Journal of Medicine,

i)     with any physicians, epidemiologists, statisticians, or other professionals asked by any person or entity (including, but not limited to, the <u>New England Journal of Medicine</u>) to conduct a peer review of the study and its results,

j)     between HSP investigators and any member of the Scientific Advisory Group,

k)     between HSP investigators and the <u>New England Journal of Medicine</u>, and

l)     with any other person at any of the participating institutions

13     All documents related to the Scientific Advisory Group including, but not limited to, communications, reports, site visits, and travel expenses

14     All documents regarding the handling, calculations, or use of any and all data obtained regarding the HSP including, but not limited to

a)     all electronic analysis files,

b)     all documents related to interim data analysis,

c)     all final analysis files, and

d)     all data access logs,

e)     all database dictionary files,

f)     all data collection instruments,

g)     all databases constructed from the questionnaires,

h)     all databases for each intermediate and final analysis that relates to the Final Report and the <u>New England Journal of Medicine</u> article,

i)     all analyses not included in the Final Report or the <u>New England Journal of Medicine</u> Article,

j)     all analyses done after receipt of comments from or on behalf of CHPA or any predecessor organization of CHPA,

k)     all documents concerning the use of and/or difference between data analysis via a one-tailed or two-tailed statistical test,

l)      all documents concerning the adjustment of variables and analyses used
        for the adjustment of variables

15      All documents regarding the Final Report of the HSP and its preparation
        including, but not limited to, all communications, comments and drafts

16      All documents regarding the publication of the HSP in the New England Journal
        of Medicine, including but not limited to correspondence dated after publication
        of the HSP in the New England Journal of Medicine

17      All documents evidencing revisions, changes, additions, or deletions made to the
        Final Report of the HSP (and/or the data contained in that report) prior to the
        publication of the study's results in the New England Journal of Medicine

18      All documents regarding conferences, discussions, or meetings with FDA
        regarding the HSP, including, without limitation, documents concerning
        preparations for October 19, 2000 hearing

19      All documents relating to any comments about, or criticisms of, The HSP from
        any source including, without limitations, letters to the editor concerning the HSP

20      All documents regarding the Authors' Reply published in the April 5, 2001 New
        England Journal of Medicine including, but not limited to, all data analyses and
        communications with anyone after publication

21      All documents relating to the removal or refiling of any document responsive to
        any of the above categories



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP 10 PM 2: 27

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAPHINE DONNELLY, and            *        CIVIL ACTION
JEROME DONNELLY, Husband         *
                                 *        NO  02-CV-2436
VERSUS                           *
                                 *        JUDGE ENGELHARDT
BAYER CORPORATION, NOVARTIS      *
PHARMACEUTICALS CORPORATION,     *        MAGISTRATE JUDGE SHUSHAN
NOVARTIS CONSUMER HEALTH, INC ,  *
4 LIFE RESEARCH, LC, Successor by *
merger to SHAPERITE, SMOOTHIE KING*
CO , INC , SMOOTHIE KING SYSTEMS, *
INC , and WALGREEN LOUISIANA     *
CO , INC , (d/b/a "Walgreens")   *
*  *  *  *  *  *  *  *  *  *  *  *  *  *

## MEMORANDUM IN OPPOSITION TO WALGREEN'S MOTION TO DISMISS

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Daphine Donnelly and her husband Jerome Donnelly, who respectfully submit this Memorandum in Opposition to Walgreen's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)  Defendant has filed a Motion to Dismiss asserting that Plaintiffs' claims are prescribed pursuant to Louisiana Civil Code Art  3492   The Defendant has erroneously combined a Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss with a Louisiana Code of Civil Procedure Art  927 Peremptory Exception of Prescription  Plaintiff will treat this as a Motion to Dismiss and address the prescription issue  For

1

Fee
Process
X Dktd
CtRmDep
Doc No

the following reasons, Walgreen's Motion to Dismiss should be denied

## **BACKGROUND**

Plaintiff Daphne Donnelly suffered a stroke on or about January 12, 1991 as a result of ingesting PPA/ephedrine-containing products, including, but not limited to Alka-Selzer Plus and Tavist-D   Ms Donnelly purchased the Alka-Selzer Plus and the Tavist-D at Walgreens in Chalmette, Louisiana   As noted in Paragraph 8 of Plaintiff's petition, the causal relationship of Ms Donnelly's injury to the products containing PPA/ephedrine was inherently undiscoverable until she was warned of the dangers of ingesting the product

On November 6, 2000, the FDA officially recommended that all makers of over-the-counter pharmaceuticals that contain PPA voluntarily remove this chemical from the pharmaceutical   By correspondence of the same date, the FDA urged all manufacturers and sellers of over-the-counter medications containing PPA to cease immediately the distribution and sale of said products   Also on November 6, 2000, the FDA's Nonprescription Drug Advisory Committee issued an advisory warning consumers of the risk of hemorrhagic stroke and warned consumers not to use any medications that contain PPA

Prior to November 6, 2000, Plaintiff did not discover, nor through the exercise of reasonable care and diligence could she have discovered, that her injury and illness in 1991 was in any way related to the products containing PPA/ephedrine   It was only after the publicity associated with the FDA warning that Plaintiff became aware that PPA containing products were withdrawn from the market, and further, that ephedrine contains many of the same ingredients and has been linked to many injuries and deaths relating to its ingestion, just as with PPA-containing products

2

As noted by the Defendant, Louisiana Civil Code Art 3492 sets forth a one-year prescriptive period for delictual actions However, the doctrine of contra non valentum suspends prescription during the period of time that the cause of action was unknown to the plaintiff Several class action petitions[1], one of which was a Louisiana state class action petition (see <u>Fife</u> in Footnote No 1) were filed within one year of the November 6, 2000 FDA warning to the public and the removal of the PPA-containing products from the market These class action petitions protected the rights of the Plaintiffs herein and prescription was suspended pending judgment of the class certification issue Judge Rothstein denied class certification in the MDL per order dated June 5, 2002

According to Louisiana Code of Civil Procedure Rule 596, prescription which has been suspended begins to run 30 days after notice to the class that the court has denied a motion to certify the class Plaintiffs filed suit on July 2, 2002 – within 30 days of the denial of class certification

## ARGUMENT

In evaluating a Motion to Dismiss filed under F R C P , 12(b)(6), the moving party bears the burden of showing that the plaintiff can prove no set of facts consistent with the allegations in the Petition for Damages that would entitle her to relief <u>Baton Rouge Building and Construction Trades Council, AFL-CIO v Jacobs Constructors, Inc</u>, 804 F 2d 879 (5th Cir 1986) In addition, the reviewing Court "must accept as true well-plead averments and view then in light most favorable to

---

1 The following cases are in MDL 1407, In Re Phenylpropanolamine (PPA) Products Liability Litigation in the United States District Court for the Western District of Washington Ricks, et al v American Home Products Corp , et al , No C01-2144R, Havard v SmithKline Beecham, Inc , et al , No C01-1645R and Fife, et al v American Home Products Corp , et al , No C01-2144R

3

the plaintiff" American Waste and Pollution Control Co v Browning-Ferris, Inc , 949 F 2d 1384, 1386 (5th Cir 1991)

Walgreen's would have this Court believe that the suit brought by Plaintiffs Daphine and Jerome Donnelly is prescribed since Ms Donnelly suffered from a stroke in January 1991 and did not file suit until July 2, 2002 While Louisiana Civil Code Art 3492 states that delictual actions are subject to a liberative prescription of one year commencing to run from the day the injury or damage is sustained, statutes governing prescription are strictly construed against prescription and in favor of the Obligation sought to be extinguished Babkow v Morris Bart, PLC, 98-0256 (La App 4 Cir 12/16/98), 726 So 2d 423 With two possible constructions, the one that favors maintaining, as opposed to barring, an action should be adopted Id citing Bustamento v Tucker, 607 So 2d 532 (La 1992)

Under the doctrine of contra non valentum, prescription may be suspended during the period in which the cause of action was not known by or reasonably knowable by the plaintiff Williams v Lafayette Ins , 98-2855 (La App 4 Cir 5/19/99), 740 So 2d 183 citing La Plaque Corporation v Chevron U S A , Inc , 93-1597 (La App 4 Cir 5/26/94), 638 So 2d 354, 356, writ denied, 94-1597 (La 11/11/94), 644 So 2d 395

In the Williams case, Florianna Williams filed suit individually, and on behalf of her minor son Carey Williams, who suffered from lead poisoning caused by eating lead-based peeling paint in their apartment Although Carey Williams was first tested for lead poisoning in September 1993, Ms Williams was never notified of the source of the lead contamination until December 1994 She filed suit in March 1995 The trial court dismissed her suit based on prescription noting that she knew of the lead poisoning in the fall of 1993 The Fourth Circuit Court of Appeals reversed noting that

4

under the doctrine of contra non valentum, prescription was suspended until plaintiffs knew that the peeling paint in the home was the source of the lead poisoning, and that date was December 1994

The <u>Williams</u> case is similar to the case at hand  The Donnelly's could not have reasonably discovered that Ms  Donnelly's stroke was in any way related to the PPA products she ingested  It was not until the warnings were made public by the FDA that she was able to make the causal relation between the two  Prescription is usually suspended where the cause of action is not known or reasonably knowable by the plaintiff even though his ignorance is not induced by the defendant <u>Wimberly v  Gatch</u>, 93-2361 (La  4/11/94), 635 So  2d 206, 211 <u>rehearing denied</u>, (5/12/94)  This is commonly known as the discovery rule

The discovery rule is applicable to the present case  The Donnelly's could not have reasonably made the connection between her use of the medication and her stroke in 1991  It was not until November 2000 that the public was made aware of the dangers of ingesting PPA/ephedrine containing products  A class action petition was filed that protected the Donnelly's right of action and prescription was suspended pending determination of the class certification issue  Prescription for the Donnelly's cause of action began running 30 days after class certification was denied on June 5, 2002  The Donnelly's filed suit before the 30 days had run – on July 2, 2002

## **CONCLUSION**

For the reasons set forth above, Plaintiffs pray that Walgreen's Motion to Dismiss be denied

5

Respectfully submitted,

By *Chandler Loupe*
**J. CHANDLER LOUPE**
**CLAITOR & LOUPE, LLC**
State Bar No 19955
2223 Quail Run Drive, Suite G
Baton Rouge, Louisiana 70808
225/767-2222 (Telephone)
225/767-9003 (Facsimile)

**KIRK LAW FIRM**
DANA G KIRK
MS State Bar No 100188
TX State Bar No 11057500
4265 San Felipe St , Ste 1400
Houston, TX 77027
713/651-0050 (Telephone)
713/651-0051 (Facsimile)

**CLARK, DEPEW & TRACEY, LTD., L.L.P.**
CLAYTON CLARK
TX State Bar No 04275750
440 Louisiana, Ste 1600
Houston, TX 77002
713/757-1400 (Telephone)
713/759-1217 (Facsimile)

**J. ROBERT DAVIS, L.L.P.**
J ROBERT DAVIS
TX State Bar No 00788859
440 Louisiana, Ste 1600
Houston, TX 77002
713/425-5255 (Telephone)
713/425-5355 (Facsimile)
*ATTORNEYS FOR PLAINTIFFS*

6

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served upon counsel of record by

placing same in the United States mail, properly addressed and postage prepaid

DATED, this 10th day of Sept. , 2002

*Chandler Loupe*

**J. Chandler Loupe**


Chaffe, McCall, Phillips, Toler & Sarpy, LLP
Ms Mary Meyer, Esq
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300

Sessions, Fishman & Nathan, LLP
Ms Joy Goldberg Braun, Esq
201 St Charles Avenue, 35th Floor
New Orleans, LA 70170-3500

Lemle & Kelleher, LLP
Mr Don Kelly, Jr , Esq
601 Poydras Street, Ste 2100
New Orleans, LA 70130-6097

The Truitt Law Firm
Mr Jack E Truitt, Esq
251 Highway 21
Madisonville, LA 70447

Baldwin & Haspel
Ms Monica Suprenaut, Esq
2200 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2200

7





CASE:       2·02-cv-02436/P
DOCUMENT:   17
DATE:       09/10/02

CLERK·      tbl


*** There will be no noticing for this document ***

                    Document scanned by·

FILED
U S DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP 10 PM 2: 26

LORE⌐ ⌐A G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO  02-CV-2436 |
| VERSUS | * | |
| | * | JUDGE ENGELHARDT |
| BAYER CORPORATION, NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION, | * | MAGISTRATE JUDGE SHUSHAN |
| NOVARTIS CONSUMER HEALTH, INC , | * | |
| 4 LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE, SMOOTHIE KING | * | |
| CO , INC , SMOOTHIE KING SYSTEMS, | * | |
| INC , and WALGREEN LOUISIANA | * | |
| CO , INC , (d/b/a "Walgreens") | * | |

*   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM IN OPPOSITION TO BAYER'S MOTION FOR DISMISSAL

NOW INTO COURT, through undersigned counsel, comes plaintiffs, Daphine Donnelly and Jerome Donnelly, Husband (hereinafter referred to as "Plaintiffs"), respectfully submit this Memorandum in Opposition to Bayer's Motion for Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)  Defendant has filed a Motion to Dismiss asserting that plaintiffs' claims in negligence, gross negligence, and strict liability should be dismissed  Furthermore, Defendant asserts the Louisiana Products Liability Act (Louisiana Revised Statute 9 2800 54 et seq , hereinafter referred to as "LPLA") establishes the exclusive theories of recovery against a manufacturer in a personal injury action and does not provide for recovery based on the aforementioned claims  For the

1

Fee_____
Process_____
Dktd_____
CtRmDep_____
Doc No._____

following reasons, Bayer's Motion to should be denied

1    Background

Plaintiff filed this suit in the 34th Judicial District Court against Bayer Corporation, Novartis Pharmaceuticals Corporation, Novartis Consumer Health, Inc , 4Life Research, Successor by merger to Shaperite, Smoothie King Co , Inc , Smoothie King Systems, Inc , and Walgreen Louisiana Co , Inc , d/b/a "Walgreens" for marketing, selling, distributing, and/or manufacturing Shaperite, Alka Seltzer Plus and Tavist-D, all PPA-containing products

Plaintiffs claim in the Petition for Damages that the defendant, directly or indirectly, manufactured and sold medications that contained Phenylpropanolamine ("PPA") to Plaintiff, Daphine Donnelly (Petition ¶ 8-12) Plaintiffs allege that defendant knew or should have known about medical research and publications associating PPA with serious health risks (Petition ¶ 6-7) Defendant (Bayer) failed to provide warnings of these side-effects and risks associated with the use of PPA-containing medications (Petition ¶ 15) Plaintiffs have averred that defendant was aware of these risks associated with PPA and concealed its knowledge of the risks from Plaintiff and consumers (Petition ¶ 16) As a result of ingesting the PPA-containing medication, Plaintiff, Daphine Donnelly, suffered a stroke on or about January 1991 which resulted in, but not limited to, paralysis of the right side of the body (Petition ¶ 10)

2    Argument

1    Applicable Standard

In evaluating a Motion to Dismiss filed under F R C P , 12(b)(6), the moving party bears the burden of showing that the plaintiff can prove no set of facts consistent with the allegations in the Petition for Damages which would entitle it to relief  *Baton Rouge Building and Construction*

2

*Trades Council, AFL-CIO v  Jacobs Constructors, Inc* , 804 F 2d 879 (5th Cir , 1986)  In addition, the reviewing Court "must accept as true well-plead averments and view then in light most favorable to the plaintiff" *American Waste and Pollution Control Co  v  Browning-Ferris, Inc* , 949 F 2d 1384, 1386 (5th Cir  1991)

    2    Plaintiff Has Asserted Viable Claims for Compensatory Damages Under Louisiana Law

Plaintiffs  have  asserted allegations under the LPLA, which  admittedly control  the claims set forth by the plaintiffs  Under the LPLA, plaintiffs can prove a product is "unreasonably dangerous or defective  (1) in construction or composition, (2) in design, (3) because of inadequate warning, or (4) because of nonconformity to an express warranty " La R S  9 2800 54 *et seq*

Nonetheless, plaintiffs' allegations regarding negligence, gross negligence, strict liability, and breach of implied warranty against redhibitory defects relating  to non-economic damages can still support plaintiffs' LPLA claims and breach of warranty against redhibitory defects relating to economic damages  In *Busse, et al  v  Bayerische Motoren Werke, A G , et al* , 1996 WL 732837 (E D La  1996), the plaintiff alleged claims for negligence, redhibition and products liability claims against a product manufacturer  Similar to the instant matter, the defendant in *Busse* moved for summary judgment as to claims by the plaintiff not cognizable under the LPLA  The Court denied the motion stating that the allegations of negligence supported plaintiff's claim for relief under the LPLA *Id*

This is consistent as the theories articulated  under the LPLA "are predicated on principles of strict liability, negligence, or warranty, respectively  " *Jefferson v  Lead Industries Assoc , Inc  et al* , 106 F 3d 1245, 1251 (5th Cir  1997)  Therefore, the allegations set forth in plaintiffs' Petition for

3



Damages relating to negligence, gross negligence, and strict liability should not be dismissed as they further strengthen plaintiffs' other claims

3       Conclusion

For the foregoing reasons, Plaintiff prays that Bayer's Motion to Dismiss be denied

Respectfully submitted,

By  Chandler Loupe
**J. CHANDLER LOUPE**
**CLAITOR & LOUPE, LLC**
State Bar No  19955
2223 Quail Run Drive, Suite G
Baton Rouge, Louisiana 70808
225/767-2222 (Telephone)
225/767-9003 (Facsimile)

**KIRK LAW FIRM**
DANA G  KIRK
MS State Bar No  100188
TX State Bar No  11057500
4265 San Felipe St , Ste 1400
Houston, TX 77027
713/651-0050 (Telephone)
713/651-0051 (Facsimile)

**CLARK, DEPEW & TRACEY, LTD., L.L.P.**
CLAYTON CLARK
TX State Bar No  04275750
440 Louisiana, Ste  1600
Houston, TX 77002
713/757-1400 (Telephone)
713/759-1217 (Facsimile)

**J. ROBERT DAVIS, L.L.P.**
J  ROBERT DAVIS
TX State Bar No  00788859
440 Louisiana, Ste  1600
Houston, TX 77002
713/425-5255 (Telephone)
713/425-5355 (Facsimile)
***ATTORNEYS FOR PLAINTIFFS***

4

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served upon counsel of record by

placing same in the United States mail, properly addressed and postage prepaid

DATED, this 04 day of Sept. , 2002

_Chandler Loupe_
**J. Chandler Loupe**

Chaffe, McCall, Phillips, Toler & Sarpy, LLP
Ms Mary Meyer, Esq
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300

Sessions, Fishman & Nathan, LLP
Ms Joy Goldberg Braun, Esq
201 St Charles Avenue, 35th Floor
New Orleans, LA 70170-3500

Lemle & Kelleher, LLP
Mr Don Kelly, Jr , Esq
601 Poydras Street, Ste 2100
New Orleans, LA 70130-6097

The Truitt Law Firm
Mr Jack E Truitt, Esq
251 Highway 21
Madisonville, LA 70447

Baldwin & Haspel
Ms Monica Suprenaut, Esq
2200 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2200

5





```
CASE:       2:02-cv-02436/P
DOCUMENT: 16
DATE:       09/10/02

CLERK    tbl
```

\*\*\* There will be no noticing for this document.\*\*\*

Document scanned by:

FILED
U S DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP 10 AM 10: 06

LORETTA G WHYTE
CLERK

MINUTE ENTRY
SEPTEMBER 9, 2002
ENGELHARDT, J

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAPHINE B DONNELLY, et al                    CIVIL ACTION

VERSUS                                       NO 02-2436

BAYER CORPORATION, et al                     SECTION "N"

Considering that the plaintiff's Motion to Remand and Novartis Pharmaceutical's Corporations Motion to Dismiss is noticed for hearing on October 2, 2002,

**IT IS ORDERED** that the Motions to Dismiss filed on behalf of defendants, Walgreen Louisiana Company, Inc and Bayer Corporation, presently noticed for hearing on September 18, 2002 are hereby CONTINUED and RENOTICED for Wednesday, October 2, 2002 at 9 30

_____
UNITED STATES DISTRICT JUDGE

DATE OF ENTRY
SEP 1 0 2002





```
CASE:      2:02-cv-02436
DOCUMENT: 15
DATE:      09/10/02

CLERK:    tbl
```

Notices sent to:

```
J. Loupe  by fax to  225-767-9003
Dana Kirk  by mail.
Clayton Clark  by mail.
J. Davis  by mail
Mary Meyer  by fax to  504-544-6077
Joy Braun  by fax to  504-582-1555
C. Bradley Jr. by fax to  504-584-9142
Jack Truitt  by fax to  985-792-1065
```

Document scanned by: _____



FILED
U.S DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP -9 AM 10: 52

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DAPHINE B. DONNELLY, ET AL.**

**VERSUS**

**BAYER CORPORATION, ET AL.**

**CIVIL ACTION**
**NO.: 02-2436**

**JUDGE ENGELHARDT**

**MAGISTRATE JUDGE SHUSHAN**

## NOVARTIS CONSUMER HEALTH INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant Novartis Consumer Health, Inc ("NCH") moves this Court to dismiss the plaintiffs' claims that are not permitted by Louisiana law  Under the Louisiana Products Liability Act – La Rev. Stat. § 9 2800 52 – a plaintiff injured by a product may only assert four theories of liability against the manufacturer of the product  Thus, as more fully explained in its memorandum in support of this motion, the plaintiffs' non-LPLA claims fail to state a claim upon which relief can be granted, and should be dismissed

CERTIFICATE OF SERVICE

I do hereby certify that I have on this ____ dav of _____, 2002 served a copy of the foregoing pleading on counsel for all parties to this proceeding byhand delivery, U S Mail or facsimile transmission

ERIC R NOWAK

By _____
**JOY GOLDBERG BRAUN, T.A. (#3416)**
**ERIC R. NOWAK (#27025)**
**SHIRIN E. HARRELL (27495)**
Sessions, Fishman & Nathan, L L P
201 St  Charles Avenue, Suite 3500
New Orleans, Louisiana  70170
Telephone  (504) 582-1500
**Attorneys for Novartis Consumer Health, Inc.**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DAPHINE B. DONNELLY, ET AL.**

**VERSUS**

**BAYER CORPORATION, ET AL.**

**CIVIL ACTION**
**NO.: 02-2436**

**JUDGE ENGELHARDT**

**MAGISTRATE JUDGE**
**SHUSHAN**

## MEMORANDUM IN SUPPORT OF NOVARTIS CONSUMER HEALTH, INC.'S
## MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

To decide Novartis Consumer Health, Inc 's ("NCH") Motion to Dismiss Pursuant to Federal

Rule of Procedure 12(b)(6), the Court needs to address one issue

- **Exclusive Remedies under the LPLA.** Under the Louisiana Products Liability Act, parties injured by a product can only sue the manufacturer under four theories (i) manufacturing defects, (ii) design defects, (iii) failure to warn, (iv) or warranty actions  The plaintiff sues NCH for injuries allegedly caused by its product, Tavist-D®, an over-the-counter cold medication  In addition to LPLA claims, the petition makes claims against NCH for fault, want of care, gross negligence, strict liability, negligence, breach of the warranty against redhibitory defects or vices, and intentional and willful conspiracy  These non-LPLA claims – the non-manufacturing, non-design, non-warning, and non-warranty claims – should be dismissed. La  Rev Stat  § 9.2800 52

1

# I

## **Procedural and Factual Background**

The plaintiffs sued NCH in state court claiming that NCH manufactured, designed, marketed, advertised, and sold Tavist-D® [1] The plaintiffs allege that Daphine Donnelly ingested Tavist-D®, which at that time contained phenylpropanolamine, also known as "PPA "[2] According to the plaintiffs, the PPA containing Tavist-D® allegedly caused the plaintiff to suffer a stroke on or about January 12, 1991 [3] The plaintiffs claim that NCH is liable under the Louisiana Products Liability Act and for fault, negligence, want of care, gross negligence, strict liability, negligence, breach of the warranty against redhibitory defects or vices, and intentional and willful conspiracy [4]

NCH seeks summary dismissal of all plaintiffs' claims disallowed by the exclusive remedies provision of the LPLA  The personal injury claims for fault, want of care, gross negligence, strict liability, negligence, breach of the warranty against redhibitory defects or vices, and intentional and willful conspiracy are not cognizable against NCH – the manufacturer of the product at issue

---

[1]  See *Petition for Damages* ¶¶ 8, 11

[2]  See *Petition for Damages* ¶ 11

[3]  See *Petition for Damages* ¶ 10, 11

[4]  See *Petition for Damages*  ¶¶ 16, 17, 18 (incorrectly numbered as the second paragraph 15), and 19 (incorrectly numbered as the second paragraph 16)

## II

## <u>Law and Argument</u>

**The Louisiana Products Liability Act Provides the Exclusive Theory of Recovery
Against a Manufacturer for Damage Caused by a Product**

The law clearly states that the Louisiana Products Liability Act "establishes the exclusive

theories of liability for manufacturers for damages caused by their products."[5]  The only four

theories of recovery that plaintiffs may assert against manufacturers under the LPLA are

- manufacturing defects (faulty composition or construction)
- design defects
- failure to warn
- warranty actions [6]

As John Kennedy, an original author of the LPLA, explained, this law defines and limits the

extent of a manufacturer's liability for damages caused by its product

> The point now in terms of the act's scope is that a products liability
> plaintiff may no longer recover in Louisiana from a manufacturer
> on the basis of any theory of tort liability that is not set forth in the
> LPLA.[7]

This exclusivity principle has been systematically applied to suits against manufacturers by

Louisiana state courts, the U S  District Courts in Louisiana, and the U.S  Court of Appeals for

---

[5]  La  Rev  Stat  § 9 2800 52

[6]  La  Rev  Stat  Ann  §9 2800 54

[7]  John Kennedy, <u>A Primer on the Louisiana Products Liability Act</u>, 49 LA  LAW REV  566, 571 (1989)

3

the 5th Circuit.[8] And, the courts have not hesitated to treat cases against drug and medical device manufacturers like those against any other manufacturer under the LPLA [9]

The plaintiff's suit in this case is not unlike other suits pared down by Louisiana courts applying the LPLA. In Arabie v R J Reynolds Tobacco Co , the plaintiff alleged multiple theories of liability against a cigarette manufacturer  The trial court summarily dismissed all theories not enumerated in the LPLA  The ruling was upheld on appeal [10] Similarly, in Gremer v Medical Eng'g Corp , the U S Fifth Circuit affirmed the summary dismissal of all causes of action asserted against a breast–implant manufacturer that were not consistent with the LPLA [11] In Gremer, the plaintiff asserted over 10 different theories of liability, several of which are

---

[8] Ashley v General Motors Corp , 27,851 (La App 2 Cir 1/24/96) 666 So 2d 1320, see also Gremer v Medical Eng'r Corp , 99 F Supp 2d 759, 763 (W D La 2000) aff'd by 243 F 3d 200, 203 (5th Cir 2001), Brown v R J Reynolds Tobacco Co , 52 F 3d 524, 526 (5th Cir 1995)

[9] Wheat v Pfizer, INCH , 31 F 3d 340, 342 (5th Cir 1994)(prescription drug case), Zachary v Dow Corning Corp , 844 F Supp 1061, 1062-65 (M D La 1995)(medical device – wrist prosthesis)

[10] 96-978 (La App 5 Cir 6/30/97) 698 So 2d 423, 425

[11] Gremer v Medical Eng'r Corp , 99 F Supp 2d 759, 763 (W D La 2000) aff'd by 243 F 3d 200, 203 (5th Cir 2001)

4

similar to the allegations being asserted by the plaintiff in the case before this Court

- negligence,
- fraud,
- misrepresentation,
- breach of warranty of fitness and for a particular purpose,
- fraud by concealment, and
- false advertising

The Grenier trial court held that these claims were "well outside the scope of the LPLA, and must be dismissed." The 5th Circuit affirmed stating that if the LPLA applied in time (a post 1988 injury) then "the LPLA establishes four exclusive theories of liability."

Likewise, the plaintiff's claims against NCH for personal injury damages caused by its product, Tavist-D®, are limited to the four avenues recognized by the LPLA. The plaintiffs allege that NCH is liable for LPLA violations and for fault, want of care, gross negligence, strict liability, negligence, breach of the warranty against redhibitory defects or vices, and intentional and willful conspiracy. But only the LPLA claims are permitted against NCH. Thus, as explained by the Eastern District in Jefferson v. Lead Indus., the other non-LPLA, even if based upon traditional principles of negligence, strict liability, or warranty, are not viable as independent theories.[12] Accordingly, all claims asserted against NCH, the manufacturer, save the specific LPLA claims should be dismissed

---

[12] Jefferson v. Lead Indus. Ass'n, INCH, 930 F Supp. 241 (E D La 1996)

**III**
**CONCLUSION**

The plaintiffs sue NCH for personal injuries allegedly suffered from taking an over-the-counter cold medication, Tavist-D®. Their suit – claims against a manufacturer for injuries from the manufacturer's product – is governed by the Louisiana Products Liability Act  Under the LPLA, the plaintiffs are limited to four theories of recovery recognized by the act  All other claims must be dismissed

---

CERTIFICATE OF SERVICE

I do hereby certify that I have on this ___ day of ___ , 2002 sered a copy of the foregoing pleading on counsel for all parties to this proceeding by hand delivery, U S Mail or facsimile transmission

*Eric R ow*

ERIC R NOWAK

---

By: _____

Sessions, Fishman & Nathan, L L.P
**JOY GOLDBERG BRAUN, T.A. (#3416)**
**ERIC R. NOWAK (#27025)**
**SHIRIN E. HARRELL (27495)**
201 St  Charles Avenue, Suite 3500
New Orleans, Louisiana  70170
Telephone  (504) 582-1500
**Attorneys for Novartis Consumer Health, Inc.**

6

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DAPHINE B. DONNELLY, ET AL.**

**VERSUS**

**BAYER CORPORATION, ET AL.**

**CIVIL ACTION**
**NO.: 02-2436**

**JUDGE ENGELHARDT**

**MAGISTRATE JUDGE SHUSHAN**

### NOTICE OF HEARING

PLEASE TAKE NOTICE, that defendant, Novartis Consumer Health, Inc , through

undersigned counsel will bring the attached Motion to Dismiss for Failure to State a Claim Upon

Which Relief Can Be Granted for hearing before the United States District Court for the Eastern

District of Louisiana, 500 Camp Street, New Orleans, Louisiana, on the *2nd* day of *October*

2002, at *9:30* a m

<table>
<tr><td>

CERTIFICATE OF SERVICE

I do hereby certify that I have on this
day of _____ , 2002 sered a
copy of the foregoing pleading on counsel for all
parties to this proceeding by hand delivery, U S
Mail or facsimile transmission

_____
ERIC R NOWAK

</td></tr>
</table>

Respectfully submitted,

By _____
**JOY GOLDBERG BRAUN (#3416)**
**ERIC R. NOWAK (#27025)**
**SHIRIN E. HARRELL (27495)**
Sessions, Fishman & Nathan, L L P.
201 St Charles Avenue, Suite 3500
New Orleans, Louisiana 70170
Telephone. (504) 582-1500
**Attorneys for Novartis Consumer Health,**
**Inc.**





CASE:      2:02-cv-02436/P
DOCUMENT: 13
DATE:      09/09/02

CLERK:    tbl


*** There will be no noticing for this document.***

Document scanned by _____

10|2

FILED
U S DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP -9 AM 10: 50

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DAPHINE B. DONNELLY, ET AL.**

**VERSUS**

**BAYER CORPORATION, ET AL.**

**CIVIL ACTION
NO.: 02-2436**

**JUDGE ENGELHARDT**

**MAGISTRATE JUDGE SHUSHAN**

## NOVARTIS PHARMACEUTICALS CORPORATION'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant Novartis

Pharmaceuticals Corporation ("NPC") moves this Court to dismiss the plaintiffs' claims that are not

permitted by Louisiana law  Under the Louisiana Products Liability Act – La  Rev  Stat. § 9 2800 52

– a plaintiff injured by a product may only assert four theories of liability against the manufacturer

of the product  Thus, as more fully explained in its memorandum in support of this motion, the

plaintiffs' non-LPLA claims fail to state a claim upon which relief can be granted, and should be

dismissed

CERTIFICATE OF SERVICE

I do hereby certify that I have on this
_____ day of ___Sept___ , 2002 sered a
copy of the foregoing pleading on counsel for all
parties to this proceeding by hand delivery, U S
Mail or facsimile transmission

_____
ERIC R  NOWAK

By _____

**JOY GOLDBERG BRAUN, T.A. (#3416)**
**ERIC R. NOWAK (#27025)**
**SHIRIN E. HARRELL (#27495)**
Sessions, Fishman & Nathan, L L P.
201 St  Charles Avenue, Suite 3500
New Orleans, Louisiana  70170
Telephone  (504) 582-1500
**Attorneys for Novartis Pharmaceuticals Corporation**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DAPHINE B. DONNELLY, ET AL.**          **CIVIL ACTION**
                                          **NO.: 02-2436**

**VERSUS**

                                          **JUDGE ENGELHARDT**

**BAYER CORPORATION, ET AL.**

                                          **MAGISTRATE JUDGE SHUSHAN**

**MEMORANDUM IN SUPPORT OF NOVARTIS PHARMACEUTICALS**
**CORPORATION'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

To decide Novartis Pharmaceuticals Corporation's ("NPC") Motion to Dismiss Pursuant to

Federal Rule of Procedure 12(b)(6), the Court needs to address one issue

- **Exclusive Remedies under the LPLA.** Under the Louisiana
  Products Liability Act, parties injured by a product can only sue the
  manufacturer under four theories (i) manufacturing defects, (ii) design
  defects, (iii) failure to warn, (iv) or warranty actions  The plaintiff
  sues NPC for injuries allegedly caused by its product, Tavist-D®, an
  over-the-counter cold medication  In addition to LPLA claims, the
  petition makes claims against NPC for fault, want of care, gross
  negligence, strict liability, negligence, breach of the warranty against
  redhibitory defects or vices, and intentional and willful conspiracy.
  These non-LPLA claims – the non-manufacturing, non-design, non-
  warning, and non-warranty claims – should be dismissed  La  Rev
  Stat  § 9 2800 52

1

# I
## **Procedural and Factual Background**

The plaintiffs sued NPC in state court claiming that NPC manufactured, designed, marketed, advertised, and sold Tavist-D® [1] The plaintiffs allege that Daphne Donnelly ingested Tavist-D®, which at that time contained phenylpropanolamine, also known as "PPA."[2] According to the plaintiffs, the PPA containing Tavist-D® allegedly caused the plaintiff to suffer a stroke on or about January 12, 1991.[3] The plaintiffs claim that NPC is liable under the Louisiana Products Liability Act and for fault, want of care, gross negligence, strict liability, negligence, breach of the warranty against redhibitory defects or vices, and intentional and willful conspiracy [4]

NPC seeks summary dismissal of all plaintiffs' claims disallowed by the exclusive remedies provision of the LPLA  The personal injury claims for fault, want of care, gross negligence, strict liability, negligence, breach of the warranty against redhibitory defects or vices, and intentional and willful conspiracy are not cognizable against NPC – the manufacturer of the product at issue

---

[1] See *Petition for Damages* ¶¶ 8, 11

[2] See *Petition for Damages* ¶ 11

[3] See *Petition for Damages* ¶¶ 10, 11

4 See *Petition for Damages* ¶¶ 16, 17, 18 (incorrectly numbered as the second paragraph 15), and 19 (incorrectly numbered as the second paragraph 16)

## II
## Law and Argument

**The Louisiana Products Liability Act Provides the Exclusive Theory of Recovery Against a Manufacturer for Damage Caused by a Product**

The law clearly states that the Louisiana Products Liability Act "establishes the exclusive

theories of liability for manufacturers for damages caused by their products."[5] The only four

theories of recovery that plaintiffs may assert against manufacturers under the LPLA are

- manufacturing defects (faulty composition or construction)
- design defects
- failure to warn
- warranty actions [6]

As John Kennedy, an original author of the LPLA, explained, this law defines and limits the

extent of a manufacturer's liability for damages caused by its product

> The point now in terms of the act's scope is that a products liability
> plaintiff may no longer recover in Louisiana from a manufacturer
> on the basis of any theory of tort liability that is not set forth in the
> LPLA [7]

This exclusivity principle has been systematically applied to suits against manufacturers by

Louisiana state courts, the U S  District Courts in Louisiana, and the U.S. Court of Appeals for

---

[5]  La  Rev  Stat  § 9 2800 52

[6]  La  Rev  Stat  Ann  §9 2800 54

[7]  John Kennedy, <u>A Primer on the Louisiana Products Liability Act</u>, 49 LA  LAW REV  566, 571 (1989)

the 5th Circuit [8]  And, the courts have not hesitated to treat cases against drug and medical device manufacturers like those against any other manufacturer under the LPLA.[9]

The plaintiff's suit in this case is not unlike other suits pared down by Louisiana courts applying the LPLA  In Arabie v R J Reynolds Tobacco Co., the plaintiff alleged multiple theories of liability against a cigarette manufacturer  The trial court summarily dismissed all theories not enumerated in the LPLA  The ruling was upheld on appeal.[10]  Similarly, in Grenier v Medical Eng'g Corp , the U. S Fifth Circuit affirmed the summary dismissal of all causes of action asserted against a breast–implant manufacturer that were not consistent with the LPLA.[11] In Grenier, the plaintiff asserted over 10 different theories of liability, several of which are

---

[8]  Ashley v General Motors Corp , 27,851 (La App  2 Cir  1/24/96) 666 So 2d 1320, see also Grenier v Medical Eng'r Corp , 99 F Supp 2d 759, 763 (W D  La  2000) aff'd by 243 F 3d 200, 203 (5th Cir  2001), Brown v R J  Reynolds Tobacco Co , 52 F 3d 524, 526 (5th Cir  1995)

[9]  Wheat v Pfizer, INPC , 31 F 3d 340, 342 (5th Cir  1994)(prescription drug case), Zachary v Dow Corning Corp , 844 F Supp  1061, 1062-65 (M D  La  1995)(medical device – wrist prosthesis)

[10]  96-978 (La App  5 Cir  6/30/97) 698 So 2d 423, 425

[11]  Grenier v Medical Eng'r Corp , 99 F Supp 2d 759, 763 (W D  La  2000) aff'd by 243 F 3d 200, 203 (5th Cir  2001)

4

similar to the allegations being asserted by the plaintiff in the case before this Court

- negligence,
- fraud,
- misrepresentation,
- breach of warranty of fitness and for a particular purpose,
- fraud by concealment, and
- false advertising

The Grenier trial court held that these claims were "well outside the scope of the LPLA, and must be dismissed " The 5 th Circuit affirmed stating that if the LPLA applied in time (a post 1988 injury) then "the LPLA establishes four exclusive theories of liability "

Likewise, the plaintiff's claims against NPC for personal injury damages caused by its product, Tavist-D®, are limited to the four avenues recognized by the LPLA. The plaintiffs allege that NPC is liable for LPLA violations and for fault, want of care, gross negligence, strict liability, negligence, breach of the warranty against redhibitory defects or vices, and intentional and willful conspiracy But only the LPLA claims are permitted against NPC Thus, as explained by the Eastern District in Jefferson v Lead Indus , the other non-LPLA, even if based upon traditional principles of negligence, strict liability, or warranty, are not viable as independent theories [12] Accordingly, all claims asserted against NPC, the manufacturer, save the specific LPLA claims should be dismissed

---

[12] Jefferson v Lead Indus Ass'n, INPC , 930 F Supp 241 (E D La 1996)

## III
## CONCLUSION

The plaintiffs sue NPC for personal injuries allegedly suffered from taking an over-the-counter cold medication, Tavist-D®. Their suit – claims against a manufacturer for injuries from the manufacturer's product – is governed by the Louisiana Products Liability Act. Under the LPLA, the plaintiffs are limited to four theories of recovery recognized by the act. All other claims must be dismissed

CERTIFICATE OF SERVICE

I do hereby certify that I have on this
___ day of ___ Sept ___, 2002 sered a
copy of the foregoing pleading on counsel for all
parties to this proceeding by hand delivery, U S
Mail or facsimile transmission

ERIC R NOWAK

By: _____
Sessions, Fishman & Nathan, L.L.P.
**JOY GOLDBERG BRAUN, T.A. (#3416)**
**ERIC R. NOWAK (#27025)**
**SHIRIN E. HARRELL (#27495)**
201 St. Charles Avenue, Suite 3500
New Orleans, Louisiana 70170
Telephone· (504) 582-1500
**Attorneys for Novartis Pharmaceuticals Corporation**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DAPHINE B. DONNELLY, ET AL.**

**VERSUS**

**BAYER CORPORATION, ET AL.**

**CIVIL ACTION
NO.: 02-2436**

**JUDGE ENGELHARDT**

**MAGISTRATE JUDGE SHUSHAN**

## NOTICE OF HEARING

PLEASE TAKE NOTICE, that defendant, Novartis Pharmaceuticals Corporation, through undersigned counsel will bring the attached Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted for hearing before the United States District Court for the Eastern District of Louisiana, 500 Camp Street, New Orleans, Louisiana, on the _2nd_ day of _October_ 2002, at _9:30_ a m

Respectfully submitted,

BY _____
**JOY GOLDBERG BRAUN (#3416)
ERIC R. NOWAK (#27025)**
Sessions, Fishman & Nathan, L L P.
201 St Charles Avenue, Suite 3500
New Orleans, Louisiana 70170
Telephone (504) 582-1500
**Attorneys for Novartis Pharmaceuticals Corporation**

CERTIFICATE OF SERVICE

I do hereby certify that I have on this
6 day of Sept, 2002 served a
copy of the foregoing pleading on counsel for all
parties to this proceeding by hand delivery, U S
Mail or facsimile transmission

_____
ERIC R NOWAK



```
CASE:       2·02-cv-02436/P
DOCUMENT: 12
DATE:       09/09/02

CLERK       tbl


*** There will be no noticing for this document ***

        Document scanned by _____
```



UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

FILED
U S DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP -9 AM 9: 41

LORETTA G. WHYTE
CLERK

| | |
|---|---|
| DAPHINE B. DONNELLY, and | CIVIL ACTION NO. 02-2436 |
| JEROM EDONNELLY, Husband | 02-2436 |
| | JUDGE ENGELHARDT |
| VERSUS | |
| | MAGISTRATE JUDGE SHUSHAN |
| BAYER CORPORATION; NOVARTIS | |
| PHARMACEUTICALS | |
| CORPORATION; NOVARTIS | |
| CONSUMER HEALTH, INC. | |
| 4 LIFE RESEARCH, LC, Successor by | |
| merger to SHAPERITE; SMOOTHIE | |
| KING CO., INC.; SMOOTHIE KING | |
| SYSTEMS, INC.; and WALGREENS | |
| LOUISIANA CO., INC. | |
| (D/B/A "WALGREENS") | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION TO REMAND

**NOW INTO COURT**, comes Daphine Donnelly and Jerome Donnelly, husband (hereinafter "plaintiffs"), by and through their counsel of record, and moves this Honorable Court to remand this action to the 34th Judicial District Court, Parish of St Bernard, Louisiana, on the ground that this Court lacks jurisdiction over this action In support thereof, plaintiffs state as follows

1

Plaintiffs initially filed suit in the 34th Judicial District Court, Parish of St Bernard, Louisiana on July 2, 2002, Civil Action Number 96,487 (See Petition, attached Exhibit "A") Service being requested on all local defendants at the time of filing Service being had on out-of-state defendants via long arm statute on or about July 24, 2002 It is undisputed that defendants Walgreen Louisiana Company, Inc , Smoothie

Fee
Process
D-kt ___ 202
CFmDep
Doc No 12

King Co , Inc , and Smoothie King Systems, Inc , are residents of the State of Louisiana Walgreens and both Smoothie King Co , Inc and Smoothie King Systems, Inc were joined in the suit by the plaintiffs because they sold over-the-counter products that contained Phenylpropanolamine ("PPA") to plaintiff, Daphne Donnelly, which directly resulted in or substantially contributed to her suffering a stroke(s)

2

Defendants Bayer Corporation, Novartis Pharmaceuticals Corporation and Novartis Consumer Health, Inc removed this action to the United States District Court for the Eastern District of Louisiana on or about August 7, 2002    (See Notice of Removal, attached Exhibit "B")  Defendants herein assert fraudulent joinder, alleging there is no possibility the plaintiff can recover against the retailer/seller defendants, Walgreen Louisiana Co , Inc , Smoothie King Co , Inc , and Smoothie King Systems, Inc

3

Defendants' Notice of Removal is completely void of legal analysis  Defendants' simply state that plaintiffs "  cannot prevail on their claims against Walgreen Louisiana Co , Inc  under Louisiana law" citing one case from the Western District of Washington Defendants' then maintain that Smoothie King did not operate a store where plaintiff, Daphne Donnelly, purchased a PPA-containing product  Defendants have failed in their burden to clearly and convincingly prove that plaintiff, under Louisiana law, is unable to prevail against the retailer/seller defendants  Furthermore, Defendants completely ignore several other causes of actions alleged against the retailer/seller defendants  Additional discovery is necessary to determine whether the Smoothie King defendants are proper parties in this action

2

4

The plaintiffs' petition clearly states arguable claims against both Walgreens and the Smoothie King defendants, which are Louisiana residents  Therefore, fraudulent joinder is not an issue  For these reasons set forth herein which are more fully articulated in the attached memorandum, diversity jurisdiction or any remaining grounds for federal jurisdiction over this matter do not exist  Accordingly, this case should be remanded to the 34th Judicial District Court, Parish of St  Bernard, Louisiana

**WHEREFORE**, plaintiffs respectfully request that this Honorable Court issue an Order remanding this action to the34th Judicial District Court, Parish of St  Bernard, Louisiana

Respectfully submitted,

_____

J  Chandler Loupe
**CLAITOR & LOUPE, LLC**
State Bar No  19955
2223 Quail Run Drive, Ste  G
Baton Rouge, LA  70808
(225) 767-2222 Telephone
(225) 767-9003 Facsimile

**KIRK LAW FIRM**
Dana Kirk
MS State Bar No  100188
TX State Bar No  11057500
4265 San Felipe Street, Ste  1400
Houston, TX  77027
(713) 651-0050 Telephone

**CLARK, DEPEW &**
**TRACEY,LTD., L.L.P.**
Clayton Clark
TX State Bar No  04275750
440 Louisiana Street, Ste  1600
Houston, TX  77002
(713) 757-1400 Telephone

**J. ROBERT DAVIS LAW FIRM**
J  Robert Davis
TX State Bar No  00788859
440 Louisiana Street, Ste  1600
Houston, TX  77002
(713) 425-5255 Telephone

4

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this ___6___ day of September, 2002, served a copy of the foregoing by mailing same by United States mail, first class postage prepaid, properly addresses to the following

Chaffe, McCall, Phillips, Toler & Sarpy, LLP
Ms Mary L Meyer
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2300
*Attorneys for Bayer Corporation*

Sessions, Fishman & Nathan, LLP
Mr Eric R Nowak
201 St Charles Avenue, Ste 3500
New Orleans, LA 70170
*Attorneys for Novartis Pharmaceuticals*
*Corporation and Novartis Consumer Health, Inc*

Lemle & Kelleher, LLP
Mr J Don Kelly, Jr
601 Poydras Street, Ste 2100
New Orleans, LA 70130-6097
*Attorneys for 4Life Research, LC*

The Truitt Law Firm
Mr. Jack E Truitt
251 Highway 21
Madisonville, LA 70447
*Attorneys for Walgreen Louisiana Co , Inc*

Baldwin & Haspel
Ms Monica T Suprenant
2200 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2200
*Attorneys for Smoothie King Co , Inc and*
*Smoothie King Systems, Inc*

_____
J Chandler Loupe

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DAPHINE B. DONNELLY, and** | * | **CIVIL ACTION NO. 02-2436** |
| **JEROM EDONNELLY, Husband** | * | |
| | * | **JUDGE ENGELHARDT** |
| **VERSUS** | * | |
| | * | **MAGISTRATE JUDGE SHUSHAN** |
| **BAYER CORPORATION; NOVARTIS** | * | |
| **PHARMACEUTICALS** | * | |
| **CORPORATION; NOVARTIS** | * | |
| **CONSUMER HEALTH, INC.** | * | |
| **4 LIFE RESEARCH, LC, Successor by** | * | |
| **merger to SHAPERITE; SMOOTHIE** | * | |
| **KING CO., INC.; SMOOTHIE KING** | * | |
| **SYSTEMS, INC.; and WALGREENS** | * | |
| **LOUISIANA CO., INC.** | * | |
| **(D/B/A "WALGREENS")** | * | |

* * * * * * * * * * * * * * * * * * *

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND

Louisiana residents, Walgreen Louisiana Co , Inc , Smoothie King Co , Inc , and Smoothie King Systems, Inc , were properly joined as a defendants in this matter, and this case should be remanded to the 34th Judicial District Court, Parish of St. Bernard, Louisiana

### I.    Facts and Procedural History

Daphine Donnelly and Jerome Donnelly ("plaintiffs") initially filed suit in the 34th Judicial District Court, Parish of St Bernard, Louisiana on July 2, 2002, Civil Action Number 96,487  (See Petition, attached hereto as Exhibit "A")  Plaintiffs subsequently requested service on the named defendants therein  The lawsuit is a personal injury case

in which plaintiff, Daphine Donnelly, seeks compensatory damages for injuries sustained as a direct result of consuming over-the-counter medications, including Shapefast®, Alka Seltzer Plus®, and Tavist-D®, which contained Phenylpropanolamine ("PPA"), and Jerome Donnely, husband seeks damages for loss of consortium    The medication in question was used by millions of individuals throughout the years, including plaintiff, Daphine Donnelly, for treating cold and flu systems and sinus problems

Unbeknownst to plaintiffs, PPA consumption increases the risk of stroke(s) and myocardial infarction(s)    A recent study at Yale University brought this fact to light However, the Yale study was preceded by various other research endeavors which reached similar conclusions    In the interest of public health, the Food and Drug Administration ("FDA") formally requested that manufacturers of PPA containing products discontinue their marketing efforts    In particular, the FDA determined that any benefits gained from PPA usage did not out weigh the risk of harm, and furthermore concluded that PPA "cannot be considered to be safe for continued use "    For years preceding the Yale study and thereafter, though, the manufacturer and retailer defendants knew of the causal relationship between PPA usage and the risk of severe injury and even death    Plaintiff's PPA consumption directly resulted in or substantially contributed to her suffering a stroke

Retailer/seller defendants, Walgreen Louisiana Co , Inc , Smoothie King Co , Inc , and Smoothie King Systems, Inc , are undisputedly residents of Louisiana    The retailer/seller defendants were joined by the plaintiffs because they sold to plaintiff the PPA containing product which caused the injuries    As such, plaintiffs brought claims against the retailer/seller defendants based upon  (1) breach of the warranty against

2

redhibitory defects, (2) failure to sell a product fit for its ordinary usage, (3) delivering a product not of the kind or quality specified by the seller, negligence, (4) negligence, (5) want of care, (6) gross negligence, (7) strict liability, and (8) intentional and willful conspiracy In support of plaintiff's claims, it is further alleged that defendant knew or should have known of the unreasonably dangerous side-effects from consuming Shapefast®, Alka Seltzer Plus®, and Tavist-D® and was under a duty to disclose the risks inherent in the consumption thereof

Defendants, Bayer Corporation, Novartis Pharmaceuticals Corporation, and Novartis Consumer Health, Inc removed this action to the United States District Court for the Eastern District of Louisiana on or about August 7, 2002 As grounds for removal, Defendants claim that diversity jurisdiction exists over this matter because plaintiff fraudulently joined Walgreens, and further that Smoothie King did not operate a store where plaintiff purchased the PPA-containing product. Defendants erroneously allege that both Walgreens and Smoothie King should be disregarded creating diversity of citizenship in the remaining parties Defendants also erroneously allege that the non-diverse defendant, Walgreens, was fraudulently joined implying that plaintiffs have no possibility of recovering against it for any of the claims made in the petitions

## A. **Plaintiff Has Alleged a Viable Cause of Action And Has Sought Appropriate Relief Thereto**

Defendants skeletal Notice of Removal simply states that Plaintiffs " cannot prevail on their claims against Walgreen Louisiana Co , Inc under Louisiana law" citing Perksin v Bayer Corporation, et al A case which was originally filed in Caddo Parish and removed to the Western District of Louisiana before being transferred to the MDL 1407, In re Phenylpropanolamine In *Perksin*, Judge Rothestein, of the Western District of

3

Washington, MDL 1407, In re Phenylpropanolamine, denied Plaintiffs Motion to Remand *Perksin vs Bayer Corporation, et al*, No 01-2023R (W D Wash Feb 26, 2002)   In *Perksin*, the plaintiffs alleged only two causes of action, breach of warranty of redhibition and negligence, furthermore, the plaintiffs only cite article 2545 in the petition   In the Order, the court appears to place a vast amount of emphysis on this issue, stating that the "plaintiffs have made only conclusory allegations that would not support remand"   *Id*   Defendants, by citing this Order in *Perksin*, mislead the Court by implying that plaintiffs have failed to state a cause of action in redhibition   (See Notice of Removal at ¶9, p 3, attached hereto as Exhibit "B")   "The action of redhibition is based upon the breach of the *seller's* obligation of warranty against hidden defects in a thing sold or its redhibitory vices"   *A Tillman v Davidson*, 501 So 2d 1067 (La App 2 Cir 1987) (italics original)   Plaintiff has clearly alleged that the retailer/seller defendants sold the PPA products which caused her injury   (See Petition ¶9, p 3, attached hereto as Exhibit "A")   Moreover, "[A] seller who knows that the thing he sells has a defect but omits to declare it    is liable to the buyer    for damages    "   See La Civ Code art 2545    According to the plaintiffs' petition, Defendants [including Walgreens] were aware of the causal relationship between PPA use and the injuries complained   Therefore, according to plaintiffs, defendants are bad faith sellers

In the present case, evidence will be exchanged during discovery and likewise be presented during trial which proves that defendants knowingly concealed that its PPA containing products which were potentially unsafe for human consumption   It is a well-settled principle that, "[F]raud may result from silence or inaction"   *Boos v Benson Jeep-Eagle Company*, 98-1424 (La App 4 Cir 6/24/98),

4

717 So 2d 661, 667, see also La Civ Code art 1953  In sum, the petition alleges that the defendants knew about the hazardous adverse side effects of PPA  (See Petition ¶17(1), p  5, ¶15, p  6 (inadvertently repeated number on page 6) and, ¶16, p  6 (inadvertently repeated number on page 6), attached hereto as Exhibit "A")

This matter has previously been addressed by this District Court  In *Mosely et al v Bayer Corporation, et al*, No  01-3479 (Lemelle, J , E D  La  January 18, 2000), plaintiff alleged that he purchased, and suffered a stroke after consuming Alka Seltzer Plus® and Dimetapp®, both PPA containing products  Plaintiff filed suit against the drug manufacturers, including Bayer Corporation, and the seller of the products, K&B Louisiana Corporation ("K&B')  Defendants removed the action to federal court alleging K&B was fraudulently joined  Plaintiffs then moved for remand, claiming it was possible to recover in a Louisiana state forum against local retailer, K&B

This Court, on page 6 of the *Mosely* opinion, ultimately ruled, **"[T]hus, there is a possibility that Plaintiffs could recover against Defendant K&B/Rite Aid and removal was improper."** (emphasis added) (See Opinion, attached hereto as Exhibit "C")  Accordingly, the *Mosely* case was remanded to its state court of origin, the Civil District Court for the Parish of Orleans  The Courts have granted remands in other such cases on the same or similar basis  See also, *Modesta St Amant, et al v Bayer Corporation, et  al*, No  01-3421 (Lemmon, M , E D  La  March 4, 2002 ), *Jacqueline Coleman v  Bayer Corporation, et  al*, No  02-333 (Barbier, C , E D  La  April 3, 2002)     See Opinions, attached hereto as Exhibits "D" and "E", consecutively)

5

In the case sub judice, plaintiffs allege that all defendants in this case knew or had reason to know of the adverse effects of the PPA containing products they sold and/or manufactured  Despite this, defendants imply that the petition fails to adequately allege Walgreen Louisiana Co , Inc  had knowledge  A review of the factual allegations in the petition, though, indicate otherwise  Plaintiff alleges that PPA causes life threatening adverse side effects which has been well documented and known to defendants  (See Petition, ¶6, p  2,  ¶ 7, p  3, ¶17, p  5-6, ¶15, p  6 (inadvertently repeated number on page 6), ¶16, p  6 (inadvertently repeated number on page 6), attached hereto as Exhibit "A")  Based on these factual allegations in plaintiff's petition, it is implausible that the retailer had no knowledge of the hazardous nature of the PPA products they sold  According to the Fourth Circuit Court of Appeal

> [w]here documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may manifest error or clear wrongness even in a finding based on a credibility determination

*Garner v  Louisiana Housing*, 2000-2226 (La App  4 Cir  9/26/01), 798 So 2d 295, 299  Suffice it to say, the evidence at hand indicates that the retailer/seller defendants possessed industry knowledge of, or at the very least had attained constructive knowledge pertaining to, PPA's adverse side-effects at the time plaintiff, Daphine Donnelly, purchased the PPA containing product

Moreover, defendants fail to even tender a scintilla of evidence in support of its proposition that the retailer/seller defendants had no knowledge of the hidden defects in their products, despite its affirmative duty to do so  **"…[a] seller ha[s] the burden of proving that there was no issue of fact as to his actual knowledge of a defect or as to**

6

his constructive knowledge of a defect (that he should have known of the defect) *Hooper v Crown*, et al , 560 So 2d 890 (La App 1st Cir 1990) (citations omitted) (emphasis added) There is no evidence presented to the Court to support that Walgreens did not know of PPA's adverse effects, in the alternative, however, the evidence on hand indicates that they knew or should have known    The defendants have not met their burden

Louisiana law recognizes that a seller/retailer may be held liable under a negligence theory  In *Ross v John's Bargain Stores Corp* , 464 F 2d 111 (5th Cir 1972), the Fifth Circuit Court of Appeal, citing authority from various jurisdictions, opined that negligence may be imputed against a seller of a product which it knew or should have known was dangerous  The Court found that whether the defendants knew or should have known of the dangerous nature of the product it sold to the plaintiff is a question left to the trier of fact  *Id* at 116  Therefore, plaintiff's negligence claims against the local retailer/seller defendant are legally viable, and the case should be remanded to state court

## B. **Defendants Have Failed To Meet Their Burden of Proof**

The burden of establishing federal jurisdiction is placed on the party seeking removal The removal statute is strictly construed against removal jurisdiction  *Pacheo de Perez v AT&T Co* , 139 F 3d 1368, 1373 (11th Cir 1998)  Where a defendant removes a case alleging fraudulent joinder, "[t]he removing party has the burden of proving that either (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant, or (2) there is an outright fraud in the Plaintiff's pleading of jurisdictional facts " *Crowe v Coleman*, 113 F 3d 1536, 1538 (11th Cir 1997), *Coker v Amoco Oil, Co* , 709 F 2d 1453, 1440 (11th Cir 1983), see also *Badon v R J Nabisco*, 236 F 3d 282

(5th Cir 2000) "The burden of the removing party is a 'heavy one' " *Crowe*, 113 F 3d at 1538 (citing *B, Inc v Miller Brewing Co* , 663 F 2d 545, 549 (5th Cir Unit A, 1981)  A claim by one of the Defendants that joinder is fraudulent must be asserted with particularity and supported by clear and convincing evidence  See *Parks v New York Times Co* , 308 F 2d 474, 478 (5th Cir 1962)

In a case where the defendants contend fraudulent joinder, the court must consider the state law upon which the claim rests and then determine only whether there is any reasonable possibility that the relevant state's highest court would rule in favor of the plaintiff were the issue presented to it  The court is not to weigh the merits of the plaintiff's claims beyond determining whether they are **arguable claims** under state law *Crowe*, 113 F 3d at 1538 (emphasis added)  "To establish fraudulent joinder, the party crying foul must show there is no reasonable probability of recovery against the joined party or that there has been outright fraud in the pleadings of jurisdictional facts " *Delgado v Shell Oil Co* , 663 F 2d 545, 549 (5th Cir 1981)  The court shall evaluate the factual allegations in the light most favorable to the plaintiff, and the court must resolve any uncertainties about state substantive law in favor of the plaintiff  *Crowe*, 113 F 3d at 1538  The federal court is to make these determinations based on the plaintiff's pleadings at the time of removal  *Id*  Joinder of a defendant is not fraudulent simply because a motive is to defeat diversity  *Id*  Where the plaintiff's allegations set forth a good faith claim under state law, no matter how doubtful, the presence of the non-diverse defendant will prevent removal  *Id*  See also *Tedder v FMC Corp* , 590 F 2d 115, 116-117 (5th Cir 1979)  Therefore, to prevail, defendants must clearly and convincingly show

8

that there is no possibility that plaintiffs have stated arguable claims against the local retailer defendant.

Plaintiff in the instant action has alleged that Walgreens and the Smoothie King defendants had knowledge of the dangerous side effects of PPA and stated facts, which as perceived in the light most favorable to plaintiff, give rise to a viable cause of action in redhibition

## C. Plaintiff has Further Stated Arguable Claims Against the Retailer/Seller Defendant for Failing to Sell a Product Fit for its Ordinary Usage; Failing to Deliver a Product of the Kind Specified by the Seller; and Negligence, Want of Care, Gross Negligence, and/or Strict Liability

Furthermore, defendants, in their haste to remove this action, have completely ignored several causes of action alleged against the retailer/seller defendant  The plaintiff allege that the retailer/seller defendants are liable for failing to deliver a product of the kind specified by the seller, failing to sell a product fit for its ordinary usage, negligence, want of care, gross negligence, and/or strict liability  Defendants avoid mention of these viable theories of recovery, omitting any argument why plaintiffs can not state or establish any of these claims against the retailer/seller defendants under Louisiana law Defendants ignore the presence of these causes of action in the petition at its own peril As the law of fraudulent joinder clearly provides, the defendant must show "clearly and convincingly" that the plaintiff has no possibility of establishing any cause of action against the resident defendants  Defendants have failed to meet its burden of establishing fraudulent joinder

## D. Further Discovery Is Necessary To Determine Whether Smoothie King Co., Inc. and Smoothie King Systems, Inc. Are Appropriate Defendants In Said Action

9

Defendants have stated that all Smoothie King defendants are fraudulently joined and further, that Smoothie King did not operate any store where plaintiff purchased the PPA-containing products  Plaintiffs' incorporate all the above and foregoing arguments as if set out below  Plaintiffs' submit that further discovery is necessary regarding this issue  Even so, as Walgreen Louisiana Co, Inc  was not fraudulently joined, this renders the case non-diverse thus making state court the proper forum

## II.    Conclusion

It is clear that the defendants failed to carry its burden in demonstrating that there is no possibility that a state court would find that plaintiff's petition fails to state any cause action against the retailer/seller defendants  Plaintiffs' joinder of the defendants were therefore proper  Clearly, federal jurisdiction based on diversity is not present, therefore, this action should be remanded to the 34th Judicial District Court, Parish of St  Bernard, Louisiana

Respectfully submitted,

J  Chandler Loupe
**CLAITOR & LOUPE, LLC**
State Bar No  19955
2223 Quail Run Drive, Ste  G
Baton Rouge, LA  70808
(225) 767-2222 Telephone
(225) 767-9003 Facsimile

**KIRK LAW FIRM**

10

Dana Kirk
MS State Bar No  100188
TX State Bar No  11057500
4265 San Felipe Street, Ste  1400
Houston, TX  77027
(713) 651-0050 Telephone

**CLARK, DEPEW &
TRACEY,LTD., L.L.P.**
Clayton Clark
TX State Bar No  04275750
440 Louisiana Street, Ste  1600
Houston, TX  77002
(713) 757-1400 Telephone

**J. ROBERT DAVIS LAW FIRM**
J  Robert Davis
TX State Bar No  00788859
440 Louisiana Street, Ste  1600
Houston, TX  77002
(713) 425-5255 Telephone

11

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this ___ $\ell 0$ ___ day of September, 2002, served a copy of the foregoing by mailing same by United States mail, first class postage prepaid, properly addresses to the following

Chaffe, McCall, Phillips, Toler & Sarpy, LLP
Ms Mary L Meyer
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2300
*Attorneys for Bayer Corporation*

Sessions, Fishman & Nathan, LLP
Mr Eric R Nowak
201 St Charles Avenue, Ste 3500
New Orleans, LA 70170
*Attorneys for Novartis Pharmaceuticals
Corporation and Novartis Consumer Health, Inc*

Lemle & Kelleher, LLP
Mr J Don Kelly, Jr
601 Poydras Street, Ste 2100
New Orleans, LA 70130-6097
*Attorneys for 4Life Research, LC*

The Truitt Law Firm
Mr Jack E Truitt
251 Highway 21
Madisonville, LA 70447
*Attorneys for Walgreen Louisiana Co , Inc*

Baldwin & Haspel
Ms Monica T Suprenant
2200 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2200
*Attorneys for Smoothie King Co , Inc and
Smoothie King Systems, Inc*

J Chandler Loupe

12

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DAPHINE B. DONNELLY, and** | * | **CIVIL ACTION NO. 02-2436** |
| **JEROM EDONNELLY, Husband** | * | |
| | * | **JUDGE ENGELHARDT** |
| **VERSUS** | * | |
| | * | **MAGISTRATE JUDGE SHUSHAN** |
| **BAYER CORPORATION; NOVARTIS** | * | |
| **PHARMACEUTICALS** | * | |
| **CORPORATION; NOVARTIS** | * | |
| **CONSUMER HEALTH, INC.** | * | |
| **4 LIFE RESEARCH, LC, Successor by** | * | |
| **merger to SHAPERITE; SMOOTHIE** | * | |
| **KING CO., INC.; SMOOTHIE KING** | * | |
| **SYSTEMS, INC.; and WALGREENS** | * | |
| **LOUISIANA CO., INC.** | * | |
| **(D/B/A "WALGREENS")** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## NOTICE OF HEARING

PLEASE TAKE NOTICE that Plaintiffs' **Motion to Remand** has been set for hearing on the 2nd day of October, 2002 at 9 30 o'clock a m , before Judge Lurt D Engelhardt at the United States District Courthouse for the Eastern District of Louisiana, 500 Camp Street, New Orleans, Louisiana

Respectfully submitted,

J Chandler Loupe
**CLAITOR & LOUPE, LLC**
State Bar No 19955

2223 Quail Run Drive, Ste G
Baton Rouge, LA 70808
(225) 767-2222 Telephone
(225) 767-9003 Facsimile

**KIRK LAW FIRM**
Dana Kirk
MS State Bar No 100188
TX State Bar No 11057500
4265 San Felipe Street, Ste 1400
Houston, TX 77027
(713) 651-0050 Telephone

**CLARK, DEPEW &
TRACEY,LTD., L.L.P.**
Clayton Clark
TX State Bar No 04275750
440 Louisiana Street, Ste 1600
Houston, TX 77002
(713) 757-1400 Telephone

**J. ROBERT DAVIS LAW FIRM**
J Robert Davis
TX State Bar No 00788859
440 Louisiana Street, Ste 1600
Houston, TX 77002
(713) 425-5255 Telephone

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this ____ day of September, 2002, served a copy of the foregoing by mailing same by United States mail, first class postage prepaid, properly addresses to the following

Chaffe, McCall, Phillips, Toler & Sarpy, LLP
Ms Mary L Meyer
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2300
*Attorneys for Bayer Corporation*

Sessions, Fishman & Nathan, LLP
Mr Eric R Nowak
201 St Charles Avenue, Ste 3500
New Orleans, LA 70170
*Attorneys for Novartis Pharmaceuticals*
*Corporation and Novartis Consumer Health, Inc*

Lemle & Kelleher, LLP
Mr J Don Kelly, Jr
601 Poydras Street, Ste 2100
New Orleans, LA 70130-6097
*Attorneys for 4Life Research, LC*

The Truitt Law Firm
Mr Jack E Truitt
251 Highway 21
Madisonville, LA 70447
*Attorneys for Walgreen Louisiana Co , Inc*

Baldwin & Haspel
Ms Monica T Suprenant
2200 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2200
*Attorneys for Smoothie King Co , Inc and*
*Smoothie King Systems, Inc*

J Chandler Loupe

3

34TH JUDICIAL DISTRICT COURT
PARISH OF ST. BERNARD

STATE OF LOUISIANA

No. _____ 56 487



DAPHINE B. DONNELLY, and
JEROME DONNELLY, Husband         DIVISION
        Plaintiff

    vs.     .

BAYER CORPORATION; NOVARTIS PHARMACEUTICALS         SECTION _____
CORPORATION; NOVARTIS CONSUMER HEALTH, INC.;
4LIFE RESEARCH, LC, Successor by merger to SHAPERITE;
SMOOTHIE KING CO., INC.;                    **F I L E D**
SMOOTHIE KING SYSTEMS, INC.; and
WALGREEN LOUSIANA CO., INC. (D/B/A "WALGREENS")      JUL 0 2 2002
        Defendants                                      10:00am
                                                    _a_Lea_C_erves_
    **PETITION FOR DAMAGES**                        DEPUTY CLERK

NOW INTO COURT comes Petitioner, DAPHINE B. DONNELLY, a person of the full age of

majority, and respectfully represents the following

1.      Petitioner, Daphine B. Donnelly, is a person of full age and majority and is a resident and

        domiciliary of St. Bernard Parish, State of Louisiana.

2.      Made pharmaceutical manufacturer defendants herein are·

        A.      Bayer Corporation is an Indiana Corporation with its principal place of business in

        Pennsylvania, regularly selling and advertising its product in the City of Chalmette, State of

        Louisiana.

        B       Novartis Pharmaceuticals Corporation is a Delaware corporation with its principal

        place of business in New Jersey, regularly selling and advertising it product in the City of

        Chalmette, State of Louisiana

        C       Novartis Consumer Health, Inc  a Delaware corporation with its principal place of

        business in New Jersey, regularly selling and advertising its product in the City of Chalmette,

        State of Louisiana.

        D       4Life Research, LC, successor in merger to Shaperite, a limited liability company

        established in Utah  4Life Research, on information and belief, manufactured and distributed

                                        1



Shapefast®, thus bringing this action against 4Life Research, LC as a manufacturing defendant and as a seller/retailer defendant, regularly selling and advertising in the City of Chalmette, State of Louisiana

3    Made retailer/seller defendants herein are

A    Smoothie King Co , Inc , a Louisiana corporation with its principal place of business in Kenner, Louisiana, on information and belief, regularly selling and advertising its product in the St. Bernard Parish, State of Louisiana, through a franchise operator.

B    Smoothie King Systems, Inc , a Louisiana corporation with its principal place of business in Kenner, Louisiana, on information and belief, regularly selling and advertising its product in the St. Bernard Parish, State of Louisiana, through a franchise operator

C.    Walgreen Louisiana Co , Inc. (D/B/A "Walgreens"), a corporation organized in the State of Louisiana and licensed to and doing business in this state, with its principal place of business in Metairie, Louisiana, regularly selling and advertising its product in the City of Chalmette, State of Louisiana.

4.    Defendants are liable jointly and *in solido* unto Petitioner for an amount as is reasonable under the circumstances, for all costs and expert fees of these proceedings, for judicial interest from the date of demand, and for all and equitable relief for the following

5.    Phenylpropanolamine (hereinafter "PPA")/ephedrine was an ingredient used in many over-the-counter and prescription cold medications, it was also used in many over-the-counter weight loss product.

6    Life threatening adverse effects related to PPA/ephedrine leading to hospitalization and/or death have been well documented and known to pharmaceutical companies for decades These life threatening events have been documented through the Food and Drug Administration (hereinafter referred to as FDA) warning/sentinel events systems, showing a large number of such events related to PPA/ephedrine.    Several life threatening PPA/ephedrine injuries have been reported in Clin-Alert and other medical reports  A recent study published by Yale University which concluded that PPA causes hemorrhagic strokes and also found an ingredient "Norephedrine", an active ingredient in PPA, is also found in ephedrine dietary supplements  In addition, PPA/ephedrine is known to cause other serious adverse effects including heart damage and myocardial infarction

2

Defendant manufacturers have concealed material facts, including the serious risks associated with ingesting PPA/ephedrine, from Petitioner in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of products containing PPA/ephedrine

8     The causal relationship of Petitioner's injury to the products containing PPA/ephedrine were inherently undiscoverable by the Petitioner until she was warned of the dangers by the defendants and/or others. Petitioner did not discover, nor through the exercise of reasonable care and diligence could she have discovered that her injury and illness was in anyway related to products containing PPA/ephedrine until at the earliest when Petitioner was made aware that many PPA containing drugs were withdrawn from the market, and further, that ephedrine contains many of the same ingredients and has been linked to many injuries and deaths relating to its ingestion, just as with PPA-containing products

9     Petitioner purchased and/or ingested PPA/ephedrine containing product within all times relevant times, including, but not limited to, Shapefast®, Alka Seltzer Plus®, and Tavist-D®. Petitioner purchased Shapefast® at Smoothie King a nutritional/retail store located in the City of Chalmette, State of Louisiana. Petitioner purchased Alka Seltzer Plus® and Tavist-D® at Walgreens, a pharmaceutical/retail store located in the City of Chalmette, State of Louisiana.

10    Petitioner herein has suffered and still suffers serious and grievous injuries as a result of ingesting PPA/ephedrine containing products. On or about January 12, 1991, suffered from a stroke in Chalmette, Louisiana and was taken to Pendleton Methodist Memorial Hospital in New Orleans, Louisiana  Petitioner suffered from, including, but not limited to, paralysis to the right side of her body.

11.   Petitioner avers that the sole and proximate cause of Petitioner's injury was her consumption of the above-referenced PPA/ephedrine-containing products, including, but not limited to, Shapefast®, Alka Seltzer Plus®, and Tavist-D®,  and that she did not become aware of the causal link between the consumption of PPA/ephedrine-containing products and these health risks and injuries until recently.

12.   As a direct and consequential result of the foregoing, Petitioner has sustained physical and mental pain and suffering, loss of income, loss of consortium, loss of enjoyment of life, and

3

other damages to be shown at trial  All of the foregoing damages are past, present and future

13    Petitioner, Jerome Donnelly, husband of Daphine Donnelly, has suffered, sustained, and incurred injuries as a result of his spouse's debilitating and impaired condition.  Petitioner has suffered loss of consortium in the past and will sustain, in reasonable medical probability, a loss of consortium claim in the future

14    The incident and any resultant damages occurred through no fault or negligence on the part of the Petitioner

15    The incident and any and all resultant injuries and damages to Petitioner occurred through the fault of the pharmaceutical manufacturer defendants, as manufacturers of the product which contained PPA/ephedrine, in the following non-exclusive particulars

    1)    Pharmaceutical manufacturer defendants are liable under the Louisiana Products Liability Act, Louisiana Revised Statutes Annotated 9·2800.51 *et seq*

        a.)    Pharmaceutical manufacturer defendants manufactured products which were unreasonably dangerous in design at the time the product left the manufacturers' control and such defects in design were the proximate cause of damages suffered by Petitioner  The products were ingested and taken as intended.

        b.)    Pharmaceutical manufacturer defendants failed to employ alternative designs which would have reduced, if not prevented Petitioner's damages, and their failure to employ alternative designs was a proximate cause of the damages suffered by Petitioner

        c.)    Pharmaceutical manufacturer defendants failed to adopt alternative designs for their products and they knew of the likelihood that its products' design would cause Petitioner's injuries; and defendants knew the gravity of the potential injuries outweighed the utility of their products

        d )    Petitioner specifically alleges that an alternative design of pharmaceutical manufacturer defendants' products would have nullified, or substantially reduced the injuries Petitioner suffered

        e )    Pharmaceutical manufacturer defendants failed to post suitable and adequate warning(s) or instruction(s) concerning the risks of their products, including,

4

but not limited to, adequately warning potential users of the medication's known adverse side-effects, including heart problems and strokes, and any and all other side-effects suffered by Petitioner

f)  Pharmaceutical manufacturer defendants failed to alert users, potential users, and retail dealers who would be expected to sell and/or recommend its products, of the hazards associated with said products' usage, and further actively promoted and advertised their products in a manner that suggested the design of their products was safe

16.  The incident and any and all resultant injuries and damages to Petitioner occurred through the fault, negligence, want of care, gross negligence, and/or strict liability of pharmaceutical manufacturer defendants by their failure to exercise reasonable care in the manufacture of its products when they knew of should have known that Petitioner was a foreseeable and intended user of their products, and the risk of harm suffered by Petitioner was encompassed within the duty owed to protect intended users of their products.

17  The incident and any and all resultant injuries and damages to Petitioner occurred through the fault of defendants, as sellers and/or retailers of the product which contained PPA/ephedrine, rendering retailer/seller defendants liable for any and all damages suffered by Petitioner, including attorney fees, in the following non-exclusive particulars:

1 )  Retailer/seller defendants are liable for breach of the warranty against redhibitory defects, or vices, in the subject over-the-counter medications, existing at the time of the sale to Petitioner, pursuant to La. Civ Code Article 2520 *et seq*.

a )  Retailer/seller defendants failed to give Petitioner notice of the dangerous side-effects of the subject over-the-counter medications they sold to Petitioner which contained PPA/ephedrine; and retailer/seller defendants had actual knowledge of the existence of said redhibitory defects at the time of the sale

2 )  Retailer/seller defendants are liable under La. Civ Coda Article 2524 for failure to sell a product fit for its ordinary usage.

a.)  Retailer/seller defendants knew Petitioner's intended usage of the subject over-the-counter medications and knew of Petitioner's reliance on the skill and

judgment of retailer/seller defendants in the sale of their over-the-counter medications. Retailer/seller defendants failed to exercise the appropriate skill of judgment in the sale of their products to Petitioner

3) Retailer/seller defendants are liable under La. Civ. Code Article 2529 for delivering products not of the kind or quality specified by the seller.

    a.) Retailer/seller defendants sold over-the-counter medications to Petitioner which were misrepresented by retailer/seller defendants as being safe for human consumption. Retailer/seller defendant failed to adequately inform Petitioner of the dangers inherent in the over-the-counter medications they sold to Petitioner

15    The incident and any and all resultant injuries and damages to Petitioner occurred through the fault, negligence, want of care, gross negligence, and/or strict liability retailer/seller defendants by their failure to exercise reasonable care in the sale and/or retail of its products when it knew, or should have known, that Petitioner was a buyer and a foreseeable intended user of their products, and the risk of harm suffered by Petitioner was encompassed within the duty owed by retailer/seller defendants to protect intended buyers and users of the subject products.

16    Pharmaceutical manufacturer defendants and retailer/seller defendants are liable *in solido* for intentional and willful conspiracy pursuant to La. Civ. Code Article 2324. Defendants, among themselves, conspired with one another to conceal material facts including the hazardous nature of the subject product they manufactured and sold to the public in general and Petitioner. Defendants knew that the injuries suffered by Petitioner were substantially certain to occur through the consumption and ingestion of the over-the-counter medication they manufactured and sold.

17.    Venue for this action arises under Louisiana Code of Civ. Pro. Articles 42 *et seq.*, as the wrongful conduct of defendants complained of herein occurred in the Parish of St. Bernard. Petitioner purchased and suffered her injuries in St. Bernard Parish, State of Louisiana

    WHEREFORE, Petitioner prays that after due proceedings be had there be a judgment rendered herein in favor of Petitioner and against defendants jointly, severally, and *in solido*, for such damages as are reasonable in the premises, together with the maximum legal interest from the date of judicial demand, until paid, for all costs of these proceedings,

6

and for all other general and equitable relief to which Petitioner may be awarded  Petitioner

respectfully requests a TRIAL BY JURY

Respectfully submitted,

J  Chandler Loupe
CLAITOR & LOUPR, LLC
STATE BAR NO  19955
2223 Quail Run Drive, Ste  G
Baton Rouge, LA  70808
(225) 767-2222 (Telephone)
(225) 767-9003 (Facsimile)

KIRK LAW FIRM
Dana Kirk
MS STATE BAR NO. 100188
TX STATE BAR NO  11057500
4265 San Felipe Street, Ste. 1400
Houston, TX  77027
(713) 651-0050

CLARK, DEPEW & TRACEY,LTD., L.L.P.
Clayton Clark
TX STATE BAR NO. 04275750
440 Louisiana Street, Ste. 1600
Houston, TX  77002
(713) 757-1400

J. ROBERT DAVIS LAW FIRM
J. Robert Davis
TX STATE BA NO. 00788859
440 Louisiana Street, Ste. 1600
Houston, TX  77002
(713) 425-5255

PLEASE SERVE:

BAYER CORPORATION
By and Through its Registered Agent for Service of Process:
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA  70809

NOVARTIS PHARMACEUTICAL CORPORATION
By and Through its Registered Agent for Service of Process:
320 Somerulos Street
Baton Rouge, LA  70802

NOVARTIS CONSUMER HEALTH, INC
By and Through its Registered Agent for Service of Process.
Corporation Service Company
2711 Centerville Road, Ste. 400
Wilmington, DE  19808

**A TRUE COPY**
Lena R Torres
CLERK OF COURT
PARISH OF ST BERNARD
STATE OF LOUISIANA

By
DEPUTY CLERK

/S/ SUSAN A. RANDAZZO

7

4LIFE RESEARCH, LC
By and Through its Registered Agent for Service of Process
David Lisonbee
9850 S 300 W.
Sandy, UT 840703262

SMOOTHIE KING CO , INC
By and Through its Registered Agent for Service of Process
Stephen Kuhnau, Sr
2400 Veterans Blvd , Ste 110
Kenner, LA 70062

SMOOTHIE KING SYSTEMS, INC
By and Through its Registered Agent for Service of Process:
Stephen Kuhnau, Sr.
2400 Veterans Blvd , Ste. 110
Kenner, LA 70062

WALGREEN LOUISIANA CO., INC.
By and Through its Registered Agent for Service of Process:
The Prentice-Hall Corporation System, Inc.
701 South Peters Street, Second Floor
New Orleans, LA 70130

8

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 AUG -7  AM 11: 52

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAPHINE B  DONNELLY, and<br>JEROME DONNELLY, Husband<br><br>VERSUS<br><br>BAYER CORPORATION; NOVARTIS<br>PHARMACEUTICALS CORPORATION,<br>NOVARTIS CONSUMER HEALTH, INC ,<br>4LIFE RESEARCH, LC, Successor by<br>merger to SHAPERITE, SMOOTHIE KING<br>CO , INC , SMOOTHIE KING SYSTEMS,<br>INC , and WALGREEN LOUISIANA CO ,<br>INC  (D/B/A "WALGREENS") | CIVIL ACTION<br><br>NO  $02$-$2436$<br><br>SECTION<br><br>MAGISTRATEN MAG. 1 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### NOTICE OF REMOVAL

**TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA:**

**NOW INTO COURT**, through undersigned counsel, come Bayer Corporation, Novartis Pharmaceuticals Corporation and Novartis Consumer Health, Inc , who respectfully aver

1.     Bayer Corporation, Novartis Pharmaceuticals Corporation and Novartis Consumer Health, Inc  are named defendants in a civil suit filed in the Thirty-Fourth Judicial District Court for the Parish of St. Bernard, State of Louisiana, entitled *"Daphine B.*

Bayer_Donnelly Notice of Removal DOC

**EXHIBIT**

**B**

Donnelly, and Jerome Donnelly, Husband vs Bayer Corporation, Novartis Pharmaceuticals Corporation; Novartis Consumer Health, Inc, 4Life Research, LC, Successor by merger to Shaperite, Smoothie King Co., Inc, Smoothie King Systems, Inc; and Walgreen Louisiana Co, Inc (d/b/a "Walgreens") and bearing No. 96-487-C on the docket of that court. Plaintiffs filed their original Petition on July 2, 2002 Copies of the State Court proceedings are attached to this Notice of Removal and constitute all process, pleadings and orders served on the petitioners to date in this suit.

2     This suit is an action in which the Court has original jurisdiction under 28 U S C. §1332, as there is complete diversity of citizenship between plaintiffs and the defendants and the matter in controversy exceeds $75,000 00, exclusive of interest and costs   Thus, this action may be removed to this Court pursuant to the provisions of 28 U S C §1441.

3     The forum state is Louisiana   The plaintiffs were, at the time they filed this action, and still are citizens of the State of Louisiana

4     Bayer Corporation was, at the time the action was filed, and still is a corporation incorporated in the State of Indiana, with its principal place of business in the State of Pennsylvania.  Bayer Corporation was not, at the time this action was filed and still is not a citizen of the State of Louisiana

5.     Novartis Pharmaceuticals Corporation was, at the time the action was filed, and still is a corporation incorporated in the State of Delaware, with its principal place of business in the State of New Jersey   Novartis Pharmaceuticals Corporation was not, at the time this action was filed and still is not a citizen of the State of Louisiana.

Bayer_Donnelly Notice of Removal DOC             2

6       Novartis Consumer Health, Inc was, at the time the action was filed, and still is a corporation incorporated in the State of Delaware, with its principal place of business in the State of New Jersey  Novartis Consumer Health, Inc was not, at the time this action was filed and still is not a citizen of the State of Louisiana

7       Plaintiff has named 4Life Research, LC as a defendant   On information and belief, 4Life Research, LC is a limited liability company organized in the State of Utah, with its principal place of business in Utah.  The members of 4Life Research, LC are  David Lisonbee and Bianca Lisonbee, both of whom are citizens of the state of Utah   David Lisonbee and Bianca Lisonbee were not at the time this action was filed and still are not citizens of the state of Louisiana

8.      Complete diversity of citizenship exists in this case because the non-diverse defendants, i e., Smoothie King Co , Inc , Smoothie King Systems, Inc  and Walgreen Louisiana Co , Inc  have been fraudulently joined.  *See, e g , Borden v  General Dynamics Corp* , 60 F 3d 213, 217 (5th Cir  1995)   When the citizenship of the fraudulently joined party is disregarded, there is complete diversity of citizenship between the plaintiff and the remaining defendants.

9       Plaintiffs fraudulently joined Walgreen Louisiana Co , Inc.   They assert claims based on strict liability, negligence, redhibition, fraud, negligent and reckless misrepresentation, and conspiracy to defraud against this defendant.  (*See* Original Petition, ¶¶ 17–18)   However, they cannot prevail on their claims against Walgreen Louisiana Co , Inc. under Louisiana law.  *See, e.g., Perksin v  Bayer Corp., et al*, No. C01-2033R (W.D. Wash  Feb 26, 2002).

10      Plaintiffs fraudulently joined Smoothie King Co, Inc. and Smoothie King Systems, Inc  *Cf Perksin v Bayer Corp, et al*, No  C01-2033R (W D  Wash  Feb  26, 2002)  Additionally, plaintiff Daphne Donnelly alleges that she suffered a stroke on or about January 12, 1991 allegedly as a result of ingestion of products containing phenylpropanolamine (PPA) and/or ephedrine that she allegedly purchased at a Smoothie King store in Chalmette, Louisiana  Smoothie King did not operate any store in Chalmette on or before January 12, 1991 (*see* Affidavit of Steve Kuhnau attached as Exhibit A)

11      It is apparent from the face of plaintiff's Petition that the amount in controversy between the plaintiff and defendants exceeds $75,000 00, exclusive of interest and costs  *See, e g, Gebbia v Wal-Mart Stores, Inc*, 233 F 3d 880 (5th Cir  2000)  Plaintiff Daphne B  Donnelly alleges that she suffered a stroke resulting in paralysis to the right side of her body  (*See* Petition at ¶ 10)  *Cf. Philippe v. Lloyd's Aero Boliviano*, 97-0258 (La App  1st Cir  2/20/98), 710 So 2d 807 (trial court awarded total damages of $1,168,320 09 for stroke injuries to plaintiff and for loss of consortium to his wife, the Appeals Court later reversed finding no liability), *Smith v. Cameron Crews, Inc*, 348 So 2d 179 (La  App  3d Cir  1977) (affirming award of $150,000 00 to plaintiff who suffered stroke as a result of defendant's negligence)

12      This Court has supplemental jurisdiction under 28 U.S.C § 1367 over Jerome Donnelly's loss of consortium claim  *See Booty v  Shoney's, Inc*, 872 F Supp  1524 (E.D La  1995)

13.    4Life Research consents to this Notice of Removal    *See* letter attached as Exhibit B

14    Petitioners file this Notice of Removal within 30 days of July 9, 2002, the earliest date of service on any defendant    Petitioners file this Notice of Removal without waiving any objections, exceptions or defenses to plaintiffs' Petition

15    Petitioners file and present herewith the sum of $150 00 as required by Title 28, United States Code, § 1446.

Respectfully submitted,

Mary L Meyer (La. Bar No. 19966)
John F. Olinde (La. Bar No 1515)
Charles P Blanchard (La Bar No 18798)
**CHAFFE, McCALL, PHILLIPS,**
 **TOLER & SARPY, L.L.P.**
2300 Energy Centre,  1100 Poydras Street
New Orleans, LA 70163-2300
Telephone No  (504) 585-7000
**Attorneys for Bayer Corporation**

Joy G. Braun (#3416)
Eric R. Nowak (#27025)
Shirin E. Harrell (#27495)
**SESSIONS, FISHMAN & NATHAN, L.L.P.**
201 St. Charles Avenue, Suite 3500
New Orleans, LA 70170
Telephone (504) 582-1500
**Attorneys for Novartis Pharmaceuticals**
**Corporation and Novartis Consumer Health,**
**Inc.**

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this 7th day of _Αυ6υ ΤΙ_, 2002, served a

copy of the foregoing pleading on counsel for all parties to this proceeding, by mailing the

same by United States mail, properly addressed, and first class postage prepaid.



THIRTY FOURTH JUDIC A L DISTRICT COURT
PARISH OF ST. BERNARD
STATE OF LOUISIANA

## CITATION



NO· 96-487

DAPHINE B. DONNELLY, AND JEROME DONNELLY, HUSBAND

VERSUS

BAYER CORPORATION; NOVARTIS PHARMACEUTICALS
CORPORATION, NOVARTIS CONSUMER HEALTH, INC.,;
4LIFE RESEARCH, LC, SUCCESSOR BY MERGER TO SHAPERITE;
SMOOTHIE KING CO.; SMOOTHIE KING SYSTEMS, INC.;
WALGREEN LOUISIANA CO., INC. (D/B/A 'WALGREENS")

TO:  **BAYER CORPORATION**
**BY AND THRU ITS REGISTERED AGENT FOR SERVICE OF PROCESS**
**CT CORPORATION SYSTEM**
**8550 UNITED PLAZA BLVD.**
**BATON ROUGE, LOUISIANA**

YOU HAVE BEEN SUED. Attached to this Citation is a certified copy of <u>Petition for</u> <u>Damages</u>. The Petition tells you what you are being sued for.

You must either DO WHAT THE PETITION ASKS, OR WITHIN FIFTEEN (15) DAYS after you have received these documents, you must file an answer or other legal pleadings in the office of the Clerk of Court at the St. Bernard Parish Courthouse, 1100 W St Bernard Hwy, Chalmette, LA 70043.

If you do not do what the Petition asks, or if you do not file an answer or legal pleading within FIFTEEN (15) DAYS, a judgment may be entered against you without further notice.

This Citation was issued by the Clerk of Court for St. Bernard Parish, Louisiana on the <u>2nd</u> day of <u>July</u>, 2002.

ssr    P1

LENA R. TORRES
CLERK OF COURT

BY _____
Deputy Clerk  **/S/ SUSAN A. RANDAZZO**

**DOMICILIARY**
Received Parish of St. Bernard on the _____ day of _____, 2002 and on the _____ day of _____, 2002, I served a copy of the within _____ by leaving the same at _____ domicile _____ this Parish in the hands of _____ a person apparently over the age of 14 years living and residing in said domicile, whose name and other facts, connected with this service I learned by interrogating the same _____ the said _____ being absent from _____ domicile at the time of said service.
Returned Parish of St. Bernard _____, 2002

_____
Sheriff

**PERSONAL**
Received Parish of St. Bernard on the _____ day of _____, 2002 and on the _____ day of _____, 2002, I served a copy of the within _____ on _____ on _____ at _____ this Parish his usual place of domicile, in the Parish of St. Bernard, by handling and delivering the same to in Returned Parish of St Bernard _____, 2002

_____
Sheriff

34ᵀᴴ JUDICIAL DISTRICT COURT
PARISH OF ST. BERNARD

STATE OF LOUISIANA

No. ___56 487___

DAPHINE B. DONNELLY, and
JEROME DONNELLY, Husband          DIVISION **C**
  Plaintiff

  vs.

BAYER CORPORATION; NOVARTIS PHARMACEUTICALS      SECTION _____
CORPORATION; NOVARTIS CONSUMER HEALTH, INC.;
4LIFE RESEARCH, LC, Successor by merger to SHAPERITE;
SMOOTHIE KING CO., INC.;                         **FILED**
SMOOTHIE KING SYSTEMS, INC.; and
WALGREEN LOUSIANA CO., INC. (D/B/A "WALGREENS")   JUL 02 2002
  Defendants                                 10:30am
                  a Lena C. Torres
    PETITION FOR DAMAGES          ~~DEPUTY~~ CLERK

NOW INTO COURT comes Petitioner, DAPHINE B. DONNELLY, a person of the full age of

majority, and respectfully represents the following·

1. Petitioner, Daphine B. Donnelly, is a person of full age and majority and is a resident and

  domiciliary of St. Bernard Parish, State of Louisiana.

2. Made pharmaceutical manufacturer defendants herein are:

  A. Bayer Corporation is an Indiana Corporation with its principal place of business in

  Pennsylvania, regularly selling and advertising its product in the City of Chalmette, State of

  Louisiana.

  B Novartis Pharmaceuticals Corporation is a Delaware corporation with its principal

  place of business in New Jersey, regularly selling and advertising it product in the City of

  Chalmette, State of Louisiana.

  C Novartis Consumer Health, Inc. a Delaware corporation with its principal place of

  business in New Jersey, regularly selling and advertising its product in the City of Chalmette,

  State of Louisiana.

  D. 4Life Research, LC, successor in merger to Shaperite, a limited liability company

  established in Utah. 4Life Research, on information and belief, manufactured and distributed

1

Shapefast®, thus bringing this action against 4Life Research, LC as a manufacturing defendant and as a seller/retailer defendant, regularly selling and advertising in the City of Chalmette, State of Louisiana

3.    Made retailer/seller defendants herein are

A    Smoothie King Co , Inc , a Louisiana corporation with its principal place of business in Kenner, Louisiana, on information and belief, regularly selling and advertising its product in the St. Bernard Parish, State of Louisiana, through a franchise operator.

B.    Smoothie King Systems, Inc , a Louisiana corporation with its principal place of business in Kenner, Louisiana, on information and belief, regularly selling and advertising its product in the St. Bernard Parish, State of Louisiana, through a franchise operator.

C.    Walgreen Louisiana Co , Inc. (D/B/A "Walgreens"), a corporation organized in the State of Louisiana and licensed to and doing business in this state, with its principal place of business in Metairie, Louisiana, regularly selling and advertising its product in the City of Chalmette, State of Louisiana.

4.    Defendants are liable jointly and *in solido* unto Petitioner for an amount as is reasonable under the circumstances, for all costs and expert fees of these proceedings, for judicial interest from the date of demand, and for all and equitable relief for the following:

5.    Phenylpropanolamine (hereinafter "PPA")/ephedrine was an ingredient used in many over-the-counter and prescription cold medications, it was also used in many over-the-counter weight loss product.

6    Life threatening adverse effects related to PPA/ephedrine leading to hospitalization and/or death have been well documented and known to pharmaceutical companies for decades These life threatening events have been documented through the Food and Drug Administration (hereinafter referred to as FDA) warning/sentinel events systems, showing a large number of such events related to PPA/ephedrine.    Several life threatening PPA/ephedrine injuries have been reported in Clin-Alert and other medical reports. A recent study published by Yale University which concluded that PPA causes hemorrhagic strokes and also found an ingredient "Norephedrine", an active ingredient in PPA, is also found in ephedrine dietary supplements  In addition, PPA/ephedrine is known to cause other serious adverse effects including heart damage and myocardial infarction.

2

Defendant manufacturers have concealed material facts, including the serious risks associated with ingesting PPA/ephedrine, from Petitioner in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of products containing PPA/ephedrine

8    The causal relationship of Petitioner's injury to the products containing PPA/ephedrine were inherently undiscoverable by the Petitioner until she was warned of the dangers by the defendants and/or others. Petitioner did not discover, nor through the exercise of reasonable care and diligence could she have discovered that her injury and illness was in anyway related to products containing PPA/ephedrine until at the earliest when Petitioner was made aware that many PPA containing drugs were withdrawn from the market, and further, that ephedrine contains many of the same ingredients and has been linked to many injuries and deaths relating to its ingestion, just as with PPA-containing products..

9.   Petitioner purchased and/or ingested PPA/ephedrine containing product within all times relevant times, including, but not limited to, Shapefast®, Alka Seltzer Plus®, and Tavist-D®. Petitioner purchased Shapefast® at Smoothie King a nutritional/retail store located in the City of Chalmette, State of Louisiana. Petitioner purchased Alka Seltzer Plus® and Tavist-D® at Walgreens, a pharmaceutical/retail store located in the City of Chalmette, State of Louisiana.

10.  Petitioner herein has suffered and still suffers serious and grievous injuries as a result of ingesting PPA/ephedrine containing products. On or about January 12, 1991, suffered from a stroke in Chalmette, Louisiana and was taken to Pendleton Methodist Memorial Hospital in New Orleans, Louisiana. Petitioner suffered from, including, but not limited to, paralysis to the right side of her body.

11.  Petitioner avers that the sole and proximate cause of Petitioner's injury was her consumption of the above-referenced PPA/ephedrine-containing products, including, but not limited to, Shapefast®, Alka Seltzer Plus®, and Tavist-D®, and that she did not become aware of the causal link between the consumption of PPA/ephedrine-containing products and these health risks and injuries until recently.

12.  As a direct and consequential result of the foregoing, Petitioner has sustained physical and mental pain and suffering, loss of income, loss of consortium, loss of enjoyment of life, and

3

other damages to be shown at trial  All of the foregoing damages are past, present and future

13    Petitioner, Jerome Donnelly, husband of Daphine Donnelly, has suffered, sustained, and incurred injuries as a result of his spouse's debilitating and impaired condition  Petitioner has suffered loss of consortium in the past and will sustain, in reasonable medical probability, a loss of consortium claim in the future

14    The incident and any resultant damages occurred through no fault or negligence on the part of the Petitioner

15    The incident and any and all resultant injuries and damages to Petitioner occurred through the fault of the pharmaceutical manufacturer defendants, as manufacturers of the product which contained PPA/ephedrine, in the following non-exclusive particulars:

    1)    Pharmaceutical manufacturer defendants are liable under the Louisiana Products Liability Act, Louisiana Revised Statutes Annotated 9:2800 51 *et seq*

        a.)    Pharmaceutical manufacturer defendants manufactured products which were unreasonably dangerous in design at the time the product left the manufacturers' control and such defects in design were the proximate cause of damages suffered by Petitioner  The products were ingested and taken as intended

        b.)    Pharmaceutical manufacturer defendants failed to employ alternative designs which would have reduced, if not prevented Petitioner's damages, and their failure to employ alternative designs was a proximate cause of the damages suffered by Petitioner

        c.)    Pharmaceutical manufacturer defendants failed to adopt alternative designs for their products and they knew of the likelihood that its products' design would cause Petitioner's injuries; and defendants knew the gravity of the potential injuries outweighed the utility of their products.

        d )    Petitioner specifically alleges that an alternative design of pharmaceutical manufacturer defendants' products would have nullified, or substantially reduced the injuries Petitioner suffered.

        e )    Pharmaceutical manufacturer defendants failed to post suitable and adequate warning(s) or instruction(s) concerning the risks of their products, including,

4

but not limited to, adequately warning potential users of the medication's known adverse side-effects, including heart problems and strokes, and any and all other side-effects suffered by Petitioner

    f)     Pharmaceutical manufacturer defendants failed to alert users, potential users, and retail dealers who would be expected to sell and/or recommend its products, of the hazards associated with said products' usage, and further actively promoted and advertised their products in a manner that suggested the design of their products was safe

16.     The incident and any and all resultant injuries and damages to Petitioner occurred through the fault, negligence, want of care, gross negligence, and/or strict liability of pharmaceutical manufacturer defendants by their failure to exercise reasonable care in the manufacture of its products when they knew of should have known that Petitioner was a foreseeable and intended user of their products, and the risk of harm suffered by Petitioner was encompassed within the duty owed to protect intended users of their products.

17.     The incident and any and all resultant injuries and damages to Petitioner occurred through the fault of defendants, as sellers and/or retailers of the product which contained PPA/ephedrine, rendering retailer/seller defendants liable for any and all damages suffered by Petitioner, including attorney fees, in the following non-exclusive particulars:

    1.)     Retailer/seller defendants are liable for breach of the warranty against redhibitory defects, or vices, in the subject over-the-counter medications, existing at the time of the sale to Petitioner, pursuant to La. Civ. Code Article 2520 *et seq.*

        a.)     Retailer/seller defendants failed to give Petitioner notice of the dangerous side-effects of the subject over-the-counter medications they sold to Petitioner which contained PPA/ephedrine; and retailer/seller defendants had actual knowledge of the existence of said redhibitory defects at the time of the sale

    2)     Retailer/seller defendants are liable under La. Civ. Coda Article 2524 for failure to sell a product fit for its ordinary usage

        a.)     Retailer/seller defendants knew Petitioner's intended usage of the subject over-the-counter medications and knew of Petitioner's reliance on the skill and

judgment of retailer/seller defendants in the sale of their over-the-counter medications. Retailer/seller defendants failed to exercise the a propriate skill of judgment in the sale of their products to Petitioner

3.) Retailer/seller defendants are liable under La. Civ Code Article 2529 for delivering products not of the kind or quality specified by the seller

a.) Retailer/seller defendants sold over-the-counter medications to Petitioner which were misrepresented by retailer/seller defendants as being safe for human consumption. Retailer/seller defendant failed to adequately inform Petitioner of the dangers inherent in the over-the-counter medications they sold to Petitioner

15 The incident and any and all resultant injuries and damages to Petitioner occurred through the fault, negligence, want of care, gross negligence, and/or strict liability retailer/seller defendants by their failure to exercise reasonable care in the sale and/or retail of its products when it knew, or should have known, that Petitioner was a buyer and a foreseeable intended user of their products, and the risk of harm suffered by Petitioner was encompassed within the duty owed by retailer/seller defendants to protect intended buyers and users of the subject products

16. Pharmaceutical manufacturer defendants and retailer/seller defendants are liable *in solido* for intentional and willful conspiracy pursuant to La. Civ. Code Article 2324. Defendants, among themselves, conspired with one another to conceal material facts including the hazardous nature of the subject product they manufactured and sold to the public in general and Petitioner. Defendants knew that the injuries suffered by Petitioner were substantially certain to occur through the consumption and ingestion of the over-the-counter medication they manufactured and sold.

17. Venue for this action arises under Louisiana Code of Civ, Pro. Articles 42 *et seq.*, as the wrongful conduct of defendants complained of herein occurred in the Parish of St. Bernard. Petitioner purchased and suffered her injuries in St Bernard Parish, State of Louisiana

WHEREFORE, Petitioner prays that after due proceedings be had there be a judgment rendered herein in favor of Petitioner and against defendants jointly, severally, and *in solido*, for such damages as are reasonable in the premises, together with the maximum legal interest from the date of judicial demand, until paid, for all costs of these proceedings,

6

and for all other general and equitable relief to which Petitioner may be awarded. Petitioner

respectfully requests a TRIAL BY JURY.

Respectfully submitted,

J. Chandler Loupe
CLAITOR & LOUPR, LLC
STATE BAR NO 19955
2223 Quail Run Drive, Ste. G
Baton Rouge, LA 70808
(225) 767-2222 (Telephone)
(225) 767-9003 (Facsimile)

**KIRK LAW FIRM**
Dana Kirk
MS STATE BAR NO. 100188
TX STATE BAR NO 11057500
4265 San Felipe Street, Ste. 1400
Houston, TX 77027
(713) 651-0050

**CLARK, DEPEW & TRACEY,LTD., L.L.P.**
Clayton Clark
TX STATE BAR NO. 04275750
440 Louisiana Street, Ste. 1600
Houston, TX 77002
(713) 757-1400

**J. ROBERT DAVIS LAW FIRM**
J. Robert Davis
TX STATE BA NO 00788859
440 Louisiana Street, Ste 1600
Houston, TX 77002
(713) 425-5255

PLEASE SERVE:

BAYER CORPORATION
By and Through its Registered Agent for Service of Process·
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA 70809

NOVARTIS PHARMACEUTICAL CORPORATION
By and Through its Registered Agent for Service of Process:
320 Somerulos Street
Baton Rouge, LA 70802

NOVARTIS CONSUMER HEALTH, INC.
By and Through its Registered Agent for Service of Process
Corporation Service Company
2711 Centerville Road, Ste. 400
Wilmington, DE 19808

**A TRUE COPY**
Lena R. Torres
CLERK OF COURT
PARISH OF ST BERNARD
STATE OF LOUISIANA

By
DEPUTY CLERK
/S/ SUSAN A. RANDAZZO

7

4LIFE RESEARCH, LC
By and Through its Registered Agent for Service of Process
David Lisonbee
9850 S 300 W.
Sandy, UT 840703262

SMOOTHIE KING CO , INC.
By and Through its Registered Agent for Service of Process
Stephen Kuhnau, Sr
2400 Veterans Blvd., Ste 110
Kenner, LA 70062

SMOOTHIE KING SYSTEMS, INC.
By and Through its Registered Agent for Service of Process.
Stephen Kuhnau, Sr.
2400 Veterans Blvd., Ste. 110
Kenner, LA 70062

WALGREEN LOUISIANA CO , INC
By and Through its Registered Agent for Service of Process:
The Prentice-Hall Corporation System, Inc.
701 South Peters Street, Second Floor
New Orleans, LA 70130

8

# CLAITOR & LOUPE, L.L.C.

### ATTORNEYS AND COUNSELORS AT LAW
2223 Quail Run Drive, Suite G,  Baton Rouge, Louisiana 70808
Tel: (225) 767-2222 • Fax: (225) 767-9003

July 24, 2002

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**NO.: 7002 0460 0001 9147 0243**

**Novartis Consumer Health, Inc.**
By and Through its Registered Agent for Service of Process:
**Corporation Service Company**
2711 Centerville Road, Suite 400
Wilmington, DE 19808

> *RE:  Daphine B. Donnelly, and Jerome Donnelly, Husband vs. Bayer Corporation, et al*
> *34th JDC, St. Bernard Parish, Docket No.96,487, Division "C"*

Sir/Madam:

We represent Daphine B. Donnelly, and Jerome Donnelly, husband, in claims arising out of incidents, wherein our clients ingested a product containing PPA.

We have filed the above numbered and captioned suit on behalf of Daphine B. Donnelly, and Jerome Donnelly, husband, for damages resulting from this incident. Since you are a non-resident of Louisiana, we are obtaining service of process on you pursuant to LSA R.S 13:3201 et seq. In order to comply with the requirements of law, we give you herewith notice of such service, together with a certified copy of the Petition and Citation which is being sent by the plaintiffs, via certified mail

Please forward this matter to your attorney for immediate handling.

Sincerely,

CLAITOR, LOUPE & BATEMAN, L.L.C.

J/Chandler Loupe

JCL.seb
Attachments

THIRTY FOURTH JUDICIAL DISTRICT COURT
PARISH OF ST. BERNARD
STATE OF LOUISIANA

## CITATION

NO· 96-487



DAPHINE B DONNELLY, AND JEROME DONNELLY, HUSBAND

### VERSUS

BAYER CORPORATION; NOVARTIS PHARMACEUTICALS
CORPORATION; NOVARTIS CONSUMER HEALTH, INC..;
4LIFE RESEARCH, LC, SUCCESSOR BY MERGER TO SHAPERITE,
SMOOTHIE KING CO.; SMOOTHIE KING SYSTEMS, INC ;
WALGREEN LOUISIANA CO , INC. (D/B/A "WALGREENS")

TO   NOVARTIS CONSUMER HEALTH, INC.
BY AND THRU ITS REGISTERED AGENT FOR SERVICE OF PROCESS
CORPORATION SERVICE COMPANY
2711 CENTERVILLE ROAD, SUITE 400
WILMINGTON, DE  19808

YOU HAVE BEEN SUED. Attached to this Citation is a certified copy of Petition for Damages. The Petition tells you what you are being sued for.

You must either DO WHAT THE PETITION ASKS, OR WITHIN THIRTY (30) DAYS after you have received these documents, you must file an answer or other legal pleadings in the office of the Clerk of Court at the St, Bernard Parish Courthouse, 1100 W. St. Bernard Hwy, Chalmette, LA  70043

If you do not do what the Petition asks, or if you do not file an answer or legal pleading within THIRTY (30) DAYS, a judgment may be entered against you without further notice.

This Citation was issued by the Clerk of Court for St. Bernard Parish, Louisiana on the 2nd day of July, 2002.

sar    P1

LENA R. TORRES
CLERK OF COURT

BY _Susan Randazzo_
Deputy Clerk/S/ SUSAN A. RANDAZZO

DOMICILIARY
Received Parish of St. Bernard on the _____ day of _____, 2002 and on the _____ day of _____, 2002, I served a copy of the within _____ by leaving the same at _____ domicile, _____ this Parish in the hands of _____ a person apparently over the age of 14 years living and residing in said domicile, whose name and other facts, connected with this service I learned by interrogating the same _____ the said _____ being absent from _____ domicile at the time of said service.
Returned Parish of St. Bernard _____ 2002

_____
Sheriff

PERSONAL
Received Parish of St. Bernard on the _____ day of _____, 2002 and on the _____ day of _____, 2002, I served a copy of the within _____ on _____ on _____ at _____ at _____ this Parish his usual place of domicile, in the Parish of St. Bernard, by handling and delivering the same to in
Returned Parish of St. Bernard _____ , 2002

_____
Sheriff



THIRTY FOURTH JUDICIAL DISTRICT COURT
PARISH OF ST. BERNARD
STATE OF LOUISIANA

### CITATION

NO 96-487

DAPHINE B DONNELLY, AND JEROME DONNELLY, HUSBAND

VERSUS

BAYER CORPORATION, NOVARTIS PHARMACEUTICALS
CORPORATION; NOVARTIS CONSUMER HEALTH, INC...
4LIFE RESEARCH, LC, SUCCESSOR BY MERGER TO SHAPERITE,
SMOOTHIE KING CO.; SMOOTHIE KING SYSTEMS, INC.;
WALGREEN LOUISIANA CO . INC. (D/B/A "WALGREENS")

TO    NOVARTIS PHARMACEUTICAL CORPORATION
BY AND THRU ITS REGISTERED AGENT FOR SERVICE OF PROCESS
320 SOMERULOS STREET
BATON ROUGE, LOUISIANA

YOU HAVE BEEN SUED. Attached to this Citation is a certified copy of <u>Petition for Damages</u>. The Petition tells you what you are being sued for

You must either DO WHAT THE PETITION ASKS, OR WITHIN FIFTEEN (15) DAYS after you have received these documents, you must file an answer or other legal pleadings in the office of the Clerk of Court at the St. Bernard Parish Courthouse, 1100 W. St. Bernard Hwy, Chalmette, LA 70043.

If you do not do what the Petition asks, or if you do not file an answer or legal pleading within FIFTEEN (15) DAYS, a judgment may be entered against you without further notice.

This Citation was issued by the Clerk of Court for St. Bernard Parish, Louisiana on the 2nd day of July, 2002.

sar    P1

LENA R. TORRES
CLERK OF COURT

BY _____
Deputy Clerk /S/ SUSAN A. RANDAZZO



**DOMICILIARY**
Received Parish of St. Bernard on the _____ day of _____, 2002 and on the _____ day of
_____, 2002, I served a copy of the within _____ by leaving
the same at _____ domicile _____ this Parish in the hands of
_____ a person apparently over the age of 14 years living and residing in said domicile,
whose name and other facts, connected with this service I learned by interrogating the same
_____ at the time of said service

**PERSONAL**
Received Parish of St. Bernard on the _____ day of _____ day of
_____, 2002, I served a copy of the within _____ ___ this
Parish his usual place of domicile, in the Parish of St. Bernard, by handling and delivering the same to at
Returned Parish of St. Bernard _____, 2002

Sheriff

## AFFIDAVIT OF STEVE KUHNAU

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified in and for the parish and state set forth above, personally came and appeared

### STEVE KUHNAU

who, after being duly sworn, deposed and stated the following:

1.

I have personal knowledge of the facts set forth in this Affidavit and, if called as a witness, could and would competently testify to the following

2.

The Smoothie King store located at 3366 Paris Road, Chalmette, Louisiana is the only store operated in Chalmette, Louisiana and there has been no other store operating in that geographic location in the history of the Smoothie King franchising business.

3.

The Franchise Agreement #20 which authorizes this Chalmette, Louisiana location was executed by franchisees on October 9, 1991

4

This Smoothie King store opened on February 17, 1992 at the location of 3366 Paris Road, Chalmette, Louisiana



WITNESSES.

STEVE KUHNAU
Chairman, Board of Directors

SWORN TO AND SUBSCRIBED before me, this _2 6_ day of July, 2002, in New Orleans, Louisiana

Notary Public

H \DOCS\S\SMOOT\00001\PPA case\Donovan Affidavit.wpd





9850 South 300 West • Sandy, UT 84070 • (801) 562-3600 • (801) 562-3611 Fax

July 31, 2002

**VIA FACSIMILE ONLY**
(504) 585-7075

Charles Blanchard
CHAFFE, MCCALL, PHILLIPS, TOLER & SARPY
2300 Energy Centre, 1100 Poydras St
New Orleans, LA 70163

Re    Donnelly, et al v Bayer Corporation, et al
      34th JDC, St Bernard Parish
      Docket No 96,487, Division "C"
      **Consent to Notice of Removal**

Dear Charles

        I am corporate counsel for 4Life Research, LC, one of the named defendants in the above action   I am responsible for managing all litigation for 4Life worldwide.

        4Life is incorporated in Utah, and has its principal place of business in Sandy, Utah.

        You have indicated that Bayer and other defendants plan to file a Notice of Removal in the U S District Court for the Eastern District of Louisiana, and that all defendants who have been properly served in the action must agree to such removal   4life was served with the complaint in the above action on **July 29, 2002**, and hereby consents to the notice of removal, but reserves all defenses objections and claims

        Very truly yours,

        Jack Brannelly
        Vice President of Legal Affairs
        4Life Research, LC

        JJB/

        cc    Steve Tew, CFO, COO
              File

**EXHIBIT**
B

4Life Research  LC



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 JAN 29 PH 2 55

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LAWRENCE MOSLEY ET AL.                        CIVIL ACTION

VERSUS                                        NO. 01-3479

BAYER CORPORATION, ET AL.                     SECTION "B"(4)

### ORDER AND REASONS

Below is Plaintiffs' Motion to Remand (Rec Doc No 8), and
motions brought by various Defendants to dismiss, for more
definitive statement and for temporary stay (Rec Doc Nos 5, 11,
& 16)

In February of 1995, Lawrence Mosley purchased over Alka-
Seltzer Plus and Dimetapp, both the counter medications, at a Rite
Aide, then K&B, store in New Orleans, Louisiana   Mosley alleged
that after taking the medication, he suffered a stroke, which
caused severe, permanent, and disabling injuries.  Mosley and his
wife filed suit in Civil District Court for the Parish of Orleans
in 2001    Named as Defendants were Bayer Corporation, the



DATE OF ENTRY

JAN 2 9 2002

1



EXHIBIT
C

manufacturer, marketer and distributer of Alka-Seltzer Plus, Miles Inc., the distributer of Alka-Seltzer Plus, American Home Products Corporation and Whitehall-Robbins Health Care, manufacturers and distributers of Dimetapp, and K&B Louisiana Corporation ("K&B/Rite-Aid"), seller of both Alka-Seltzer Plus and Dimetapp  Plaintiffs alleged Defendants knew or should have known that both Alka-Seltzer Plus and Dimetapp contained Phenylpropanolamine ("PPA"), which substantially increases the risk of stroke in users  Plaintiffs alleged that Defendants failed to warn Mosley of the harmful effects of PPA, which, according to Plaintiffs, caused Mosley's stroke

Defendants removed this matter to federal court on November 19, 2001 arguing that Defendant K&B/Rite Aid was fraudulently joined  Plaintiffs timely filed a motion to remand  Defendants then filed motions to dismiss for failure to state a claim, for more definite statement, and to stay the proceedings pending a final ruling of the Judicial Panel on Multidistrict Litigation.

## MOTION TO STAY

Defendants urged this Court to stay all proceedings, including Plaintiffs' Motion to Remand, in order to promote judicial efficiency, consistency, and for the convenience of the parties and witness  Defendants maintained that Plaintiffs' pending Motion to

2

Remand involves jurisdictional objections common to numerous other PPA cases, and that there was a risk of inconsistent pretrial rulings   The benefits of a temporary stay, contended Defendants, minimizes and outweighs any potential prejudice to Plaintiffs. Moreover, a temporary stay will prevent Defendants from incurring the unnecessary expense of engaging in duplicative pretrial proceedings   Relying on *Rivers v Walt Disney*, 980 F Supp 1358, 1360 (C D Cal. 1997), Defendants maintained that judicial efficiency dictates that this Court exercise its authority and stay the action pending the Panel's decision on transfer.   However, Defendants ignore Rule 1 5 of the Rules for Multidistrict Litigation.

Pule 1 5 expressly provides that

> the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court, and   . those courts wishing to address such motions have adequate time in which to do so

*In re Asbestos Products Liability Litigation v. International Paper Co.*, 170 F Supp 2d 1348, 1349 (J.P.M L 2001)   Thus, this Court retains jurisdiction to conduct all pretrial proceedings despite Defendants's pending motion to transfer. *McGrew v. Schering-Plough*

3

Corp., No  01-2311, 2001 U S  Dist. LEXIS 12205 at *7 (D. Kan  Aug
6,  2001)    Moreover,  for  purposes  of  judicial  economy,  the
jurisdictional issue should be resolved immediately for if federal
jurisdiction  does  not  exist,  the  case  can  be  remanded  before
federal resources are further expended.  *Id*   Judicial economy, in
this  case,  dictates  a  present  ruling  on  the  remand  issue  and
motions to dismiss    *Id*.

## MOTION TO REMAND

The  "party  invoking  the  removal  jurisdiction  of  the  federal
court  bears  a  heavy  burden "   *Sid Richardson Co. v. Interenergy*
*Resources, LTD.*, 99 F 3d 746, 751 (5th Cir  1996)    To prevail on
the argument that "non-diverse defendants were fraudulently joined
in order to defeat diversity, the removing party must demonstrate
'that there was absolutely no possibility that the plaintiff will
be  able  to  establish  a  cause  of  action  against  the  in-state
defendant in state court '"  *Id*.

> When "reviewing a claim of fraudulent joinder,
> the district court must evaluate all factual
> allegations and ambiguities in the controlling
> state law in favor of the plaintiff   If there
> is  any  possibility  that  the  plaintiff  has
> stated  a  cause  of  action  against  any  non-
> diverse  defendant,  the  federal  court  must
> conclude  that  joinder  is  proper,  thereby
> defeating  complete  diversity,  and  the  case
> must be remanded

4

*Id.* (citing *Burden v. General Dynamics Corp.*, 60 F 3d 213, 216 (5ᵗʰ Cir 1995) Moreover, in evaluating fraudulent joinder, the court does not "determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look[s] only for a possibility that the plaintiff might do so." *Id* (citing *Burden*, 60 F 3d at 216)

Defendants argued that there was no reasonable basis under Louisiana law that Plaintiffs can recover against K&B/Rite Aid because Plaintiffs' redhibitory defect claims have prescribed  *See Sid Richardson Co.*, 99 F 3d at 753 (allowing the consideration of affirmative defenses when determining fraudulent joinder)  If

> [D]efendants prevail on any [affirmative] defenses, it necessarily follows that joinder was fraudulent, and the district court properly exercised its removal jurisdiction  On the other hand, if there is any possibility that  [Plaintiff] might survive the affirmative defenses, we must vacate for remand to state court.

*Id.*

Article 2534 of the Louisiana Civil Code provides that

> The action for redhibition against a seller who did not know of the existence of a defect in the thing sold prescribes in four years from the day delivery of such thing was made to the buyer or one year from the day the defect was discovered by the buyer, whichever occurs first.   .   The action for

5

> redhibition against a seller who knew, or is
> presumed to have known, of the existence of a
> defect in the thing sold prescribes in one
> year from the day the defect was discovered by
> the buyer.

LA. CIV CODE art 2534 (West 1996 & Supp 2001)    According to
Plaintiffs' petition for damages, the allegedly defective products
were sold in 1995    Moreover, Plaintiffs alleged that Defendants
knew or should have known of the harmful affects of PPA.
Therefore, according to Plaintiffs,    Defendants are bad faith
sellers.[1]    As a result, Plaintiffs redhibitory claims prescribed
within one year of Plaintiffs' discovery of the defect.
Plaintiffs' Petition for Damages failed to indicate when Plaintiff
discovered the alleged redhibitory defect    This could have
occurred within one year of the filing of this claim    Thus, there
is a possibility that Plaintiffs could recover against Defendant
K&B/Rite Aid and removal was improper    In so ruling, this Court is
without jurisdiction to reach a determination on Defendants' other
motions    Accordingly,

---

[1]If Defendants were good faith sellers, then Plaintiffs
claims have prescribed. The year 1999 marked four years since the
product was purchased by Mosley. If this event occurred before
Plaintiffs discovered the defect then 1999 would be the year
Plaintiffs claims prescribed and thus the subsequent 2001 filing
was untimely    If Plaintiffs discovered the defect before 1999,
then Plaintiffs 2001 filing was again untimely

6

IT IS ORDERED Defendants' Motion to Stay (Rec Doc. No 16) is DENIED

IT IS FURTHER ORDERED that Plaintiffs' Motion to Remand (Rec Doc. No 18) is GRANTED and this case is remanded to the Civil District Court for the Parish of Orleans, Section "N", Number 2001-17315

IT IS FURTHER ORDERED that Defendants' motions to dismiss and for more definite statement are DISMISSED due to lack of jurisdiction to hear said motions.

New Orleans, Louisiana, this __18th__ day of _____, 2002

_____
IVAN L R  LEMELLE
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
OFFICE OF THE CLERK

LORETTA G  WHYTE                                        500 CAMP ST., ROOM C-151
    CLERK                                              NEW ORLEANS, LA  70130

                            January 29, 2002

Clerk
Civil District Court
Parish of Orleans
421 Loyola Avenue
New Orleans, LA 70112

                            RE.  Mosley
                                      v
                                 Bayer Corporation

                            Civil Action No. 2 01-cv-03479
                            Section B (4)
                            Your No. 2001-17315-N

Dear Sir

        I am enclosing herewith a certified copy of an order entered by

this court on January 29, 2002 remanding the above-entitled case to

your court

                            Very truly yours,

                            LORETTA G. WHYTE, CLERK

                            By. _____
                                    Deputy Clerk

Enclosure

FILED
U.S. DISTRICT COURT
EASTERN DIST. OF L.

2002 MAR -5 A 8 43

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MODESTA ST AMANT, *ET AL*                          CIVIL ACTION

VERSUS                                             NO  01-3421

BAYER CORPORATION, *ET AL*                         SECTION "S" (5)

### ORDER AND REASONS

Before the court are plaintiffs Modesta and Geraldine St Amants' motion to remand
(Document 9), defendant Bayer Corporation's motion for temporary stay (Document 12), Bayer's
motion for reconsideration of the order staying transfer of the case (Document 14), and Bayer's
motion to dismiss (Document 4)  IT IS HEREBY ORDERED that plaintiffs' motion to remand
is GRANTED.

A    Factual background

The St Amants filed suit in the Civil District Court for the Parish of Orleans on October
22, 2001  They alleged that Modesta St Amant had sustained personal injuries as a result of his
use of the over-the-counter medication Alka Seltzer Plus, which contained the ingredient
Phenylpropanolamine (PPA)  The St Amants named as defendants Bayer and Miles, Inc , who
allegedly designed, manufactured, marketed, and distributed Alka Seltzer Plus  They also named

1

DATE OF ENTRY
MAR 0 5 2002



EXHIBIT
D

Walgreen Louisiana Co , Inc , alleging that it "is engaged in the business of distributing over-the-counter medications known as Alka Seltzer Plus products used for cold symptoms " *See* plaintiffs' Petition for Damages at ¶ 8

The St Amants' Petition alleges that defendants are liable to them under the Louisiana Products Liability Act (LPLA), in negligence, and as a result of their fraud and misrepresentation They contend that defendants "knew or should have known" that PPA "could cause severe and life-threatening complications and side effects including but not limited to stroke, atrial arrhythmia, vasospasms, and severe elevation of blood pressure " *Id* at ¶ 14  The St Amants further contend that defendants "failed to warn" them of the hazards of PPA, or "concealed [their] knowledge of these hazards" from them  *Id* at ¶ 15  The St Amants specifically alleged a cause of action in redhibition against defendants under La Civ Code art 2520 *et seq* , claiming that defendants were liable for selling a product warranted as safe and effective when it was not reasonably fit for its intended use  *Id* at ¶ 32  The St Amants prayed for punitive damages, compensatory damages, attorney's fees, and "such other relief as provided for in Louisiana civil code Article 2545     " *Id* at prayer, ¶ C

Defendants removed the suit, basing federal jurisdiction on diversity under 28 U S C § 1332  Defendants averred that each of them with the exception of Walgreen is completely diverse in citizenship from the plaintiffs, and that Walgreen was fraudulently joined  Although a conditional transfer order has been issued by the Judicial Panel on Multidistrict Litigation (CTO - 6), plaintiffs have opposed the transfer  On December 12, 2001, the court granted plaintiffs' motion to stay transfer of this case pending a hearing on their motion to remand, which was held on January 16, 2002  Additionally, defendants have moved to stay any ruling on plaintiffs' remand

2

motion pending the decision by the Panel on whether this matter should be transferred

B.    Analysis.

1    Defendants' motion to stay

Defendants argue that the court should decline to rule on plaintiffs' remand motion until the Judicial Panel on Multidistrict Litigation renders a decision on whether this case should be transferred to the multidistrict litigation pending in the United States District Court for the Western District of Washington    The court finds that judicial economy is best served in this case by resolving the jurisdictional issue immediately    If federal jurisdiction does not exist, this case should be remanded without the need for further federal proceedings    Consequently, the court denies defendants' motion to stay

2.    Plaintiffs' motion to remand

The general removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be removed    28 U S C § 1441(a)    Defendants contend that this action falls within the scope of the diversity statute, which requires complete diversity of citizenship between the parties and an amount in controversy in excess of $75,000, exclusive of interest and costs    28 U S C § 1332(a)    The parties do not dispute that the amount in controversy exceeds the jurisdictional minimum [1]    Plaint ffs' remand motion argues only that complete diversity does not exist because they named Walgreen as a defendant    Like plaintiffs, Walgreen is a citizen of Louisiana    Defendants argue that Walgreen has been fraudulently joined, and that its presence as a nominal defendant should

---

[1]    Plaintiffs' Petition alleges that Modesta St Amant sustained "severe, permanent, and disabling injuries to mind and body," including a hemorrhagic stroke and paralysis    See Petition at ¶¶ 5 and 36    Plaintiffs have also requested punitive damages

3

not destroy diversity

The test for fraudulent joinder is well established  The "burden of persuasion placed upon
those who cry 'fraudulent joinder' is indeed a heavy one "  *Hart v  Bayer Corp* , 199 F 3d 239,
246 (5th Cir  2000) (*quoting B , Inc. v  Miller Brewing Co* , 563 F 2d 545, 549 (5th Cir  1981))
"To establish fraudulent joinder, the party crying foul must show there is no reasonable probability
of recovery against the joined party or that there has been outright fraud in the pleadings of
jurisdictional facts "  *Delgado v  Shell Oil Co* , 231 F 3d 165, 179 (5th Cir  2000), *cert  denied,*
532 U S  972, 121 S  Ct  1603, 149 L Ed 2d 470 (2001)

The St  Amants argue that they have a valid redhibition claim against Walgreen  Chapter
III, Title 9 of the Louisiana Civil Code provides the purchaser of a product with a cause of action
in redhibition  Article 2520 provides generally that "A defect is redhibitory when it renders the
thing useless, or its use so inconvenient that it must be presumed that a buyer would not have
bought the thing had he known of the defect  The existence of such a defect gives a buyer the
right to obtain rescission of the sale "  The Civil Code provides different remedies depending on
whether the seller knows of the defect  If the seller "knew not of the defect," he "is only bound to
repair, remedy, or correct the defect," and if he cannot do so, he must "return the price to the
buyer with interest from the time it was paid," and "reimburse him for the reasonable expenses
occasioned by the sale  " La  Civ  Code art  2531  If the seller "knows that the thing he sells
has a defect but omits to declare it," the seller "is liable to the buyer for the return of the price
with interest from the time it was paid, for the reimbursement of the reasonable expenses
occasioned by the sale and those incurred for the preservation of the thing, and also for damages
and reasonable attorney fees "  *Id*  at art  2545

4

In this case, plaintiffs invoked La Civ Code art 2545 in their Petition, and alleged that all defendants "knew or should have known" of the hazards of PPA yet did not disclose them Plaintiffs' Petition does not present any specific facts demonstrating that Walgreen knew of the dangers of PPA In *Strickland v Brown Morris Pharmacy*, No 96-815, 1996 WL 537736 (E D La Sept 20, 1996), the court found that similar conclusory allegations about a defendant pharmacy's knowledge of the dangers of Primatine Mist could not support a bad-faith redhibition claim against the pharmacy under La Civ Code art 2545

> There are no facts asserted which would support a finding that Brown Morris [Pharmacy]
> either manufactured the product in question or knew or should have known that use of
> Primatine Mist by Mr Strickland would cause the harm which occurred Moreover, no
> facts have been avowed which would go to show that Brown Morris knew or should have
> known that Primatine Mist was an unsafe product in its normal and intended use All the
> plaintiff has done in her petition is make conclusory allegations or legal conclusions put
> forward as factual findings which do not go toward establishing a cause of action

*Id* at *2

Plaintiffs have not adequately pleaded facts giving rise to a bad faith cause of action in redhibition under La Civ Code art 2545 The issue before the court, then, is whether plaintiffs state a claim in redhibition against Walgreen as a good-faith seller Under the clear terms of La Civ Code art 2531, relief against a good-faith seller includes recovery of the price plaintiffs paid for Alka Seltzer Plus with interest, plus any reasonable expenses occasioned by the sale Thus, there is a reasonable possibility that plaintiffs may successfully prosecute a cause of action against Walgreen under state law, and Walgreen was not fraudulently joined *See Kientz v Bohn Brothers Toyota*, No 00-3101, 2000 WL 1808496, at *2 (E D La Dec 8, 2000) (denying remand because plaintiffs asserted a viable claim under La Civ Code art 2531 against nondiverse automobile seller), *Scott v American Tobacco Co* , 959 F Supp 340, 343-44 (E D La 1996)

5

(denying remand because plaintiffs asserted a viable claim under La Civ Code Art 2531 against nondiverse distributors of cigarettes, who were not therefore fraudulently joined)

C      Conclusions

Judicial economy is best served in this case by resolving the jurisdictional issue immediately   Walgreen was fraudulently joined only if defendants demonstrate that plaintiffs have no reasonable possibility of recovering against it   The court finds that there is a reasonable possibility that plaintiffs can recover under La Civ Code art 2531 against Walgreen as a good faith seller   Because Walgreen was not fraudulently joined, diversity jurisdiction is not present in this case

New Orleans, Louisiana, this _____ day of March, 2002

Mary Ann Vial Lemmon
United States District Judge

6

MINUTE ENTRY
BARBIER, J
APRIL 2, 2002

FILED
US DISTRICT COURT
DISTRICT OF LA

2002 APR -3 P 3 20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA LORETTA G WHYTE
CLERK

JAQUELINE COLEMAN

VERSUS

BAYER CORP , ET AL

CIVIL ACTION

NO  02-333

SECTION "J"(3)

        Before the Court is a Motion to Remand and Request for Costs

and Expenses Pursuant to 28 U.S.C § 1447 (Rec  Doc  16) filed by

plaintiff Jacqueline Coleman    The Court granted Plaintiff's

request to hear the motion on an expedited basis   The motion  is

before the Court on briefs without oral argument and is opposed by

Bayer Corporation ("Bayer") and American Home Products Corporation,

or behalf of itself and its unincorporated division, Wyeth Consumer

Healthcare,  f/k/a  Whitehall-Robins  Healthcare  (collectively

"Wyeth")   Having considered the various memoranda filed by both

sides and the applicable law, the Court concludes, for the reasons

that follow, that Plaintiff's motion should be GRANTED

                        BACKGROUND

        On November 8, 2001, Jacqueline Coleman, a Louisiana citizen,

DATE OF ENTRY
APR - 4 2002

- 1 -

free
Process
X Dktd
CtRmDep
Doc.No



filed suit in the 24th Judicial District for the Parish of Jefferson, Louisiana seeking damages for heart failure she alleges resulted from her taking over-the-counter medications containing phenylpropanolamine ("PPA") She brought suit against seven drug manufacturers and distributors whose products contained PPA and two businesses from which she purchased the medication, including Walgreen Louisiana Co , Inc (d/b/a "Walgreens") Plaintiff sued Walgreens, a Louisiana citizen, in its capacity as a retailer

Defendants Bayer, Novartis Pharmaceuticals, and Wyeth removed Coleman's action to this Court pursuant to 28 U S C § 1441, claiming that Plaintiff fraudulently joined Walgreens as a defendant in this action for the sole purpose of preventing removal based on diversity of citizenship Defendants argue that Plaintiff fails to state a cause of action against Walgreens because no duty exists under Louisiana law that requires a pharmacy to advise or warn consumers of the adverse effects of a particular drug Defendants further assert that Plaintiff does not have a reasonable basis to state a claim against Walgreens for a breach of warranty against redhibitory defects, because she cannot establish that Walgreens had knowledge of the alleged dangers of PPA.

Plaintiff asserts that she has stated several viable claims under Louisiana law against Walgreens, not as a pharmacy but as a

- 2 -

seller/retailer, and moves the Court to remand the action to the
24th Judicial District for the Parish of Jefferson, Louisiana

## DISCUSSION

To prove fraudulent joinder, the removing party has the
substantial burden of proving "'that there is absolutely no
possibility that the plaintiff will be able to establish a cause of
action against the in-state defendant in state court, or that there
has been outright fraud in the plaintiff's pleading of
jurisdictional facts '" Cavallini v State Farm Mut Auto Ins Co,
44 F 3d 256, 259 (5th Cir 1995) (quoting Green v Amerada Hess
Corp, 707 F 2d 201, 205 (5th Cir 1983))    The Fifth Circuit has
further held that

> if there is even a possibility that a state court would
> find a cause of action stated against any one of the
> named in-state defendants on the facts alleged by the
> plaintiff, then the federal court must find that the
> in-state defendant(s) have been properly joined, that
> there is incomplete diversity, and that the case must be
> remanded to the state courts

B, Inc v Miller Brewing Co, 663 F 2d 545, 550 (5th Cir 1981)

Accordingly, the Fifth Circuit requires that a district court
confronted with a claim of fraudulent joinder must "'evaluate all
of the factual allegations in the plaintiff's state court pleading
in the light most favorable to the plaintiff, resolving all
contested issues of substantive fact in favor of the plaintiff' and

- 3 -

'then examine relevant state law and resolve all uncertainties in favor of the nonremoving party '" Cavallini, 44 F 3d at 259

Plaintiff asserts that she has stated valid claims against Walgreens for (1) breach of the warranty against redhibitory defects, (2) failure to deliver a product of the kind specified by the seller, (3) failure to sell a product fit for its ordinary usage, (4) negligence, (5) intentional and willful conspiracy, (6) fraud and misrepresentation, and (7) negligent and reckless misrepresentation   In support of her claims, Plaintiff alleges that all of the defendants, including Walgreens, knew or should have known of the unreasonable dangerous side-effects of consuming products with PPA, prior to the Yale study being released and the FDA order to discontinue the manufacture of products containing PPA   Plaintiff argues that all the defendants knew or should have known of other studies, regulatory actions, incidences of injury and/or death, concerns about safety among scientists and other professionals, meetings among pharmaceutical industry officers and employees, the desire of certain defendants to stop or delay regulatory action, and the contents of many of the defendants' own files, plans, and reports regarding the adverse health risks of PPA

In order to remand this matter, the Court need only find that

- 4 -

there is a possibility of recovery under one of the stated causes
of action, not that Plaintiff may prevail against Walgreens on all
of her claims.  See B___ Inc v. Miller Brewing Co., 663 F 2d 545,
550 (5th Cir 1981)  The Court does not 'decide whether the
plaintiff will actually or even probably prevail on the merits, but
look only for a possibility that (s)he may do so."  Dodson v
Spiliada Maritime Corp., 951 F 2d 40, 43 (5th Cir 1992) (citing
Green v. Amerada Hess Corp., 707 F 2d 201 (5th Cir 1983))

     Under Louisiana law, to determine whether a plaintiff has
stated a cause of action, the Court asks "whether the law extends
a remedy to anyone under the factual allegations of the petition ",
Louisiana Paddlewheels v Louisiana Riverboat Gaming Comm'n,
94-2015, p 4 (La 11/30/94), 646 So 2d 885, 888, n 3
Accordingly, the question to be answered is, whether in the light
most favorable to plaintiff, the petition states any valid cause of
action for relief  City of New Orleans v Board of Commissioners
of Orleans Levee District, 93-069 (La 7/5/94), 640 So 2d 237, 253

     Redhibition is the avoidance of a sale on account of some vice
or defect in the thing sold, which renders it either absolutely
useless, or its use so inconvenient and imperfect, that it must be
supposed that the buyer would not have purchased it, had he known
of the vice  La Civ Code art 2520  Redhibition claims are

- 5 -

classified as either "good faith" or "bad faith," depending on
whether the seller knew of the defects in the product sold    A
seller is in bad faith when he knew of the vice of the thing he
sold but failed to declare it    See Associates Financial Services
Co., Inc. v. Ryan, 382 So 2d 215, 220 (La App  3d Cir  1980)

In the instant action, Plaintiff alleges that Walgreens was
such a bad faith seller    Plaintiff asserts that Walgreens not only
was aware of the adverse health risks posed by PPA-containing
products prior to the Yale study that was released in 2000, but
also conspired with the other defendants to conceal that such
products were unsafe for human consumption    Furthermore, Plaintiff
specifically alleges that all of the defendants, Walgreens
included, were aware, or should have been aware, that PPA was
unsafe, through studies performed prior to the Yale study, concerns
among the industry of the dangerous side effects of PPA, and case
reports involving PPA

Plaintiff in the instant case has specifically alleged that
Walgreens had knowledge of the dangerous side effects of PPA and
has stated facts, which if accepted as true for the purposes of
this motion, give rise to a viable cause of action in redhibition [1]

---

[1] This does not mean that the Court concludes that Plaintiff
has not also stated other causes of action under Louisiana law

Accordingly,

IT IS ORDERED that Plaintiff Jacqueline Coleman's Motion to Remand (Rec. Doc. 16) should be and is hereby GRANTED and the action is hereby REMANDED to the 24th Judicial District for the Parish of Jefferson, Louisiana

IT IS FURTHER ORDERED that Plaintiff's request for costs and expenses is DENIED. Each side is to bear its own costs related to this matter

\* \* \* \* \* \* \* \*

---

Rather, as discussed above, for purposes of this remand, the Court need only find that Plaintiff could possibly recover on one cause of action

- 7 -





CASE.      2:02-cv-02436/P
DOCUMENT: 14
DATE·      09/09/02

CLERK:    tbl

*** There will be no noticing for this document.***

Document scanned by: _____



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP -5 PM 1:06

LORETTA G WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO 02-CV-2436 |
| VERSUS | * | |
| | * | JUDGE ENGELHARDT |
| BAYER CORPORATION, NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION, | * | MAGISTRATE JUDGE SHUSHAN |
| NOVARTIS CONSUMER HEALTH, INC , | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE, SMOOTHIE KING | * | |
| CO , INC , SMOOTHIE KING SYSTEMS, | * | |
| INC ; and WALGREEN LOUISIANA CO , | * | |
| INC (D/B/A "WALGREENS") | | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## CROSS-NOTICE OF VIDEOTAPED DEPOSITION OF BILL VANDERHAAR

PLEASE TAKE NOTICE that Plaintiffs will take the deposition upon oral examination

of Mr Bill VanderHaar, now or formerly an employee of Bayer Corporation, on October 14,

2002, at the law office of McElroy, Deutsch & Mulvaney, 1300 Mt Kemble Avenue,

Morristown, NJ (973-993-8100, www mdmlaw com), beginning at 9 00 a m and continuing

until completed

Fee _____
X Process _____
Dkt _____
_____
//

575868_1 DOC

The deposition will be conducted pursuant to the provisions of Case Management Order No 1,[1] will be stenographically recorded by the court reporting firm of Tate & Tate, 180 Tuckerton Road, Suite 5, Medford, NJ 08055 and will be videotaped by Lawyers' Video Service, Inc , 33 Rock Hill Road, Bala Cynwyd, PA 19004 The examination will also be videotaped by Veritext, 25B Vreeland Road, Florham Park, NJ 07932, which will have a video camera trained on the questioner during the examination Michelle Parfitt and/or Steven Rotman will represent plaintiffs

You are at liberty to appear and examine the witness

DATED this _____ day of September, 2002

Respectfully submitted,

Mary L Meyer, Esq (19966)
John F Olinde (1515)
Charles P Blanchard (18798)
**CHAFFE, MCCALL, PHILLIPS,**
 **TOLER & SARPY, L.L.P.**
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2300
Telephone (504) 585-7000
**Attorneys for Bayer Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this _____ day of September, 2002, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by hand delivery, facsimile, or by depositing the same in the United States mail, properly addressed, and first-class postage prepaid

---

[1] A copy of the Case Management Order No 1 is attached to a prior Cross-Notice of Deposition filed in this case




FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP -5 PM 1:06

LORETTA G WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO 02-CV-2436 |
| VERSUS | * | |
| | * | JUDGE ENGELHARDT |
| BAYER CORPORATION, NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION, | * | MAGISTRATE JUDGE SHUSHAN |
| NOVARTIS CONSUMER HEALTH, INC, | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE, SMOOTHIE KING | * | |
| CO, INC, SMOOTHIE KING SYSTEMS, | * | |
| INC, and WALGREEN LOUISIANA CO, | * | |
| INC (D/B/A "WALGREENS") | | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## CROSS-NOTICE OF
## VIDEOTAPED DEPOSITION OF CRAIG HAMMES

PLEASE TAKE NOTICE that Plaintiffs will take the deposition upon oral examination

of Mr. Craig Hammes, now or formerly an employee of Bayer Corporation, on October 7, 2002,

at the law office of Eckert, Seamans, Cherin & Mellott, 1515 Market Street, Philadelphia, PA

(215-851-8400, www escm com), beginning at 9 00 a m and continuing until completed

Fee _____
Process _____
X Dktd _____
___ CtRmDep _____
Doc. No _____

575867_1 DOC

The deposition will be conducted pursuant to the provisions of Case Management Order No 1,[1] will be stenographically recorded by the court reporting firm of Tate & Tate, 180 Tuckerton Road, Suite 5, Medford, NJ 08055 and will be videotaped by Lawyers' Video Service, Inc, 33 Rock Hill Road, Bala Cynwyd, PA 19004 The examination will also be videotaped by Veritext, 25B Vreeland Road, Florham Park, NJ 07932, which will have a video camera trained on the questioner during the examination Ted Carey and/or David Suggs will represent plaintiffs

You are at liberty to appear and examine the witness

DATED this ____ day of September, 2002

Respectfully submitted,

_____

Mary L Meyer, Esq (19966)
John F Olinde (1515)
Charles P Blanchard (18798)
**CHAFFE, MCCALL, PHILLIPS,**
     **TOLER & SARPY, L.L.P.**
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2300
Telephone (504) 585-7000
**Attorneys for Bayer Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this ____ day of September, 2002, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by hand delivery, facsimile, or by depositing the same in the United States mail, properly addressed, and first-class postage prepaid

_____

---

[1] A copy of the Case Management Order No 1 is attached to a prior Cross-Notice of Deposition filed in this case



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP -5 PM 1:06

LORETTA G WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO 02-CV-2436 |
| VERSUS | * | |
| | * | JUDGE ENGELHARDT |
| BAYER CORPORATION, NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION, | * | MAGISTRATE JUDGE SHUSHAN |
| NOVARTIS CONSUMER HEALTH, INC , | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE, SMOOTHIE KING | * | |
| CO , INC , SMOOTHIE KING SYSTEMS, | * | |
| INC , and WALGREEN LOUISIANA CO , | * | |
| INC (D/B/A "WALGREENS") | | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## **CROSS-NOTICE OF VIDEOTAPED DEPOSITION OF TERRY GLASS**

PLEASE TAKE NOTICE that Plaintiffs will take the deposition upon oral examination

of Terry Glass, now or formerly an employee of Bayer Corporation, on September 23, 2002, at

the law offices of McElroy, Deutsch & Mulvaney, 1300 Mt Kemble Avenue, Morristown, New

Jersey, (973-993-8100,  www mdmlaw com), beginning at 9 00 a m  and continuing until

completed

The deposition will be conducted pursuant to the provisions of Case Management Order No 1,[1] will be stenographically recorded by the court reporting firm of Tate & Tate, 180 Tuckerton Road, Suite 5, Medford, NJ  08055 and will be videotaped by Lawyers' Video Service, Inc , 33 Rock Hill Road, Bala Cynwyd, PA  19004   The examination will also be videotaped by Veritext, 25B Vreeland Road, Florham Park, NJ  07932, which will have a video camera trained on the questioner during the examination   Ted Carey and/or David Suggs will represent plaintiffs

You are at liberty to appear and examine the witness

DATED this _____ day of September, 2002

Respectfully submitted,

_____

Mary L  Meyer, Esq  (19966)
John F  Olinde (1515)
Charles P  Blanchard (18798)
**CHAFFE, MCCALL, PHILLIPS,**
   **TOLER & SARPY, L.L.P.**
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2300
Telephone  (504) 585-7000
**Attorneys for Bayer Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this _____ day of September, 2002, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by hand delivery, facsimile, or by depositing the same in the United States mail, properly addressed, and first-class postage prepaid

_____

---

[1] A copy of the Case Management Order No  1 is attached as Exhibit A


Western District of Washington U.S.D C.

# Case Management Orders

EXHIBIT

_A_

Subject:
**Case Management Order No. 1**

Date of Order:
01/29/2002

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY
LITIGATION This document relates to all actions MDL Docket
No. 1407 CASE MANAGEMENT ORDER NO. 1

**I. INTRODUCTION**

On November 16, 2001, an initial conference was held in order
to address issues dealing with the structure and purposes of
the leadership of plaintiffs and defendants in this multi-
district litigation. During the course of that conference,
various issues relating to discovery, experts, use of
technology, class actions, and federal-state coordination
were also discussed.

At the conclusion of the conference, the Court directed the
parties to submit an agreed upon Case Management Order No. 1,
to the extent possible, addressing a fact discovery schedule,
deposition and document production procedures, expert
disclosure and discovery, and any other matters felt
necessary to promote the efficient and timely progress of
this litigation.

By order dated November 21, 2001, this Court appointed Lead
and Liaison Counsel for plaintiffs and defendants. The Court
had previously indicated that Lead Counsel for each side,
because of their knowledge of the skills, experience and
compatibility of counsel involved in this litigation, should
propose for Court approval the names of counsel to serve on
various Committees. Those proposals have been made and the
Court has acted thereon. The Court also requested the
submission no later than December 14, 2001, of a Joint
Proposed Case Management Order No. 1, to address the issues
discussed during the initial conference, and any other
topics.

The parties have now submitted a proposed Case Management
Order No. 1, together with opposing submittals regarding
various aspects of CMO No. 1 about which the parties
disagree. After review and consideration of the parties'
submissions, the Court hereby orders as follows:

**II. STAY OF PROCEEDINGS IN CASES TRANSFERRED TO MDL 1407**

All proceedings in any case transferred to MDL 1407, now or
in the future, are stayed except as to the specific
proceedings outlined in this Order, any pending motions to

remand presently before this Court, or in any subsequent
order of the Court. All prior written discovery to which
responses have not yet been served is deemed withdrawn. All
dates on which responsive pleadings are due are hereby stayed
until further notice, and all scheduling orders are hereby
vacated. Nothing herein shall extend or modify the time
permitted for removal of any case to federal court, nor shall
any portion of this Order be deemed to apply to any case or
matter now or hereafter pending in any state court unless
that state court so orders.

**III. STATUS CONFERENCES, MOTIONS, PLEADINGS AND SERVICE**
**A. Status Conferences.** Status Conferences shall be regularly
scheduled by the Court to permit substantial advance notice
to all parties. Except as otherwise provided herein, and to
accommodate the schedules of the Court and parties, oral
argument or hearings on any motion will be scheduled to
coincide with calendared Status Conferences. Counsel may
attend and participate in Status Conferences, oral arguments
and hearings by telephone at the Court's discretion by prior
arrangement with the Court's chambers. Any hearing or oral
argument deemed necessary by the Court on motions that
require a ruling on an expedited basis will be scheduled to
permit notice of at least two (2) business days. If
circumstances warrant, the Court may shorten the notice
period.

**B. Motions.** Motion practice shall be governed by applicable
Federal and Local Rules except as otherwise provided herein
or in any subsequent Case Management Order. Absent an Order
of the Court, briefs in response to all motions shall be
filed twenty-one (21) days after the date of service. Reply
memoranda shall be filed within seven (7) days after service
of the response. Oral argument or hearing on a motion will be
scheduled to coincide with the first regularly scheduled
Status Conference occurring after seven (7) days from the
scheduled date, as extended by the Court, for the filing of
Reply memoranda.

**C. Notice to Parties by the Court.** Notice by the Court to
Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel
of any matter, ruling, order, schedule or court hearing
relating to all actions, shall be considered by the Court to
be Notice to all parties in MDL 1407. Notice by the Court of
any matter, ruling, order, schedule of court hearing relating
only to individual actions shall be given to counsel of
record for that action, Plaintiffs' Liaison Counsel and
Defendants' Liaison Counsel.

**D. Service of Pleadings, Motions and Other Documents.** Lead
Counsel and any party filing with the Court a pleading,
motion, or other document relating to all actions shall
provide one (1) copy to Plaintiffs' Liaison Counsel, one (1)
copy to Defendants' Liaison Counsel, and one (1) copy to
opposing Lead Counsel by overnight mail or hand delivery. In
addition, an electronic version of any document filed shall
be provided at the time of service to the respective Liaison
Counsel by electronic mail, on a floppy disk, or on CD-ROM in
either WordPerfect or Microsoft Word format. If any document
filed is comprised of or contains a paper copy of an
electronic image of said document, the electronic image of
said document(s) shall be similarly served. Service on

Plaintiffs' and Defendants' Liaison Counsel constitutes
service on all plaintiffs' counsel and all defendants'
counsel, respectively. Service and distribution by Liaison
Counsel to other attorneys of record may be made via U.S.
Mail and either e-mail, overnight courier service or
facsimile transmission, reserving to any counsel of record
the right to waive, in writing, all or any aspect of said
service.

**E. Communication with the Court.** All communications with the
Court should be through Lead or Liaison Counsel.
Correspondence from individual plaintiff or defense counsel
directly to the Court is strongly discouraged except when
requested or the circumstances require direct contact. In any
event, a copy of any such correspondence must be
simultaneously served on Liaison Counsel.

**IV. STATEMENT OF ISSUES**

No later than 5 days prior to the next status conference,
Lead Counsel for Plaintiffs and Defendants shall submit
separate reports to the Court identifying and describing the
legal and factual issues they believe will need to be
addressed in these MDL proceedings. The reports by Lead
Counsel shall not exceed 24 pages in length.

**V. FACT DISCOVERY OF DEFENDANTS**

Discovery as to defendants shall be governed by applicable
Federal Rules of Civil Procedure and Local Rules except as
otherwise provided herein or in any subsequent Case
Management Order. Fact discovery has begun against certain,
but not all defendants, in various state court proceedings.
This Court has taken into consideration the present status
and progress of discovery against various groups of
defendants in fashioning a discovery schedule that will aid
in fostering state and federal court coordination of PPA
cases, and completing the tasks undertaken in this MDL 1407
with reasonable dispatch in keeping with the needs and
expectations of litigants.

**A. Completion of Fact Discovery.** Fact discovery of all
defendants, as divided into three distinct groups, shall be
completed as follows:

**(1) Group I Defendants.** Group I Defendants are American Home
Products Corporation, Novartis Consumer Health Inc., Bayer
Corporation, SmithKline Beecham, Perrigo, and Chattem, and
any related entities. Fact discovery as to Group I Defendants
shall be completed on or before December 31, 2002.

**(2) Group II Defendants.** Group II Defendants are those
defendants presently named in any case now docketed in this
MDL 1407 not designated as Group I Defendants, such as
Schering-Plough and Thompson/Delaco. Fact discovery as to
Group II Defendants shall be completed on or before February
28, 2003.

**(3) Group III Defendants.** Group III Defendants are those
defendants who are named in any action transferred to this
MDL 1407 after the date of this Order. Fact discovery as to
each such defendant shall be completed on or before 15 months
following the first day of the month following the docketing
of the first action naming said defendant in this MDL 1407.

**B. Discovery Disputes.** All disputes regarding the scope or
conduct of fact discovery shall be resolved pursuant to the

standards and procedures set forth in the Federal Rules of
Civil Procedure as augmented by the Local Rules of this
District, except as otherwise provided herein.
C. **Confidentiality of Produced Materials or Deposition
Testimony.** The Court has entered *Case Management Order No. 2
(Confidentiality of Material Produced and Testimony Relating
Thereto)* pursuant to the joint submittal of same by the
parties.

### D. Preservation of Documents

The Court will enter *Case Management Order No. 3
(Preservation of Documents)* following the submittal of the
positions of the parties regarding the content thereof.
### E. Production of Documents

**(1) Master Request For Production of Documents.** Document
production by most Group I Defendants is and has been ongoing
in several state and federal court cases, all in response to
virtually identical requests for production propounded by
many of the plaintiffs' counsel named as members of the
Plaintiffs' Steering Committee or Discovery Committee.
Attached at Tab A is the *Master Requests For Production of
Documents Addressed To All Defendants* ("Master Requests For
Production") which incorporates the requests previously made
and responded to by Group I Defendants and is hereby deemed
served on all defendants named in any action transferred to
this MDL 1407. In the absence of an agreement or further
order of the Court, no further document requests may be
propounded to the Defendants without leave of Court.
**(2) Prior Production and Responses to Requests to Produce.** To
the extent that any Group I Defendant has produced documents
in response to requests for production also contained in the
Master Requests for Production, that production is hereby
deemed to be production to the same requests contained in the
Master Requests for Production. Similarly, to the extent that
any Group I Defendant has responded to requests to produce
also contained in the Master Requests for Production, those
responses are hereby deemed to have been made to the same
requests contained in the Master Requests for Production. All
objections to production requests raised in a response made
by any Group I Defendant are preserved to the extent existing
as of the date hereof, and all rights held by plaintiff(s) to
contest any objections made are similarly preserved and
intact.

#### (3) Document Production Deadlines.

**(a) Group I Defendants.** Each Group I Defendant shall produce
all documents maintained in hard copy responsive to the
Master Requests for Production on or before February 28,
2002, except for those documents withheld pursuant to an
assertion of privilege, work product or objection. Group I
Defendants shall produce all documents maintained in
electronic format responsive to the Master Requests for
Production on or before March 30, 2002, except for those
documents withheld pursuant to an assertion of privilege,
work product or objection. The parties shall meet and confer
as soon as practicable to resolve disputes concerning
withheld documents. Motions to compel should only be filed on

those issues that cannot in good faith be resolved. The Court expects that document production will be completed by the deadlines above, and that no further extensions will be necessary.

(b) **Group II Defendants.** Each Group II Defendant shall respond to the Master Request for Documents no later than February 28, 2002 and produce all documents maintained in hard copy responsive to the Master Requests for Production no later than March 30, 2002, except for those documents withheld pursuant to an assertion of privilege, work product or objection . Group II Defendants shall produce all documents maintained in electronic format responsive to the Master Requests for Production on or before March 30, 2002, except for those documents withheld pursuant to an assertion of privilege, work product or objection. The parties shall meet and confer as soon as practicable to resolve disputes concerning withheld documents. Motions to compel should only be filed on those issues that cannot in good faith be resolved. The Court expects that document production will be completed by the deadlines above, and that no further extensions will be necessary.

(c) **Group III Defendants.** Each Group III Defendant shall respond to the Master Request for Documents within sixty (60) days of the transfer to this MDL 1407 of the first action in which it is named and produce all documents responsive to the Master Requests For Production on a rolling basis within one hundred twenty (120) days thereafter, except for those documents withheld under an assertion of privilege or protection, or where an objection has been asserted. The parties shall meet and confer as soon as practicable to resolve disputes concerning withheld documents. Motions to compel should only be filed on those issues that cannot in good faith be resolved.

(4) **Manner of Production.** With respect to all responsive documents or materials kept or maintained in either tangible form or in any electronic form, all defendants shall produce those documents or materials in "hard" copy, with appropriate identifying Bates numbering or labeling which shall include an alpha prefix identifying the defendant producing same. However, this provision shall not prohibit or otherwise impact any subsequent motion by plaintiffs to seek the production from any defendant of all responsive documents or materials kept or maintained in electronic form in the same format as they are kept or maintained. All defendants shall, to the extent reasonably possible, produce on a "rolling" basis, such that documents or materials should be made available for production and produced at regular intervals rather than accumulated with all other documents for production at the end of the document production period permitted herein. Each copy of a document shall convey the exact information and appearance of the original document unless redacted pursuant to a stated objection or privilege, in which event the fact that a redaction has been made shall be made apparent on the face of the document produced. If color is material to appreciating or comprehending the content of a document, parties shall honor reasonable requests for either the production of an original document for inspection and copying or production of a color image of

the document. Similarly, the parties shall comply with all reasonable requests for inspection and copying of an original document for all copies deemed unreadable or illegible, in whole or in part. The reasonable reproduction costs incurred by defendants of providing "hard" copies shall be borne by plaintiffs pursuant to applicable Federal and Local Rules.

**(5) Document Images and Objective Databases.** If a defendant chooses or has chosen to create electronic images of documents or materials produced in "hard" copy, duplicates of said images shall be produced to plaintiffs on CD-ROM disks on or before that defendant's document production deadline. The electronic images produced shall be in the same electronic format as utilized by defendant in creating and maintaining the electronic images. Provided, however, that should a defendant choose to create electronic images of only a select group of documents, such that the selection reflects the work product of its attorneys in conjunction with this litigation, then production shall not be required. The reasonable reproduction costs incurred by defendants of providing copies of CD-ROM disks containing images of documents produced shall be borne by plaintiffs pursuant to applicable Federal and Local Rules.

Any defendant that has created an objective database of documents produced in response to production requests of plaintiffs shall produce that database to plaintiffs. Provided, however, that should a defendant choose to create an objective database of only a select group of documents produced, such that the selection reflects the work product of its attorneys in conjunction with this litigation, then production of that database shall not be required. Defendants are permitted to redact database fields that contain subjective work product material. If a defendant seeks to withhold the database because it cannot redact the subjective materials, the defendant must first show good cause to the Court why it cannot segregate objective and subjective data. The same procedure will apply to plaintiffs' databases if sought by defendants during discovery. Plaintiffs will not be assessed costs for producing databases that defendants have prepared. However, if a defendant must incur additional costs to remove subjective material from the database, plaintiffs will bear the responsibility for those additional costs.

**(6) Document Depositories.** Lead Counsel for each side may establish a document depository for purposes it deems appropriate and necessary to accomplish their obligations to their respective constituencies in this MDL 1407. Each side shall administer and bear the costs of its own depository.

**(7) Authentication of Documents.** Pursuant to the stipulation of the parties, it is hereby ordered that the copies of all documents maintained in "hard" form produced by any defendant are deemed to be a true and accurate copy of documents in the possession and control of that defendant, except as otherwise indicated on the face of the copy produced. It is further ordered that the "hard" copies of all documents maintained in electronic form produced by any defendant are deemed to be a true and accurate representations of the data or other information maintained in electronic format by that defendant, except as otherwise indicated on the face of the "hard" copy produced.

**(8) Assertion of Privilege in Response to Production Requests.** Any party that withholds the production of requested documents or materials, regardless of the manner in which they are kept or maintained, on the ground of any privilege or application of the work-product doctrine must specify in writing, as to each document or thing not produced, the specific privilege(s) or doctrine(s) it is relying upon to withhold each document ("Privilege Log"). Each Privilege Log shall describe each document or thing to which a privilege or work product doctrine is asserted in sufficient detail to reasonably permit the party seeking discovery to assess whether or not to dispute any such assertion of privilege or application of the work product doctrine. Each party so withholding shall provide the Court and opposing Liaison Counsel a copy of the party's Privilege Log on or before thirty (30) days after the deadline for the production of "hard" copies of responsive documents or materials kept or maintained in tangible form and, with respect to responsive documents kept or maintained in electronic format, within thirty (30) days after the production deadline for "hard" copies of those documents or materials.

**F. Interrogatories.** A First Set of Interrogatories has been propounded to and answered by many Group I Defendants in several state and federal court cases. The interrogatories served have been virtually identical, and counsel serving same are included among the plaintiffs' counsel hereby named as members of the Plaintiffs' Steering Committee or Discovery Committee. Attached at Tab B is the *Master First Set of Interrogatories Addressed To All Defendants* ("Master First Set of Interrogatories") which incorporates the interrogatories previously propounded and answered by many Group I Defendants, and is hereby deemed served on all defendants named in any action transferred to this MDL 1407.

**(1) Prior Answers to Interrogatories.** To the extent that any Group I Defendant has answered interrogatories also contained in the Master First Set of Interrogatories, those answers are hereby deemed to be responses to the same interrogatories contained in the Master First Set of Interrogatories. All objections to such interrogatories raised in a response made by any Group I Defendant are preserved to the extent existing as of the date hereof, and all rights held by plaintiff(s) to contest any objections made are similarly preserved and intact.

### (2) Interrogatory Answer Deadlines for Defendants.

(a) <u>Group I Defendants</u>. Each Group I Defendant shall respond to all interrogatories contained in the Master First Set of Interrogatories no later than January 15, 2002. The parties shall meet and confer as soon as practicable to resolve disputes concerning objections thereto. Motions to compel should only be filed on those issues that cannot in good faith be resolved.

(b) <u>Group II Defendants</u>. Each Group II Defendant shall respond to all interrogatories contained in the Master First Set of Interrogatories no later than February 28, 2002. The

parties shall meet and confer as soon as practicable to
resolve disputes concerning objections thereto. Motions to
compel should only be filed on those issues that cannot in
good faith be resolved.

(c) Group III Defendants. Each Group III Defendant shall
respond to all interrogatories contained in the Master First
Set of Interrogatories within sixty (60) days of the transfer
to this MDL 1407 of the first action in which it is named.
The parties shall meet and confer as soon as practicable to
resolve disputes concerning withheld documents. Motions to
compel should only be filed on those issues that cannot in
good faith be resolved.

G. Fact Depositions. All fact depositions shall be conducted
pursuant to applicable Federal Rules of Civil Procedure and
Local Rules, and as further specified below.

(1) Deposition Notices. In addition to the information
required by applicable Rule, each deposition notice shall
include the name, if known, of the primary examiner(s)
designated by the party noticing the deposition, and the
date, time and place of the deposition. In order for counsel
to make arrangements for adequate deposition space, whenever
feasible, counsel who intend to attend a deposition noticed
in MDL 1407 should provide notice to the individual counsel
signing the Notice of Deposition. Deposition notices shall
state whether the deposition is to be videotaped and, if so,
the name, firm and address of the videotape recorders.

(2) Cross-Notices Between State Court Cases and These
Proceedings. In order to avoid duplicative discovery and to
prevent the unnecessary expenditure of judicial resources and
the resources of the parties, steps should be taken to
encourage counsel in related state court proceedings to
coordinate their depositions with MDL 1407 depositions.
Plaintiffs' Liaison Counsel shall copy all known plaintiffs'
state liaison counsel (by mail, courier, facsimile or
electronic mail) on all deposition notices filed by
plaintiffs in MDL 1407 and invite state court counsel to
cross-notice the deposition. Defendants' Liaison Counsel
shall provide Plaintiffs' Liaison Counsel and plaintiffs'
known state liaison counsel with at least thirty (30) days
notice of any cross-notice in these proceedings by defendants
of a deposition originally noticed in a state court. Any
motion to quash or stay any such cross-notice must be filed
more than ten (10) days prior to the scheduled date of the
cross-noticed deposition. The filing of any such motion will
not delay the cross-noticed deposition, unless otherwise
ordered by the Court. Absent grant of any such motion to
quash or stay, no party shall re-notice the deposition of any
witness already deposed under the terms of this Order unless
permitted by the Court for good cause shown. If a deposition
was originally noticed in this proceeding, whether or not
later cross-noticed in state court proceedings, MDL counsel
shall conduct the initial phase of the deposition. If a
deposition was originally noticed in a state court proceeding
and is later cross-noticed in this MDL proceedings, the state
court counsel shall conduct the initial phase of the
deposition. In either instance, questioning by state court
counsel will not be counted against the time permitted for
questioning pursuant to this MDL proceeding as described

below. Regardless of which counsel conducts the initial examination of the deponent, subsequent questioning shall not be redundant or repetitive, although clarification of prior testimony may be sought if reasonably calculated to elicit testimony that adds to the substance of prior testimony. Nothing in this provision shall be construed as an injunctive or equitable order affecting state court proceedings. Rather, this provision is intended to reflect this Court's desire for voluntary state-federal coordination.

(3) **Number of Depositions, Former Employees.** The defendants shall make available all present employees requested by plaintiffs for deposition, subject to the defendants' right to object to the taking of any particular employee's deposition for good cause shown. Plaintiffs shall in good faith take only those depositions deemed reasonably necessary under the circumstances of this case. Each defendant shall take reasonable steps to make available requested former employees, to the extent possible. If a defendant is unable, despite its best good faith efforts, to produce former employees, then the defendant shall provide upon request the former employee's last known address and shall cooperate in any effort to obtain this Court's, or another court's assistance to compel the former employee's attendance at the deposition. Plaintiffs shall not contact former employees without permission of the former employer defendant. As to each named defendant, plaintiffs shall be limited to a total of twenty (20) depositions of identified individuals, including former employees. In addition, plaintiffs may notice up to five (5) depositions pursuant to Fed. R. Civ. P. 30(b)(6) as to each defendant regardless of the number of deponents produced by said defendant in response to each such deposition noticed, <u>provided</u> that the particular matters identified in a notice on which examination is requested do not duplicate any matters identified in connection with a prior Rule 30(b)(6) deposition of that defendant, notice of which was properly served on plaintiffs pursuant to the terms of this Order. Absent agreement by the defendant, plaintiffs may apply to the Court to conduct further depositions only upon a showing of good cause and the specific identification of the individual(s) sought to be deposed.

(4) **Scheduling.** Plaintiffs may begin depositions of fact witnesses on January 20, 2002. If a deposition occurs before document production is completed, and documents received after the deposition raise additional questions for the witness, plaintiffs may renew the deposition upon a showing of good cause. To the extent practicable, counsel shall consult with opposing counsel and, if ethically permitted, potential deponents in an effort to schedule depositions at mutually convenient times and locations. Counsel for deponents who are employees of defendants are expected to cooperate, to the extent reasonably possible, in the scheduling of depositions requested by plaintiffs. The Court will resolve any deposition scheduling issues that Lead Counsel or their designees are unable to resolve.

(5) **Length of Direct Examination in Fact Depositions.** The examination by the party noticing the deposition of a present or former employee of a defendant shall be no more than seven (7) hours of actual examination time absent agreement or

further order of this Court upon a showing of good cause. The Court expects that if a deposition requires additional time the parties will make a good faith effort to agree on an extension before coming to the Court for resolution. Direct examinations that are reasonably believed to require more than seven hours to complete shall be scheduled, to the extent possible consistent with the witness's schedule, for sufficient consecutive days for completion.

(6) **Postponements**. Once a deposition has been scheduled, it shall not be taken off calendar, postponed, rescheduled, or relocated less than five (5) calendar days in advance of the date it is scheduled to occur, except upon agreement of counsel or by leave of Court for good cause shown. Given the large number of attorneys involved in this litigation, the unavailability of counsel shall not be grounds for postponing a deposition if another attorney from the same firm who is familiar with the case or one who represents a party with similar interests is available to attend. If a motion is made to permit the rescheduling of a deposition on the grounds of unavailability of counsel, the moving party shall certify to the Court that neither an attorney from the same firm who is familiar with the case nor one who represents a party with similar interests is able to attend the scheduled deposition.

(7) **Attendance.** Unless otherwise agreed to by the parties, depositions may be attended only by one representative of each party (other than counsel for the party), the deponent, the deponent's attorney (if not counsel for a defendant), attorneys of record in MDL 1407 or state PPA related cases, court reporters, videographers, and any person who is assisting in the litigation and whose presence is reasonably required by counsel conducting or defending the deposition. Upon application, and for good cause shown, the court may permit attendance by a person who does not fall within any of the categories set forth in the previous sentence. Attendees at any deposition shall execute an acknowledgment that they are bound by the provisions of Case Management Order No. 2. If during the course of any deposition, the examination involves information or documents which any defendant claims to be confidential pursuant to Case Management Order No. 2 entered in this litigation, attendees at the deposition are limited to those permitted access to information designated confidential pursuant to that Order. Those portions of depositions deemed confidential pursuant to said Order will be treated and handled pursuant to the requirements of that Order. Unnecessary attendance by counsel at depositions is discouraged and may not be compensated in any fee application to the Court.

(8) **Production of Documents**. Witnesses subpoenaed or noticed to testify and to produce documents shall be noticed and served with the subpoena or deposition notice and document request at least thirty (30) days before the scheduled deposition. Depending upon the quantity of documents to be produced, some time may be needed for inspection of the documents before the interrogation commences. Responsive documents that are identical to those already produced to the Plaintiffs' do not have to be produced by the deponent, but the deponent bears the burden of demonstrating, if necessary, prior production.

(9) **Potential Deposition Exhibits.** Parties will disclose to the deponent's counsel at least ten (10) days before a deposition the documents they expect to use during examination. As with issues regarding the length of depositions, the Court expects that if a party fails to disclose documents, the parties will make a good faith effort to agree how to proceed with the deposition before coming to the Court for resolution.

(10) **Location of Depositions.** Unless otherwise agreed to, any deposition of:

(a) plaintiff shall take place within the federal district in which that plaintiff resides;

(b) current and former employees and officers will take place in the federal district of such employees' or officers' place of business. Defense counsel will make reasonable efforts to obtain the agreement of former employees of defendants to appear at the same location as current employees of the same defendant. Absent such agreement, that deposition will take place either within the federal district in which the former employee resides or at a location mutually agreeable to the former employee and the parties.

**H. Conduct of Depositions.**

(1) **Cooperation.** Counsel are expected to cooperate with, and be courteous to, each other and deponents during the course of any deposition. Counsel shall refrain from engaging in colloquy during depositions. There shall be no smoking or use of other tobacco products or eating in any room in which a deposition is being conducted, including before, during or after a deposition, or in the deposition room during deposition recesses. Beverages will be permitted. Counsel shall recess from time to time during the deposition for meals and to permit periods of rest or refreshment reasonably required by the deponent, stenographer(s) and/or counsel conducting or defending the deposition.

(2) **Deposition Day.** Absent agreement of the parties to the deposition, a deposition day shall be no longer than seven (7) hours of actual examination time.

(3) **Continuance of Deposition.** If a deposition is not completed by 1:00 p.m. on a Friday, the deposition will recommence on the next business day, subject to the availability of the witness. If the witness is not available for deposition on the next business day, the deposition will continue on a date to be agreed upon by counsel or, if agreement cannot be reached, a date specified in a notice of continued deposition. Where a notice of continued deposition is required, service of notice ten (10) or more days prior to the date specified for the continued deposition shall be deemed adequate notice.

(4) **Examination.** The party noticing a fact deposition shall designate no more than two attorneys to conduct the examination of the deponent. If two attorneys are designated, the examinations conducted shall not be redundant or repetitive, although clarification of prior testimony may be sought if reasonably calculated to elicit testimony that adds to the substance of prior testimony. No further examination by counsel for MDL 1407 plaintiffs shall be permitted except by agreement or good cause shown. Examination by other

parties shall be permitted, but in no event shall it exceed the limitations regarding redundancy or repetition applicable to attorneys conducting the direct examination of the deponent, all as set forth above. Only one attorney may represent the deponent at any given time.

(5) **Objections and Directions Not to Answer**. Unless otherwise agreed by the parties, and noted on the record, the following stipulations shall apply to all depositions in this action:

(a) Unless otherwise specified by any defendant, an objection by a single defendant shall be deemed an objection by all defendants. However, unless otherwise specified, an instruction not to answer by one defendant should not be deemed an instruction not to answer by all defendants.

(b) All objections are reserved until trial or other use of the deposition, except those objections regarding the form of the question or the existence of a privilege. Objecting counsel shall say simply the word "objection", and no more, to preserve all objections as to form. Only if one of the examining counsel request clarification shall the basis of the objection be stated, and then only the short title of the rule (e.g., "lack of foundation" or "calls for speculation") shall be stated by objecting counsel. If the examining attorney requests further clarification, at that attorney's request the deponent shall leave the room while the detailed nature of the objection is clarified and/or discussed.

(c) Counsel shall not direct or request that a witness refuse to answer a question, unless that counsel has objected to the question on the ground that the question seeks privileged information, information that the Court has ordered may not be discovered, or a deponent seeks to present a motion to the Court for termination of the deposition on the grounds that it is being conducted in bad faith or in such a manner as unreasonably to annoy, embarrass, or harass the party or the deponent. When a privilege is claimed, the witness shall nevertheless answer questions relevant to the existence, extent or waiver of the privilege, such as the date of a communication, who made the statement, to whom and in whose presence the statement was made, other persons to whom the contents of the statement was made, any other person to whom the contents of the statement has been disclosed, and the general subject matter of the communication.

(6) **Objections to Documents**. All objections to the admissibility of any documents used during the course of a deposition are deemed reserved until the time of trial or use in any dispositive motion. No objections to the use of any document are necessary or shall be noted on the record.

(7) **Private Consultations**. Private consultations between deponents and their attorneys during the course of examination are improper except for the purpose of determining whether a privilege should be asserted. Unless prohibited by the Court for good cause shown, such conferences may be held during normal recesses and adjournments.

(8) **Disputes During Depositions**. Disputes arising during depositions that cannot be resolved by agreement and that, if not immediately resolved, will significantly disrupt the discovery schedule or require rescheduling of the deposition, or might result in the need to conduct a supplemental

deposition, shall be presented to the Court by telephone by calling the Court's Chambers. In the event the Judge is not available, the deposition shall continue as to matters not in dispute with full reservation of rights to continue the examination objected to pending a ruling at the earliest possible time.

If the nature of the dispute would not require the continuance of the deposition pending resolution thereof, the parties may elect to either present the matter to the Court by telephone at a time when the parties and the Court are available, or to present the dispute to the Court in writing. If the parties elect to present the dispute to the Court in writing, each side must submit on one (1) page a summary of its position and any authority relevant to the dispute. The Court will issue a prompt ruling, as its schedule permits. Nothing contained herein shall prohibit examining counsel from continuing with the deposition, filing an appropriate motion with the Court at the conclusion of thereof, and appearing personally before the Court if argument is permitted by the Court and counsel deems it necessary. Disputes between the parties should be addressed to this Court rather than to the District Court in which the deposition is being conducted.

(9) **Copies of Exhibits.** A copy of any document about which examining counsel expect to question the deponent should ordinarily be provided to primary counsel for the parties and the deponent at the time presented to the deponent and his/her counsel.

(10) **Marking of Deposition Exhibits.** Any documents previously produced by defendants or third parties used as exhibits in a deposition shall be referred to by any Bates stamp number(s) appearing on the face of the documents, and a copy thereof shall be included with the original deposition transcript. Documents that do not have Bates stamped number(s) shall be separately marked with sequential exhibit numbers. For example, if the deponent's name is "John Smith", the first exhibit to his deposition that has no identifiable Bates stamp number on its face shall be marked "Smith No. 1." The same document presented as an exhibit at subsequent depositions shall continue to be referred to as originally marked, and counsel should avoid marking that document with a different exhibit number at any subsequent deposition.

(11) **Depositions Pursuant to Rule 30(b)(6).** In those instances when the Plaintiffs serve a deposition notice pursuant to Fed. R. Civ. P. 30(b)(6), the following shall apply (in addition to the foregoing general procedures governing depositions):

(a) Depositions taken pursuant to F.R.C.P. 30(b)(6) will be taken pursuant to the Federal Rules of Civil Procedure and applicable case law.

(b) The party wishing to take the deposition will in good faith describe with reasonable particularity the categories on which the party is requesting examination. Within a reasonable period of time after receiving the notice, the party to be deposed will in good faith attempt to inform the discovering party if it believes that multiple witnesses will be necessary to respond to the requested categories of information and to which category each witness will be

produced to respond.

(12) **Stenographic Recording**. A certified Court reporter shall stenographically record all deposition proceedings and testimony. The Court reporter shall administer the oath or affirmation to the deponent. A written transcript by the Court reporter, together with copies of all exhibits marked or referred to during the deposition, shall constitute the official record of the deposition for purposes of Fed. R. Civ. P. 30(e) (submission to the witness) and 30(f) (filing, exhibits). The transcript shall also contain the name of any attorney and any other person attending the deposition together with the name of his or her firm or organization, business address and, if applicable, the name of the person or organization he or she represents. The court reporter shall be requested to furnish the transcript in electronic form (floppy disks) in text-readable form and hard copy in Min-U-Script format to the representative of plaintiffs conducting the deposition and a designated representative of defendant attending or defending the deposition.

(13) **Videotaped Depositions**. Any deposition may be videotaped at the request of any party pursuant to notice under the following terms and conditions:

(a) All videotaped depositions shall be simultaneously stenographically recorded in accordance with this Order.

(b) The party requesting videotaping of the deposition shall bear the expense of both the videotaping and the stenographic recording. Requests for the taxation of these costs and expenses may be made at the conclusion of the litigation in accordance with applicable law.

(c) The operator(s) of the videotape recording equipment shall be subject to the provisions of Fed. R. Civ. p. 28(c). At the commencement of the deposition the operator(s) shall swear or affirm to record the proceedings fairly and accurately.

(d) At the commencement of the deposition, each witness, attorney and any other person attending the deposition shall identify themselves on camera.

(e) No attorney or party shall direct instructions to the video operator as to the method of operating the equipment. The video camera operation will be suspended during the deposition only upon stipulation by counsel and "off the record" discussions. The video operator shall record on camera the time of suspension and any subsequent reconvening of the deposition.

(f) The deposition will be conducted in a manner to replicate, to the extent feasible, the presentation of evidence at trial. Unless physically incapacitated, the deponent shall be seated at a table except when reviewing or presenting demonstrative materials for which a change in position is needed. To the extent practicable, the deposition will be conducted in a neutral setting, against a solid background, with only such lighting as is required for accurate video recording. Lighting, camera angle, lens setting, and field of view will be changed only as necessary to record accurately the natural body movements of the deponent or to portray exhibits and materials used during the deposition. Sound levels will be altered only as necessary to record satisfactorily the voices of counsel and the deponent.

(g) If the party noticing the deposition does not intend to convert the videotape to digital form, the videotape operator shall use a counter on the recording equipment and after completion of the deposition shall prepare a log, cross-referenced to counter numbers, that identifies the depositions on the tape at which examination by different counsel begins and ends, at which objections are made and examination resumes, at which exhibits are identified, and at which any interruption of continuous tape-recording occurs, whether for recesses, "off-the-record" discussions, mechanical failure, or otherwise.

(h) After the deposition is completed, the video operator shall certify on camera the correctness, completeness, and accuracy of the videotape recording in the same manner as a stenographic Court reporter, and file a true copy of the video tape, the transcript, and certificate with Liaison Counsel for whomever noticed the deposition.

(i) Technical data, such as recording speeds and other information needed to replay or copy the tape, shall be included on copies of the videotaped deposition.
During the videotaping of a deposition, the questioner may use a two-video camera system with monitors available for use by counsel.

(14) **Telephonic Depositions.** By indicating in its notice of deposition that it wishes to conduct the deposition by telephone, a party shall be deemed to have moved for such an order under Fed.R.Civ.P. 30(b)(7). Unless an objection is filed and served within ten calendar days after such notice is received, the court shall be deemed to have granted the motion. Other parties may examine the deponent telephonically or in person. However, all persons present with the deponent shall be identified in the deposition and shall not by word, sign, or otherwise coach or suggest answers to the deponent.

(15) **Supplemental Depositions.** Each party who did not have reasonable notice of a fact deposition and who was not present or represented at the deposition (including parties later added and parties in cases subsequently filed in, removed to, or transferred to this Court) may, within thirty (30) days after filing of the deposition (or, if later, within sixty (60) days after becoming a party in any action which is transferred to this Court), file a motion to conduct a supplemental deposition of the deponent. Each party who wishes to take a supplemental deposition must certify that their attorney has read the prior deposition, and state specifically the areas of inquiry not previously addressed and sought to be pursued in the deposition sought. Within fifteen (15) days of the filing of any such motion, any party may file an opposition to the motion and seek a protective order prohibiting the supplemental deposition on the grounds that the MDL 1407 deposition fully covered the area or areas sought to be explored in the supplemental deposition, that the testimony is not relevant, or any other reason thought valid.

(a) No further deposition by any party having received notice of the original deposition will be permitted, except upon order of this Court on good cause shown. A showing by the moving party that a supplemental deposition is reasonably calculated to lead to the discovery of admissible evidence

necessary to protect the interests of the moving party shall constitute good cause.

(b) If a supplemental deposition is permitted by the Court or unopposed, it shall be treated as the resumption of the deposition originally noticed. During the resumed deposition, the prohibitions regarding redundant or repetitive examination contained herein are fully applicable. The resumed deposition shall be taken at the same location as the initial deposition unless otherwise agreed to by the parties and the deponent.

(16) **Copies of Transcripts and Videotapes.** Subject to any restrictions contained within the Stipulated Confidentiality Order, any party may at its own expense obtain a copy of the videotape and the stenographic transcript by contacting counsel noticing the deposition or the court reporter.

(17) **Correction and Signing Depositions.** Unless waived by the deponent, the transcript of a deposition, or any portion thereof, shall be submitted to the deponent for correction and signature within thirty (30) days after the completion of the deposition or any portion thereof, unless the Court allows a supplemental deposition pursuant to this Order. If a supplemental deposition is allowed, the transcript thereof shall be submitted to the deponent as soon as it is available for distribution. A deposition transcript, or a transcript of a portion thereof, may be signed by the deponent before any notary within thirty (30) days after the transcript, or any portion thereof, is submitted to the deponent. If no corrections are made during this time, the transcript will be presumed accurate.

(18) **Use of Depositions.** Under the conditions prescribed in Fed. R. Civ. P. 32(a) (1) - (4) or as otherwise permitted by the Federal Rules of Evidence, depositions may be used against any party (including parties later added and parties in cases subsequently filed in, removed to, or transferred to this Court as part of this litigation) who:

(a) was present or represented at the deposition; or

(b) had reasonable notice thereof, or

(c) within ninety (90) days after the deposition is taken or within one hundred and twenty (120) days after becoming a party to MDL 1407 fails to show just cause why such deposition should not be used against such party.

(19) **Document Subpoenas to Non-Parties.** Commencing upon entry of this Order, any party may serve subpoenas on non-parties for the production of documents without testimony pursuant to Fed. R. Civ. P. 45.

VI. **FACT DISCOVERY OF PLAINTIFFS.**

Plaintiffs and Defendants, through their appointed Lead Counsel, are to confer regarding the nature and extent of discovery of plaintiffs in MDL 1407, as well as deadlines and proposed procedures for the conduct of same, and to report back to the Court at the earliest practical time as agreed by Lead Counsel, but no later than thirty (30) days from the date of this Order or the next regularly scheduled Status Conference, whichever first occurs. Plaintiffs, however, shall produce copies of any medical records in their possession referring or related to the injuries alleged in

their actions within 30 days of the entry of an Order concerning discovery of plaintiffs or sixty (60) days from the date of this Order, whichever first occurs.

VII. EXPERT DISCOVERY

To date, the parties have not agreed whether science and/or expert witness issues involved in this litigation should be resolved in this MDL and, if so, the nature, extent and procedures of discovery regarding those issues and/or experts. However, the parties have agreed to continue to attempt to reach an agreement on these issues within the proposed Joint Science Committee, all as proposed in the Joint Submission of the parties dated November 30, 2001. The Joint Science Committee shall meet and shall report to the Court on or before January 11, 2002. At that time, the committee shall provide the Court with a recommended expert discovery schedule, including an expert cutoff date. If the committee cannot reach an agreement, it shall report the disagreement to the Court on January 11, 2002, and shall submit separate proposals by January 18, 2002.

VIII. FAILURE TO COMPLY WITH DISCOVERY REQUESTS.

A party's failure to either produce a relevant document or identify same as withheld pursuant to a privilege may be viewed by the Court as an infraction of its orders, justifying appropriate sanctions. Upon learning of any relevant document(s) which have not been produced or identified, a party is under an obligation to promptly make known the existence of the documents, including the reason for failing to produce same, and submit the document to opposing Lead Counsel, or if withheld under a claim of privilege or protection, identify the documents and the corresponding privilege in the manner described above.

IX. PRODUCTION OF DOCUMENTS FROM PRIOR LITIGATION.

The parties shall meet and confer to resolve disputes over the extent of discovery of documents from prior litigation and shall provide the Court with an agreement by January 11, 2002. If the parties are unable to agree on the extent of discovery, they shall submit separate proposals by January 18, 2002.

X. CLASS ACTIONS.

A. Economic Injury Class Actions. As of the date of this Order, the Court lifts the stay imposed on potential class certification proceedings. Plaintiffs in *Sims v. The Delaco Company et al.* (C01-1705R) have agreed to voluntarily dismiss their complaint.

(1) Class Certification Discovery and Briefing Schedule. The defendants and plaintiffs shall meet and confer regarding potential stipulations, a discovery plan, and a briefing schedule for the economic injury class certification issue. Counsel shall contact the Court on or before January 7, 2002, to inform the Court of the agreed schedule or, if agreement cannot be reached, to present separate proposals.

(2) Merits Discovery and Other Deadlines. Non-expert merits discovery shall end on December 31, 2002. Merits discovery in the class actions shall be coordinated with merits discovery in the personal injury actions, so that no duplicative discovery shall be taken and so that discovery taken in non-MDL cases shall be applicable in the class actions to the same extent that it is applicable in the MDL personal injury

actions. To the extent that relevant merits discovery commences in the personal injury actions before the Court rules on the class certification issue in the economic injury class actions, the parties in the economic injury class actions can and shall participate so as to avoid duplicative discovery.

A schedule for expert discovery, Daubert motions, summary judgment motions and remaining dates applicable in the class action cases shall be set at a later date.

**B. Personal Injury Class Actions.** Defendants shall file a motion to strike class allegations on or before January 25, 2002. If plaintiffs contend discovery is necessary before they can respond to defendants' motion, plaintiffs shall file their motion for discovery by February 1, 2002. The motion should include the specific areas of discovery required and the reason discovery is needed, as well as proposed dates for discovery. Defendants may file a response to the discovery motion by February 8, 2002. No reply will be filed.

If the Court denies the motion for discovery, plaintiffs shall file their opposition to defendants' motion to strike class allegations within seven (7) days of receiving the Court's decision. The defendants' reply shall be filed within fourteen (14) days of receiving the opposition, and any sur-reply by the plaintiffs shall be due fourteen (14) days after receiving the reply. If the Court grants the motion for discovery, the parties shall follow the briefing schedule provided by the Court in that order.

If the plaintiffs do not bring a motion for discovery, plaintiffs shall file their opposition to the motion to strike class allegations on February 28, 2002. Defendants shall file their reply on March 15, 2002, and plaintiff shall file any sur-reply by March 29, 2002.

**XI. OTHER PROVISIONS**

**A. Individual Appointment of Plaintiff Counsel.** The Court has appointed specific plaintiffs counsel to various positions on the expectation of their personal contribution to the work of the Plaintiffs' Lead Counsel, Steering Committee ("PSC") and other Committees and to the furtherance of the completion of the MDL portion of PPA litigation. For this reason, the Court will look to the Lead Counsel and the individual members of the Plaintiffs' various committees to satisfy the goals that the Court expects the PSC and the various Committees to achieve. The Court will likewise consider the contribution of each member of the PSC and its Committee members when the Court is called upon to determine appropriate compensation for service on the PSC and its Committees. While the Court recognizes that each of the above members will require the assistance of partners, colleagues, paralegals, support staff and others in the fulfillment of their committee assignments, the Court will expect the individual members to be responsible for the ultimate outcome of the activities performed by the PSC and its Committees.

**B. Time and Expense Keeping.** Counsel who anticipate seeking an award of attorney's fees and reimbursement of expenditures shall comply with the directives contained in the Manual for Complex Litigation, Third, §41.32 regarding the maintenance of contemporaneous records reflecting the services performed and the expenses incurred. The Court will address, in a

future CMO, the extent to which an assessment will be ordered in this matter.

**C. Privileges Preserved.** No communication by and between the respective parties' Lead Counsel, their Liaison Counsel and/or members of their respective Committees shall constitute a waiver of any privilege or protection to which it would otherwise be entitled.

**XII. NEXT STATUS CONFERENCE.**
The next status conference is scheduled for _____.
At the next and all future status conferences, the parties are to provide to the Court within five (5) business days before each status conference an agreed upon agenda for the conference, and shall provide a brief (1-2 paragraph) summary of the party positions as to any disputed issues.
**XIII. PERSONS BOUND BY THIS ORDER.**
This Order shall be binding on all persons with

cases docketed in MDL 1407.

**/s/**
BARBARA JACOBS ROTHSTEIN
**UNITED STATES DISTRICT JUDGE**

File for Download is available on WebPacer





FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP -5 PM 1: 06

LORETTA G WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

DAPHINE B DONNELLY, and                     *     CIVIL ACTION
JEROME DONNELLY, Husband              *
                                                          *     NO  02-CV-2436
VERSUS                                               *
                                                          *     JUDGE ENGELHARDT
BAYER CORPORATION, NOVARTIS      *
PHARMACEUTICALS CORPORATION,   *     MAGISTRATE JUDGE SHUSHAN
NOVARTIS CONSUMER HEALTH, INC ,  *
4LIFE RESEARCH, LC, Successor by         *
merger to SHAPERITE, SMOOTHIE KING  *
CO , INC , SMOOTHIE KING SYSTEMS,    *
INC , and WALGREEN LOUISIANA CO ,   *
INC  (D/B/A "WALGREENS")
* * * * * * * * * * * * * * * * * * * * * * * * *

## CROSS-NOTICE OF VIDEOTAPED DEPOSITION OF BILL CARSON

PLEASE TAKE NOTICE that Plaintiffs will take the deposition upon oral examination

of Mr  Bill Carson, now or formerly an employee of Bayer Corporation, on September 26, 2002,

at the law office of Fulbright & Jaworski, 666 Fifth Avenue, New York, NY  (212-318-3000,

www fulbright com), beginning at 9 00 a m  and continuing until completed



575864_1 DOC

The deposition will be conducted pursuant to the provisions of Case Management Order No 1,[1] will be stenographically recorded by the court reporting firm of Tate & Tate, 180 Tuckerton Road, Suite 5, Medford, NJ 08055 and will be videotaped by Lawyers' Video Service, Inc , 33 Rock Hill Road, Bala Cynwyd, PA 19004 The examination will also be videotaped by Veritext, 25B Vreeland Road, Florham Park, NJ 07932, which will have a video camera trained on the questioner during the examination Steven Rotman and/or Michelle Parfitt or James Green will represent plaintiffs

You are at liberty to appear and examine the witness

DATED this _____ day of September, 2002

Respectfully submitted,

_____

Mary L Meyer, Esq (19966)
John F Olinde (1515)
Charles P Blanchard (18798)
**CHAFFE, MCCALL, PHILLIPS,**
 **TOLER & SARPY, L.L.P.**
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2300
Telephone (504) 585-7000
**Attorneys for Bayer Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this _____ day of September, 2002, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by hand delivery, facsimile, or by depositing the same in the United States mail, properly addressed, and first-class postage prepaid

_____

---

[1] A copy of the Case Management Order No 1 is attached to a prior Cross-Notice of Deposition filed in this case



4\18



FILED
U.S DISTRICT COURT
EASTERN DISTRICT OF LA

2002 AUG 30  PM 2: 35

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B DONNELLY | * | CIVIL ACTION NO |
| AND JEROME DONNELLY, HUSBAND | * | 02-2436 |
| | * | |
| VERSUS | * | SECTION " N " |
| | * | |
| BAYER CORPORATION, NOVARTIS | * | MAGISTRATE "1" |
| PHARMACEUTICALS CORP , NOVARTIS | * | |
| CONSUMER HEALTH, INC , 4LIFE RESEARCH, | * | |
| L C SUCCESSOR BY MERGER TO SHAPERITE | * | |
| SMOOTHIE KING CO , SMOOTHIE KING | * | |
| SYSTEMS, INC , WALGREEN LOUISIANA | * | |
| COMPANY, INC (D/B/A "WALGREENS") | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## <u>MOTION TO DISMISS PURSUANT TO F. R. C. P. 12(b)(6)</u>

NOW INTO COURT, through undersigned counsel, comes defendant, Walgreen Louisiana

Company, Inc (hereafter "Walgreens"), and respectfully moves this Honorable Court to dismiss the

Petition for Damages of plaintiffs   The claims of plaintiffs have failed to state a cause of action

against the defendant upon which relief can be granted   Therefore, defendant is entitled to a

dismissal with prejudice

Respectfully submitted,

THE TRUITT LAW FIRM
A Limited Liability Company

JACK E TRUITT, BAR NO  18476, T A
251 Highway 21
Madisonville, Louisiana 70447
Telephone  (985) 792-1062
Facsimile  (985) 792-1065
Email  mail@truittlaw com
Counsel for Walgreen Louisiana Company, Inc

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been duly served on all counsel of record by depositing same into the U S Mail, postage pre-paid, this August 27, 2002, or by any other means authorized by law

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B DONNELLY | * | CIVIL ACTION NO |
| AND JEROME DONNELLY, HUSBAND | * | 02-2436 |
| | * | |
| VERSUS | * | SECTION " N " |
| | * | |
| BAYER CORPORATION, NOVARTIS | * | MAGISTRATE "1" |
| PHARMACEUTICALS CORP , NOVARTIS | * | |
| CONSUMER HEALTH, INC , 4LIFE RESEARCH, | * | |
| L C SUCCESSOR BY MERGER TO SHAPERITE | * | |
| SMOOTHIE KING CO , SMOOTHIE KING | * | |
| SYSTEMS, INC , WALGREEN LOUISIANA | * | |
| COMPANY, INC (D/B/A "WALGREENS") | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

MAY IT PLEASE THE COURT

This Memorandum is submitted on behalf of defendant, Walgreens

### **Facts**

Plaintiffs, Daphine B Donnelly and Jerome Donnelly, claim that on January 12, 1991, Ms

Donnelly, had a prescription filled at a Walgreen's Drugstore, location not specified in the Petition

for Damages   She claims that an employee of Walgreen's incorrectly filled her prescription

Plaintiffs claim that they have suffered damages as a result of the negligent acts of the Walgreen's

pharmacist   Plaintiffs did not file suit in this Honorable Court until July 2, 2002      Defendant,

Walgreen Louisiana Company, Inc , contends that the claims of plaintiffs are clearly prescribed on

the face of the Petition for Damages   Therefore, this Honorable Court must grant the Motion to

Dismiss

#### Argument

Pursuant to Article 3492 of the Louisiana Civil Code, a delictual action must be filed within one year "from the day injury or damage is sustained " F R C P Rule 12 (b)(6) provides that a court should dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted.

In this case, plaintiff contends that the Walgreen's pharmacist negligently filled a prescription on January 12, 1991 However, the lawsuit was not filed in this Honorable Court until July 2, 2002 Therefore, plaintiffs' lawsuit is untimely and must be dismissed based upon the Motion to Dismiss

#### Conclusion

Plaintiffs' lawsuit is clearly prescribed as it was not filed within one year from the date that an alleged injury was sustained as a result of the alleged wrongful acts of the defendant Therefore, this Honorable Court must grant the Motion to Dismiss

Respectfully submitted,

**THE TRUITT LAW FIRM**
A Limited Liability Company

JACK E TRUITT, BAR NO 18476, T A
251 Highway 21
Madisonville, Louisiana 70447
Telephone (985) 792-1062
Facsimile (985) 792-1065
Email: mail@truittlaw com
Counsel for Walgreen Louisiana Company, Inc

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been duly served on all counsel

of record by depositing same into the U S Mail, postage pre-paid, this August 27, 2002, or by

any other means authorized by law

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B DONNELLY | * | CIVIL ACTION NO |
| AND JEROME DONNELLY, HUSBAND | * | 02-2436 |
| | * | |
| VERSUS | * | SECTION " N " |
| | * | |
| BAYER CORPORATION, NOVARTIS | * | MAGISTRATE "1" |
| PHARMACEUTICALS CORP , NOVARTIS | * | |
| CONSUMER HEALTH, INC , 4LIFE RESEARCH, | * | |
| L C SUCCESSOR BY MERGER TO SHAPERITE | * | |
| SMOOTHIE KING CO , SMOOTHIE KING | * | |
| SYSTEMS, INC , WALGREEN LOUISIANA | * | |
| COMPANY, INC (D/B/A "WALGREENS") | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that defendant, Walgreen Louisiana Company, through

undersigned counsel, will bring on for hearing its Motion to Dismiss before the Honorable Kurt

Engelhardt, Judge, on the 18th day of September, 2002, at 9 30 a m

Respectfully submitted,

**THE TRUITT LAW FIRM**
A Limited Liability Company

JACK E/ TRUITT, BAR NO 18476, T A
251 Highway 21
Madisonville, Louisiana 70447
Telephone· (985) 792-1062
Facsimile. (985) 792-1065

Counsel for Walgreen Louisiana Company, Inc

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been duly served on all counsel

of record by depositing same into the U S Mail, postage pre-paid, this August 27, 2002, or by

any other means authorized by law.

_Jack E. Britt_





```
CASE:      2 02-cv-02436/P
DOCUMENT·  7
DATE:      09/03/02

CLERK:     tbl
```

*** There will be no noticing for this document.***

Document scanned by _____

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 AUG 22  PM 3: 46

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

DAPHINE B  DONNELLY, ET VIR

VERSUS

BAYER CORPORATION, ET AL

CIVIL ACTION NO  02-CV-2436

SECTION N - JUDGE ENGELHARDT

MAGISTRATE JUDGE SHUSHAN

## **ANSWER OF DEFENDANT, 4LIFE RESEARCH, LC**

Defendant, 4Life Research, LC, through its undersigned counsel, answers

plaintiffs' removed petition thus

1

It denies ¶1 for lack of knowledge and information sufficient to justify a belief in

the truth thereof

2

It denies §D and is not required to admit or deny the remainder of ¶2

3

It is not required to admit or deny ¶3

Fee _____
Process _____
X  Dktd _____
  CtRmDep _____
  Doc No. _____

4

It denies ¶4

5

It denies ¶5 as written

6

It denies ¶6 as written

7

It denies ¶7

8

It denies ¶8 for lack of knowledge and information sufficient to justify a belief in the truth thereof

9

It denies ¶9 as written

10

It denies ¶10 for lack of knowledge and information sufficient to justify a belief in the truth thereof.

11

It denies ¶11

12

It denies ¶12 for lack of knowledge and information sufficient to justify a belief in the truth thereof

2

13

It denies ¶13 for lack of knowledge and information sufficient to justify a belief in the truth thereof

14

It denies ¶14 for lack of knowledge and information sufficient to justify a belief in the truth thereof

15

It denies ¶15

16

It denies ¶16

17

It denies ¶17

15[sic]

It denies ¶15[sic]

16[sic]

It denies ¶16[sic]

17[sic]

It denies ¶17[sic] for lack of knowledge and information sufficient to justify a belief in the truth thereof

AND NOW, FURTHER ANSWERING, defendant avers that

3

21

Plaintiffs' complaint fails to state a claim upon which relief can be granted against this defendant

22

Plaintiffs' cause of action, if any, has prescribed by operation of law

23

There is no causal connection between defendant's product and plaintiffs' alleged injuries and damages because Mrs Donnelly's January 12, 1991 stroke occurred before defendant's product was on the market

24

Plaintiffs' alleged injuries and damages were caused, in whole or in part, by the acts or omissions of others over whom this defendant had no control and for whom this defendant bears no liability or responsibility

25

Plaintiffs' alleged injuries were caused by intervening and/or superceding causes that were the proximate and/or sole causes of the plaintiffs' alleged injuries

26

Plaintiffs' alleged damages were caused by their own fault, neglect, and/or want of care, which is specifically pled herein as a bar or in diminution of recovery

WHEREFORE, defendant, 4Life Research, LC, prays that plaintiffs' action be dismissed with prejudice at their costs and for any and all other general and equitable relief

Respectfully Submitted,

**LEMLE & KELLEHER, L.L.P**

By _____

**C. WM. BRADLEY, JR. (#3371)**
**J. DON KELLY JR. (#25124)**
601 Poydras St., Ste 2100
New Orleans, LA  70130-6097
Telephone  (504) 584-9170
Fax  (504) 584-9142
Attorneys for defendant,
4Life Research, LC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above pleading has been served on all known counsel for all parties to this litigation by United States Mail, properly addressed and postage prepaid, or hand-delivery, on this _22_ day of August, 2002

_____
J DON KELLY JR

5





```
CASE:      2 02-cv-02436/P
DOCUMENT: 6
DATE:      08/23/02

CLERK      tbl
```

*** There will be no noticing for this document ***

Document scanned by _____

9|18



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 AUG 21  PM 4: 03

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO 02-CV-2436 |
| VERSUS | * | |
| | * | JUDGE ENGELHARDT |
| BAYER CORPORATION, NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION, | * | MAGISTRATE JUDGE SHUSHAN |
| NOVARTIS CONSUMER HEALTH, INC , | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE, SMOOTHIE KING | * | |
| CO , INC , SMOOTHIE KING SYSTEMS, | * | |
| INC , and WALGREEN LOUISIANA CO , | * | |
| INC (D/B/ A "WALGREENS") | | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## BAYER CORPORATION'S MOTION FOR DISMISSAL
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

NOW INTO COURT, through undersigned counsel, comes defendant Bayer Corporation

("Bayer"), who respectfully moves the Court for dismissal, pursuant to Federal Rule of Civil

Procedure 12(b)(6), of plaintiffs' claims in negligence, gross negligence and strict liability on the

grounds that they fail to state claims upon which relief can be granted   The Louisiana Products

Liability Act ("LPLA"), La R S  9 2800 51 *et seq* , establishes the exclusive theories of recovery

Fee
Process
X  Dktd
C.Suidep

against a manufacturer, and it does not provide for the recovery of the aforementioned claims

The grounds for this motion are more fully set forth in the attached memorandum

Respectfully submitted,

Mary L Meyer (La Bar No 19966)
John F Olinde (La Bar No 1515)
Charles P Blanchard (La Bar No 18798)
**CHAFFE, McCALL, PHILLIPS,**
**TOLER & SARPY, L.L.P.**
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2300
Telephone No (504) 585-7000
**Attorneys for Bayer Corporation**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this $\underline{01}^{st}$ day of _____ August ____, 2002, served a

copy of the foregoing pleading on counsel for all parties to this proceeding, by mailing the

same by United States mail, properly addressed, and first class postage prepaid

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

DAPHINE B  DONNELLY, and                   *       CIVIL ACTION
JEROME DONNELLY, Husband                   *
                                           *       NO  02-CV-2436
VERSUS                                     *
                                           *       JUDGE ENGLEHARDT
BAYER CORPORATION, NOVARTIS                *
PHARMACEUTICALS CORPORATION,               *       MAGISTRATE JUDGE SHUSHAN
NOVARTIS CONSUMER HEALTH, INC ,            *
4LIFE RESEARCH, LC, Successor by           *
merger to SHAPERITE, SMOOTHIE KING         *
CO , INC , SMOOTHIE KING SYSTEMS,          *
INC , and WALGREEN LOUISIANA CO ,          *
INC  (D/B/A "WALGREENS")                   
* * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF
BAYER CORPORATION'S MOTION FOR DISMISSAL
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

### 1.   Factual Background

The plaintiffs make numerous claims in their Petition against Bayer Corporation

("Bayer"), all of which are based on the premise that Bayer sold and advertised Alka Seltzer Plus

medicine, which contained phenylpropanolamine (PPA)  *See* Petition, ¶¶ 2, 9

The plaintiffs allege that Daphine Donnelly's ingestion of Bayer's products containing

PPA caused her to suffer a stroke on January 12, 1991  *See* Petition, ¶ 10  Plaintiffs have made a

claim against Bayer as a manufacturer under the  provisions of the Louisiana Products Liability

572604_1 DOC

Act ("LPLA"), La R S  9 2800 51 *et seq*    *See* Petition, ¶ 15    They have also asserted claims against Bayer in negligence, gross negligence and strict liability    *See* Petition, ¶ 16  Plaintiffs' causes of action against Bayer are limited to those expressly available under the LPLA    The LPLA does not allow recovery under theories of negligence, gross negligence and strict liability    Accordingly, the Court should dismiss all of these claims for failure to state a claim upon which relief can be granted

### 2.  Standards applicable to a Motion to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6).

The Court should dismiss a plaintiff's complaint for failure to state a claim under Rule 12(b)(6) when the plaintiff fails to plead specific facts entitling her to relief    Conclusory allegations or legal conclusions do not suffice    *See, e g , Campbell v  City of San Antonio*, 43 F 3d 973, 975 (5th Cir  1995), *Blackburn v  City of Marshall*, 42 F 3d 925, 931 (5th Cir  1995)

The plaintiff's complaint must contain direct allegations on every material point necessary to sustain recovery or contain allegations from which an inference fairly can be drawn that evidence on these material points will be introduced at trial    *Campbell v  City of San Antonio,* 43 F 3d at 975    Dismissal is proper if the complaint lacks allegations regarding a required element necessary to obtain relief    The Court is not required to "conjure up unpled allegations or construe elaborately archaic scripts" to save a complaint    *Campbell*, 43 F 3d at 975, *quoting Gooley v  Mobil Oil Corp* , 851 F 2d 513, 514 (1st Cir  1988)

In deciding a motion to dismiss for failure to state a claim, courts generally limit their inquiry to the facts stated in the complaint and the documents attached to or incorporated in the complaint    *See, e g , Lovelace v  Software Spectrum, Inc* , 78 F 3d 1015, 1017 (5th Cir  1996)

But the Court may also consider documents that the plaintiff references in her complaint that are central to her claims, even if not attached *See, e g, Greenberg v Life Ins Co of Virginia*, 177 F 3d 507, 514 (6th Cir 1999) (insurance policies attached to motion to dismiss could be considered in deciding a motion to dismiss because the plaintiff referred to the policies in the complaint and the policies were central to the plaintiff's claims)

Applying these standards, plaintiffs' factual pleadings fail to state numerous causes of action and those causes of action should be dismissed

## 3. The Louisiana Products Liability Act Is The Controlling Substantive Law

The LPLA[1] became effective on September 1, 1988 and controls plaintiffs' claims against Bayer in this diversity action *Stevens v Witco Corp*, 198 F 3d 539 (5th Cir 1999) ("because the basis for federal jurisdiction in this case is diversity of citizenship, Louisiana substantive law applies") Under the LPLA, plaintiff has the burden of proving that an allegedly defective product was unreasonably dangerous in one of four ways 1) construction or composition, 2) design, 3) because of an inadequate warning, or 4) because of nonconformity to an express warranty[2] *Ashley v General Motors Corp*, 22, 851 (La App 4th Cir 5/16/95), 666 So 2d 1320, 1322

## 4. All of Plaintiffs' Non-LPLA Causes of Action Against Bayer Must be Dismissed

A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in the LPLA The LPLA expressly provides "A claimant may *not* recover from a manufacturer for damage caused by a product on the basis of *any* theory of liability *not* set forth in the LPLA " La R S 9 2800 52 (emphasis added) Based

---

[1] La R S 9 2800 51 *et seq*

on this unequivocal statutory language, courts routinely dismiss claims against manufacturers that do not arise under the LPLA *See, e g , Jefferson v Lead Industries*, 106 F 3d 1245, 1251 (5th Cir 1997) (affirming dismissal of plaintiff's claims of negligence, fraud by misrepresentation, market share liability, breach of implied warranty of fitness, and civil conspiracy due to exclusivity of the LPLA), *Brown v R J Reynolds Tobacco Co* , 852 F Supp 8, 9 (E D La 1994), *aff'd*, 52 F 3d 524 (5th Cir 1995) (dismissing plaintiff's claims for fraudulent misrepresentation, concealment, and conspiracy due to LPLA's exclusivity), *Grenier*, 99 F Supp 2d 759, 765-63 (W D La 2000), *aff'd*, 243 F 3d 200 (5th Cir 2001) (holding that plaintiff's claims for strict liability, negligence, breach of warranty of fitness for particular purpose, breach of implied warranty, misrepresentation, fraud by concealment, false advertising, negligent infliction of emotional distress, common plan to prevent public awareness of breast implant hazards, and future product failure were not cognizable under the LPLA) The plaintiff's claims in this case for negligence, gross negligence and strict liability are "well outside the scope of the LPLA and must be dismissed " *Grenier,* 99 F Supp 2d at 763

## CONCLUSION

For the foregoing reasons, plaintiffs' causes of actions for negligence, gross negligence and strict liability fail to state claims upon which relief can be granted against Bayer Corporation and should be dismissed

---

[2] La R S 9 2800 54(b)

Respectfully submitted,

_____

Mary L Meyer, (La. Bar No 19966)
John F Olinde, (La Bar No 1515)
Charles P Blanchard, (La Bar No 18798)
**Chaffe, McCall, Phillips,**
    **Toler & Sarpy, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2300
Telephone (504) 585-7000
**Attorneys for Bayer Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon counsel for all parties to this proceeding by mailing a copy of same to each by First Class United States mail, properly addressed and postage prepaid, on this 21st day of August, 2002

_____

UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF LOUISIANA

DAPHINE B  DONNELLY, and    *   CIVIL ACTION
JEROME DONNELLY, Husband    *
   *   NO  02-CV-2436
VERSUS    *
   *   JUDGE ENGELHARDT
BAYER CORPORATION, NOVARTIS    *
PHARMACEUTICALS CORPORATION,    *   MAGISTRATE JUDGE SHUSHAN
NOVARTIS CONSUMER HEALTH, INC ,    *
4LIFE RESEARCH, LC, Successor by    *
merger to SHAPERITE, SMOOTHIE KING    *
CO , INC , SMOOTHIE KING SYSTEMS,    *
INC , and WALGREEN LOUISIANA CO ,    *
INC  (D/B/A "WALGREENS")

**NOTICE OF HEARING**

PLEASE TAKE NOTICE that Bayer Corporation, will bring on for hearing on September

18, 2002, at 9 30 o'clock a m , before the Honorable Kurt D  Engelhardt at the United States District

Courthouse for the Eastern District of Louisiana, 500 Camp Street, New Orleans, Louisiana, the

accompanying Motion for Dismissal

Respectfully submitted,

Mary L Meyer, Esq (19966)
John F Olinde, Esq (1515)
CHAFFE, MCCALL, PHILLIPS,
   TOLER & SARPY, L L P
2300 Energy Centre
1100 Poydras Street
New Orleans, LA  70163-2300
Telephone  (504) 585-7000

**ATTORNEYS FOR
BAYER CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record by depositing same in the United States Mail, postage prepaid, this _2$1^{st}$_ day of August, 2002





CASE        2:02-cv-02436/P
DOCUMENT.   5
DATE·       08/22/02

CLERK:      tbl

*** There will be no noticing for this document.***

Document scanned by: _____

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 AUG 14  PM 3: 58

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DAPHINE B. DONNELLY, ET AL.** | * | **CIVIL ACTION** |
| | * | **NO.: 02-cv-2436** |
| | * | |
| **v.** | * | **JUDGE ENGELHARDT** |
| | * | |
| **BAYER CORPORATION, ET AL.** | * | **MAGISTRATE SHUSHAN** |
| | * | |
| *    *    *    *    *    * | * | |

## ANSWER OF DEFENDANT NOVARTIS PHARMACEUTICALS CORPORATION
## TO PLAINTIFF'S *PETITION FOR DAMAGES*

Defendant Novartis Pharmaceuticals Corporation ("NPC") responds to Plaintiff's *Petition*

*for Damages* (the "Petition") as follows

### FIRST DEFENSE

The Petition fails to state a cause of action or claim for which relief can be granted.

### SECOND DEFENSE

Any claims against NPC as set forth in the Petition that allege a right to recovery on a

theory of liability other than one of the exclusive theories of liability set forth in the Louisiana

Products Liability Act, fail to state a cause of action or claim for which relief can be granted

1

### THIRD DEFENSE

The claims are barred by prescription, applicable statute of limitations, statute of repose, or the passage of time

### FOURTH DEFENSE

Any claims for fraudulent misrepresentation, suppression, fraud, concealment, and deceit are not pleaded with particularity as required by law, and thus fail to state a cause of action or claim for which relief can be granted

### FIFTH DEFENSE

The claims are barred because NPC is not subject to the personal jurisdiction of this District Court

### SIXTH DEFENSE

The claims are barred because plaintiff, by electing to ingest Tavist-D® assumed the risks apparent or disclosed on the Tavist-D® label, and plaintiff waived and/or is estopped from asserting any claim related to such risks

### SEVENTH DEFENSE

The claims are barred because Tavist-D® is designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

2

## EIGHTH DEFENSE

Any losses are subject to an offset or credit in the amount of any reimbursement received by plaintiffs as a result of any insurance or other health benefits plan, or any amounts paid for by any insurance or other health benefits plan

## NINTH DEFENSE

The claims are barred because the injuries, damages and losses alleged in the Petition, none being admitted, were proximately caused, in whole or in part, by the fault or negligence of the plaintiff or others. Accordingly, the claims are barred or must be reduced under the doctrine of contributory or comparative fault.

## TENTH DEFENSE

The claims are barred because the injuries, if any, were the result of conduct of plaintiff, independent third parties, or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes, including but not limited to pre-existing medical conditions.

## ELEVENTH DEFENSE

Discovery may show that the claims are barred by the "learned intermediary" or "informed intermediary" doctrine

3

## TWELFTH DEFENSE

The Petition fails to state a cause of action because the medical drugs at issue were properly prepared and accompanied by proper directions and warnings, and thus not defective or unreasonably dangerous.

## THIRTEENTH DEFENSE

Any alleged negligent or culpable conduct of NPC, none being admitted, was too insubstantial to be a legal, proximate or substantial contributing cause of the alleged injuries

## FOURTEENTH DEFENSE

The claims against NPC are barred because the alleged injuries, if caused by PPA, are the result of plaintiff's own idiosyncratic or allergic reactions

## FIFTEENTH DEFENSE

Discovery may show that the damages, if any, are limited by the failure to mitigate

## SIXTEENTH DEFENSE

The claims are barred because the defendant complied with all federal and state statutes as well as all administrative regulations

**SEVENTEENTH DEFENSE**

The claims are barred because Tavist-D® is comprehensively regulated by the United States Food and Drug Administration pursuant to the Federal Food, Drug & Cosmetic Act, 21 U.S C §§ 301 et seq , and regulations and orders promulgated thereunder   Accordingly, the claims are preempted by the Supremacy Clause of the United States Constitution, Article VI, clause 2, and the laws of the United States

**EIGHTEENTH DEFENSE**

NPC has no legal relationship or privity with plaintiff and owes no duty to plaintiff by which liability could be attributed to it

**NINETEENTH DEFENSE**

The claims are barred because the use of Tavist-D® was generally recognized as safe and effective pursuant to conditions established by the Food and Drug Administration and applicable regulations, including packaging and labeling regulations

**TWENTIETH DEFENSE**

Discovery may show that the claims are barred by the misuse or abnormal use of Tavist-D® or the failure to follow product instructions.

5

## TWENTY-FIRST DEFENSE

Plaintiffs' claims are barred because at no relevant time did NPC manufacture, promote, market, advertise, distribute or sell the product at issue

## TWENTY-SECOND DEFENSE

Plaintiffs' claims are barred because NPC is not a proper party and it has no liability concerning the product at issue – any and all assets and liabilities concerning the product at issue are possessed by a separate legal entity

## TWENTY-THIRD DEFENSE

NPC hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this list to assert such defenses

NPC DENIES THE ALLEGATIONS IN THE INITIAL PARAGRAPH OF THE PETITION AND

SPECIFICALLY RESPONDS TO THE NUMBERED ALLEGATIONS OF THE PETITION FOR

DAMAGES, AS FOLLOWS

       1     Denies knowledge or information sufficient to form a belief as to the allegations in paragraph 1 of the *Petition for Damages*

      2.    Denies knowledge or information sufficient to form a belief as to the allegations in paragraph 2 of the *Petition for Damages,* except admits that Novartis Pharmaceuticals Corporation is a Delaware Corporation with its principal place of business in New Jersey   NPC further states that after January 1, 1997, NPC, f/k/a Sandoz Pharmaceutical Corporation, did not supply, manufacture, label, distribute, promote or sell Tavist-D®. Further, on January 1, 1997, all assets and liabilities of NPC's over-the-counter business, including Tavist-D® products, were transferred to Novartis Consumer Health, Inc.

      3     Denies knowledge or information sufficient to form a belief as to the allegations in paragraph 3 of the *Petition for Damages*

      4.    The allegations in paragraph 4 of the *Petition for Damages* are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is required, NPC denies the allegations in paragraph 4.

      5     Denies knowledge or information sufficient to form a belief as to the

allegations in paragraph 5 of the *Petition for Damages*, except states upon information and belief, that PPA has been used in the United States in over-the-counter decongestant cough and cold products and appetite suppressants   NPC further states upon information and belief that Tavist-D® contained PPA until or about November 2000

      6      Denies the allegations in paragraph 6 of the *Petition for Damages*, except admits that a report entitled "PPA & Risk of Hemorrhagic Stroke   Final Report of the Hemorrhagic Stroke Project" was published on or about May 10, 2000.  NPC respectfully refers the Court to the said report for the contents therein   NPC further states that there have been anecdotal reports of strokes in patients who have used a product containing PPA, but that no causal link has been established between the use of PPA and stroke, and respectfully refers the Court to the studies and/or published reports referenced by plaintiff for the contents thereof

      7      Denies the allegations in paragraph 7 of the *Petition for Damages*.

      8.      Denies the allegations in paragraph 8 of the *Petition for Damages*.

      9      Denies knowledge or information sufficient to form a belief as to the allegations in paragraph 9 of the *Petition for Damages*

      10      Denies the allegations in paragraph 10 of the *Petition for Damages*, except denies knowledge or information sufficient to form a belief as to plaintiff's medical history

      11      Denies the allegations in paragraph 11 of the *Petition for Damages*, and

8

further states that there have been anecdotal reports of strokes in patients who have used a product containing PPA, but that no causal link has been established between the use of PPA and stroke

12.    Denies the allegations in paragraph 12 of the *Petition for Damages*, except denies knowledge or information sufficient to form a belief as to plaintiff's medical history

13    Denies the allegations in paragraph 13 of the *Petition for Damages*.

14.    Denies the allegations in paragraph 14 of the *Petition for Damages*.

15    Denies the allegations in paragraph 15 of the *Petition for Damages*, including subparts therein.

16.    Denies the allegations in paragraph 16 of the *Petition for Damages*.

17    Denies the allegations in paragraph 17 of the *Petition for Damages*, including subparts therein.

18    Denies the allegations in paragraph 18 (that is incorrectly numbered as paragraph 15 on page 6) of the *Petition for Damages*

19.    Denies the allegations in paragraph 19 (that is incorrectly numbered as paragraph 16 on page 6) of the *Petition for Damages*

20    The allegations in paragraph 20 (that is incorrectly numbered as paragraph 17 on page 6) of the *Petition for Damages* are legal conclusions to which no responsive pleading is required   To the extent a responsive pleading is required, NPC denies the allegations in paragraph 20

9

of the *Petition for Damages*

21    NPC denies any allegation in the Petition not expressly admitted herein.

22    NPC requests trial by jury

BY: _____

Sessions, Fishman & Nathan, L L P.
**JOY GOLDBERG BRAUN (#3416) T.A.**
**ERIC R. NOWAK (#27025)**
**SHIRIN E. HARRELL (#27495)**
201 St Charles Avenue, Suite 3500
New Orleans, LA 70170-3500
                    and
  Randolph S  Sherman
Lori B  Leskin
Danielle E  Finck
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
**Attorneys for Defendant**
**NOVARTIS PHARMACEUTICALS CORPORATION**


## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 14th day of _____Aug, L_____, 2002, served a copy of the foregoing pleading by facsimile and U S  Mail to plaintiff's counsel, and by U.S mail, to all other counsel for the parties to this, properly addressed, and first class postage prepaid

_____

ERIC R  NOWAK





```
CASE:     2.02-cv-02436/P
DOCUMENT: 4
DATE      08/15/02

CLERK     tbl
```

*** There will be no noticing for this document.***

Document scanned by: _/0 (THL_

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 AUG 14  PM 3:58

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DAPHINE B. DONNELLY, ET AL.** | * | **CIVIL ACTION** |
| | * | **NO.: 02-cv-2436** |
| | * | |
| **v.** | * | **JUDGE ENGELHARDT** |
| | * | |
| **BAYER CORPORATION, ET AL.** | * | **MAGISTRATE SHUSHAN** |
| | * | |
| *   *   *   *   *   * | * | |

## ANSWER OF DEFENDANT NOVARTIS CONSUMER HEALTH, INC.
### TO PLAINTIFF'S *PETITION FOR DAMAGES*

Defendant Novartis Consumer Health, Inc ("NCH") responds to Plaintiff's *Petition for Damages* (the "Petition") as follows

### FIRST DEFENSE

The Petition fails to state a cause of action or claim for which relief can be granted

### SECOND DEFENSE

Any claims against NCH as set forth in the Petition that allege a right to recovery on a theory of liability other than one of the exclusive theories of liability set forth in the Louisiana Products Liability Act, fail to state a cause of action or claim for which relief can be granted



1

### THIRD DEFENSE

The claims are barred by prescription, applicable statute of limitations, statute of repose, or the passage of time

### FOURTH DEFENSE

Any claims for fraudulent misrepresentation, suppression, fraud, concealment, and deceit are not pleaded with particularity as required by law, and thus fail to state a cause of action or claim for which relief can be granted

### FIFTH DEFENSE

Discovery may show that the claims are barred by the misuse or abnormal use of Tavist-D® or the failure to follow product instructions.

### SIXTH DEFENSE

The claims are barred because plaintiffs, by electing to ingest Tavist-D® assumed the risks apparent or disclosed on the Tavist-D® label, and plaintiffs waived and/or is estopped from asserting any claim related to such risks

### SEVENTH DEFENSE

The claims are barred because Tavist-D® was designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge

2

### EIGHTH DEFENSE

Any losses are subject to an offset or credit in the amount of any reimbursement received by plaintiff as a result of any insurance or other health benefits plan, or any amounts paid for by any insurance or other health benefits plan

### NINTH DEFENSE

The claims are barred because the injuries, damages and losses alleged in the Petition, none being admitted, were caused in whole, in part or proximately by the fault or negligence of the plaintiffs or others   Accordingly, the claims are barred or must be reduced under the doctrine of contributory or comparative fault

### TENTH DEFENSE

The claims are barred because the injuries, if any, were the result of conduct of plaintiffs, independent third parties, or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to pre-existing medical conditions.

### ELEVENTH DEFENSE

Discovery may show that the claims are barred by the "learned intermediary" or "informed intermediary" doctrine

3

### TWELFTH DEFENSE

The Petition fails to state a cause of action because the medical drugs at issue were properly prepared and accompanied by proper directions and warnings, and thus not defective or unreasonably dangerous

### THIRTEENTH DEFENSE

Any alleged negligent or culpable conduct of NCH, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of the alleged injuries.

### FOURTEENTH DEFENSE

The claims against NCH are barred because the alleged injuries, if caused by PPA, are the result of plaintiffs' own idiosyncratic or allergic reactions.

### FIFTEENTH DEFENSE

Discovery may show that the damages, if any, are limited by the failure to mitigate damages

### SIXTEENTH DEFENSE

The claims are barred because the defendant complied with all federal and state statutes as well as all administrative regulations

4



### SEVENTEENTH DEFENSE

The claims are barred because Tavist-D® is comprehensively regulated by the United States Food and Drug Administration pursuant to the Federal Food, Drug & Cosmetic Act, 21 U.S.C §§ 301 et seq., and regulations and orders promulgated thereunder Accordingly, the claims are preempted by the Supremacy Clause of the United States Constitution, Article VI, clause 2, and the laws of the United States

### EIGHTEENTH DEFENSE

NCH has no legal relationship or privity with plaintiff and owes no duty to plaintiffs by which liability could be attributed to it

### NINETEENTH DEFENSE

The claims, including without limitation the claims for punitive damages, are barred because the use of Tavist-D® was generally recognized as safe and effective pursuant to conditions established by the Food and Drug Administration and applicable regulations, including packaging and labeling regulations

## TWENTIETH DEFENSE

NCH hereby gives notice that it intends to rely upon such other defense as may become available or apparent during the course of discovery and thus reserves its right to amend this list to assert such defenses.

NCH DENIES THE ALLEGATIONS IN THE INITIAL PARAGRAPH OF THE PETITION AND SPECIFICALLY RESPONDS TO THE NUMBERED ALLEGATIONS OF THE PETITION, AS FOLLOWS:

1      Denies knowledge or information sufficient to form a belief as to the allegations in paragraph 1 of the *Petition for Damages*

2.     Denies knowledge or information sufficient to form a belief as to the allegations in paragraph 2 of the *Petition for Damages,* except admits that Novartis Consumer Health, Inc is a Delaware Corporation with its principal place of business in New Jersey and that from January 1, 1997 until in or about November 2000, NCH manufactured, marketed and distributed, promoted and sold Tavist-D® which contained phenylpropanolamine

3      Denies knowledge or information sufficient to form a belief as to the allegations in paragraph 3 of the *Petition for Damages*

4.     The allegations in paragraph 4 of the *Petition for Damages* are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is required, NCH denies the allegations in paragraph 4

5      Denies knowledge or information sufficient to form a belief as to the

6

allegations in paragraph 5 of the *Petition for Damages*, except states upon information and belief, that PPA has been used in the United States in over-the-counter decongestant cough and cold products and appetite suppressants   NCH further states upon information and belief that Tavist-D® contained PPA until or about November 2000

      6       Denies the allegations in paragraph 6 of the *Petition for Damages*, except admits that a report entitled "PPA & Risk of Hemorrhagic Stroke   Final Report of the Hemorrhagic Stroke Project" was published on or about May 10, 2000.   NCH respectfully refers the Court to the said report for the contents therein   NCH further states that there have been anecdotal reports of strokes in patients who have used a product containing PPA, but that no causal link has been established between the use of PPA and stroke, and respectfully refers the Court to the studies and/or published reports referenced by plaintiff for the contents thereof

      7       Denies the allegations in paragraph 7 of the *Petition for Damages*.

      8.      Denies the allegations in paragraph 8 of the *Petition for Damages*

      9       Denies knowledge or information sufficient to form a belief as to the allegations in paragraph 9 of the *Petition for Damages*.

      10.      Denies the allegations in paragraph 10 of the *Petition for Damages*, except denies knowledge or information sufficient to form a belief as to plaintiff's medical history

      11       Denies the allegations in paragraph 11 of the *Petition for Damages*, and further states that there have been anecdotal reports of strokes in patients who have used a product containing PPA, but that no causal link has been established between the use of PPA and stroke.

7

12 Denies the allegations in paragraph 12 of the *Petition for Damages*, except denies knowledge or information sufficient to form a belief as to plaintiff's medical history

13 Denies the allegations in paragraph 13 of the *Petition for Damages*

14 Denies the allegations in paragraph 14 of the *Petition for Damages*.

15 Denies the allegations in paragraph 15 of the *Petition for Damages*, including subparts therein

16. Denies the allegations in paragraph 16 of the *Petition for Damages*

17 Denies the allegations in paragraph 17 of the *Petition for Damages*, including subparts therein

18 Denies the allegations in paragraph 18 (that is incorrectly numbered as paragraph 15 on page 6) of the *Petition for Damages*.

19 Denies the allegations in paragraph 19 (that is incorrectly numbered as paragraph 16 on page 6) of the *Petition for Damages*

20 The allegations in paragraph 20 (that is incorrectly numbered as paragraph 17 on page 6) and of the *Petition for Damages* are legal conclusions to which no responsive pleading is required   To the extent a responsive pleading is required, NCH denies the allegations in paragraph 20 of the *Petition for Damages*

21 NCH denies any allegation in the Petition not expressly admitted herein.

8

22.   NCH requests trial by jury

BY:   _____

Sessions, Fishman & Nathan, L L.P
**JOY GOLDBERG BRAUN (#3416) T.A.**
**ERIC R. NOWAK (#27025)**
**SHIRIN E. HARRELL (#27495)**
201 St Charles Avenue, Suite 3500
New Orleans, LA 70170-3500
          and
  Randolph S Sherman
Lori B Leskin
Danielle E Finck
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
**Attorneys for Defendant**
**NOVARTIS PHARMACEUTICALS CORPORATION**


## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 14th day of August , 2002, served

a copy of the foregoing pleading by facsimile and U.S. Mail to plaintiff's counsel, and by U S

mail, to all other counsel for the parties to this, properly addressed, and first class postage

prepaid

_____

ERIC R NOWAK

9





CASE·       2:02-cv-02436/P
DOCUMENT:  3
DATE·       08/15/02

CLERK:     tbl


*** There will be no noticing for this document.***

Document scanned by:_____

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 AUG -8 PM 12: 41

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO *12- 2434* |
| VERSUS | * | |
| | * | SECTION  *N* |
| BAYER CORPORATION; NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION, | * | MAGISTRATE |
| NOVARTIS CONSUMER HEALTH, INC ; | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE, SMOOTHIE KING | * | |
| CO , INC , SMOOTHIE KING SYSTEMS, | * | |
| INC ; and WALGREEN LOUISIANA CO , | * | |
| INC (D/B/A "WALGREENS") | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### CERTIFICATE OF FILING OF NOTICE OF REMOVAL

The undersigned attorney for defendants, Bayer Corporation, Novartis Pharmaceuticals Corporation and Novartis Consumer Health, Inc , hereby certify that on the 7 day of *August* , 2002, defendants caused to be filed with the Clerk of Court for the Thirty-Fourth Judicial District Court for the Parish of St Bernard in the State of Louisiana, a State Court Proceeding Notice of Removal, a copy of which is attached

Bayer_Donnelly Notice of Removal DOC

Fee
Process
X Dktd
CtRmDep
Doc No

Respectfully submitted,

Mary L Meyer, (La Bar No 19966)
John F Olinde, (La Bar No 1515)
Charles P. Blanchard, (La Bar No 18798)
**Chaffe, McCall, Phillips,**
       **Toler & Sarpy, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2300
Telephone. (504) 585-7000
**Attorneys for Bayer Corporation**

Joy G Braun (#3416)
Eric R Nowak (#27025)
Shirin E Harrell (#27495)
**SESSIONS, FISHMAN & NATHAN, L.L.P.**
201 St. Charles Avenue, Suite 3500
New Orleans, LA 70170
Telephone  (504) 582-1500
**Attorneys for Novartis Pharmaceuticals**
**Corporation and Novartis Consumer Health,**
**Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon

counsel for all parties to this proceeding by mailing a copy of same to each by First

Class United States mail, properly addressed and postage prepaid, on this __7th__ day of

__August__, 2002

**34th JUDICIAL DISTRICT COURT**

**PARISH OF ST. BERNARD**

NO. 96-487                                                          DIVISION "C"

**DAPHINE B DONNELLY, and**
**JEROME DONNELLY, Husband**

**VERSUS**

**BAYER CORPORATION; NOVARTIS PHARMACEUTICALS**
**CORPORATION; NOVARTIS CONSUMER HEALTH, INC.;**
**4LIFE RESEARCH, LC., Successor by merger to SHAPERITE;**
**SMOOTHIE KING CO., INC., SMOOTHIE KING SYSTEMS, INC.; and**
**WALGREEN LOUISIANA CO., INC. (D/B/A "WALGREENS")**

FILED: _____                      _____

                                                          **DEPUTY CLERK**

### STATE COURT PROCEEDINGS NOTICE OF REMOVAL

Notice is hereby given under 28 U S C ¶1441, *et seq* , that defendants, Bayer

Corporation, Novartis Pharmaceuticals Corporation and Novartis Consumer Health,

Inc., have filed a "Notice of Removal" of this action in and to the United States District

Court for the Eastern District of Louisiana on the 7th day of August, 2002, a copy of

which is attached   A copy of  that Notice of Removal has been served on all counsel of

record   In accordance with the terms of 28 U S C  ¶1446, the State Court shall proceed

no further with the action bearing No  96,487

                                   Respectfully submitted,

                                   _____
                                   Mary L. Meyer (La  Bar No  19966)
                                   John F  Olinde (La  Bar No  1515)
                                   Charles P  Blanchard (La  Bar No  18798)
                                   **CHAFFE, McCALL, PHILLIPS,**
                                        **TOLER & SARPY, L.L.P.**
                                   2300 Energy Centre, 1100 Poydras Street
                                   New Orleans, LA  70163-2300
                                   Telephone No  (504) 585-7000
                                   **Attorneys for Bayer Corporation**

570738_1 DOC

*Eric R. Nowak*

Joy G Braun (#3416)
Eric R Nowak (#27025)
Shirin E Harrell (#27495)
**SESSIONS, FISHMAN & NATHAN, L.L.P.**
201 St Charles Avenue, Suite 3500
New Orleans, LA 70170
Telephone  (504) 582-1500
**Attorneys for Novartis Pharmaceuticals**
**Corporation and Novartis Consumer Health,**
**Inc.**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this __7th__ day of __August__, 2002, served a

copy of the foregoing pleading on counsel for all parties to this proceeding, by mailing the

same by United States mail, properly addressed, and first class postage prepaid

Bayer_Donnelly State Court Notice of Removal DOC2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAPHINE B. DONNELLY, and | * | CIVIL ACTION |
| JEROME DONNELLY, Husband | * | |
| | * | NO. |
| VERSUS | * | |
| | * | SECTION |
| BAYER CORPORATION; NOVARTIS | * | |
| PHARMACEUTICALS CORPORATION; | * | MAGISTRATE |
| NOVARTIS CONSUMER HEALTH, INC.; | * | |
| 4LIFE RESEARCH, LC, Successor by | * | |
| merger to SHAPERITE, SMOOTHIE KING | * | |
| CO., INC ; SMOOTHIE KING SYSTEMS, | * | |
| INC.; and WALGREEN LOUISIANA CO., | * | |
| INC. (D/B/A "WALGREENS") | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## NOTICE OF REMOVAL

TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA:

NOW INTO COURT, through undersigned counsel, come Bayer Corporation, Novartis Pharmaceuticals Corporation and Novartis Consumer Health, Inc., who respectfully aver:

1. Bayer Corporation, Novartis Pharmaceuticals Corporation and Novartis Consumer Health, Inc. are named defendants in a civil suit filed in the Thirty-Fourth Judicial District Court for the Parish of St. Bernard, State of Louisiana, entitled *"Daphine B.*

Donnelly, and Jerome Donnelly, Husband vs Bayer Corporation; Novartis Pharmaceuticals Corporation; Novartis Consumer Health, Inc.; 4Life Research, LC, Successor by merger to Shaperite; Smoothie King Co., Inc.; Smoothie King Systems, Inc.; and Walgreen Louisiana Co., Inc. (d/b/a "Walgreens") and bearing No. 96-487-C on the docket of that court. Plaintiffs filed their original Petition on July 2, 2002. Copies of the State Court proceedings are attached to this Notice of Removal and constitute all process, pleadings and orders served on the petitioners to date in this suit.

2.    This suit is an action in which the Court has original jurisdiction under 28 U.S.C. §1332, as there is complete diversity of citizenship between plaintiffs and the defendants and the matter in controversy exceeds $75,000.00, exclusive of interest and costs. Thus, this action may be removed to this Court pursuant to the provisions of 28 U.S.C §1441.

3.    The forum state is Louisiana. The plaintiffs were, at the time they filed this action, and still are citizens of the State of Louisiana.

4.    Bayer Corporation was, at the time the action was filed, and still is a corporation incorporated in the State of Indiana, with its principal place of business in the State of Pennsylvania. Bayer Corporation was not, at the time this action was filed and still is not a citizen of the State of Louisiana.

5.    Novartis Pharmaceuticals Corporation was, at the time the action was filed, and still is a corporation incorporated in the State of Delaware, with its principal place of business in the State of New Jersey. Novartis Pharmaceuticals Corporation was not, at the time this action was filed and still is not a citizen of the State of Louisiana.

6 Novartis Consumer Health, Inc. was, at the time the action was filed, and still is a corporation incorporated in the State of Delaware, with its principal place of business in the State of New Jersey. Novartis Consumer Health, Inc. was not, at the time this action was filed and still is not a citizen of the State of Louisiana.

7. Plaintiff has named 4Life Research, LC as a defendant. On information and belief, 4Life Research, LC is a limited liability company organized in the State of Utah, with its principal place of business in Utah. The members of 4Life Research, LC are David Lisonbee and Bianca Lisonbee, both of whom are citizens of the state of Utah David Lisonbee and Bianca Lisonbee were not at the time this action was filed and still are not citizens of the state of Louisiana.

8. Complete diversity of citizenship exists in this case because the non-diverse defendants, i.e , Smoothie King Co., Inc , Smoothie King Systems, Inc and Walgreen Louisiana Co., Inc. have been fraudulently joined. *See, e.g., Borden v. General Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir. 1995) When the citizenship of the fraudulently joined party is disregarded, there is complete diversity of citizenship between the plaintiff and the remaining defendants.

9. Plaintiffs fraudulently joined Walgreen Louisiana Co., Inc. They assert claims based on strict liability, negligence, redhibition, fraud, negligent and reckless misrepresentation, and conspiracy to defraud against this defendant. (*See* Original Petition, ¶¶ 17–18). However, they cannot prevail on their claims against Walgreen Louisiana Co., Inc. under Louisiana law. *See, e.g., Perksin v. Bayer Corp., et al*, No. C01-2033R (W.D. Wash. Feb. 26, 2002).

10.    Plaintiffs fraudulently joined Smoothie King Co., Inc. and  Smoothie King Systems, Inc. *Cf. Perksin v. Bayer Corp., et al,* No. C01-2033R (W.D. Wash. Feb. 26, 2002) Additionally, plaintiff Daphine Donnelly alleges that she suffered a stroke on or about January 12, 1991 allegedly as a result of ingestion of products containing phenylpropanolamine (PPA) and/or ephedrine that she allegedly purchased at a Smoothie King store in Chalmette, Louisiana.  Smoothie King did not operate any store in Chalmette on or before January 12, 1991 (*see* Affidavit of Steve Kuhnau attached as Exhibit A).

11.    It is apparent from the face of plaintiff's Petition that the amount in controversy between the plaintiff and defendants exceeds $75,000.00, exclusive of interest and costs. *See, e.g., Gebbia v. Wal-Mart Stores, Inc.,* 233 F.3d 880 (5th Cir. 2000).  Plaintiff Daphne B. Donnelly alleges that she suffered a stroke resulting in paralysis to the right side of her body. (*See* Petition at ¶ 10). *Cf. Philippe v. Lloyd's Aero Boliviano,* 97-0258 (La. App. 1st Cir. 2/20/98), 710 So.2d 807 (trial court awarded total damages of $1,168,320 09 for stroke injuries to plaintiff and for loss of consortium to his wife; the Appeals Court later reversed finding no liability); *Smith v. Cameron Crews, Inc.,* 348 So.2d 179 (La. App. 3d Cir. 1977) (affirming award of $150,000.00 to plaintiff who suffered stroke as a result of defendant's negligence).

12.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Jerome Donnelly's loss of consortium claim. *See Booty v. Shoney's, Inc.,* 872 F.Supp 1524 (E.D. La. 1995).

4

13.    4Life Research consents to this Notice of Removal. *See* letter attached as Exhibit B.

14.    Petitioners file this Notice of Removal within 30 days of July 9, 2002, the earliest date of service on any defendant   Petitioners file this Notice of Removal without waiving any objections, exceptions or defenses to plaintiffs' Petition.

15.    Petitioners file and present herewith the sum of $150.00 as required by Title 28, United States Code, § 1446.

Respectfully submitted,

Mary L. Meyer (La  Bar No. 19966)
John F. Olinde (La. Bar No. 1515)
Charles P. Blanchard (La. Bar No. 18798)
**CHAFFE, McCALL, PHILLIPS,**
 **TOLER & SARPY, L.L.P.**
2300 Energy Centre,  1100 Poydras Street
New Orleans, LA  70163-2300
Telephone No.: (504) 585-7000
**Attorneys for Bayer Corporation**

Joy G. Braun (#3416)
Eric R. Nowak (#27025)
Shirin E. Harrell (#27495)
**SESSIONS, FISHMAN & NATHAN, L.L.P.**
201 St. Charles Avenue, Suite 3500
New Orleans, LA  70170
Telephone:  (504) 582-1500
**Attorneys for Novartis Pharmaceuticals**
**Corporation and Novartis Consumer Health,**
**Inc.**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 7th day of _August_, 2002, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by mailing the same by United States mail, properly addressed, and first class postage prepaid.

THIRTY FOURTH JUDICIAL DISTRICT COURT
PARISH OF ST. BERNARD
STATE OF LOUISIANA

CITATION



NO: 96-487

DAPHINE B. DONNELLY, AND JEROME DONNELLY, HUSBAND

VERSUS

BAYER CORPORATION; NOVARTIS PHARMACEUTICALS
CORPORATION; NOVARTIS CONSUMER HEALTH, INC.;
4LIFE RESEARCH, LC, SUCCESSOR BY MERGER TO SHAPERITE;
SMOOTHIE KING CO.; SMOOTHIE KING SYSTEMS, INC.;
WALGREEN LOUISIANA CO., INC. (D/B/A 'WALGREENS")

TO:   BAYER CORPORATION
      BY AND THRU ITS REGISTERED AGENT FOR SERVICE OF PROCESS
      CT CORPORATION SYSTEM
      8550 UNITED PLAZA BLVD.
      BATON ROUGE, LOUISIANA

      YOU HAVE BEEN SUED.  Attached to this Citation is a certified copy of Petition for
Damages.  The Petition tells you what you are being sued for.

      You must either DO WHAT THE PETITION ASKS, OR WITHIN FIFTEEN (15)
DAYS after you have received these documents, you must file an answer or other legal pleadings
in the office of the Clerk of Court at the St. Bernard Parish Courthouse, 1100 W. St. Bernard
Hwy, Chalmette, LA 70043.

      If you do not do what the Petition asks, or if you do not file an answer or legal pleading
within FIFTEEN (15) DAYS, a judgment may be entered against you without further notice.

      This Citation was issued by the Clerk of Court for St. Bernard Parish, Louisiana on the
2nd day of July, 2002.

sar     P1

                                    LENA R. TORRES
                                    CLERK OF COURT

                            BY _Susan Randazzo_
                                    Deputy Clerk   /S/ SUSAN A. RANDAZZO

DOMICILIARY
Received Parish of St. Bernard on the ____ day of _____, 2002 and on the ____ day of
_____, 2002, I served a copy of the within _____ by leaving
the same at _____ domicile _____ this Parish in the hands of
_____ a person apparently over the age of 14 years living and residing in said domicile,
whose name and other facts, connected with this service I learned by interrogating the same
_____ the said _____ being absent from _____ domicile
at the time of said service.
                        Returned Parish of St. Bernard_____, 2002

                                    _____
                                                Sheriff

PERSONAL
Received Parish of St. Bernard on the ____ day of _____, 2002 and on the _____ day of
_____, 2002, I served a copy of the within _____ on
_____ on _____ at _____ this
Parish his usual place of domicile, in the Parish of St. Bernard, by handing and delivering the same to in
                        Returned Parish of St. Bernard _____, 2002

                                    _____
                                                Sheriff

34TH JUDICIAL DISTRICT COURT
PARISH OF ST. BERNARD

STATE OF LOUISIANA

No. _____ 96 487

DAPHINE B. DONNELLY, and
JEROME DONNELLY, Husband            DIVISION C
        Plaintiff
    vs.



BAYER CORPORATION; NOVARTIS PHARMACEUTICALS            SECTION _____
CORPORATION; NOVARTIS CONSUMER HEALTH, INC.;
4LIFE RESEARCH, LC, Successor by merger to SHAPERITE;
SMOOTHIE KING CO., INC.;                **FILED**
SMOOTHIE KING SYSTEMS, INC.; and
WALGREEN LOUSIANA CO., INC. (D/B/A "WALGREENS")        JUL 0 2 2002
        Defendants                                     10:00am
                                                       _____
        **PETITION FOR DAMAGES**                       DEPUTY CLERK

NOW INTO COURT comes Petitioner, DAPHINE B. DONNELLY, a person of the full age of

majority, and respectfully represents the following:

1.    Petitioner, Daphine B. Donnelly, is a person of full age and majority and is a resident and

        domiciliary of St. Bernard Parish, State of Louisiana.

2.    Made pharmaceutical manufacturer defendants herein are:

        A.    Bayer Corporation is an Indiana Corporation with its principal place of business in

        Pennsylvania, regularly selling and advertising its product in the City of Chalmette, State of

        Louisiana.

        B.    Novartis Pharmaceuticals Corporation is a Delaware corporation with its principal

        place of business in New Jersey, regularly selling and advertising it product in the City of

        Chalmette, State of Louisiana.

        C.    Novartis Consumer Health, Inc  a Delaware corporation with its principal place of

        business in New Jersey, regularly selling and advertising its product in the City of Chalmette,

        State of Louisiana.

        D.    4Life Research, LC, successor in merger to Shaperite, a limited liability company

        established in Utah  4Life Research, on information and belief, manufactured and distributed

1

Shapefast®, thus bringing this action against 4Life Research, LC as a manufacturing defendant and as a seller/retailer defendant, regularly selling and advertising in the City of Chalmette, State of Louisiana.

3.    Made retailer/seller defendants herein are

A.    Smoothie King Co., Inc., a Louisiana corporation with its principal place of business in Kenner, Louisiana, on information and belief, regularly selling and advertising its product in the St. Bernard Parish, State of Louisiana, through a franchise operator.

B.    Smoothie King Systems, Inc., a Louisiana corporation with its principal place of business in Kenner, Louisiana, on information and belief, regularly selling and advertising its product in the St. Bernard Parish, State of Louisiana, through a franchise operator

C.    Walgreen Louisiana Co., Inc. (D/B/A "Walgreens"), a corporation organized in the State of Louisiana and licensed to and doing business in this state, with its principal place of business in Metairie, Louisiana, regularly selling and advertising its product in the City of Chalmette, State of Louisiana.

4.    Defendants are liable jointly and *in solido* unto Petitioner for an amount as is reasonable under the circumstances, for all costs and expert fees of these proceedings, for judicial interest from the date of demand, and for all and equitable relief for the following:

5.    Phenylpropanolamine (hereinafter "PPA")/ephedrine was an ingredient used in many over-the-counter and prescription cold medications, it was also used in many over-the-counter weight loss product.

6    Life threatening adverse effects related to PPA/ephedrine leading to hospitalization and/or death have been well documented and known to pharmaceutical companies for decades These life threatening events have been documented through the Food and Drug Administration (hereinafter referred to as FDA) warning/sentinel events systems, showing a large number of such events related to PPA/ephedrine.    Several life threatening PPA/ephedrine injuries have been reported in Clin-Alert and other medical reports. A recent study published by Yale University which concluded that PPA causes hemorrhagic strokes and also found an ingredient "Norephedrine", an active ingredient in PPA, is also found in ephedrine dietary supplements. In addition, PPA/ephedrine is known to cause other serious adverse effects including heart damage and myocardial infarction

2

7.    Defendant manufacturers have concealed material facts, including the serious risks associated with ingesting PPA/ephedrine, from Petitioner in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of products containing PPA/ephedrine.

8.    The causal relationship of Petitioner's injury to the products containing PPA/ephedrine were inherently undiscoverable by the Petitioner until she was warned of the dangers by the defendants and/or others  Petitioner did not discover, nor through the exercise of reasonable care and diligence could she have discovered that her injury and illness was in anyway related to products containing PPA/ephedrine until at the earliest when Petitioner was made aware that many PPA containing drugs were withdrawn from the market, and further, that ephedrine contains many of the same ingredients and has been linked to many injuries and deaths relating to its ingestion, just as with PPA-containing products .

9.    Petitioner purchased and/or ingested PPA/ephedrine containing product within all times relevant times, including, but not limited to, Shapefast®, Alka Seltzer Plus®, and Tavist-D®. Petitioner purchased Shapefast® at Smoothie King a nutritional/retail store located in the City of Chalmette, State of Louisiana.  Petitioner purchased Alka Seltzer Plus® and Tavist-D® at Walgreens, a pharmaceutical/retail store located in the City of Chalmette, State of Louisiana.

10.    Petitioner herein has suffered and still suffers serious and grievous injuries as a result of ingesting PPA/ephedrine containing products. On or about January 12, 1991, suffered from a stroke in Chalmette, Louisiana and was taken to Pendleton Methodist Memorial Hospital in New Orleans, Louisiana.  Petitioner suffered from, including, but not limited to, paralysis to the right side of her body.

11.    Petitioner avers that the sole and proximate cause of Petitioner's injury was her consumption of the above-referenced PPA/ephedrine-containing products, including, but not limited to, Shapefast®, Alka Seltzer Plus®, and Tavist-D®,  and that she did not become aware of the causal link between the consumption of PPA/ephedrine-containing products and these health risks and injuries until recently.

12.    As a direct and consequential result of the foregoing, Petitioner has sustained physical and mental pain and suffering, loss of income, loss of consortium, loss of enjoyment of life, and

3

other damages to be shown at trial. All of the foregoing damages are past, present and future

13.    Petitioner, Jerome Donnelly, husband of Daphine Donnelly, has suffered, sustained, and incurred injuries as a result of his spouse's debilitating and impaired condition  Petitioner has suffered loss of consortium in the past and will sustain, in reasonable medical probability, a loss of consortium claim in the future.

14.    The incident and any resultant damages occurred through no fault or negligence on the part of the Petitioner.

15.    The incident and any and all resultant injuries and damages to Petitioner occurred through the fault of the pharmaceutical manufacturer defendants, as manufacturers of the product which contained PPA/ephedrine, in the following non-exclusive particulars.

    1)    Pharmaceutical manufacturer defendants are liable under the Louisiana Products Liability Act, Louisiana Revised Statutes Annotated 9:2800.51 *et. seq.*

        a.)    Pharmaceutical manufacturer defendants manufactured products which were unreasonably dangerous in design at the time the product left the manufacturers' control and such defects in design were the proximate cause of damages suffered by Petitioner.  The products were ingested and taken as intended.

        b.)    Pharmaceutical manufacturer defendants failed to employ alternative designs which would have reduced, if not prevented Petitioner's damages, and their failure to employ alternative designs was a proximate cause of the damages suffered by Petitioner.

        c.)    Pharmaceutical manufacturer defendants failed to adopt alternative designs for their products and they knew of the likelihood that its products' design would cause Petitioner's injuries; and defendants knew the gravity of the potential injuries outweighed the utility of their products.

        d.)    Petitioner specifically alleges that an alternative design of pharmaceutical manufacturer defendants' products would have nullified, or substantially reduced the injuries Petitioner suffered.

        e.)    Pharmaceutical manufacturer defendants failed to post suitable and adequate warning(s) or instruction(s) concerning the risks of their products, including,

4

but not limited to, adequately warning potential users of the medication's known adverse side-effects, including heart problems and strokes, and any and all other side-effects suffered by Petitioner

    f)      Pharmaceutical manufacturer defendants failed to alert users, potential users, and retail dealers who would be expected to sell and/or recommend its products, of the hazards associated with said products' usage, and further actively promoted and advertised their products in a manner that suggested the design of their products was safe.

16.      The incident and any and all resultant injuries and damages to Petitioner occurred through the fault, negligence, want of care, gross negligence, and/or strict liability of pharmaceutical manufacturer defendants by their failure to exercise reasonable care in the manufacture of its products when they knew of should have known that Petitioner was a foreseeable and intended user of their products, and the risk of harm suffered by Petitioner was encompassed within the duty owed to protect intended users of their products.

17.      The incident and any and all resultant injuries and damages to Petitioner occurred through the fault of defendants, as sellers and/or retailers of the product which contained PPA/ephedrine, rendering retailer/seller defendants liable for any and all damages suffered by Petitioner, including attorney fees, in the following non-exclusive particulars:

    1.)      Retailer/seller defendants are liable for breach of the warranty against redhibitory defects, or vices, in the subject over-the-counter medications, existing at the time of the sale to Petitioner, pursuant to La. Civ. Code Article 2520 *et. seq.*

        a.)      Retailer/seller defendants failed to give Petitioner notice of the dangerous side-effects of the subject over-the-counter medications they sold to Petitioner which contained PPA/ephedrine; and retailer/seller defendants had actual knowledge of the existence of said redhibitory defects at the time of the sale.

    2.)      Retailer/seller defendants are liable under La. Civ. Coda Article 2524 for failure to sell a product fit for its ordinary usage.

        a.)      Retailer/seller defendants knew Petitioner's intended usage of the subject over-the-counter medications and knew of Petitioner's reliance on the skill and

judgment of retailer/seller defendants in the sale of their over-the-counter medications. Retailer/seller defendants failed to exercise the appropriate skill of judgment in the sale of their products to Petitioner.

3) Retailer/seller defendants are liable under La. Civ. Code Article 2529 for delivering products not of the kind or quality specified by the seller.

a.) Retailer/seller defendants sold over-the-counter medications to Petitioner which were misrepresented by retailer/seller defendants as being safe for human consumption. Retailer/seller defendant failed to adequately inform Petitioner of the dangers inherent in the over-the-counter medications they sold to Petitioner.

15. The incident and any and all resultant injuries and damages to Petitioner occurred through the fault, negligence, want of care, gross negligence, and/or strict liability retailer/seller defendants by their failure to exercise reasonable care in the sale and/or retail of its products when it knew, or should have known, that Petitioner was a buyer and a foreseeable intended user of their products, and the risk of harm suffered by Petitioner was encompassed within the duty owed by retailer/seller defendants to protect intended buyers and users of the subject products.

16. Pharmaceutical manufacturer defendants and retailer/seller defendants are liable *in solido* for intentional and willful conspiracy pursuant to La. Civ. Code Article 2324. Defendants, among themselves, conspired with one another to conceal material facts including the hazardous nature of the subject product they manufactured and sold to the public in general and Petitioner. Defendants knew that the injuries suffered by Petitioner were substantially certain to occur through the consumption and ingestion of the over-the-counter medication they manufactured and sold.

17. Venue for this action arises under Louisiana Code of Civ. Pro. Articles 42 *et seq.*, as the wrongful conduct of defendants complained of herein occurred in the Parish of St. Bernard. Petitioner purchased and suffered her injuries in St. Bernard Parish, State of Louisiana

WHEREFORE, Petitioner prays that after due proceedings be had there be a judgment rendered herein in favor of Petitioner and against defendants jointly, severally, and *in solido*, for such damages as are reasonable in the premises, together with the maximum legal interest from the date of judicial demand, until paid, for all costs of these proceedings,

and for all other general and equitable relief to which Petitioner may be awarded    Petitioner respectfully requests a TRIAL BY JURY.

Respectfully submitted,

J  Chandler Loupe
CLAITOR & LOUPR, LLC
STATE BAR NO. 19955
2223 Quail Run Drive, Ste. G
Baton Rouge, LA 70808
(225) 767-2222 (Telephone)
(225) 767-9003 (Facsimile)

KIRK LAW FIRM
Dana Kirk
MS STATE BAR NO. 100188
TX STATE BAR NO. 11057500
4265 San Felipe Street, Ste. 1400
Houston, TX 77027
(713) 651-0050

CLARK, DEPEW & TRACEY,LTD., L.L.P.
Clayton Clark
TX STATE BAR NO. 04275750
440 Louisiana Street, Ste. 1600
Houston, TX 77002
(713) 757-1400

J. ROBERT DAVIS LAW FIRM
J  Robert Davis
TX STATE BA NO  00788859
440 Louisiana Street, Ste. 1600
Houston, TX 77002
(713) 425-5255

PLEASE SERVE:

BAYER CORPORATION
By and Through its Registered Agent for Service of Process:
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA 70809

NOVARTIS PHARMACEUTICAL CORPORATION
By and Through its Registered Agent for Service of Process:
320 Somerulos Street
Baton Rouge, LA 70802

NOVARTIS CONSUMER HEALTH, INC.
By and Through its Registered Agent for Service of Process:
Corporation Service Company
2711 Centerville Road, Ste. 400
Wilmington, DE 19808

A TRUE COPY
Lena R. Torres
CLERK OF COURT
PARISH OF ST BERNARD
STATE OF LOUISIANA

By
DEPUTY CLERK

/S/ SUSAN A. RANDAZZO

7

4LIFE RESEARCH, LC
By and Through its Registered Agent for Service of Process.
David Lisonbee
9850 S. 300 W
Sandy, UT 840703262

SMOOTHIE KING CO , INC.
By and Through its Registered Agent for Service of Process'
Stephen Kuhnau, Sr
2400 Veterans Blvd , Ste 110
Kenner, LA 70062

SMOOTHIE KING SYSTEMS, INC.
By and Through its Registered Agent for Service of Process:
Stephen Kuhnau, Sr.
2400 Veterans Blvd., Ste. 110
Kenner, LA 70062

WALGREEN LOUISIANA CO., INC.
By and Through its Registered Agent for Service of Process:
The Prentice-Hall Corporation System, Inc.
701 South Peters Street, Second Floor
New Orleans, LA 70130

8

## AFFIDAVIT OF STEVE KUHNAU

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified in and for the parish and state set forth above, personally came and appeared:

### STEVE KUHNAU

who, after being duly sworn, deposed and stated the following:

1.

I have personal knowledge of the facts set forth in this Affidavit and, if called as a witness, could and would competently testify to the following.

2

The Smoothie King store located at 3366 Paris Road, Chalmette, Louisiana is the only store operated in Chalmette, Louisiana and there has been no other store operating in that geographic location in the history of the Smoothie King franchising business.

3.

The Franchise Agreement #20 which authorizes this Chalmette, Louisiana location was executed by franchisees on October 9, 1991.

4.

This Smoothie King store opened on February 17, 1992 at the location of 3366 Paris Road, Chalmette, Louisiana



EXHIBIT
A

WITNESSES:

_____        _____
                                        STEVE KUHNAU
                                        Chairman, Board of Directors

_____

SWORN TO AND SUBSCRIBED before me, this _2 6_ day of July, 2002, in New Orleans,
Louisiana.

_____
                Notary Public

H \DOCS\S\SMOOT\00001\PPA case\Donovan Affidavit.wpd

# CLAITOR & LOUPE, L.L.C.

### ATTORNEYS AND COUNSELORS AT LAW
2223 Quail Run Drive, Suite G, Baton Rouge, Louisiana 70808
Tel. (225) 767-2222 • Fax· (225) 767-9003

July 24, 2002

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**NO.: 7002 0460 0001 9147 0243**

**Novartis Consumer Health, Inc.**
By and Through its Registered Agent for Service of Process:
**Corporation Service Company**
2711 Centerville Road, Suite 400
Wilmington, DE 19808

> **RE: *Daphine B. Donnelly, and Jerome Donnelly, Husband vs. Bayer Corporation, et al***
> ***34th JDC, St. Bernard Parish, Docket No.96,487, Division "C"***

Sir/Madam:

We represent Daphine B. Donnelly, and Jerome Donnelly, husband, in claims arising out of incidents, wherein our clients ingested a product containing PPA.

We have filed the above numbered and captioned suit on behalf of Daphine B. Donnelly, and Jerome Donnelly, husband, for damages resulting from this incident. Since you are a non-resident of Louisiana, we are obtaining service of process on you pursuant to LSA R.S. 13:3201 et seq. In order to comply with the requirements of law, we give you herewith notice of such service, together with a certified copy of the Petition and Citation which is being sent by the plaintiffs, via certified mail.

Please forward this matter to your attorney for immediate handling.

Sincerely,

CLAITOR, LOUPE & BATEMAN, L.L.C.

J. Chandler Loupe

JCL:seb
Attachments

THIRTY FOURTH JUDICIAL DISTRICT COURT
PARISH OF ST. BERNARD
STATE OF LOUISIANA

CITATION



NO: 96-487

DAPHINE B. DONNELLY, AND JEROME DONNELLY, HUSBAND

VERSUS

BAYER CORPORATION; NOVARTIS PHARMACEUTICALS
CORPORATION; NOVARTIS CONSUMER HEALTH, INC.,;
4LIFE RESEARCH, LC, SUCCESSOR BY MERGER TO SHAPERITE;
SMOOTHIE KING CO.; SMOOTHIE KING SYSTEMS, INC.;
WALGREEN LOUISIANA CO., INC. (D/B/A "WALGREENS")

TO.   NOVARTIS CONSUMER HEALTH, INC.
BY AND THRU ITS REGISTERED AGENT FOR SERVICE OF PROCESS
CORPORATION SERVICE COMPANY
2711 CENTERVILLE ROAD, SUITE 400
WILMINGTON, DE  19808

YOU HAVE BEEN SUED.  Attached to this Citation is a certified copy of <u>Petition for Damages</u>.  The Petition tells you what you are being sued for.

You must either DO WHAT THE PETITION ASKS, OR WITHIN THIRTY (30) DAYS after you have received these documents, you must file an answer or other legal pleadings in the office of the Clerk of Court at the St. Bernard Parish Courthouse, 1100 W. St. Bernard Hwy, Chalmette, LA 70043.

If you do not do what the Petition asks, or if you do not file an answer or legal pleading within THIRTY (30) DAYS, a judgment may be entered against you without further notice.

This Citation was issued by the Clerk of Court for St. Bernard Parish, Louisiana on the 2nd day of July, 2002.

sar    P1

LENA R. TORRES
CLERK OF COURT

BY _Susan Randazzo_
Deputy Clerk/S/ SUSAN R. RANDAZZO

**DOMICILIARY**
Received Parish of St. Bernard on the _____ day of _____, 2002 and on the _____ day of _____, 2002, I served a copy of the within _____ by leaving the same at _____ domicile _____ this Parish in the hands of _____ a person apparently over the age of 14 years living and residing in said domicile, whose name and other facts, connected with this service I learned by interrogating the same _____ the said _____ being absent from _____ domicile at the time of said service.
Returned Parish of St. Bernard _____, 2002
_____
Sheriff

**PERSONAL**
Received Parish of St. Bernard on the _____ day of _____, 2002 and on the _____ day of _____, 2002, I served a copy of the within _____ on _____ on _____ at _____ this Parish his usual place of domicile, in the Parish of St. Bernard, by handing and delivering the same to in Returned Parish of St. Bernard _____, 2002
_____
Sheriff

THIRTY FOURTH JUDICIAL DISTRICT COURT
PARISH OF ST. BERNARD
STATE OF LOUISIANA

### CITATION



NO  96-487

DAPHINE B. DONNELLY, AND JEROME DONNELLY, HUSBAND

**VERSUS**

BAYER CORPORATION, NOVARTIS PHARMACEUTICALS
CORPORATION; NOVARTIS CONSUMER HEALTH, INC..;
4LIFE RESEARCH, LC, SUCCESSOR BY MERGER TO SHAPERITE;
SMOOTHIE KING CO.; SMOOTHIE KING SYSTEMS, INC.;
WALGREEN LOUISIANA CO., INC. (D/B/A "WALGREENS")

TO·    NOVARTIS PHARMACEUTICAL CORPORATION
BY AND THRU ITS REGISTERED AGENT FOR SERVICE OF PROCESS
320 SOMERULOS STREET
BATON ROUGE, LOUISIANA

YOU HAVE BEEN SUED. Attached to this Citation is a certified copy of Petition for Damages. The Petition tells you what you are being sued for

You must either DO WHAT THE PETITION ASKS, OR WITHIN FIFTEEN (15) DAYS after you have received these documents, you must file an answer or other legal pleadings in the office of the Clerk of Court at the St. Bernard Parish Courthouse, 1100 W. St. Bernard Hwy, Chalmette, LA  70043.

If you do not do what the Petition asks, or if you do not file an answer or legal pleading within FIFTEEN (15) DAYS, a judgment may be entered against you without further notice.

This Citation was issued by the Clerk of Court for St. Bernard Parish, Louisiana on the 2nd day of July, 2002.

sar    Pl

LENA R. TORRES
CLERK OF COURT

BY _____
Deputy Clerk/S/ SUSAN A. RANDAZZO



DOMICILIARY
Received Parish of St. Bernard on the ____ day of _____, 2002 and on the ____ day of _____, 2002, I served a copy of the within _____ by leaving the same at _____ domicile _____ that Parish in the hands of _____ a person apparently over the age of 14 years living and residing in said domicile, whose name and after facts, connected with this service I learned by interrogating the same _____

PERSONAL
Received Parish of St. Bernard on this _____ _____ day of _____, 2002, I served a copy of the within _____ Parish his usual place of domicile, in the Parish of St. Bernard, by handling and delivering the same to in Returned Parish of St. Bernard _____, 2002

Sheriff



**RESEARCH**



9850 South 300 West • Sandy, UT 84070 • (801) 562-3600 • (801) 562-3611 Fax

July 31, 2002

**VIA FACSIMILE ONLY**
(504) 585-7075

Charles Blanchard
CHAFFE, MCCALL, PHILLIPS, TOLER & SARPY
2300 Energy Centre, 1100 Poydras St
New Orleans, LA 70163

Re.     Donnelly, et. al. v. Bayer Corporation, et al
        34th JDC, St Bernard Parish
        Docket No. 96,487, Division "C"
        **Consent to Notice of Removal**

Dear Charles:

        I am corporate counsel for 4Life Research, LC, one of the named defendants in the above
action. I am responsible for managing all litigation for 4Life worldwide.

        4Life is incorporated in Utah, and has its principal place of business in Sandy, Utah

        You have indicated that Bayer and other defendants plan to file a Notice of Removal in
the U S. District Court for the Eastern District of Louisiana, and that all defendants who have
been properly served in the action must agree to such removal   4life was served with the
complaint in the above action on **July 29, 2002,** and hereby consents to the notice of removal,
but reserves all defenses objections and claims

        Very truly yours,

        Jack Brannelly
        Vice President of Legal Affairs
        4Life Research, LC

        JJB/

        cc.     Steve Tew, CFO, COO
                File

**EXHIBIT**
B

4Life Research, LC



CASE       2:02-cv-02436/P
DOCUMENT: 2
DATE·      08/09/02

CLERK:     tbl


*** There will be no noticing for this document.***

Document scanned by: _____

FILED
U.S. DISTRICT COURT -
EASTERN DISTRICT OF LA

2002 AUG -7  AM II: 52

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAPHINE B DONNELLY, and <br> JEROME DONNELLY, Husband | CIVIL ACTION <br><br> NO *02-2436* <br><br> SECTION N <br><br> MAGISTRATE MAG. 1 |
| VERSUS | |
| BAYER CORPORATION, NOVARTIS <br> PHARMACEUTICALS CORPORATION, <br> NOVARTIS CONSUMER HEALTH, INC ; <br> 4LIFE RESEARCH, LC, Successor by <br> merger to SHAPERITE, SMOOTHIE KING <br> CO , INC , SMOOTHIE KING SYSTEMS, <br> INC , and WALGREEN LOUISIANA CO , <br> INC  (D/B/A "WALGREENS") | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## NOTICE OF REMOVAL

**TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA:**

**NOW INTO COURT,** through undersigned counsel, come Bayer Corporation,

Novartis Pharmaceuticals Corporation and Novartis Consumer Health, Inc , who

respectfully aver

1      Bayer Corporation, Novartis Pharmaceuticals Corporation and Novartis

Consumer Health, Inc  are named defendants in a civil suit filed in the Thirty-Fourth

Judicial District Court for the Parish of St  Bernard, State of Louisiana, entitled *"Daphine B*

*Donnelly, and Jerome Donnelly, Husband vs Bayer Corporation, Novartis Pharmaceuticals Corporation, Novartis Consumer Health, Inc, 4Life Research, LC, Successor by merger to Shaperite, Smoothie King Co, Inc; Smoothie King Systems, Inc; and Walgreen Louisiana Co., Inc (d/b/a "Walgreens")* and bearing No 96-487-C on the docket of that court. Plaintiffs filed their original Petition on July 2, 2002 Copies of the State Court proceedings are attached to this Notice of Removal and constitute all process, pleadings and orders served on the petitioners to date in this suit.

2 This suit is an action in which the Court has original jurisdiction under 28 U S C §1332, as there is complete diversity of citizenship between plaintiffs and the defendants and the matter in controversy exceeds $75,000 00, exclusive of interest and costs Thus, this action may be removed to this Court pursuant to the provisions of 28 U S C. §1441

3 The forum state is Louisiana The plaintiffs were, at the time they filed this action, and still are citizens of the State of Louisiana

4 Bayer Corporation was, at the time the action was filed, and still is a corporation incorporated in the State of Indiana, with its principal place of business in the State of Pennsylvania Bayer Corporation was not, at the time this action was filed and still is not a citizen of the State of Louisiana.

5 Novartis Pharmaceuticals Corporation was, at the time the action was filed, and still is a corporation incorporated in the State of Delaware, with its principal place of business in the State of New Jersey Novartis Pharmaceuticals Corporation was not, at the time this action was filed and still is not a citizen of the State of Louisiana

6    Novartis Consumer Health, Inc was, at the time the action was filed, and still is a corporation incorporated in the State of Delaware, with its principal place of business in the State of New Jersey Novartis Consumer Health, Inc was not, at the time this action was filed and still is not a citizen of the State of Louisiana

7    Plaintiff has named 4Life Research, LC as a defendant. On information and belief, 4Life Research, LC is a limited liability company organized in the State of Utah, with its principal place of business in Utah The members of 4Life Research, LC are David Lisonbee and Bianca Lisonbee, both of whom are citizens of the state of Utah David Lisonbee and Bianca Lisonbee were not at the time this action was filed and still are not citizens of the state of Louisiana

8    Complete diversity of citizenship exists in this case because the non-diverse defendants, i e, Smoothie King Co, Inc, Smoothie King Systems, Inc. and Walgreen Louisiana Co, Inc have been fraudulently joined    *See, e.g, Borden v General Dynamics Corp*, 60 F 3d 213, 217 (5th Cir 1995)    When the citizenship of the fraudulently joined party is disregarded, there is complete diversity of citizenship between the plaintiff and the remaining defendants

9    Plaintiffs fraudulently joined Walgreen Louisiana Co, Inc    They assert claims based on strict liability, negligence, redhibition, fraud, negligent and reckless misrepresentation, and conspiracy to defraud against this defendant. (*See* Original Petition, ¶¶ 17–18)    However, they cannot prevail on their claims against Walgreen Louisiana Co, Inc. under Louisiana law    *See, e.g., Perksin v. Bayer Corp., et al*, No C01-2033R (W D Wash Feb 26, 2002).

10   Plaintiffs fraudulently joined Smoothie King Co , Inc  and  Smoothie King Systems, Inc   *Cf Perksin v Bayer Corp , et al*, No  C01-2033R (W D  Wash  Feb  26, 2002)  Additionally, plaintiff Daphne Donnelly alleges that she suffered a stroke on or about January  12,  1991  allegedly  as  a  result  of  ingestion  of  products  containing phenylpropanolamine  (PPA)  and/or  ephedrine  that  she  allegedly  purchased  at  a Smoothie King store in Chalmette, Louisiana  Smoothie King did not operate any store in Chalmette on or before January 12, 1991 (*see* Affidavit of Steve Kuhnau attached as Exhibit A)

11   It is apparent from the face of plaintiff's Petition that the amount in controversy between the plaintiff and defendants exceeds $75,000 00, exclusive of interest and costs   *See, e.g , Gebbia v  Wal-Mart Stores, Inc ,* 233 F 3d 880 (5th Cir  2000)   Plaintiff Daphne B  Donnelly alleges that she suffered a stroke resulting in paralysis to the right side of her body   (*See* Petition at ¶ 10)   *Cf  Philippe v  Lloyd's Aero Boliviano*, 97-0258 (La App  1st Cir  2/20/98), 710 So 2d 807 (trial court awarded total damages of $1,168,320 09 for stroke injuries to plaintiff and for loss of consortium to his wife, the Appeals Court later reversed finding no liability), *Smith v  Cameron Crews, Inc ,* 348 So 2d 179 (La  App  3d Cir  1977) (affirming award of $150,000 00 to plaintiff who suffered stroke as a result of defendant's negligence)

12   This Court has supplemental jurisdiction under 28 U S C  § 1367 over Jerome Donnelly's loss of consortium claim   *See Booty v. Shoney's, Inc ,* 872 F Supp  1524 (E D  La  1995)

13.     4Life Research consents to this Notice of Removal.  *See* letter attached as Exhibit B

14     Petitioners file this Notice of Removal within 30 days of July 9, 2002, the earliest date of service on any defendant  Petitioners file this Notice of Removal without waiving any objections, exceptions or defenses to plaintiffs' Petition

15     Petitioners file and present herewith the sum of $150 00 as required by Title 28, United States Code, § 1446

Respectfully submitted,

Mary L  Meyer (La. Bar No. 19966)
John F  Olinde (La  Bar No  1515)
Charles P. Blanchard (La  Bar No  18798)
**CHAFFE, McCALL, PHILLIPS,**
 **TOLER & SARPY, L.L.P.**
2300 Energy Centre,  1100 Poydras Street
New Orleans, LA  70163-2300
Telephone No   (504) 585-7000
***Attorneys for Bayer Corporation***

*Eric  R.  Nowak*

Joy G  Braun (#3416)
Eric R  Nowak (#27025)
Shirin E  Harrell (#27495)
**SESSIONS, FISHMAN & NATHAN, L.L.P.**
201 St  Charles Avenue, Suite 3500
New Orleans, LA  70170
Telephone  (504) 582-1500
**Attorneys for Novartis Pharmaceuticals**
**Corporation and Novartis Consumer Health,**
**Inc.**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this _7th_ day of _August_, 2002, served a

copy of the foregoing pleading on counsel for all parties to this proceeding, by mailing the

same by United States mail, properly addressed, and first class postage prepaid

THIRTY FOURTH JUDIC / L DISTRICT COURT
PARISH OF ST. BERNARD
STATE OF LOUISIANA

CITATION

NO· 96-487

DAPHINE B DONNELLY, AND JEROME DONNELLY, HUSBAND

VERSUS

BAYER CORPORATION; NOVARTIS PHARMACEUTICALS
CORPORATION, NOVARTIS CONSUMER HEALTH, INC.;
4LIFE RESEARCH, LC, SUCCESSOR BY MERGER TO SHAPERITE;
SMOOTHIE KING CO., SMOOTHIE KING SYSTEMS, INC;
WALGREEN LOUISIANA CO., INC. (D/B/A 'WALGREENS")



TO:   **BAYER CORPORATION**
**BY AND THRU ITS REGISTERED AGENT FOR SERVICE OF PROCESS**
**CT CORPORATION SYSTEM**
**8550 UNITED PLAZA BLVD.**
**BATON ROUGE, LOUISIANA**

YOU HAVE BEEN SUED. Attached to this Citation is a certified copy of <u>Petition for</u>
<u>Damages</u>. The Petition tells you what you are being sued for

You must either DO WHAT THE PETITION ASKS, OR WITHIN FIFTEEN (15)
DAYS after you have received these documents, you must file an answer or other legal pleadings
in the office of the Clerk of Court at the St. Bernard Parish Courthouse, 1100 W. St Bernard
Hwy, Chalmette, LA  70043.

If you do not do what the Petition asks, or if you do not file an answer or legal pleading
within FIFTEEN (15) DAYS, a judgment may be entered against you without further notice.

This Citation was issued by the Clerk of Court for St. Bernard Parish, Louisiana on the
<u>2nd</u> day of <u>July</u>, 2002.

sar    P1

LENA R. TORRES
CLERK OF COURT

BY  _Susan Randazzo_
Deputy Clerk  **/S/ SUSAN A. RANDAZZO**

**DOMICILIARY**
Received Parish of St. Bernard on the _____ day of _____, 2002 and on the _____ day of
_____, 2002, I served a copy of the within _____ by leaving
the same at _____ domicile _____ this Parish in the hands of
_____ a person apparently over the age of 14 years living and residing in said domicile,
whose name and other facts, connected with this service I learned by interrogating the same
_____ the said _____ being absent from _____ domicile
at the time of said service.
                Returned Parish of St. Bernard_____, 2002

                                              _____
                                                        Sheriff

**PERSONAL**
Received Parish of St. Bernard on the _____ day of _____, 2002 and on the _____ day of
_____, 2002, I served a copy of the within _____ on
_____ on _____ at _____ this
Parish his usual place of domicile, in the Parish of St Bernard, by handling and delivering the same to in
                Returned Parish of St Bernard _____, 2002

                                              _____
                                                        Sheriff

34TH JUDICIAL DISTRICT COURT
PARISH OF ST. BERNARD

STATE OF LOUISIANA

No. _____ 96 487

DAPHINE B. DONNELLY, and
JEROME DONNELLY, Husband                      DIVISION "C"
        Plaintiff
    vs.

BAYER CORPORATION; NOVARTIS PHARMACEUTICALS        SECTION _____
CORPORATION; NOVARTIS CONSUMER HEALTH, INC.;
4LIFE RESEARCH, LC, Successor by merger to SHAPERITE;
SMOOTHIE KING CO., INC.;                            **FILED**
SMOOTHIE KING SYSTEMS, INC.; and
WALGREEN LOUSIANA CO., INC. (D/B/A "WALGREENS")     JUL 0 2 2002
        Defendants                                    10:10 am
                                                    a Lena R Jerres
            PETITION FOR DAMAGES                    DEPUTY CLERK

NOW INTO COURT comes Petitioner, DAPHINE B. DONNELLY, a person of the full age of

majority, and respectfully represents the following·

1.   Petitioner, Daphine B Donnelly, is a person of full age and majority and is a resident and

     domiciliary of St Bernard Parish, State of Louisiana.

2.   Made pharmaceutical manufacturer defendants herein are·

     A    Bayer Corporation is an Indiana Corporation with its principal place of business in

     Pennsylvania, regularly selling and advertising its product in the City of Chalmette, State of

     Louisiana.

     B    Novartis Pharmaceuticals Corporation is a Delaware corporation with its principal

     place of business in New Jersey, regularly selling and advertising it product in the City of

     Chalmette, State of Louisiana

     C.   Novartis Consumer Health, Inc  a Delaware corporation with its principal place of

     business in New Jersey, regularly selling and advertising its product in the City of Chalmette,

     State of Louisiana.

     D.   4Life Research, LC, successor in merger to Shaperite, a limited liability company

     established in Utah  4Life Research, on information and belief, manufactured and distributed

1

Shapefast®, thus bringing this action against 4Life Research, LC as a manufacturing defendant and as a seller/retailer defendant, regularly selling and advertising in the City of Chalmette, State of Louisiana

3   Made retailer/seller defendants herein are

A   Smoothie King Co , Inc , a Louisiana corporation with its principal place of business in Kenner, Louisiana, on information and belief, regularly selling and advertising its product in the St. Bernard Parish, State of Louisiana, through a franchise operator.

B.   Smoothie King Systems, Inc., a Louisiana corporation with its principal place of business in Kenner, Louisiana, on information and belief, regularly selling and advertising its product in the St. Bernard Parish, State of Louisiana, through a franchise operator.

C.   Walgreen Louisiana Co , Inc  (D/B/A "Walgreens"), a corporation organized in the State of Louisiana and licensed to and doing business in this state, with its principal place of business in Metairie, Louisiana, regularly selling and advertising its product in the City of Chalmette, State of Louisiana.

4.   Defendants are liable jointly and *in solido* unto Petitioner for an amount as is reasonable under the circumstances, for all costs and expert fees of these proceedings, for judicial interest from the date of demand, and for all and equitable relief for the following·

5   Phenylpropanolamine (hereinafter "PPA")/ephedrine was an ingredient used in many over-the-counter and prescription cold medications; it was also used in many over-the-counter weight loss product.

6   Life threatening adverse effects related to PPA/ephedrine leading to hospitalization and/or death have been well documented and known to pharmaceutical companies for decades These life threatening events have been documented through the Food and Drug Administration (hereinafter referred to as FDA) warning/sentinel events systems, showing a large number of such events related to PPA/ephedrine.   Several life threatening PPA/ephedrine injuries have been reported in Clin-Alert and other medical reports  A recent study published by Yale University which concluded that PPA causes hemorrhagic strokes and also found an ingredient "Norephedrine", an active ingredient in PPA, is also found in ephedrine dietary supplements  In addition, PPA/ephedrine is known to cause other serious adverse effects including heart damage and myocardial infarction

2

Defendant manufacturers have concealed material facts, including the serious risks associated with ingesting PPA/ephedrine, from Petitioner in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of products containing PPA/ephedrine

8       The causal relationship of Petitioner's injury to the products containing PPA/ephedrine were inherently undiscoverable by the Petitioner until she was warned of the dangers by the defendants and/or others   Petitioner did not discover, nor through the exercise of reasonable care and diligence could she have discovered that her injury and illness was in anyway related to products containing PPA/ephedrine until at the earliest when Petitioner was made aware that many PPA containing drugs were withdrawn from the market, and further, that ephedrine contains many of the same ingredients and has been linked to many injuries and deaths relating to its ingestion, just as with PPA-containing products.

9.      Petitioner purchased and/or ingested PPA/ephedrine containing product within all times relevant times, including, but not limited to, Shapefast®, Alka Seltzer Plus®, and Tavist-D®. Petitioner purchased Shapefast® at Smoothie King a nutritional/retail store located in the City of Chalmette, State of Louisiana.  Petitioner purchased Alka Seltzer Plus® and Tavist-D® at Walgreens, a pharmaceutical/retail store located in the City of Chalmette, State of Louisiana

10      Petitioner herein has suffered and still suffers serious and grievous injuries as a result of ingesting PPA/ephedrine containing products.  On or about January 12, 1991, suffered from a stroke in Chalmette, Louisiana and was taken to Pendleton Methodist Memorial Hospital in New Orleans, Louisiana.  Petitioner suffered from, including, but not limited to, paralysis to the right side of her body

11      Petitioner avers that the sole and proximate cause of Petitioner's injury was her consumption of the above-referenced PPA/ephedrine-containing products, including, but not limited to, Shapefast®, Alka Seltzer Plus®, and Tavist-D®,  and that she did not become aware of the causal link between the consumption of PPA/ephedrine-containing products and these health risks and injuries until recently

12.     As a direct and consequential result of the foregoing, Petitioner has sustained physical and mental pain and suffering, loss of income, loss of consortium, loss of enjoyment of life, and

3

other damages to be shown at trial  All of the foregoing damages are past, present and future

13    Petitioner, Jerome Donnelly, husband of Daphine Donnelly, has suffered, sustained, and incurred injuries as a result of his spouse's debilitating and impaired condition  Petitioner has suffered loss of consortium in the past and will sustain, in reasonable medical probability, a loss of consortium claim in the future

14.    The incident and any resultant damages occurred through no fault or negligence on the part of the Petitioner

15    The incident and any and all resultant injuries and damages to Petitioner occurred through the fault of the pharmaceutical manufacturer defendants, as manufacturers of the product which contained PPA/ephedrine, in the following non-exclusive particulars.

    1)    Pharmaceutical manufacturer defendants are liable under the Louisiana Products Liability Act, Louisiana Revised Statutes Annotated 9.2800.51 *et seq.*

        a.)    Pharmaceutical manufacturer defendants manufactured products which were unreasonably dangerous in design at the time the product left the manufacturers' control and such defects in design were the proximate cause of damages suffered by Petitioner  The products were ingested and taken as intended.

        b.)    Pharmaceutical manufacturer defendants failed to employ alternative designs which would have reduced, if not prevented Petitioner's damages, and their failure to employ alternative designs was a proximate cause of the damages suffered by Petitioner

        c.)    Pharmaceutical manufacturer defendants failed to adopt alternative designs for their products and they knew of the likelihood that its products' design would cause Petitioner's injuries; and defendants knew the gravity of the potential injuries outweighed the utility of their products

        d )    Petitioner specifically alleges that an alternative design of pharmaceutical manufacturer defendants' products would have nullified, or substantially reduced the injuries Petitioner suffered

        e )    Pharmaceutical manufacturer defendants failed to post suitable and adequate warning(s) or instruction(s) concerning the risks of their products, including,

4

but not limited to, adequately warning potential users of the medication's known adverse side-effects, including heart problems and strokes, and any and all other side-effects suffered by Petitioner

f) Pharmaceutical manufacturer defendants failed to alert users, potential users, and retail dealers who would be expected to sell and/or recommend its products, of the hazards associated with said products' usage, and further actively promoted and advertised their products in a manner that suggested the design of their products was safe

16    The incident and any and all resultant injuries and damages to Petitioner occurred through the fault, negligence, want of care, gross negligence, and/or strict liability of pharmaceutical manufacturer defendants by their failure to exercise reasonable care in the manufacture of its products when they knew of should have known that Petitioner was a foreseeable and intended user of their products, and the risk of harm suffered by Petitioner was encompassed within the duty owed to protect intended users of their products.

17.   The incident and any and all resultant injuries and damages to Petitioner occurred through the fault of defendants, as sellers and/or retailers of the product which contained PPA/ephedrine, rendering retailer/seller defendants liable for any and all damages suffered by Petitioner, including attorney fees, in the following non-exclusive particulars

1) Retailer/seller defendants are liable for breach of the warranty against redhibitory defects, or vices, in the subject over-the-counter medications, existing at the time of the sale to Petitioner, pursuant to La Civ. Code Article 2520 *et seq.*

a) Retailer/seller defendants failed to give Petitioner notice of the dangerous side-effects of the subject over-the-counter medications they sold to Petitioner which contained PPA/ephedrine; and retailer/seller defendants had actual knowledge of the existence of said redhibitory defects at the time of the sale.

2) Retailer/seller defendants are liable under La. Civ Coda Article 2524 for failure to sell a product fit for its ordinary usage

a.) Retailer/seller defendants knew Petitioner's intended usage of the subject over-the-counter medications and knew of Petitioner's reliance on the skill and

judgment of retailer/seller defendants in the sale of their over-the-counter medications Retailer/seller defendants failed to exercise the appropriate skill of judgment in the sale of their products to Petitioner

3 )    Retailer/seller defendants are liable under La Civ Code Article 2529 for delivering products not of the kind or quality specified by the seller

a.)    Retailer/seller defendants sold over-the-counter medications to Petitioner which were misrepresented by retailer/seller defendants as being safe for human consumption Retailer/seller defendant failed to adequately inform Petitioner of the dangers inherent in the over-the-counter medications they sold to Petitioner.

15    The incident and any and all resultant injuries and damages to Petitioner occurred through the fault, negligence, want of care, gross negligence, and/or strict liability retailer/seller defendants by their failure to exercise reasonable care in the sale and/or retail of its products when it knew, or should have known, that Petitioner was a buyer and a foreseeable intended user of their products, and the risk of harm suffered by Petitioner was encompassed within the duty owed by retailer/seller defendants to protect intended buyers and users of the subject products

16    Pharmaceutical manufacturer defendants and retailer/seller defendants are liable *in solido* for intentional and willful conspiracy pursuant to La Civ Code Article 2324 Defendants, among themselves, conspired with one another to conceal material facts including the hazardous nature of the subject product they manufactured and sold to the public in general and Petitioner. Defendants knew that the injuries suffered by Petitioner were substantially certain to occur through the consumption and ingestion of the over-the-counter medication they manufactured and sold.

17.    Venue for this action arises under Louisiana Code of Civ Pro. Articles 42 *et seq.*, as the wrongful conduct of defendants complained of herein occurred in the Parish of St. Bernard. Petitioner purchased and suffered her injuries in St. Bernard Parish, State of Louisiana

**WHEREFORE**, Petitioner prays that after due proceedings be had there be a judgment rendered herein in favor of Petitioner and against defendants jointly, severally, and *in solido*, for such damages as are reasonable in the premises, together with the maximum legal interest from the date of judicial demand, until paid, for all costs of these proceedings,

6

and for all other general and equitable relief to which Petitioner may be awarded  Petitioner

respectfully requests a TRIAL BY JURY

Respectfully submitted,

J Chandler Loupe
CLAITOR & LOUPR, LLC
STATE BAR NO. 19955
2223 Quail Run Drive, Ste  G
Baton Rouge, LA  70808
(225) 767-2222 (Telephone)
(225) 767-9003 (Facsimile)

**KIRK LAW FIRM**
Dana Kirk
MS STATE BAR NO. 100188
TX STATE BAR NO  11057500
4265 San Felipe Street, Ste. 1400
Houston, TX  77027
(713) 651-0050

**CLARK, DEPEW & TRACEY,LTD., L.L.P.**
Clayton Clark
TX STATE BAR NO. 04275750
440 Louisiana Street, Ste. 1600
Houston, TX  77002
(713) 757-1400

**J. ROBERT DAVIS LAW FIRM**
J  Robert Davis
TX STATE BA NO. 00788859
440 Louisiana Street, Ste  1600
Houston, TX  77002
(713) 425-5255

PLEASE SERVE:

BAYER CORPORATION
By and Through its Registered Agent for Service of Process·
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA  70809

NOVARTIS PHARMACEUTICAL CORPORATION
By and Through its Registered Agent for Service of Process.
320 Somerulos Street
Baton Rouge, LA  70802

NOVARTIS CONSUMER HEALTH, INC
By and Through its Registered Agent for Service of Process.
Corporation Service Company
2711 Centerville Road, Ste  400
Wilmington, DE  19808

7

**A TRUE COPY**
Lena R. Torres
CLERK OF COURT
PARISH OF ST BERNARD
STATE OF LOUISIANA

By
DEPUTY CLERK

/S/ SUSAN A. RANDAZZO

4LIFE RESEARCH, LC
By and Through its Registered Agent for Service of Process
David Lisonbee
9850 S  300 W
Sandy, UT 840703262

SMOOTHIE KING CO , INC
By and Through its Registered Agent for Service of Process
Stephen Kuhnau, Sr
2400 Veterans Blvd , Ste  110
Kenner, LA  70062

SMOOTHIE KING SYSTEMS, INC
By and Through its Registered Agent for Service of Process:
Stephen Kuhnau, Sr.
2400 Veterans Blvd , Ste. 110
Kenner, LA  70062

WALGREEN LOUISIANA CO , INC
By and Through its Registered Agent for Service of Process.
The Prentice-Hall Corporation System, Inc.
701 South Peters Street, Second Floor
New Orleans, LA  70130

# CLAITOR & LOUPE, L.L.C.

## ATTORNEYS AND COUNSELORS AT LAW
2223 Quail Run Drive, Suite G, Baton Rouge, Louisiana 70808
Tel (225) 767-2222 ◆ Fax· (225) 767-9003

July 24, 2002

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED** .
**NO.: 7002 0460 0001 9147 0243**

**Novartis Consumer Health, Inc.**
By and Through its Registered Agent for Service of Process·
**Corporation Service Company**
2711 Centerville Road, Suite 400
Wilmington, DE 19808

> **RE:** *Daphine B. Donnelly, and Jerome Donnelly, Husband vs. Bayer Corporation, et al*
> *34th JDC, St. Bernard Parish, Docket No.96,487, Division "C"*

Sir/Madam:

We represent Daphine B. Donnelly, and Jerome Donnelly, husband, in claims arising out of incidents, wherein our clients ingested a product containing PPA.

We have filed the above numbered and captioned suit on behalf of Daphine B. Donnelly, and Jerome Donnelly, husband, for damages resulting from this incident. Since you are a non-resident of Louisiana, we are obtaining service of process on you pursuant to LSA R.S. 13.3201 et seq. In order to comply with the requirements of law, we give you herewith notice of such service, together with a certified copy of the Petition and Citation which is being sent by the plaintiffs, via certified mail.

Please forward this matter to your attorney for immediate handling.

Sincerely,

CLAITOR, LOUPE & BATEMAN, L.L.C

J Chandler Loupe

JCL,seb
Attachments

THIRTY FOURTH JUDICIAL DISTRICT COURT
PARISH OF ST. BERNARD
STATE OF LOUISIANA

CITATION



NO· 96-487

DAPHINE B. DONNELLY, AND JEROME DONNELLY, HUSBAND

VERSUS

BAYER CORPORATION; NOVARTIS PHARMACEUTICALS
CORPORATION; NOVARTIS CONSUMER HEALTH, INC.,,
4LIFE RESEARCH, LC, SUCCESSOR BY MERGER TO SHAPERITE;
SMOOTHIE KING CO , SMOOTHIE KING SYSTEMS, INC ;
WALGREEN LOUISIANA CO , INC (D/B/A "WALGREENS")

TO    NOVARTIS CONSUMER HEALTH, INC.
BY AND THRU ITS REGISTERED AGENT FOR SERVICE OF PROCESS
CORPORATION SERVICE COMPANY
2711 CENTERVILLE ROAD, SUITE 400
WILMINGTON, DE  19808

YOU HAVE BEEN SUED. Attached to this Citation is a certified copy of **Petition for Damages** The Petition tells you what you are being sued for.

You must either DO WHAT THE PETITION ASKS, OR WITHIN THIRTY (30) DAYS after you have received these documents, you must file an answer or other legal pleadings in the office of the Clerk of Court at the St. Bernard Parish Courthouse, 1100 W. St. Bernard Hwy, Chalmette, LA  70043.

If you do not do what the Petition asks, or if you do not file an answer or legal pleading within THIRTY (30) DAYS, a judgment may be entered against you without further notice.

This Citation was issued by the Clerk of Court for St. Bernard Parish, Louisiana on the 2nd day of July, 2002

sar    P1

LENA R. TORRES
CLERK OF COURT

BY _____
Deputy Clerk/S/ SUSAN A. RANDAZZO

DOMICILIARY
Received Parish of St. Bernard on the _____ day of _____, 2002 and on the _____ day of _____, 2002, I served a copy of the within _____ by leaving the same at _____ domicile _____ this Parish in the hands of _____ a person apparently over the age of 14 years living and residing in said domicile, whose name and other facts, connected with this service I learned by interrogating the same _____ the said _____ being absent from _____ domicile at the time of said service
Returned Parish of St. Bernard _____, 2002

_____
Sheriff

PERSONAL
Received Parish of St. Bernard on the _____ day of _____, 2002 and on the _____ day of _____, 2002, I served a copy of the within _____ on _____ on _____ at _____ this Parish his usual place of domicile, in the Parish of St. Bernard, by handling and delivering the same to in
Returned Parish of St Bernard _____, 2002

_____
Sheriff

THIRTY FOURTH JUDICIAL DISTRICT COURT
PARISH OF ST BERNARD
STATE OF LOUISIANA

## CITATION



NO 96-487

DAPHINE B DONNELLY, AND JEROME DONNELLY, HUSBAND

VERSUS

BAYER CORPORATION, NOVARTIS PHARMACEUTICALS
CORPORATION; NOVARTIS CONSUMER HEALTH, INC ,,
4LIFE RESEARCH, LC, SUCCESSOR BY MERGER TO SHAPERITE,
SMOOTHIE KING CO., SMOOTHIE KING SYSTEMS, INC.;
WALGREEN LOUISIANA CO  INC  (D/B/A "WALGREENS")

TO     NOVARTIS PHARMACEUTICAL CORPORATION
BY AND THRU ITS REGISTERED AGENT FOR SERVICE OF PROCESS
320 SOMERULOS STREET
BATON ROUGE, LOUISIANA

YOU HAVE BEEN SUED.  Attached to this Citation is a certified copy of Petition for
Damages.  The Petition tells you what you are being sued for

You must either DO WHAT THE PETITION ASKS, OR WITHIN FIFTEEN (15)
DAYS after you have received these documents, you must file an answer or other legal pleadings
in the office of the Clerk of Court at the St. Bernard Parish Courthouse, 1100 W. St Bernard
Hwy, Chalmette  LA  70043

If you do not do what the Petition asks, or if you do not file an answer or legal pleading
within FIFTEEN (15) DAYS, a judgment may be entered against you without further notice

This Citation was issued by the Clerk of Court for St  Bernard Parish, Louisiana on the
2nd day of July, 2002.

sar     P1

LENA R. TORRES
CLERK OF COURT

BY _____
        Deputy Clerk/S/ SUSAN A. RANDAZZO



DOMICILIARY
Received Parish of St. Bernard on the _____ day of _____, 2002 and on the _____ day of
_____, 2002, I served a copy of the within _____ by leaving
the same at _____ domicile _____ this Parish in the hands of
_____ a person apparently over the age of 14 years living and residing in said domicile,
whose name and other facts, connected with this service I learned by interrogating the same

PERSONAL
Received Parish of St. Bernard on the _____ day of
_____, 2002, I served a copy of the within _____
_____ on _____ at _____ this
Parish his usual place of domicile, in the Parish of St. Bernard, by handling and delivering the same to an
Returned Parish of St. Bernard _____, 2002

Sheriff

## AFFIDAVIT OF STEVE KUHNAU

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified in and for the parish and state set forth above, personally came and appeared

### STEVE KUHNAU

who, after being duly sworn, deposed and stated the following.

1

I have personal knowledge of the facts set forth in this Affidavit and, if called as a witness, could and would competently testify to the following.

2

The Smoothie King store located at 3366 Paris Road, Chalmette, Louisiana is the only store operated in Chalmette, Louisiana and there has been no other store operating in that geographic location in the history of the Smoothie King franchising business.

3

The Franchise Agreement #20 which authorizes this Chalmette, Louisiana location was executed by franchisees on October 9, 1991

4

This Smoothie King store opened on February 17, 1992 at the location of 3366 Paris Road, Chalmette, Louisiana



EXHIBIT

A

WITNESSES.

_____

**STEVE KUHNAU**
Chairman, Board of Directors

SWORN TO AND SUBSCRIBED before me, this _26_ day of July, 2002, in New Orleans, Louisiana

_____
Notary Public

H \DOCS\S\SMOOT\00001\PPA case\Donovan Affidavit wpd



**RESEARCH**



9850 South 300 West ▪ Sandy UT 84070 ▪ (801) 562-3600 ▪ (801) 562-3611 Fax

July 31, 2002

**VIA FACSIMILE ONLY**
(504) 585-7075

Charles Blanchard
CHAFFE, MCCALL, PHILLIPS, TOLER & SARPY
2300 Energy Centre, 1100 Poydras St
New Orleans, LA 70163

Re      Donnelly, et al v Bayer Corporation, et al
        34th JDC, St Bernard Parish
        Docket No 96,487, Division "C"
        **Consent to Notice of Removal**

Dear Charles

        I am corporate counsel for 4Life Research, LC, one of the named defendants in the above action  I am responsible for managing all litigation for 4Life worldwide

        4Life is incorporated in Utah, and has its principal place of business in Sandy, Utah

        You have indicated that Bayer and other defendants plan to file a Notice of Removal in the U S District Court for the Eastern District of Louisiana, and that all defendants who have been properly served in the action must agree to such removal  4life was served with the complaint in the above action on **July 29, 2002**, and hereby consents to the notice of removal, but reserves all defenses objections and claims.

Very truly yours,

Jack Brannelly
Vice President of Legal Affairs
4Life Research, LC

JJB/

cc      Steve Tew, CFO, COO
        File

**EXHIBIT**

tabbies

B

41 ife Research  LC

United States District Court

Eastern District of Louisiana

Donnelly

v.                                    CIVIL ACTION NO. 2:02-cv-02436 "N"

Bayer Corporation

The record reflects that a Notice of Removal has been filed in the captioned case; accordingly,

Pursuant to 28 U.S.C. 1447(b), the removing party is directed to file within 10 days:

(1) A list of all parties still remaining in this action;

(2) Copies of all pleadings, including answers, filed by those parties in state court; and

(3) Copies of the return on service of process on those parties filed in state court.

New Orleans, Louisiana, August 8, 2002.

By Direction of the Court

LORETTA G. WHYTE, CLERK





```
CASE:     2:02-cv-02436
DOCUMENT: 1
DATE      08/08/02

CLERK     tbl
```

Notices sent to:

    Mary Meyer  by fax to  504-544-6077
    Joy Braun  by fax to  504-582-1555

Document scanned by: _____